**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,** 9707 Key West Avenue, Suite 200 Rockville, MD 20850-3915, <br><br>        **Plaintiff,** <br><br> **v.** <br><br> **AMERICAN HOME REALTY NETWORK, INC.** 222 7th Street, 2nd Floor San Francisco, CA 94103 <br><br> **and** <br><br> **JONATHAN J. CARDELLA** 222 7th Street, 2nd Floor San Francisco, CA 94103, <br><br>        **Defendants.** | **CIVIL ACTION NO. _____** |

## COMPLAINT

Plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS"), by and through its undersigned attorneys, for its Complaint against (1) American Home Realty Network, Inc. d/b/a NeighborCity.com ("AHR") and (2) Jonathan J. Cardella ("Cardella"), alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF ACTION

1.      This is an action for direct and secondary copyright infringement against AHR and secondary vicarious copyright liability against Cardella, and all entities and persons acting in concert and participation with AHR and Cardella in connection with their infringing activities and other illegal actions.  MRIS seeks to recover damages from AHR and Cardella as the result of AHR's unauthorized reproduction, preparation of derivative works, distribution, and public display of MRIS's copyrighted MRIS database and informational content.   MRIS also seeks preliminary and permanent injunctive relief to prevent any further damage to MRIS as a result of the unauthorized, infringing activities of AHR and Cardella, and recovery of attorneys' fees to the extent permitted by 17 U.S.C. § 505.

2.      Prior to commencing this action, MRIS demanded, by letters addressed to Defendants AHR and Cardella, that Defendants cease and desist their unlawful, infringing activities.  Notwithstanding MRIS's written notice of infringement and demands, AHR and Cardella have refused or otherwise failed to stop their unlawful, infringing activities.

3.      AHR's direct and secondary copyright infringement has been blatant, intentional, and willful.  Accordingly, MRIS seeks copyright damages for willful copyright infringement.

4.      This action also includes claims against Cardella, the President and CEO of AHR, for vicarious copyright infringement because he had and continues to have actual knowledge of the infringement at all relevant times and the right and ability to supervise and stop AHR's infringing activities.  In addition, Defendant Cardella had and continues to have at all relevant times in this action, a direct financial interest in AHR's infringing activities as set forth in this Complaint, but despite repeated written requests from MRIS has failed or otherwise refused to stop AHR's infringing activities.

## JURISDICTION AND VENUE

5.      This action arises in part under the Copyright Act, 17 U.S.C. §§ 101 et seq. and the Lanham Act, 15 U.S.C. § 1125(a).  This Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  The Court has supplemental jurisdiction over the Maryland State law claims pursuant to 28 U.S.C. § 1367 because those claims are so closely related to the Federal claims brought herein as to form part of the same case or controversy.

6.      This Court has personal jurisdiction over Defendants because, among other reasons, Defendants identify a headquarters in Maryland, have done and are doing business within the State of Maryland, including without limitation using a Maryland real estate license, providing referrals to real estate brokers and agents in Maryland, and their commission of infringing acts and other illegal acts inside and outside the State of Maryland which have had and are having an effect within the State of Maryland.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a).

## THE PARTIES

8.      Plaintiff MRIS is a corporation organized under the laws of the State of Delaware with its principal place of business at 9707 Key West Avenue, Suite 200, Rockville, Maryland.

9.      Defendant AHR is a corporation organized under the laws of the State of Delaware with its principal place of business at 222 7th Street, 2nd Floor, San Francisco, California.  The domain name neighborcity.com is registered to AHR and AHR does business as NeighborCity.com.

10.     AHR states that its Maryland headquarters is located at 849-H Quince Orchard Boulevard, Gaithersburg, Maryland 20879.  On the NeighborCity.com web pages related to real estate listings in Maryland, AHR references its headquarters at such address and references

Maryland Real Estate License No. 5748 (*See, e.g.*, Exhibits A-1, A-2, A-3, A-4, A-5, and A-6. These exhibits are examples of listed properties in Maryland displayed on the NeighborCity.com web pages).

11.     Defendant Cardella is the CEO and President of Defendant AHR and has oversight and management responsibility for AHR's activities, including the content of NeighborCity.com.

