**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,** | **CIVIL ACTION NO. 12-cv-0954** |
| **Plaintiff,** | |
| **v.** | |
| **AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................................ 2

       A.     MRIS and its MRIS Database .............................................................. 2

       B.     Defendants and Their Wrongful Conduct ............................................ 6

III.   ARGUMENT ............................................................................................................ 9

       A.     A Preliminary Injunction is Necessary and Warranted In This Case ................... 9

       B.     MRIS is Likely to Succeed on the Merits of Its Copyright Claims ..................... 10

              1.     MRIS Is the Owner of Valid Copyrights for Informational Content
                     in its MRIS Database ............................................................... 10

              2.     AHR Unlawfully Copied, Displayed, Distributed and Created
                     Derivative Works from MRIS's Copyrighted Content ........................... 11

       C.     MRIS is Likely to Suffer Irreparable Harm in the Absence of Preliminary
              Injunctive Relief ........................................................................... 11

       D.     The Balance of Equities Decidedly Favors MRIS ................................................ 13

       E.     A Preliminary Injunction is in the Public Interest ................................................ 13

IV.    CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Advanced Magazine Publishers, Inc. v. David Leach* ................................................................13
    466 F. Supp. 2d 628

*Apple Computer, Inc. v. Franklin Computer Corp.*,
    714 F.2d 1240 (3rd Cir. 1983) ........................................................................................14

*Christopher Phelps & Assocs., LLC v. Galloway*,
    492 F.3d 532 (4th Cir. 2007) ..........................................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)........................................................................................................10

*Keeler Brass Co. v. Continental Brass Co.*,
    862 F.2d 1063 (4th Cir. 1988) ........................................................................................10

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
    243 F.3d 789 (4th Cir. 2001) ..........................................................................................11

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ..........................................................................................10

*Real Truth About Obama, Inc. v. FEC*,
    575 F.3d 342 (4th Cir. 2009), vacated on other grounds ................................................9

*Splitfish AG v. Bannco Corp.*,
    727 F. Supp. 2d 461 (E.D. Va. 2010) ........................................................................11, 13

*Winter v. Natural Res. Defense Council, Inc.*,
    129 S. Ct. 365 (2008)........................................................................................................9

**FEDERAL STATUTES**

17 U.S.C. § 410(c) ....................................................................................................................10

**RULES**

Fed. R. Civ. P. 65....................................................................................................................9, 14

Plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS") seeks to preliminarily enjoin Defendants American Home Realty Network, Inc. d/b/a NeighborCity.com ("AHR") and Jonathan J. Cardella ("Cardella") (collectively, "AHR" or "Defendants") from committing acts of copyright infringement, specifically, unlawfully accessing, reproducing, displaying, and publicly distributing copyrighted content from MRIS' database of real estate listing information ("MRIS Database") as well as preparing unauthorized derivative works based upon or sourced from the MRIS Database.

## I.   INTRODUCTION

MRIS is one of the country's largest online real estate multiple listing services, serving real estate brokers and agent subscribers and other authorized subscribers in Maryland, Virginia, and the District of Columbia, as well as parts of Delaware, West Virginia, and Pennsylvania. Since its commercial launch in 1996 and 1997, MRIS has been one of the nation's premier multiple listing services, earning the trust of real estate professionals and renters, buyers, and sellers.  Through the MRIS Database, MRIS maintains and provides authorized, licensed subscribers with access to and use of a copyrighted automated catalog, containing a compilation of regional real estate property listings and related informational content.  Real estate broker and agent subscribers of MRIS upload photographs to the MRIS Database, and assign rights in these materials to MRIS.  The subscribing brokers and agents have access to the entire MRIS Database of listing content.  They rely on that licensed access to build their businesses by advising consumers seeking to rent, sell, or purchase a real estate property.

