**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

**METROPOLITAN REGIONAL INFORMATIONS SYSTEMS, INC.,**

**Plaintiff,**

**v.**

**AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,**

**Defendants,**

**Civil Action No. 12-cv-954**

**MEMORANDUM IN SUPPORT OF DEFENDANT AMERICAN HOME REALTY NETWORK, INC.'S RULE 12(b) MOTION TO DISMISS**

FARKAS+TOIKKA, LLP
Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)

*Counsel for Defendants American Home Realty Network, Inc. and Jonathan J. Cardella*

Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California 94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .... iii

I. STATEMENT OF FACTS .... 1

A. Background .... 1
B. Defendant AHRN. Inc.'s Relationships to this Lawsuit and the Forum .... 4

II. RULE 12(b)(6) MOTION TO DISMISS CLAIMS OF COPYRIGHT INFRINGEMENT OF INDIVIDUAL ELEMENTS, INCLUDING PHOTOGRAPHS, IN THE MRIS DATABASE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .... 6

A. Legal Standards .... 6
*1. Rule 12(b)(6) Motion* .... 6
*2. Federal Copyright Law* .... 8
B. Argument .... 10

III. RULE 12(b)(2) MOTION TO DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION OVER BOTH DEFENDANTS .... 11

A. Legal Standards .... 11
B. Argument .... 15
1. The Standards For General Jurisdiction Are Not Met .... 15
2. The Standards For Specific Jurisdiction Are Not Met .... 17

IV. RULE 12(b)(3) MOTION TO DISMISS FOR IMPROPER VENUE .... 20

A. Legal Standards .... 20
B. Argument .... 21

V. CONCLUSION .... 23

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ. Co.*, 2010 U.S. LEXIS 108041, at *1 (D. Alaska Sept. 21, 2010) .......... 10, 11
*All Carrier Worldwide Services, Inc. v. United Network Equip. Dealer Assoc.,* 812 F.Supp. 2d 676 (D. Md. 2011) .......... 20
*ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ..passim
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).......... 8
*Bean v. Houghton Mifflin Harcourt Publ. Co.*, 2010 U.S. Dist. LEXIS 83676, at *6-7 (D. Ariz. Aug. 9, 2010).......... 10, 11
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 7
*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) .......... 14
*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ..........12, 14, 19
*Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209 (4th Cir. 2001) .......... 12
*Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000)........ 7
*Cortec Indus. v. Sum Holding, L. P.*, 949 F.2d 42 (2d Cir. 1991) .......... 7
*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.,* 273 U.S. 359, 371 (1927)........ 21
*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) .......... 6
*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997) .......... 12, 16, 18, 20
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).......... 8
*Gallman v. Sovereign Equity Group, Inc.,* 2012 U.S. Dist. LEXIS 38232, at *11-13 (D. Md. 2012) .......... 20
*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, (2011) .......... 14
*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984) .......... 14
*International Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F. 3d 69 (2d Cir. 1995) .......... 7
*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945) .......... 13, 14
*Johansson Corp v. Bowness Constr. Co.*, 304 F. Supp. 2d 701 (D. Md. 2004)....... 13, 15
*Jordan v. Alternative Res. Corp.*, 458 F.3d 332 (4th Cir. 2006).......... 7
*Keeler Brass Co. v. Continental Brass Co.*, 862 F.2d 1063 (4th Cir. 1988).......... 8
*Mackey v. Compass Marketing*, 892 A.2d 479 (Md. 2006).......... 12, 13
*McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957) .......... 17
*Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).......... 21
*Mohamed v. Michael*, 279 Md. 653, 370 A.2d 551 (Md. 1977).......... 12
*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ. Co.*, 712 F. Supp. 2d 84 (S.D.N.Y. 2010) .......... 9, 10, 11
*Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993) .......... 11, 12
*New Beckley v. Min. Corp. v. Intern. Union, United Mine Workers of Am.*, 18 F. 3d 1161 (4th Cir. 1994).......... 7
*Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233 (D. Md. 1992).......... 11
*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir.1993) .......... 16
*Ottenheimer Publishers, Inc., v. Playmore Inc.*, 158 F. Supp. 2d 649 (D. Md. 2001) ..........13, 15

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) .......... 7
*Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745 (4th Cir.1971) .......... 16
*Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010) .......... 8
*Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350 (D. Md. 1997) .......... 14
*Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir. 1985) .......... 8
*Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804 (D. Md. 2004) .......... 13
*Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132 (4th Cir. 1996) .......... 12
*Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) .......... 21
*Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904 (4th Cir.1984) .......... 16
*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) 15