12.     Defendant Cardella has had and continues to have actual knowledge of AHR's specific infringing activities with respect to MRIS's copyrighted works, and has failed or otherwise refused to stop the infringement, despite repeated written requests from MRIS.

## MRIS AND ITS COPYRIGHTS

13.     Serving Maryland, Washington D.C., Virginia, and portions of Pennsylvania, Delaware, and West Virginia, MRIS provides one of America's largest Multiple Listing Services ("MLS"), facilitating more than $100 million per day in residential real estate transactions in the Mid-Atlantic region.  MRIS is charged with the responsibility of creating, maintaining, operating, protecting, and providing authorized, licensed subscribers and other authorized licensees access to and use of a copyrighted automated database consisting of a compilation of regional real estate property listings and related informational content (collectively, the "MRIS Database").  MRIS delivers real estate information, such as inventory and pricing, and provides through its system and services immediate, high quality, and actionable data to over 40,000 real estate professionals, including agents, brokers, and appraisers.  MRIS listings information is also available to consumers in limited form via a free portal, www.homesdatabase.com and to journalists and others via the Pending Homes Sales Index monthly market summary.

14.     To better serve brokers, agents, and home buyers and sellers, MRIS offers informational content from the MRIS Database via a portfolio of technology solutions, including

broker and agent products and services. These products and services provide real estate professionals with more than 70,000 current, active residential real estate listings integrated with over 5 million public records and other information relevant to the properties. This technology portfolio provides a set of core, go-to resources to help brokers, agents and, ultimately, consumers buy, sell, and lease homes and other real estate properties in MRIS markets, by showcasing residential listings in the Mid-Atlantic region and analyzing residential real estate trends.

15.     To use the MRIS service, licensed real estate brokers and agents are required to execute a MRIS subscription agreement (the "MRIS Subscriber Agreements"). Broker and agent subscribers contractually commit to upload their inventory of available residential real estate properties into the MRIS service, subject to certain exceptions. The copyrights in each photograph included in each of the real estate listings are assigned to MRIS at the time the photographs are uploaded to the MRIS Database by the subscriber. In exchange for these rights and commitments (as provided in applicable MRIS Subscription Agreements) and upon payment of a subscriptions fee, each subscriber is granted access to the MRIS service including the MRIS Database (including competitors' listings) and the right to include such listings on the brokerage and/or agent websites for consideration by prospective renters, homebuyers, and sellers.

16.     MRIS has implemented a comprehensive program to protect the value of the MRIS Database and the property listings in the MRIS Database against unauthorized use. Brokers and agents generate real estate listings contained in the MRIS Database, and MRIS owns copyright in the MRIS Database and all portions thereof. MRIS also affixes its copyright notice to the photos so that unauthorized copies of the MRIS Database or portions thereof may be identified.

17.     MRIS maintains a copyright registration program for the MRIS Database with the

U.S. Copyright Office under the registration procedures applicable to automated databases.

Under these Copyright Office procedures, MRIS files its claims of copyright ownership in and to

the MRIS Database with the Copyright Office each quarter.  MRIS's copyrights in and to the

MRIS Database extend to the collection and compilation of the real estate listings in the MRIS

Database and extend to expressive contributions created by MRIS or acquired by MRIS

including the photographs included in the listings.  As a multiple listing service, MRIS is

charged with the responsibility of enforcing the copyrights in and to the MRIS Database on

behalf of the MRIS brokers and agents who expend substantial time, effort and resources to

acquire and market their property listings through the MRIS multiple listing service.

18.     MRIS owns copyrights in and to the unpublished MRIS Database as evidenced by

its federal copyright registrations issued by the United States Copyright Office, including but not

limited to: Registration No. TXu 001589556 (2008); Registration No. TXu 001706872 (2009);

Registration No. TXu 001706869 (2008); Registration No.  TXu 001734839 (2010); Registration

No. TXu 001778182 (2011); and Registration No. TXu 001788712 (2012).