AHR operates a national real estate referral business, including the website NeighborCity.com, that provides customers and potential customers with unauthorized access to and use of MRIS's copyrighted materials.  Without MRIS's permission, AHR has engaged, and continues to engage, in the unauthorized and unlawful reproduction and display of copyrighted

content from the MRIS Database, and in the creation of derivative works based upon such

content, for the purposes of impermissibly and unfairly siphoning consumers away from MRIS's

subscribing brokers and agents and building its business in markets served by MRIS.  AHR's

infringement not only causes irreparable harm to MRIS and threatens the investment MRIS has

made in compiling and maintaining the MRIS Database, but also harms the real estate brokers

and agent subscribers who assign the copyrights in such content to MRIS and whose names are

attached to real estate listings copied by AHR.  Prior to filing this suit, MRIS repeatedly

requested that AHR cease its infringing use of MRIS's copyrighted material in letters addressed

to Defendants, but to no avail.

AHR's actions violate federal copyright law, free ride on MRIS's technology and work

product, and undermine legitimate brokers and agents, causing harm to MRIS and its subscribers.

If Defendants are not immediately enjoined from reproducing, using, displaying, and/or

preparing unauthorized derivative works from copyrighted content in the MRIS Database, the

substantial negative effects on MRIS, as well as its real estate broker and agent subscribers, will

continue unabated.  An injunction further serves the public interest by ensuring that consumers

who rely upon information from the MRIS Database when renting or purchasing real estate can

trust that the information is genuine and reflects the current information maintained by the real

estate professional making it available through the MRIS Database.

## II.    STATEMENT OF FACTS

### A.    MRIS and its MRIS Database

MRIS provides one of America's largest Multiple Listing Services, facilitating real estate

transactions in the Mid-Atlantic region, including Maryland, Virginia, and the District of

Columbia, as well as parts of Delaware, West Virginia and Pennsylvania ("MRIS Territory").

*Ex. A, Declaration of John Heithaus (hereinafter, "Heithaus Declaration") at ¶ 3.*  MRIS

maintains and provides authorized, licensed subscribers and other authorized licensees access to and use of the MRIS Database, a copyrighted automated database consisting of a collection and compilation of regional real estate property listings and related informational content. *Id.* Through the MRIS Database, MRIS delivers real estate information, such as inventory and pricing, and provides through its system and services immediate and accurate data to more than 40,000 real estate professionals, including agents, brokers, and appraisers.

MRIS offers informational content from the MRIS Database via a portfolio of technology solutions, including broker and agent software products and services, that provide real estate professionals with over 70,000 regional real estate property listings integrated with over 5 million public records and other information relevant to the properties. Real estate listings in the MRIS Database are sourced directly from professional brokers and agents, who contractually commit to upload their inventory of available residential real estate listings to MRIS. *Id.* at *¶¶ 5-6.* Subject to the terms and commitments detailed in the applicable contractual agreements with MRIS (e.g., the MRIS Subscription Agreements, MRIS Database Access and Use Agreements, and Terms of Use Agreements) and payment of the applicable fees, each broker and agent subscriber is given access to the MRIS Database of real estate listing content, including competitor listings, and may include listings from the MRIS Database on their brokerage and/or agent websites for consideration by prospective real estate buyers and renters. *Id.* at *¶ 6.*

One of the solutions offered by MRIS to its subscribers is the Internet Data Exchange program ("MRIS IDX"). *Id.* Through MRIS IDX, broker and agent subscribers can display real estate listing information from the MRIS Database on their own websites, subject to MRIS rules related to the display of such content and license restrictions. *Id.*

Under the MRIS IDX program, participating brokers receive a licensed data feed from MRIS, in Real Estate Transaction Standard Format ("RETS Feed") that contains real estate listing information taken from the MRIS Database.  Third parties accessing and using information from the MRIS Database by means of a RETS feed are subject to licensed use restrictions, as detailed in the MRIS Database Access and Use Agreements.  *Id.*  Pursuant to those agreements, authorized licensees are granted access to information from the MRIS Database for a specific use.  *Id.*  The agreement restricts any uses beyond those explicitly identified in the agreement.  *Id.*