**STATUTES**

17 U.S.C. § 101 .......... 8
17 U.S.C. § 102 .......... 8
17 U.S.C. § 103 .......... 8
17 U.S.C. § 103(b) .......... 9
17 U.S.C. § 409(2) and (6) .......... 9, 10
17 U.S.C. § 411(a) .......... 8
28 U.S.C. § 1391(b) .......... 20, 21, 22
28 U.S.C. § 1391(c) .......... 21
28 U.S.C. § 1406(a) .......... 21, 22
Md. Code Ann., Cts. & Jud. Proc. § 6-103. .......... 13, 20

**OTHER AUTHORITIES**

Copyright Office's Circular 62 .......... 9
Copyright Office's Circular 65 .......... 9, 10

**RULES**

FRCP 10(c) .......... 7
FRCP 12(b)(2) .......... 1, 14
FRCP 12(b)(3) .......... 1
FRCP 12(b)(6) .......... 1
FRCP 4(k)(1)(A) .......... 12
FRCP 56(a) .......... 8
FRCP 56(d) .......... 7

**REGULATIONS**

37 C.F.R. § 202.3(b)(5) .......... 9, 10

Defendant American Home Realty Network, Inc. (hereinafter, "AHRN, Inc."), by and through its attorneys, hereby submits its Memorandum in support of its motion to dismiss this action in whole or in part.   Defendant's grounds for dismissal are set forth below and include: a) pursuant to FRCP 12(b)(6) failure to state a claim upon which relief can be granted as to copyright infringement of individual elements (including individual photographs) in the MRIS Database; b) pursuant to FRCP 12(b)(2), lack of personal jurisdiction over both Defendants; and c) pursuant to FRCP 12(b)(3), improper venue.

## I.   STATEMENT OF FACTS

### A.   Background

Plaintiff Metropolitan Regional Information Systems, Inc. (hereinafter, "MRIS") has sued Defendant AHRN, Inc., and Defendant Cardella, AHRN, Inc.'s Chief Executive Officer, for direct and secondary copyright infringement of its MRIS Database.[1]   See Complaint [D.E. 1].   MRIS is one of the largest regional real estate Multiple Listing Services in the United States. See Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction [D.E. 9-1] at 1. AHRN, Inc. is a small California real estate broker with nine (9) employees. See **Exhibit 2** hereto, Declaration of AHRN, Inc.'s President Ali Vahabzadeh (hereinafter, "Vahabzadeh Decl."), ¶ 7.   The sole Count against

---

[1] Plaintiff identifies its federal automated database copyright registrations as including but not limited to: Registration No. TXu001589556 (2008); Registration No. TXu001706872 (2009); Registration No. TXu001706869 (2008); Registration No. TXu001734839 (2010); Registration No. TXu001778182 (2011); and Registration No. TXu001788712 (2012). Complaint, ¶¶ 17-18.  A copy of these publically available registration certificates is attached as **Exhibit 1** hereto.

Cardella is for vicarious secondary copyright infringement.   See Complaint at 16-18 (Count VI).

AHRN, Inc. owns and operates a website http://www.Neighborcity.com targeted to a national audience and not specifically targeted to the State of Maryland or anyone residing or doing business there. Vahabzadeh Decl., ¶ 10.  As set forth on its website and in Mr. Vahabzadeh's Declaration, NeighborCity is a real estate search engine, as well as a Realtor® ratings and rankings service that, through the use of innovative technology, introduces homebuyers and sellers to qualified and vetted local real estate agents who are available to represent them exclusively. *Id.*, ¶ 11.

The data displayed on the NeighborCity web site come from multiple sources; from brokers and agents, through county tax assessor's offices and related public records, and from foreclosure data providers and FSBO (For Sale By Owner) aggregators. The site also provides school data from education.com, maps and Streetview® from Google and geolocation data from third party providers. Additionally, NeighborCity derives its own performance metrics, statistics and rankings for the roughly 1 million residential real estate agents working across the United States. The site displays data from all these sources in one place in order to give prospective buyers a comprehensive picture of the market.  Recommended buy-side agents are identified next to the displayed information on the listed home.  See website and Vahabzadeh Decl., ¶ 12.

The NeighborCity web site is essentially passive in the sense that it serves to make information available to the public but a user may not upload computer files to, and no transactions may be processed through, the site.  Vahabzadeh Decl., ¶ 10. *See,*

*e.g., ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."). As described on the web site, prospective home buyers using the site have several options how to proceed to connect with agents in their local area if they find a home listing of interest on the site:

- Option 1: To connect with a particular agent, a user may hit the "contact" button on the agent's profile. NeighborCity then contacts the agent to make sure that the agent is available. If so, the user's request is passed on to the agent and the agent is prompted to contact the user through a temporary telephone number (which expires upon the conclusion of the inquiry) assigned to forward calls to the user. If the agent is not available, this process is repeated with respect to the next most comparable agent until an available agent is located and contacted.