19.     One of the solutions offered by MRIS to its subscribers is the Internet Data

Exchange program ("MRIS IDX").  The MRIS IDX program allows participating broker

subscribers and agents (collectively, "brokers"), to use and display the content of the MRIS

Database to the public on their own websites, subject to MRIS rules related to the display of such

content.

20.     Under the MRIS IDX program, participating brokers receive a licensed data feed

from MRIS of informational content from the MRIS Database.   The data feed is provided in the

Real Estate Transaction Standard format ("RETS").

21.     Under the MRIS RETS licensing program, participating brokers and authorized third party vendors may acquire an Authorized Developer License from MRIS to enable such brokers to implement an Authorized Application that uses, subject to the terms and restrictions of the license, information MRIS makes available through a RETS data feed.

22.     Real estate agents and brokers who add their listing information to the MRIS Database agree, through their subscriber agreement, to abide by MRIS Rules and Regulations (the "MRIS Rules and Regs") and other applicable professional and legal standards that support the quality, consistency, and integrity of the informational content in the MRIS Database (collectively with the MRIS Rules and Regs, the "Information Quality Standards").

23.     MRIS further provides a compliance function that oversees the administration and enforcement of the MRIS Rules and Regs (collectively, "MRIS Compliance"). This function is in addition to the technical quality assurance performed by MRIS with respect to data comprising the MRIS Database itself.

24.     The provision of the MRIS Compliance is a distinguishing characteristic of the MRIS MLS relative to other, non-MLS entities that aggregate and display real estate information from MRIS markets without the corresponding quality assurance services resulting from the contractual commitment of MRIS subscribers to abide by the Information Quality Standards.

25.     Together, these services by MRIS, and the cooperative partnership between MRIS and its subscribers who both add their listing information into the MRIS Database and, in turn, draw information from the MRIS Database in the course of their professional real estate activities, support the value of the MRIS Database, and MRIS's reputation as the premier source of quality real estate information within its service areas.

## DEFENDANTS AND THEIR WRONGFUL ACTS

26.     AHR and Cardella operate a national real estate referral business that includes the NeighborCity.com website, and has geographic coverage both inside and outside of Maryland as well as the other jurisdictions in the MRIS territory.  Defendants maintain a national database of real estate listings through which they misappropriate the MRIS Database as well other MLS databases.  Accordingly, AHR provides customers unauthorized access to and use of the copyrighted MRIS Database and informational content in support of their referral business. Internet users are able to access the NeighborCity.com website, and by clicking a link or entering a URL they are able to copy and download the relevant content to their computer.

27.     Defendants reproduce and otherwise use MRIS Database content on their NeighborCity.com website to attract customers for their referral program.  Through Defendants' referral business, as described on the NeighborCity.com website, they make buy-side and sell-side referrals to MRIS subscribers in Maryland and outside Maryland, and charge referral fees. Defendants misappropriate the MRIS Database to further this commercial purpose.  Defendants' business model relies on copyright infringement.  By bypassing the licensing process applicable to the MRIS Database entirely in favor of unauthorized copying, the Defendants are diluting the confidence that the public has in the integrity and timeliness of the information being made available through MRIS.

28.     Neither AHR nor Cardella has acquired a license or any form of permission from MRIS allowing Defendants to access, reproduce, modify, publicly display, or otherwise use the MRIS Database, or any portion thereof.  MRIS has not authorized AHR or Cardella to implement any form of MRIS Authorized Developer License or any Authorized Application or otherwise granted AHR or Cardella any rights to access, reproduce, display, or distribute, or

otherwise use any MRIS copyrighted material, or to create derivative works based upon the

MRIS Database or any MRIS copyrighted material.

29.     Defendants are obtaining and copying MRIS copyrighted information, without

authorization, from or sourced from the MRIS Database. AHR admits that it has not sought or

received permission from MRIS or each of the listing agents/brokers on its website. For

example, listings on the NeigborCity.com website state:   *"Have additional information about

this listing? If you are the listing agent and have additional information, sign up today to claim

and update this listing's information."*

30.     Defendants have received substantial revenues and other benefits from their

unauthorized access to and unauthorized reproduction, public display, and distribution of,

property listings and other copyrighted content contained in the MRIS Database.