MRIS has taken steps to protect the value of real estate brokers and agents' subscriptions to the MRIS Database, as well as its own significant investment in the MRIS Database, by securing federal copyright protection.  *Id. at ¶¶ 4-5.*  Copyright protection for MRIS extends not only to the compilation of property listings in the MRIS Database, but also to the original expressive contributions MRIS has made or acquired to individual property listings in the MRIS Database.  *Id. at ¶ 4.*  These expressive contributions include photographs of listed properties, submitted to MRIS by real estate brokers and agents, that display a "©" copyright notice.  *Id.*

MRIS holds federal copyright registrations for the MRIS Database, including, but not limited to, the following:

| Registration Number | Registration Date | Title |
| --- | --- | --- |
| TXu 001737341 | March 31, 2010 | Metropolitan Regional Information Systems, Inc., from 1/1/2010 through 3/31/2010; updated daily |
| TXu 001720738 | November 9, 2010 | Group registration for automated database titled Metropolitan Regional Information Systems, Inc. (MRIS) |
| TXu 001734839 | December 31, 2010 | Metropolitan Regional Information Systems, Inc. from 10/1/2010 through 12/31/2010; |

| | | updated daily |
|---|---|---|
| TXu 001737337 | March 31, 2011 | Metropolitan Regional Information Systems, Inc. from 1/1/2011 through 3/31/2011; updated daily |
| TXu 001762388 | June 30, 2011 | Group registration for automated database Metropolitan Regional Information Systems, Inc., from 4/1/2011 to 6/30/2011; updated daily |
| TXu 001778182 | October 6, 2011 | Metropolitan Regional Information Systems, Inc. from 7/1/2011 through 9/30/2011; updated daily |
| TXu 001788712 | January 12, 2012 | Metropolitan Regional Information Systems, Inc. from 10/1/2011 through 12/31/2011; updated daily |

MRIS also provides its own consumer facing website, www.homesdatabase.com.  This

website displays limited listing information from the MRIS Database, and is maintained by

MRIS for the purpose of generating leads for MRIS subscriber brokers and agents.  *Id*. at ¶ 11.

The importance of the informational content contained in the MRIS Database to MRIS's

business cannot be overstated.  Providing and maintaining a database of high quality listing

content is central to MRIS's business, as are the real estate broker and agent subscriptions to

MRIS's services that use information from the MRIS Database.  In addition, MRIS's real estate

broker and agent subscribers depend upon the reliability of that content (e.g., that it reflects the

current information they have entered into the system) in the conduct of their business, when

providing consumers with the critical information they need when purchasing or renting a real

estate property.  The misappropriation, alteration, and unauthorized display of MRIS's

copyrighted content, as well as the preparation of unauthorized derivative works incorporating

the MRIS Database, significantly diminish the value of the MRIS Database itself, as well as

subscriptions to that database.  *Id*. at ¶¶ 10-13.  Consequently, AHR's unauthorized

5

reproduction, use, and display of MRIS's copyrighted content, as well as the preparation of unauthorized derivative works incorporating the MRIS Database, irreparably harm MRIS's business, as well as its ability to serve its subscribers and continue its role as one of the country's largest and most trustworthy real estate multiple listing services.

**B.       Defendants and Their Wrongful Conduct**

Defendant AHR operates a national real estate referral business that includes NeighborCity.com, a website that reaches consumers within the MRIS Territory, including Maryland.  AHR maintains a database of national real estate listings through which they misappropriate and infringe the MRIS Database and its related informational content, and uses such content as advertising to attract consumers.

In the course of its real estate referral business, AHR provides its customers with access to and use of MRIS' copyrighted content, and displays such content on its NeighborCity.com website.  AHR profits from this infringing activity by, as described on its own website, charging for its buy-side and sell-side referrals to MRIS subscribers in the MRIS Territory.  Defendants purport to provide a mechanism for ensuring that real estate buyers and sellers in the MRIS Territory, including Maryland, receive what Defendants characterize as timely introductions to local agents, and improperly attract and facilitate these referrals by making and displaying unauthorized reproductions of the MRIS Database and its contents.  MRIS believes that AHR is receiving and copying copyrighted content from the MRIS Database via multiple possible sources, including, by way of example, from a RETS data feed that is sent to a licensed real estate brokerage, and/or by copying and compiling such content from MRIS or third party websites.