- Option 2: If a user is interested in a particular property but has not chosen an agent, the user may click the "Request Information" button near the property photos or "Schedule a Viewing" if appropriate, and the user's request will be routed to the best matched available agent for the property requested, and the agent is requested to follow up with the user in a similar manner as above in Option 1.

NeighborCity is compensated for its agent matching and referral services out of the local buy-side agent and broker commissions and neither the home buyer, home seller, nor the home seller's agent or broker is charged any fees. If the home purchase

is not closed by the particular agent to whom a referral is made, no compensation is collected. See website.

**B. Defendant AHRN. Inc.'s Relationships to this Lawsuit and the Forum**

Defendant AHRN, Inc. is resident in San Francisco, California where it maintains its corporate offices and does not conduct business in Maryland, as established by the facts set forth below.

Defendant AHRN, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 222 7th Street, 2nd Floor, San Francisco, California 94103. **Exhibit 2**, Vahabzadeh Decl., ¶ 5. AHRN, Inc. has been a registered California real estate broker since 2008. *Id.,* ¶ 6. AHRN, Inc. is not registered to do business in Maryland, and it conducts no business in Maryland. *Id.*, ¶ 9.

Contrary to the allegations in Plaintiff's Complaint at paragraph 10, AHRN, Inc. has no offices in Maryland, and is not registered as a Maryland real estate broker. *Id.*, ¶ 8. The Maryland Real Estate License No. 5748 referred to in paragraph 10 of Plaintiff's Complaint is issued to American Home Realty Network, LLC, a separate entity. See license information from the Maryland Department of Labor, Licensing and Regulation, copy attached as **Exhibit 3** hereto (showing that American Home Realty Network, LLC holds License No. 5748 and has an office at 849-H Quince Orchard Boulevard, Gaithersburg, Maryland). Defendant AHRN, Inc. is not a Member of American Home Realty Network, LLC, does not conduct business at that address, and does not pay for

any expenses related to the operation of that office. **Exhibit 2**, Vahabzadeh Decl., ¶ 15.[2]

Shortly after service of process was made upon AHRN, Inc., on April 10, 2012 its general counsel Christopher R. Miller wrote to Plaintiff's counsel pointing out the aforesaid erroneous basis for jurisdiction being asserted over AHRN, Inc., and that Mr. Cardella had no personal contacts with Maryland, and requested that this action be dismissed. See exchange of correspondence attached as **Exhibit 4** hereto. Plaintiff's counsel declined to dismiss this action in Maryland and Plaintiff has not amended its Complaint to correct the erroneous allegations contained in paragraph 10 thereof.

Further, Defendant AHRN, Inc. has (1) never maintained any offices or facilities in the State of Maryland, **Exhibit 2**, Vahabzadeh Decl., ¶ 8; (2) never had any telephone listings in Maryland, *id.*, ¶ 18; (3) never had any interest in, used or owned real or personal property, including bank accounts, in the State of Maryland, *id.*, ¶ 19; (4) never advertised through any print or electronic medium targeted specifically into the State of Maryland, *id.*, ¶ 20; (5) never had employees or agents located in the State of Maryland, *id.*, ¶ 17; and (6) never had staff or representatives travel to Maryland to conduct business, *id.*, ¶ 21.

Only 2.58 percent of the total listings (active and closed) on the NeighborCity web site are for properties located in Maryland. Vahabzadeh Decl., ¶ 14. Defendant AHRN Inc.'s referrals to local Maryland real estate brokers have also been minimal. Since inception, only 2.05 percent of referral agreements have been with Maryland

[2] The statements in Plaintiff's Complaint Exhibits A-1, A-2, A-3, A-4, A-5 and A-6 that may be read to imply that Defendant AHRN has a headquarters in Gaithersburg, Maryland are erroneous and were removed from the NeighborCity web site as soon as Defendant AHRN's management became aware of them. Vahabzadeh Decl., ¶ 16.

brokers.  *Id.*  During calendar 2011, AHRN. Inc. received four (4) referral fees amounting to a total of $5,257.50 from Maryland-based real estate brokers, amounting to 2.4 percent of AHRN, Inc.'s total revenue in that year.  To date in 2012, AHRN. Inc. has received two (2) referral fees amounting to $6,195.00 from Maryland-based real estate brokers, amounting to 2.4 percent of total AHRN, Inc. revenue for the period.  *Id.*, ¶ 13.