31.     On November 18, 2011, MRIS, through its General Counsel, sent a letter to AHR

and Cardella, providing written notice of copyright infringement with respect to the copyrights

MRIS owns in the MRIS Database.  A copy of the November 18, 2011 letter is attached as

Exhibit B.

32.     In MRIS's November 18, 2011 written notice of infringement, MRIS gave notice

to AHR and Cardella that, in view of MRIS's copyright notices throughout the MRIS Database

and related content, MRIS believes AHR's and Cardella's unauthorized access to and

reproduction, public display, and distribution of the MRIS Database, and the creation of

unauthorized derivative works incorporating the MRIS Database constitute willful copyright

infringement for which MRIS is entitled to recover statutory damages and attorneys' fees.

33.     On December 21, 2011, more than a month subsequent to MRIS's letter, AHR

and Cardella, by their General Counsel, answered MRIS's letter dated November 18, 2011

("December 21, 2011 letter").  A copy of the December 21, 2011 letter is attached as Exhibit C.

34.     In the December 21, 2011 letter, neither AHR nor Cardella agreed to comply with any of MRIS's demands in its November 18, 2011.

35.     On January 26, 2012, MRIS, through its outside intellectual property law firm, answered the December 21, 2011 letter ("January 26, 2012 letter"), noting that despite MRIS's November 18, 2011 Notice, AHR and Cardella were continuing to use MRIS's copyrighted materials in disregard of MRIS's copyright rights. A copy of the January 26, 2012 letter is attached as Exhibit D. AHR and Cardella have not responded to the January 26, 2012 letter, and have refused or otherwise failed to comply with MRIS's demands.

36.     Defendants have not been authorized and do not have the right to access or reproduce the copyrighted MRIS Database or any licensed content therein and never sought to obtain a RETS license from MRIS, except that they invited MRIS to offer Defendants a "custom" license after receiving the first of MRIS's demand letters.

## COUNT I

### (Direct Willful Copyright Infringement Against AHR - Reproduction)

37.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

38.     The MRIS Database is an original work of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq.*

39.     MRIS has maintained and continues to maintain, for the time periods relevant to MRIS's claims against AHR and Cardella in this lawsuit, a copyright registration program for the MRIS Database under applicable U.S. Copyright Office procedures.

40.     MRIS's claims of copyright ownership in and to the MRIS Database include the compilation copyright in the collection of property listings in the database and extend to the original expressive contributions MRIS has made to or acquired in individual property listings in

the MRIS Database including, without limitation, photographic images of and related to listed properties. Exhibits A-1 through A-6 are examples of listings from the MRIS Database displayed on NeighborCity.com web pages with the MRIS copyright legend affixed to the photographic images. MRIS shares copyright rights with the real estate brokers who own individual property listings included in the MRIS Database.

41.    AHR violated MRIS's exclusive copyrights in and to its copyrighted MRIS Database by reproducing, publicly distributing, publicly displaying, and otherwise infringing copyrighted content from the MRIS Database, without MRIS's authorization, and creating unauthorized derivative works based upon the MRIS Database. AHR's conduct constitutes direct infringement of MRIS's exclusive copyrights under the Copyright Act in violation of 17 U.S. C. § 106(1).

42.    AHR's acts of infringement have been willful, intentional, and purposeful in disregard of and indifferent to MRIS's rights at all times relevant to this action.

43.    As a direct and proximate result of AHR's infringement of MRIS's copyrights, MRIS is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c) based on willful infringement. Alternatively, at MRIS's election, pursuant to 17 U.S.C. § 504(b), MRIS is entitled to its actual damages plus AHR's profits from infringement as will be proven at trial.

44.    MRIS is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

45.    Pursuant to 17 U.S.C. § 502, MRIS is entitled to a preliminary injunction and a permanent injunction to prevent AHR from any further infringement of MRIS's copyrights.