As shown in the screen shots below from AHR's NeighborCity.com website, the real estate listings for a properties for sale in Rockville, Maryland display a photograph that contains a "© 2012 MRIS" notice in the bottom left corner:



Alongside these photographs, the webpage provides a listing of "Expert Agents for this Home" as part of NeighborCity.com's "AgentMatch" feature.  *Exhibits B and C, NeighborCity.com*

*Webpages Located at* http://www.neighborcity.com/property/711-HARRINGTON-Rd-Rockville-MD-20852-MC7778065-26515261/ and http://www.neighborcity.com/property/214-WATKINS-POND-Blvd-Rockville-MD-20850-MC7780190-19700866/.

AHR's infringing activities with regard to the MRIS Database have caused and continue to cause significant harm to MRIS and its real estate broker and agent subscribers, by making it impossible for brokers to maintain control over the dissemination of their own listing information. *See Heithaus Declaration at ¶ 9; Ex. D, Declaration of Boyd Campbell (hereinafter "Campbell Declaration") at ¶ 7-8; Ex. E, Declaration of Jon Coile (hereinafter, "Coile Declaration") at ¶ 9-10.* To demonstrate this significant harm, MRIS has attached the Declarations of Boyd Campbell and Jon Coile, real estate brokers located in Maryland who have been directly affected by AHR's unlawful copying and displaying of MRIS' copyrighted material. *See Campbell Declaration; Coile Declaration.* MRIS also is harmed because the NeighborCity.com website misappropriates the MRIS Database in a manner that undermines MRIS's own homesdatabase.com website. *Heithaus Declaration* at ¶ 11.

The harm caused by such loss of control is illustrated by AHR's display of property listings from MRIS that are inaccurate or no longer valid. *Coile Declaration at ¶ 7-8.* Postings of outdated material by AHR damage the credibility of MRIS and the real estate brokers and agents whose names are attached to these property listings on NeighborCity.com, and cause irreparable harm by adversely affecting consumers' perception of their integrity. *Id.*; *Heithaus Declaration* at ¶ 10. AHR's NeighborCity.com website further harms MRIS and its subscribers by reducing their revenues and diverting traffic from real estate brokerage websites that are built upon content taken from the MRIS Database, for which the MRIS brokers and agents acquire

licensed access under a subscription agreement and subscription fees. *Heithaus Declaration at ¶ 11-12; Campbell Declaration at ¶¶ 4-6; Coile Declaration at ¶¶ 4-6.*

AHR reproduces, displays, and creates unauthorized derivative works from the copyrighted MRIS Database without authorization and in violation of federal copyright law. AHR does not have permission from MRIS to access or use any copyrighted content contained in the MRIS Database, or any portion thereof. *Heithaus Declaration* at *¶ 8.* MRIS has not authorized AHR to implement an Authorized Developer License or any Authorized Application, or otherwise granted AHR any rights to access, use, display or distribute any MRIS copyrighted content, or to create derivative works based on such content. *Id.* Furthermore, as demonstrated in the Campbell Declaration and the Coile Declaration, AHR has not obtained permission from each of the brokers whose listings are being taken from the MRIS Database unlawfully and repurposed on the NeighborCity.com website for AHR's commercial gain. *See Campbell Declaration at ¶ 3; Coile Declaration at ¶ 4.*

For these reasons, an injunction is urgently needed to stop the irreparable harm already occurring against MRIS and its real estate broker and agent subscribers, and to prevent AHR from continuing to build its business upon the unauthorized use of the copyrighted content of others.

## III.     ARGUMENT

### A.     A Preliminary Injunction is Necessary and Warranted In This Case

MRIS seeks entry of a preliminary injunction to prevent further irreparable harm pending the final outcome of this litigation.  MRIS is entitled to a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, because MRIS has established that: (1) it is likely to succeed on the merits at trial; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) the public interest favors the granting of

preliminary injunctive relief.  *Winter v. Natural Res. Defense Council, Inc*., 129 S. Ct. 365, 374

(2008); *see also Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009),

vacated on other grounds by 130 S. Ct. 2371 (2010) and reissued in part, 607 F.3d 355 (4th Cir.