## II.    RULE 12(b)(6) MOTION TO DISMISS CLAIMS OF COPYRIGHT INFRINGEMENT OF INDIVIDUAL ELEMENTS, INCLUDING PHOTOGRAPHS, IN THE MRIS DATABASE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendants move to dismiss Plaintiff's claims for copyright infringement of the individual elements, including individual photographs, which Plaintiff alleges are contained within its MRIS Database.  The grounds for the motion are that in violation of the Copyright Act, Plaintiff's compilation copyright registration for its MRIS Database does not identify the individual elements, including photographs, or the person or persons who created them.

### A.    Legal Standards

#### 1.    Rule 12(b)(6) Motion

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).  In considering such a motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Id.*, 178 F.3d at 244.  A plaintiff's obligation to provide the ground of his entitlement to relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must

sufficiently allege facts to allow the Court to infer that all elements of each of its causes of action exist. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344-46 (4th Cir. 2006), *reh'g en banc denied*, 467 F. 3d 378 (4th Cir. 2006), *cert. denied,* 549 U.S. 1362 (2007).

If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R.Civ. P. 56(d).   However, a court may consider a document relied on by the plaintiff in its complaint without converting the motion to one for summary judgment. *New Beckley v. Min. Corp. v. Intern. Union, United Mine Workers of Am.*, 18 F. 3d 1161, 1164 (4th Cir. 1994), *citing Cortec Indus. v. Sum Holding, L. P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (adoption by reference;  FRCP 10(c)). *See also International Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F. 3d 69, 72 (2d Cir. 1995)

In deciding the defendant's motion to dismiss, the court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000)(internal citations omitted) ; *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (same).

If the motion is converted to one for summary judgment, then the standards of FRCP 56 apply.  On a motion for summary judgment, the court must view the facts, and the inferences to be drawn in light of those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985).  Summary judgment is proper where there is no genuine issue as to any

material fact, and the moving party is entitled to judgment as a matter of law. FRCP 56(a). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, (1986).

**2. Federal Copyright Law**

To establish copyright infringement, a plaintiff must prove that (1) it owns a valid copyright and (2) the defendant engaged in unauthorized access and copying. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Keeler Brass Co. v. Continental Brass Co.*, 862 F.2d 1063, 1065 (4th Cir. 1988).

Subject to certain exceptions, the Copyright Act requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010). In particular, Section 411(a) of the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration of registration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a).

An applicant for a United States copyright may seek to obtain copyright protection for any "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. An applicant may also seek to obtain copyright protection for a "compilation or derivative work." 17 U.S.C. § 103. A compilation, as defined in 17 U.S.C. § 101, is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged is such a way that the resulting work as a whole constitutes an original work of authorship." Although

"automated databases" are not defined in the Copyright Act, the Copyright Office's Circular 65 considers databases a form of compilation, and registration procedures for automated databases are governed by Circular 65 and 37 C.F.R. § 202.3(b)(5). *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ. Co.*, 712 F. Supp. 2d 84, 93-94 & n.7 (S.D.N.Y. 2010).

Unlike Circular 62 governing registration of single serial issues, e.g., a periodical containing a number of independent contributions, Circular 65 contains no language providing that the copyright of an automated database extends to the independently contributed works contained in the database, if all the rights therein have been transferred to the claimant.[3] Instead, the controlling language for a database is found in 17 U.S.C. § 103(b), which states "copyright in a compilation … extends only to the material contributed by the author."

Section 409 of the Copyright Act provides that to register a copyright, an application must be made on the Register of Copyrights' prescribed form, including among other information, the name of the author of the work being registered and the title of the work. 17 U.S.C. § 409(2) and (6). This requirement also applies to registrations for automated databases. The failure of a database registrant to provide the names of all authors of independent works contained in the database limits the registration, and the scope of any infringement suit, to the database as a whole, i.e., the compilation, and does not cover the individual works contained therein. *See Muench Photography*, 712 F. Supp. 2d at 95; *see also Alaska Stock, LLC v. Houghton Mifflin*

[3] Circular 62 (8/2011) states on page 2: "The claimant registering a serial may claim copyright not only in the collective-work authorship for which the claimant is responsible, but also in any independently authored contributions in which all rights have been transferred to the claimant by the contributors."

*Harcourt Publ. Co.*, 2010 U.S. LEXIS 108041, at *11-12 (D. Alaska 2010) (same); *Bean v. Houghton Mifflin Harcourt Publ. Co.*, 2010 U.S. Dist. LEXIS 83676, at *6-7 (D. Ariz. 2010) (same). This question appears to be one of first impression in the Fourth Circuit, but the three courts cited above, including the influential U.S. District Court for the Southern District of New York, that have recently considered this issue reached the same holding.