## COUNT II

### (Direct Willful Copyright Infringement Against AHR - Derivative Works)

46.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

47.     AHR, without authorization, modified and adapted content from the copyrighted MRIS Database to create derivative works available for use, download, and distribution via the NeighborCity.com website by Internet users, in connection with the national referral network Defendants have operated and are continuing to operate, all in violation of MRIS's exclusive copyrights.  AHR's conduct constitutes direct infringement of MRIS's exclusive copyrights under the Copyright Act in violation of 17 U.S.C. § 106(2).

48.     AHR's acts of infringement have been willful, intentional, and purposeful in disregard of and indifferent to MRIS's rights at all times relevant to this action.

49.     As a direct and proximate result of the AHR's infringement of MRIS's copyrights, MRIS is entitled to maximum statutory damages pursuant to 17 U.S.C. § 504(c) based on willful infringement.  Alternatively, at MRIS's election, pursuant to 17 U.S.C. § 504(b), MRIS is entitled to its actual damages plus AHR's profits from infringement, as will be proven at trial.

50.     MRIS is also entitled to its costs, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

51.     Pursuant to 17 U.S.C. § 502, MRIS is also entitled to a preliminary injunction and permanent injunction to prevent AHR and any others acting in concert with AHR from engaging in further infringement of MRIS's copyrights.

## COUNT III

### (Direct Willful Copyright Infringement Against AHR - Public Display)

52.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

53.     AHR, without authorization, displayed and is continuing to publicly display MRIS's unpublished copyrighted content on the NeighborCity.com website and made MRIS's copyrighted content, and derivative works based on such content, available for use, download, and distribution by Internet users in connection with the national referral network Defendants have and are continuing to operate, all in violation of MRIS's exclusive copyrights in and to its copyrighted MRIS Database.  AHR's conduct constitutes direct infringement of MRIS's exclusive copyrights under the Copyright Act in violation of 17 U.S.C. §106(5).

54.     AHR's acts of infringement have been willful, intentional, and purposeful in disregard of and indifferent to MRIS's rights at all times relevant to this action.

55.     As a direct and proximate result of AHR's infringement of MRIS's copyrights, MRIS is entitled to maximum statutory damages pursuant to 17 U.S.C. § 504(c) based on willful infringement.  Alternatively, at MRIS's election, pursuant to 17 U.S.C. § 504(b), MRIS is entitled to its actual damages plus AHR's profits from infringement, as will be proven at trial.

56.     MRIS is also entitled to its costs, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

57.     Pursuant to 17 U.S.C. § 502, MRIS is entitled to a preliminary and permanent injunction to prevent AHR and any others acting in concert with AHR from any further infringement of MRIS's copyrights.

## COUNT IV

### (Inducement of Copyright Infringement Against AHR)

58.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

59.     As a result of AHR's unauthorized activities with respect to the MRIS Database, unauthorized third party Internet users have been and are continuing to access and use MRIS's copyrighted content from the MRIS Database and create derivative works based on such content through AHR's NeighborCity.com website, all without authorization.  Such activities by third party Internet users, induced, encouraged, and promoted by AHR, directly infringes MRIS's exclusive rights under 17 U.S.C. § 106(1), 17 U.S.C. § 106(2), and 17 U.S.C. § 106(5).

60.     AHR is liable under the Copyright Act for inducing, encouraging, and promoting the infringing acts of unauthorized third party Internet users to access and use MRIS's copyrighted content from the MRIS Database displayed on the NeighborCity.com site.

61.     By its various actions, AHR is unlawfully inducing, encouraging, and fostering copyright infringement by, among others, third party Internet users accessing and using AHR's NeighborCity.com website without authorization.

62.     AHR is or should be fully aware that the MRIS Database and content therein are copyrighted.

63.     AHR's acts of inducement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of MRIS at all times relevant to this action.

64.     As a direct and proximate result of AHR's infringement of MRIS's copyrights and exclusive rights under Copyright, MRIS is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c) for willful infringement.  Alternatively, at MRIS's election,

pursuant to 17 U.S.C. § 504(b), MRIS is entitled to actual damages plus AHR's profits from infringement, as will be proven at trial.

65.     MRIS is also entitled to its costs, including reasonable attorneys fees, pursuant to 17 U.S.C. § 505.

66.     Pursuant to 17 U.S.C. § 502, MRIS is entitled to a preliminary injunction and permanent injunction requiring AHR and any entities acting in concert with AHR to cease any further infringement of MRIS's copyrighted content.