2010) (adopting the *Winter* preliminary injunction standard in the Fourth Circuit); *see also*

*Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 979 (9th Cir. 2011) (adopting four-part test for

preliminary injunction recited above).  For the reasons provided herein, MRIS has shown that

preliminary injunctive relief is warranted in this case.

**B.      MRIS is Likely to Succeed on the Merits of Its Copyright Claims**

To establish copyright infringement, MRIS has offered evidence proving: (1) that it owns

a valid copyright, and (2) unauthorized access and copying by AHR.  *Feist Publ'ns, Inc. v. Rural*

*Tel. Serv. Co*., 499 U.S. 340, 361 (1991); *Keeler Brass Co. v. Continental Brass Co*., 862 F.2d

1063, 1065 (4th Cir. 1988).

**1.      MRIS Is the Owner of Valid Copyrights for Informational Content in
its MRIS Database**

A certificate of registration constitutes prima facie evidence of the validity and ownership

of a copyright.  17 U.S.C. § 410(c).  As established in section II.A above, MRIS is the owner of

the following valid federal copyright registrations for the MRIS Database, among others: TXu

001737341, TXu 001720738, TXu 001734839, TXu 001737337, TXu 001762388, TXu

001778182, TXu 001788712.  These registrations prove that MRIS owns valid copyrights in the

MRIS Database itself.  In addition, MRIS owns copyrights in the original expressive

contributions (e.g., photographs) MRIS has made or acquired to individual property listings in

the MRIS Database, as evidenced by the "© 2012 MRIS" notices prominently displayed on such

contributions.  AHR has never disputed MRIS's rights in the MRIS Database.

## 2. AHR Unlawfully Copied, Displayed, Distributed and Created Derivative Works from MRIS's Copyrighted Content

There is no question that AHR copied, displayed, and distributed copyrighted content from the MRIS Database, without MRIS's authorization, and prepared unauthorized derivative works of the MRIS Database.  If evidence of direct copying is unavailable, a plaintiff may create the presumption of copying by showing that the defendant had (1) access to the copyrighted work, and (2) that the defendant's work is "substantially similar" to the copyrighted work." *Lyons P'ship, L.P. v. Morris Costumes, Inc*., 243 F.3d 789, 801 (4th Cir. 2001).

Here, the presence of the MRIS copyright notice on materials distributed by Defendants constitutes persuasive evidence of direct copying.  *See, e.g., Ex. B and C*.  Moreover, MRIS can show that AHR has access to MRIS' copyrighted works, and that AHR has copied such works for its NeighborCity.com website.  *Heithaus Declaration* at ¶ 8.  MRIS believes that AHR is receiving and copying copyrighted content from the MRIS Database via multiple possible sources, including by way of example, from a RETS data feed that is sent to a licensed real estate brokerage, and/or by copying and compiling such content from MRIS or third party websites.

AHR's website uses materials that not only are "substantially similar" to MRIS' copyrighted content, but *identical* since the website incorporates MRIS's copyrighted content in its *entirety*.  AHR has misappropriated entire property listings from the MRIS Database, and re-posted and redistributed such listings on its own NeighborCity.com website for its own commercial gain.  *See Exhibits F-1, F-2, F-3, F-4, F-5 and F-6*.

## C. MRIS is Likely to Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief

MRIS is likely to suffer irreparable harm because the continued infringing use of copyrighted content from the MRIS Database by AHR hinders MRIS's rights to control the means and methods by which its copyrighted works will be seen by the public.  *Christopher*

11

*Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007) ("[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights."); *Splitfish AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 467 (E.D. Va. 2010) (finding that plaintiffs made a clear showing of irreparable harm because "allowing defendants to continue to distribute products containing plaintiffs' copyrighted work would 'deprive the copyright holder of intangible exclusive rights' to control the means and methods by which its work will be seen by the public.")