**B. Argument**

In the suit at bar, Plaintiff MRIS alleges that Defendants have infringed its registered copyrights in the MRIS Database, which it alleges it has registered with the U.S. Copyright Office "under the registration procedures applicable to automated databases," i.e. those stated in Circular 65 and 37 C.F.R. § 202.3(b)(5). Complaint, ¶ 17. Further Plaintiff seeks to enforce copyrights not just on its Database as a compilation, but also to enforce alleged copyrights on individual elements, including photographs, contained in its Database. See Complaint, ¶ 17 (registered copyrights "extend to expressive contributions created by or acquired by MRIS, including the photographs included in the listings.")

Plaintiffs' registration certificates, see **Exhibit 1** hereto, do not identify the names of any of the authors or titles of individual elements, including photographs, in their registered Database. Instead, they refer only to "text and photographs." Plaintiff's failure to identify names of creators and titles of individual works as required by 17 U.S.C. § 409(2) and (6) limits the registration to the Database as a whole (the compilation), and the registration does not extend to the individual elements in the

Database. See *Muench Photography*, 712 F. Supp. 2d at 95; *Alaska Stock,* 2010 U.S. LEXIS 108041 at *11-12; *Bean,* 2010 U.S. Dist. LEXIS 83676 at *6-7.

Therefore, Plaintiff lacks an effective registration in the individual elements in its Database, and its claims subject to proof in this action must be limited to enforcing the compilation copyright on the Database. Its claims seeking to enforce copyrights on the individual elements, including photographs, in the Database must be dismissed.

## III. RULE 12(b)(2) MOTION TO DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION OVER BOTH DEFENDANTS

Defendant shows below that under applicable legal standards, this Court lacks personal jurisdiction over Defendant AHRN, Inc. Moreover, Defendant AHRN, Inc. adopts, relies upon and incorporates herein by reference the arguments, statements of fact and citations of legal authorities contained in Memorandum in Support of Defendant Cardella's Rule 12(b) Motion to Dismiss (hereinafter, Defendant Cardella's Memorandum") which show there in no personal jurisdiction over Defendant Cardella in this Court.

### A. Legal Standards

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving grounds for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). This requires the plaintiff to produce competent evidence to sustain jurisdiction. *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 235 (D. Md. 1992). If the court is deciding the issue without a hearing, the plaintiff is only required to make a *prima facie* showing of jurisdiction. *Mylan,* 2 F.3d at 60. In considering "all relevant pleading allegations in the light most favorable to the plaintiff," the court must draw all "reasonable inferences" from

the proof offered by the parties in the plaintiff's favor. *Id.* at 60-62.  The court is "not required . . . to look solely to the plaintiff's proof in drawing [all reasonable inferences in the plaintiff's favor]," and may also look at defendant's assertions and proffered proof regarding defendant's lack of contacts with the forum. *Mylan*, 2 F.3d at 62.

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003), *citing ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). Thus, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Id.*, *citing Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); see also *Mackey v. Compass Marketing*, 892 A.2d 479, 486 (Md. 2006).  Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution. *Id.*, *citing Mohamed v. Michael*, 279 Md. 653, 370 A.2d 551, 553 (Md. 1977). Thus, the statutory inquiry merges with the constitutional inquiry. *Id.*, *citing Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996).[4]

---

[4]  Maryland's long-arm statute reads:  (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.  (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:  (1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply goods, food, services, or manufactured products in the State; (3) Causes tortious injury in the State by an act or omission in the State; (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives

The Court of Appeals of Maryland recently clarified that "[d]etermination of personal jurisdiction is a two-step process. First, the requirements under the long-arm statute must be satisfied, and second, the exercise of personal jurisdiction must comport with due process." *Mackey*, 892 A.2d at 486; *see also id.* at 493 n. 6 (explaining that the court's prior statements that "our statutory inquiry merges with our constitutional examination" does not "mean . . . that it is now permissible to simply dispense with analysis under the long-arm statute."). Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction." *Ottenheimer Publishers, Inc., v. Playmore Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Although it is preferable for a plaintiff to identify the statute authorizing jurisdiction in its complaint, a plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss. *Johansson Corp v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n. 1 (D. Md. 2004).