## COUNT V

### (Contributory Copyright Infringement Against AHR)

67.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

68.     As a result of AHR's unauthorized, infringing actions with respect to the MRIS Database and copyrighted content therein, third party Internet users have infringed, and are continuing to infringe, MRIS's registered copyrights in and to the MRIS Database by accessing, copying, downloading, and otherwise using MRIS' copyrighted content without authorization and creating derivative works created using MRIS copyrighted materials, via the NeighborCity.com site.  As a consequence of AHR's actions, third party Internet users are directly infringing MRIS's exclusive rights of reproduction, distribution, and public display under 17 U.S.C. §§ 106(1), 106(3) and 106(5), respectively.

69.     AHR is liable as a contributory copyright infringer for the infringing acts of third party Internet users of the NeighborCity.com site.  AHR, with knowledge of the infringing activity, enables, causes, induces, facilitates, and materially contributes to each act of infringement by third party users of the NeighborCity.com site.

70.     AHR has actual and constructive knowledge that third party Internet users of the NeighborCity.com site are, on information and belief and among other things, reproducing, distributing, displaying and otherwise using MRIS's registered copyrighted MRIS Database Content and derivative works without authorization from MRIS.

71.     Acting with this actual and constructive knowledge, AHR provides the NeighborCity.com site for this infringing activity and enables, facilitates, and materially contributes to the copyright infringement by third party Internet users of the NeighborCity.com site, which could not occur without and but for AHR's enablement.

72.     AHR's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to MRIS's rights at all times relevant to this action.

73.     As a direct and proximate result of AHR's infringement of MRIS's copyrights, MRIS is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c) for willful infringement.  Alternatively, at MRIS's election, pursuant to 17 U.S.C. § 504(b), MRIS is entitled to its actual damages plus AHR's profits from infringement, as will be proven at trial.

74.     MRIS is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

75.     MRIS is entitled to a preliminary and a permanent injunction requiring AHR to cease all infringing acts related to MRIS's copyrighted materials.

## COUNT VI

### (Vicarious Copyright Infringement Against AHR and Cardella)

76.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

77.     As a result of AHR's unauthorized actions with respect to the MRIS Database and MRIS Database content, third party Internet users of the NeighborCity.com site have infringed,

and are continuing to infringe, MRIS's rights in its registered copyrighted content in the MRIS

Database by reproducing, distributing, displaying, and creating derivative works from that

content without authorization.  These third party Internet users are therefore directly infringing

MRIS's copyright rights, including without limitation MRIS's exclusive rights of reproduction,

adaptation, distribution, and public display under 17 U.S.C. §§ 106(1), 106(2), 106(3) and

106(5), respectively.

76.     78.     AHR and Cardella are both liable as vicarious copyright infringers for the

infringing acts of these third party Internet users of the NeighborCity.com site.  Both AHR and

Cardella directly benefit financially as the result of the infringement by, among others, third

party Internet users, by providing access to and use of the MRIS Database content without

MRIS's authorization.

79.     Cardella is liable for vicarious infringement as to the infringing acts by AHR

because Cardella had actual knowledge of specific acts of infringement and, on information and

belief, had the power and authority as CEO and President of AHR to stop the infringing activities

and did not stop them or make any attempt to stop them.

80.     AHR and Cardella had actual and constructive knowledge that third party Internet

users of the NeighborCity.com site are reproducing, distributing, displaying, and otherwise using

and creating derivative works from MRIS's registered copyrighted MRIS Database and related

informational content without authorization.

81.     Acting with this actual and constructive knowledge, AHR and Cardella enable,

cause, facilitate, and materially contribute to and benefit from the copyright infringement by

third party Internet users of the NeighborCity.com site, which could not occur without AHR's

and Cardella's enablement.

82.     AHR and Cardella's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to MRIS's rights at all times relevant to the action.