Every day that AHR is permitted to continue its infringement of the MRIS Database MRIS loses control over its content, which is misappropriated and posted by AHR on NeighborCity.com without regard to the quality controls that MRIS maintains over the information in the MRIS Database.  The harm created by this loss of control is exemplified by AHR's diversion of real estate buyers, sellers, and renters from the homesdatabase.com website as well as the inaccurate postings of property listings relative to the current information in the MRIS Database, which cause confusion in the real estate marketplace.  *Heithaus Declaration* at ¶ 10-11.  Because reputation, word-of-mouth opinions, and recommendations are critical in the real estate business, such confusion will devastate MRIS's business and reputation for quality.  *Id*. at ¶ 13.  AHR's posting of unauthorized or inaccurate information on its own site, not only diverts the public from the authorized sites with up-to-date and correct information (such as homesdatabase.com and broker/agent websites), but also harms the businesses and reputations of its real estate broker and agent subscribers.  *Id*. at 10-12.

In addition, MRIS's business model, which relies upon the relationship created through the real estate broker and agent subscriptions to the MRIS Database, will be severely damaged if AHR's infringing activities are not preliminarily enjoined and AHR is allowed to freely access,

reproduce, and profit from copyrighted content of the MRIS Database.  It is precisely this type of irreparable harm, which cannot be remedied by money damages alone, that copyright laws were enacted to prevent.

      **D.**      **The Balance of Equities Decidedly Favors MRIS**

The balance of equities in this case tips decisively in MRIS's favor.  AHR has been profiting from the unauthorized use of copyrighted content from the MRIS Database, and equity requires that AHR be ordered to cease its unlawful conduct.  *Splitfish*, 727 F. Supp. 2d at 468. Although MRIS will suffer permanent irreparable injury absent injunctive relief, a preliminary injunction will not substantially harm AHR.  The injunction requested by MRIS would prohibit AHR only from misappropriating MRIS's copyrighted content and is no more extensive than necessary to protect MRIS's interests.  *Id*.  A preliminary injunction would not prevent AHR from operating NeighborCity.com and offering customers its real estate agent referral services, or otherwise competing with MRIS.

Furthermore, any harm AHR could conceivably suffer would be the direct result of its own infringing activities.  AHR elected to infringe the MRIS Database for its own profit.  AHR thus decided to take the material first, and perhaps seek to secure permission later. Unfortunately for AHR, this approach is inapposite to federal copyright law.  Moreover, AHR cannot claim that it was unaware of the copyrighted nature of material taken from the MRIS Database, given the presence of the "© 2012 MRIS" notice on photographs featured in such listings.  Consequently, any potential harm to AHR is slight, and the direct result of its decision to infringe the MRIS Database.

      **E.**      **A Preliminary Injunction is in the Public Interest**

By enacting the Copyright Act, "Congress has indicated that the public interest is served by upholding copyright owners' exclusive statutory rights to control the use of their work."

13

*Splitfish*, 727 F. Supp. 2d. at 469; *see also Advanced Magazine Publishers, Inc. v. David Leach*, 466 F. Supp. 2d at 638 ("Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.") (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254-55 (3rd Cir. 1983)).

Because the public clearly has an interest in preventing the unauthorized use of copyrighted material, this factor weighs in MRIS's favor.  In addition, AHR's infringing activities, specifically, its postings of real estate listings that are no longer available, have caused and will continue to cause confusion and mistake among consumers seeking information when purchasing a new real estate property.   It is clear that the public interest in avoiding such confusion among consumers engaged in purchasing real estate necessitates an injunction.

## IV.     CONCLUSION

For the foregoing reasons, MRIS respectfully requests, pursuant to Federal Rule of Civil Procedure 65, that this Court enter a preliminary injunction enjoining Defendants from engaging in unauthorized copying, display, use, and public distribution of copyrighted content from the MRIS Database, or creating unauthorized derivative works from copyrighted content from the MRIS Database, during the pendency of this action.

Respectfully submitted,

Dated:  April 4, 2012               By:  /s/John T. Westermeier
                                         John T. Westermeier (Bar No. 04364)
                                         (Jay.Westermeier@finnegan.com)
                                         Margaret A. Esquenet (Bar No. 27775)
                                         (Margaret.Esquenet@finnegan.com)

14

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.

*Attorneys for Plaintiff*
Metropolitan Regional Information
Systems, Inc.