Due process permits a federal court's jurisdiction over a nonresident defendant where the defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); see also *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 807 (D. Md. 2004). The Fourth Circuit has

---

substantial revenue from goods, food, services, or manufactured products used or consumed in the State; (5) has an interest in, uses, or possesses real property in the State; or (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.  (c) (1)(i) In this subsection the following terms have the meanings indicated.  (ii) "Computer information" has the meaning stated in § 22-102 of the Commercial Law Article. (iii) "Computer program" has the meaning stated in § 22-102 of the Commercial Law Article. (2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.  Md. Code Ann., Cts. & Jud. Proc. § 6-103.

clarified that "due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." *Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 353 (D. Md. 1997) (citation omitted).

Two categories of personal jurisdiction have been recognized by the courts: general jurisdiction and specific jurisdiction. See, e.g., *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2848-49 (2011). If the defendant's contacts with the forum state are "continuous and systematic," the district court has general jurisdiction over the non-forum defendant. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-416 (1984); *Carefirst,* 334 F.3d at 397 *citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105, (2003); *Helicopteros*, 466 U.S. at 414 & n.9.

Where the non-resident defendant's contacts are not sufficient to establish "general jurisdiction," to avoid a dismissal on a Rule 12(b)(2) motion, the plaintiff must establish the existence of "specific jurisdiction" by demonstrating that: (1) the non-forum defendant purposely directed its activities toward residents of the forum state or purposefully availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, i.e., is consistent with "fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316; *see also Ritz Camera*, 982 F. Supp. at 353 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-478 (1985)). *Carefirst*, 334 F.3d at 397 *citing ALS Scan*, 293 F.3d at 711-12,; *Helicopteros,* 466 U.S. at 414 & n.8.

Extending these criteria to take into account the "ubiquitous" nature of the internet, the Fourth Circuit in *ALS Scan* "adopt[ed] and adapted" the "sliding scale" standard for internet-based specific jurisdiction over non-resident defendants articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *ALS Scan*, 293 F. 3d at 713. *ALS Scan* further elaborated the jurisdictional test from *Zippo* in a three-prong approach that only justifies jurisdiction where the non-resident defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.*, at 714.

**B.    Argument**

As shown below, this Court lacks personal jurisdiction on due process grounds over Defendant AHRN, Inc.  Contrary to the preferred practice in this Court (*Johansson Corp v. Bowness Constr. Co.*, 304 F. Supp. 2d at 704 n. 1 (D. Md. 2004); *Ottenheimer Publishers, Inc., v. Playmore Inc.*, 158 F. Supp. 2d at 652, Plaintiff does not indicate in its Complaint under which section of the Maryland long-arm statute it asserts that there is jurisdiction over the Defendants.  As Plaintiff bears the burden of proving grounds for personal jurisdiction, Defendants reserve their arguments until Plaintiff comes forward with their case that there is jurisdiction under one or more sections of the long-arm statute.

**1.    The Standards For General Jurisdiction Are Not Met**

AHRN, Inc. lacks the "continuous and systematic" contacts with the forum to be subject to general personal jurisdiction for all purposes in this Court.  The Fourth Circuit

Court of Appeals has found defendants to lack continuous and systematic contacts with the forum state when their contacts were far more substantial than AHRN, Inc's contacts with Maryland here. For example, in *EASB Group, Inc. v. Centricut, Inc.*, 126 F.3d. 617 (4th Cir. 1997), the Fourth Circuit held that there was no general jurisdiction over a defendant on when the defendant had 26 mail order customers residing in the forum state but defendant maintained no sales representatives or other agents in the forum state. 126 F.3d at 624. Defendant AHRN, Inc. received referral fees from only six Maryland brokers during 2011-12. See **Exhibit 2**, Vahabzadeh Decl., ¶ 13.

In *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971), the Fourth Circuit held that where a defendant does no more than advertise and employ salesmen in a forum state, such contacts are not sufficient to justify general jurisdiction. In *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir.1984), the Fourth Circuit found no general jurisdiction based on a Georgia hospital's substantial contacts with the forum state. These contacts included receiving one-fifth of its revenue from treating patients, maintaining a listing in a phone directory, and providing laundry services to a county hospital, in the forum state. *Id.* at 910-11. As stated above, AHRN, Inc. does not advertise or employ sales representatives in Maryland and lacks other such substantial contacts with Maryland.

In *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir.1993) the Court held that a court in Maryland could not assert general jurisdiction over a defendant company that employed 13 Maryland residents as sales representatives and one Maryland resident as a district manager; and held district meetings three times annually in Maryland, held regional and national meetings twice annually, and had between $9 million and $13

million annual sales in Maryland, constituting two percent of its total sales. As stated above, AHRN, Inc.'s contacts with Maryland are far less substantial than those of the defendant in the *Nichols* case. For example, AHRN, Inc's referral fees from Maryland-brokers totaled $5,257.50 or 2.4 percent of revenue in 2011; and $6,195.00, or 2.4 percent of revenue thus far in 2012; and AHRN, Inc. has no physical presence in Maryland. See Exhibit 2, Vahabzadeh Decl., ¶ 13.