83.     As a direct and proximate result of AHR and Cardella's infringement of MRIS's copyrights, MRIS is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(e) for willful infringement.  Alternatively, at MRIS's election, pursuant to 17 U.S.C. § 504(b), MRIS is entitled to its actual damages plus AHR and Cardella's profits from infringement, as will be proven at trial.

84.     MRIS is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

85.     MRIS is entitled to a preliminary injunction and permanent injunction requiring that AHR and Cardella and any others acting in concert with either of them prevent any further infringement of MRIS's copyrights.

## COUNT VII
### (False Designation of Origin, Passing Off and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act Against AHR)

86.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

87.     AHR's unauthorized use of MRIS's copyrighted content bearing a copyright notice and the MRIS trademark is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of MRIS's services, and thus constitutes trademark infringement, false designation of origin, and unfair competition with respect to the MRIS mark, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

88.     AHR's actions described above have at all times been willful, intentional, and purposeful, in disregard of and indifferent to MRIS's rights.

89.     As a direct and proximate result of the actions of Defendants alleged above, MRIS has been damaged and will continue to be damaged.

## COUNT VIII

### (Tortious Conversion and Unjust Enrichment Against AHR)

90.     MRIS hereby incorporates by reference each of the foregoing paragraphs of this Complaint as set forth fully herein.

91.     The MRIS Database and the compilation of property listings information contained therein are only legally accessible under written authorization from MRIS which maintains exclusive control over the licensed access and use of the MRIS Database.

92.     AHR has and continues to misappropriate the MRIS Database, in whole or in part, and has converted the MRIS Database contents to its own use and benefit, without the considerable investment of time, resources and effort made by MRIS to create the MRIS Database, or otherwise compensating MRIS for its wrongful misappropriation.

93.     AHR's unauthorized use of the MRIS Database and content therein without payment to MRIS constitutes tortious conversion and unjust enrichment.

94.     By continuing to operate the NeighborCity.com website using MRIS Database content without authorization, AHR is and continues to be unjustly enriched.

95.     AHR should be enjoined from any further benefits from its wrongful misappropriation of MRIS Database content in violation of MRIS's rights.

96.     MRIS has suffered damages as a result of AHR's unjust enrichment and wrongful misappropriation of MRIS Database content in an amount to be determined at trial.

**WHEREFORE, Plaintiff MRIS prays for judgment against Defendants AHR and**

**Cardella as follows:**

A. For a judgment that Defendant AHR willfully infringed MRIS's copyrights in and to each copyrighted version of the MRIS Database, both directly and secondarily.

B. For a judgment that Defendant Cardella is liable for vicarious copyright infringement.

C. For a judgment that Defendant AHR is liable to MRIS for conversion and unjust enrichment by its illegal actions.

D. For an Order requiring Defendants to account for and pay to MRIS any and all profits arising from the foregoing acts of false designation of origin, and unfair competition, and increasing such profits for payment to MRIS in accordance with 15 U.S.C. § 1117 and other applicable laws.

E. For a permanent injunction requiring that AHR, Cardella and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them or any of their principals, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of, any of MRIS's respective copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created, or displaying any inaccurate or misleading information about MRIS or listing content from MRIS.

F. For statutory damages pursuant to 17 U.S.C. § 504(c) for willful infringement. Alternatively, at MRIS's election, pursuant to 17 U.S.C. § 504(b), for actual damages plus AHR's profits from infringement, as will be proven at trial.

G. For MRIS's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

H. For compensatory damages in an amount as yet undetermined caused by the foregoing acts of false designation of origin and unfair competition, and trebling such compensatory damages for payment to MRIS in accordance with 15 U.S.C. § 1117 and other applicable laws.

I. For pre- and post-judgment interest according to law.

J. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

METROPOLITAN REGIONAL
INFORMATION SYSTEMS, INC.

John T. Westermeier (Bar No. 04364)
(Jay.Westermeier@finnegan.com)
Margaret A. Esquenet (Bar No. 27775)
(Margaret.Esquenet@finnegan.com)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
Phone:  (202) 408-4000
Fax:  (202) 408-4400

*Attorneys for Plaintiff*
Metropolitan Regional Information Systems, Inc.

DRAFT:  March 28, 2012