**2. The Standards For Specific Jurisdiction Are Not Met**

As general jurisdiction cannot be shown over the Defendant AHRN, Inc. in Maryland, to prove personal jurisdiction over AHRN, Inc. Plaintiff must establish the existence of "specific jurisdiction." This requires a demonstration that: (1) AHRN, Inc. purposely directed its activities toward residents of Maryland or purposefully availed itself of the privilege of conducting activities therein; (2) Plaintiff's cause of action arises out of or results from AHRN, Inc.'s Maryland-related contacts; and (3) this Court's exercise of personal jurisdiction in the case is reasonable, i.e., is consistent with "fair play and substantial justice." The contacts related to the cause of action must create a "substantial connection" with the forum state, see *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223 (1957); see also Section III. A., *infra* and the cases cited therein.

Although Plaintiff has not indicated under which section of the Maryland long-arm statute specific jurisdiction may arise, its Complaint appears to identify three categories of allegedly jurisdictionally relevant contacts with Maryland. The first is the NeighborCity web site on which allegedly infringing material appears and which may be accessed in Maryland. Complaint, ¶¶ 26-27. The second is referrals made to Maryland local brokers or agents. *Id.*, ¶¶ 6, 26, 27. The third is the harm allegedly caused in

Maryland by the allegedly infringing materials on the NeighborCity web site. *Id.*, ¶¶ 6. As shown he below, none of these, either singularly or in combination, constitute the "substantial connection" with Maryland sufficient for specific jurisdiction.

**a. The NeighborCity Web Site Is Not A Basis For Specific Jurisdiction Over AHRN, Inc.**

Plaintiff alleges that material placed on the NeighborCity web site infringe their copyrights. *See, e.g.,* Complaint, ¶¶ 26-27. However, that essentially passive web site does "little more" than make information available to those who might be interested, and therefore, cannot be the basis for personal jurisdiction. *See, e.g., ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.").

Moreover, the web site is targeted to a national audience and not specifically directed at Maryland residents, and thus, cannot be said to constitute a means by which AHRN, Inc. "purposely availed" itself of the privilege of conducting activities in Maryland. *See ESAB Group,* 126 F.3d at 625-26 (holding that company's sales activities "focusing generally on customers located throughout the United States and Canada without focusing on and targeting" forum state do not yield personal jurisdiction). In addition to the national character of the web site, its focus on Maryland is small relative to the size of the national market. Currently only 2.58 percent of all real estate listings appearing on the site (active and closed) are for properties located in Maryland. See **Exhibit 2**, Vahabzadeh Decl., ¶ 14. Further, the exercise of personal jurisdiction over AHRN, Inc. based on the NeighborCity website would not be reasonable because AHRN, Inc.

"could not [on the basis of its Internet activities] have 'reasonably anticipate[d] being haled into [a Maryland] court.'" *Carefirst*, 334 F.3d at 401 (citations omitted).

**b. The Referrals Made To Maryland-Based Local Agents Are Not A Basis of Specific Jurisdiction**

Plaintiff alleges jurisdiction on the basis of AHRN, Inc.'s referrals to Maryland-based brokers. For several reasons this allegation must fail. First, the referrals are part of a general national program and are not specifically targeted to Maryland. Therefore, they cannot be said to be a means of AHRN, Inc.'s purposefully directing its overtures toward residents of Maryland or purposefully availing itself of the privilege of conducting activities therein.

Second, the contracts with and referrals to Maryland brokers are a small fraction of NeighborCity's total nation-wide activity. See **Exhibit 2**, Vahabzadeh Decl., ¶¶ 13-14 (since inception, only 2.05 percent of referral agreements have been with Maryland brokers; and revenue from Maryland referrals during 2011 and 2012 has been only 2.4 percent of total revenue). Such limited activity does not constitute a "substantial connection" with Maryland. Third, the causes of action alleged in Plaintiff's Complaint do not "arise out of, or result from," these referral contracts and fees, as they would if there were a contract dispute between AHRN, Inc. and a Maryland broker. It is undisputed that the alleged copyright infringement implicates only the NeighborCity web site, and the causal acts related thereto occurred in California, not in Maryland.

Finally, exercise of personal jurisdiction over AHRN, Inc. would be unreasonable because AHRN, Inc. could not reasonably anticipate, based on its national referral program, to be haled into a Maryland court. Courts have not hesitated to dismiss cases where the defendant's contacts with Maryland were limited in quantity and magnitude,

and plaintiff's cause of action did not arise from them. *See, e.g., All Carrier Worldwide Services, Inc. v. United Network Equip. Dealer Assoc.,* 812 F.Supp. 2d 676, 684 (D. Md. 2011)*; Gallman v. Sovereign Equity Group, Inc.,* 2012 U.S. Dist. LEXIS 38232, at *11-13 (D. Md. Mar. 20, 2012).

#### c. Plaintiff's Allegation Of Harm Caused In Maryland By Actions Taken Outside Of Maryland Is Not Sufficient For Specific Jurisdiction Over AHRN, Inc.

Although the locus of alleged harm to Plaintiff may be relevant to the jurisdictional inquiry, "it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Group*, 126 F.3d at 626; *see also ALS Scan,* 293 F.3d at 714. Plaintiffs must show not only that the harm occurred in Maryland, but that Defendants "regularly do[] or solicit[] business, engage[] in any other persistent course of conduct" in Maryland or "derive[] substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts. & Jud. Proc., § 6-103(b)(4). *Gallman,* 2012 U.S. Dist. LEXIS 38232 at *15. Such contacts are lacking here. See Section III. B. 2. a., *infra*, on General Jurisdiction.

## IV. RULE 12(b)(3) MOTION TO DISMISS FOR IMPROPER VENUE

As shown below venue is improper in this District.

### A. Legal Standards

The pertinent federal statute, 28 U.S.C. § 1391(b), provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

> of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

If venue is not established, the district court should dismiss the case; alternatively, if the court finds it is in the interest of justice, it may transfer the case to a district in which the suit could have been brought. 28 U.S.C. § 1406(a).

To establish venue under 28 U.S.C. § 1391(b)(1), a plaintiff must show that the defendants are subject to personal jurisdiction in this Court.[5] 28 U.S.C. § 1391(b)-(c). For venue under 28 U.S.C. § 1391(b)(2), the plaintiff may rely on "the entire sequence of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (*quoting Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)). Under the third prong, a plaintiff must show that defendant is "found" within the district. Typically, for a corporation sued in a district where it does not have an office, this "require[s] that it be present in the district by its officers and agents carrying on the business of the corporation, this being the only way in which it could be said to be found within the district." *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.,* 273 U.S. 359, 371 (1927) (interpreting "found" in similar language for venue purposes under the Anti-Trust Act) (citations omitted and internal quotation marks removed).

**B. Argument**

As discussed *supra* in Section II, Defendants are not subject to personal jurisdiction in this Judicial District, thus, they do not reside in Maryland for purposes of 28 U.S.C. § 1391(b)(1).

---

[5] As Plaintiff alleges venue under 28 U.S.C. § 1391(c), see Complaint, ¶ 7, Defendant assumes it is seeking the first prong of 28 U.S.C. § 1391(b), asserting that Defendant "resides" in Maryland.

There is no evidence or allegation that "a substantial part of the events or omissions giving rise to the claim" occurred in Maryland, thus venue does not lie under 28 U.S.C. § 1391(b)(2).  Plaintiff's Complaint alleges that Defendants have infringed its copyrights through the NeighborCity web site and does not allege that events or omissions giving rise to its infringement claims occurred in Maryland.  There simply is no connection between Maryland and the events giving rise to the claims.

Finally, the third prong of 28 U.S.C. § 1391(b) is also not satisfied.  Defendant has no offices, employees, or agents in Maryland.  See **Exhibit 2,** Vahabzadeh Decl., ¶¶ 8, 9, 17, Defendant cannot be "found" in Maryland.  Thus, Plaintiff has not made out even a *prima facie* case for venue.  Because venue is improper, the case should be dismissed pursuant to 28 U.S.C. § 1406.

## V. CONCLUSION

Therefore, for the reasons set forth above, this action should be dismissed in whole or in part.

Respectfully submitted,

FARKAS+TOIKKA, LLP

*/S/ Richard S. Toikka*

Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)

*Counsel for Defendants American Home Realty Network, Inc. and Jonathan J. Cardella*

Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California 94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

**CERTIFICATE OF SERVICE**

I, Richard S. Toikka, herby certify that on this the 11th of May, 2012, a copy of the foregoing Memorandum was served by electronic means using the Court's CM/ECF system upon:

John T. Westermeier, Esquire
Margaret A. Esquenet, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*/S/ Richard S. Toikka*
Richard S. Toikka