**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

_____

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Civil Action No. 12-cv-954** ) ) |
| **AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,** | ) ) ) |
| **Defendants,** | ) ) |

_____ )

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Richard S. Toikka, Fed. Bar No. 13543
L. Peter Farkas (pro hac vice)
FARKAS+TOIKKA, LLP
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7802 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)

Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General
Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

*Counsel for Defendants American Home
Realty Network, Inc. and Jonathan J.
Cardella*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I. INTRODUCTION ......................................................................................... 1

II. STANDARD OF REVIEW ............................................................................ 3

III. STATEMENT OF FACTS ............................................................................ 3

   A. INDUSTRY BACKGROUND ...................................................................... 3

   B. DEFENDANT AHRN, INC. ......................................................................... 4

   C. PLAINTIFF MRIS ...................................................................................... 7

   D. BACKSTORY OF THIS LITIGATON ......................................................... 9

IV. ARGUMENT ............................................................................................. 11

   A. MRIS CANNOT SUCCEED ON THE MERITS ......................................... 11

      1.  A Substantial Question Exists Whether The Underlying Text is
         Copyrightable ...................................................................................... 12

         a. Catalogs Are Less Copyrightable ....................................................... 12

         b. MRIS's Catalog Databases Are Not Copyrightable, ........................... 13

         As They Lack Originality ...................................................................... 13

      2.  MRIS's Purported Registrations of Text and Photographs Are
         Invalid For Failure To Identify Any Author and Photographer ............... 15

      3.  MRIS Has Not Established Infringement of Its Database ...................... 17

   B. MRIS HAS FAILED TO ESTABLISH IRREPARABLE INJURY ................. 19

   C. THE BALANCE OF EQUITIES FAVORS AHRN, INC. ............................. 21

   D. THE PUBLIC INTEREST IS BEST SERVED BY COMPETITION ............. 22

   E. AHRN, INC.'S DEFENSE OF COPYRIGHT MISUSE ............................... 23

V. CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ. Co.*, 2010 U.S. Dist. LEXIS 108041, at *1 (D. Alaska Sep. 21, 2010) ............................................... 16

*Apple Computer Inc. v. Franklin Computer Corp.*, 714 F. 2d 1240 (3d Cir. 1983) ................................................................................................. 22

*Bean v. Houghton Mifflin Harcourt Publ. Co.*, 2010 U.S. Dist. LEXIS 83676, at *1 (D. Ariz. Aug. 10, 2010) ........................................................................ 16

*Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, (2d Cir. 1987) ... 14

*Direx Israel, Ltd.v. Breakthrough Med. Corp.*, 952 F.2d 802 (4th Cir. 1991). ........ 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (U.S. 1991) .................... ..................................................................................................... 13, 14, 18, 22

*Franklin Mach. Prods. v. Heritage Food Serv. Equip, Inc.,* 2007 U.S. Dist. LEXIS 89666 at *1 (N.D. Ind. Dec. 5, 2007) .................................................... 12

*Franklin Mach. Prods. v. Heritage Food Serv. Equip, Inc.,* 2008 U.S. Dist. LEXIS 18989 at *1 (N.D. Ind. Mar. 11, 2008) .................................................. 12

*Haslett v. Hasselbeck,* 757 F. Supp. 2d 73 (D. Mass. 2010) ............................... 18

*Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063 (4th Cir. 1988). ................ 11

*Lasercomb America, Inc. v. Job Reynolds,* 911 F.2d 970 (4th Cir. 1990). ...... 23, 24

*Matthew Bender & Co. v. West Publishing Co.* 158 F.3d 674 (2d Cir. 1998). ...... 13

*Microstrategy Inc. v. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001) ........................ 3

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.,* 712 F. Supp. 2d 84 (S.D.N.Y. 2010) ......................................................... 15, 16

*Nautical Solutions Mktg. v. Boats.com,* 2004 U.S. Dist. LEXIS 6304, at *1 (M.D. Fla. Apr. 1, 2004) ...................................................................... 14, 15

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes,* 2003 U.S. Dist. LEXIS 16737, at *1 (N.D. Ill. Sep. 24, 2003) ...................................................... 24

*Real Truth about Obama, Inc. v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009). ....................................................................................... 3

*Realcomp II, Ltd. v. FTC*, 635 F.3d 815 (6th Cir. 2011) ....................................... 23

*Regional Multiple Listing Service of Minnesota, Inc., d/b/a NorthstarMLS v. American Home Realty Network, Inc.*, 0:12cv965 (D. Minn). ...........................11

*Richmond Homes Mgt, Inc. v. Raintree, Inc*, 1995 U.S. App. LEXIS 26452, at *1 (4th Cir. Sep. 18, 1995). .........................................................15, 16

*Robertson v. Sea Pines Real Estate,* 2012 U.S. App. LEXIS 9694, at *1 (4th Cir. S.C., May 14, 2012). ...........................................................................23

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488 (4th Cir. 1996). ............................................................................14

*U.S. v. National Association of Realtors* ("*NAR*"), 05cv5140 (N.D. Ill. 2005).........3

*Universal Furniture Intl., Inc. v. Collezione Europa USA, Inc.*, 2006 U.S. App. LEXIS 22212 at *1 (4th Cir. Aug. 29, 2006) (unpublished) ..........11, 13, 20

*Warth v. Sedin*, 422 U.S. 490 (1975) ..................................................................20

*Wereldhave USA-San Antonio, L.P. v. Peter Fillat Architects, Inc.*, 2010 U.S. Dist. LEXIS 7660, at *1 (D. Md. Jan. 29, 2010). ................................................3

*Woods v. Universal City Studios, Inc.,* 920 F. Supp. 62 (S.D.N.Y.1996), ............16

*Yankee Candle Co. v. Bridgewater Candle*, LLC, 259 F.3d 25 (1st Cir. 2001). ...18

**Statutes**

15 U.S.C. §1 ......................................................................................................3
17 U.S.C. § 101 ............................................................................................7, 13
17 U.S.C. § 103(b) ......................................................................................12, 15

**Other Authorities**

Copyright Office's Circular 65 ..............................................................................7

**Regulations**

37 C.F.R. § 202.3(b)(5) ......................................................................................7

## I. INTRODUCTION

Defendants American Home Realty Network, Inc. ("AHRN, Inc.") and Jonathan J. Cardella ("Cardella") hereby oppose Plaintiff Metropolitan Regional Information Systems, Inc.'s ("MRIS") Motion for Preliminary Injunction. Although MRIS's Complaint contains several counts, MRIS's motion seeks preliminary relief exclusively on MRIS's claims of "copyright infringement." Memorandum in Support of Plaintiff's Motion for Preliminary Injunction (cited as "MRIS Brief"). MRIS Brief at 1.

In its Brief, MRIS asserts it has seven registered compilation copyrights containing real estate listing information and photographs. Its Complaint refers to three additional registrations. MRIS's database is unpublished and none of the underlying text and photographs is registered as a copyright by MRIS. *See* Copyright Registrations attached as Exhibit 1.

MRIS's motion should be denied because it has shown no urgency in bringing this case. AHRN, Inc.'s web site on which the allegedly infringing materials appeared has been online since August of 2007. Declaration of AHRN, Inc.'s CEO Jonathan J. Cardella ("5/18/12 Cardella Decl."), Exhibit 2, ¶ 5. As one of the largest multiple listing services in the country and an industry leader, MRIS likely knew about AHRN, Inc.'s activities for some time before it sent AHRN, Inc. a cease-and-desist letter on November 18, 2011, but did not file this case until March 28, 2012. MRIS's dilatory tactics require denial of the motion.

Apart from its being dilatory bringing suit and filing its motion, the Court should deny MRIS's motion additionally for the following reasons:

First, MRIS has not shown any likelihood that it will prevail on the merits of its copyright claim because:

(1)   MRIS has failed to established valid or enforceable copyright; the underlying content of MRIS's Database is not protectable, as it is composed of factual information, which is not eligible for copyright; and

(2) MRIS has failed to establish copyright infringement, as it has not compared (or even disclosed), the "selection, coordination and arrangement" of its Database to the actual organization or arrangement of AHRN, Inc.'s database. Instead, it erroneously compares the content of its database with screen shots of content of AHRN's *website*.

Second, MRIS has failed to present evidence of irreparable injury; adopted a discredited "sweat of the brow" theory of harm; and alleged injury to third parties which is irrelevant in the preliminary injunction context.

Third, the failure of MRIS's irreparable injury allegations, and MRIS's and its allies' concerted effort to flood AHRN, Inc. with cease-and-desist letters and law suits to destroy AHRN, Inc., tips the balance of equities decidedly in AHRN, Inc.'s favor.

Fourth, the public interest is best served by innovation and competition, not by violations of the 2008 consent decree in the government's antitrust suit against the National Association of Realtors.

Fifth, proof of MRIS's attempt to suppress and destroy AHRN, Inc. through concerted action establishes a credible defense of copyright misuse.

## II.  STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Microstrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) quoting *Direx Israel, Ltd.v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991).  "Under the new standard for preliminary injunctions, the plaintiff must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Wereldhave USA-San Antonio, L.P. v. Peter Fillat Architects, Inc.*, 2010 U.S. Dist. LEXIS 7660, at *6 (D. Md. Jan. 29, 2010), *quoting Real Truth about Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009).  The Fourth Circuit [in *Real Truth*], "emphasized that this standard is more stringent than the prior standard and that plaintiffs must clearly show that they are likely to succeed on the merits and to suffer from irreparable harm before such an extraordinary relief for an injunction may be awarded." *Id.*

## III.  STATEMENT OF FACTS

### A.  INDUSTRY BACKGROUND

In 2005, the Antitrust Division of the U.S. Department of Justice sued the National Association of Realtors ("NAR") for violations Section 1 of the Sherman Act, 15 U.S.C. §1 (2004), arising out of discriminatory policies of multiple listing services and brokers encouraged and implemented through the NAR. Complaint in *U.S. v. National Association of Realtors* ("*NAR*"), 05cv5140 (N.D. Ill. 2005),

attached as Exhibit 3.  The complaint in that case demonstrates that the public interest lies with competition, noting that "[b]y virtue of industry-wide participation and control over a critically important input, MLS joint ventures have market power in almost every relevant market."  *Id.* ¶23.  The Division recognized that brokers with innovative, Internet-based business models present a competitive challenge to brokers who provide listings to their customers only by traditional methods.  *Id.* ¶ 29.

On November 18, 2008, the Department of Justice entered a consent decree with the NAR, settling the Complaint with a Final Judgment by imposing certain prohibitions on the real estate industry.  Consent Decree attached as Exhibit 4.  NAR accepted prohibitions imposed upon it against promulgating and enforcing any rule that:

- Prohibits, restricts, or impedes access to, or discriminates against a web-based broker who provides to its customers all of the listing information that is permitted under traditional methods; mail, fax, etc.;  Exhibit 4, Prohibition A, B at 5;

- Prohibits, restricts, or impedes the referral of customers whose identities are obtained from a website by a web-based broker to any other person, or establishes the price of any such referral; *id.* Prohibition C;

- Imposes fees or costs upon any broker who operates a website or upon any person operating a website for a broker that charges fees in excess of the reasonably estimated actual costs incurred by a multi list board in providing listing information to the broker OR discriminates in fees or costs charged to a broker versus a person operating a website for a broker, *id.* Prohibition D.

## B. DEFENDANT AHRN, INC.

Defendant AHRN, Inc. is a small, innovative California real estate brokerage which has developed a novel system of software and database

applications that work together to facilitate real estate transactions between buyers and sellers represented by real estate agents and brokers. Defendant has applied this technology to objectively rate and rank real estate agents and to identify them to prospective home buyers and sellers, based on their specific requirements, through its web site: www.NeighborCity.com.   5/18/12 Cardella Decl., ¶ 4.   This technological advancement was motivated by the lack of comparable services then, and still, available on the market due to the industry-wide "black out" of information rating real estate agents' specific market activities and professional performance.  *Id.*, ¶ 5.  Other brokerage websites feature their own agents or agents with whom they have cooperative referral agreements. None rate, rank or even identify all the Realtors in an area.  Some popular real estate portal sites only suggest real estate agents who pay to be featured next to properties within a designated geographic area.  These sites derive their ratings directly from feedback scores submitted by customers specifically invited by the agent who may then cherry-pick the results incorporated in their performance ratings. *Id.*

To fill the gap, AHRN, Inc. put all the real estate listings, foreclosure and for sale by owner listings in the markets it serves in a database underlying its NeighborCity site. AHRN created technology that continuously scores, ranks and rates agents based on their transaction and listing history. *Id.*, ¶ 6.  Specifically, it assesses how well agents perform in selling their clients' homes relative to their nearest competitors, as determined by a comparison to a proprietary "peer index".  AHRN, Inc. also created "AgentMatch" technology that uses its ranking

and rating data with interested buyers of a seller's property to match those buyers with specialized and qualified local real estate agents. AgentMatch quickly routes interested buyers and sellers searching major search engines such as Google, Yahoo! and Bing for highly specific information to local agents to make introductions and schedule property viewings; coordinates their communications; and allows AHRN, Inc. to monitor these interactions to improve the level of service generally available to the public. *Id.*

AHRN, Inc.'s business model and its NeighborCity website offer unique online real estate services. *Id.*, ¶ 7. Unlike other websites, NeighborCity.com lists buy-side real estate agent recommendations for virtually every property and allows its users to contact those agents without releasing their personal contact information until they are ready to do so. *Id.*

The data displayed on the NeighborCity web site originates from multiple sources: brokers and agents, county tax assessor's offices and related public records, foreclosure data providers and from For Sale By Owner aggregators. *Id.*, ¶ 8. None of the sources involve access to the MRIS Database. NeighborCity also provides school data from education.com, maps and Streetview® from Google and geolocation data from third party providers. NeighborCity further derives and publishes unique professional profiles incorporating the performance metrics, statistics and rankings for each of the roughly one million residential real estate agents in the US derived from the real estate data that it aggregates. The key feature that shows buy-side agents next to listed properties assists buyers in locating exclusive brokerage representation. This enables buyers to avoid the

inherent conflict of interest involved in working with an agent and brokerage that brokers both the buy side and sell side of a given real estate sales transaction. *Id.*

AHRN, Inc. provides services to the public free of charge. *Id.*, ¶ 9.  It is typically compensated for its agent matching and referral services out of the local buy-side agent and broker commissions, except when making referrals that result in listing agreements, in which case AHRN, Inc. is compensated by the listing brokerage.  Neither the home-buyer, home seller, nor the home seller's agent or broker is charged any fees except in the case of a listing referral as mentioned. If the home purchase is not closed by the particular agent to whom a referral is made, no compensation is collected.  *Id.*

### C.   PLAINTIFF MRIS

MRIS is one of the largest regional real estate multiple listing services in the United States. See Complaint, ¶ 13; MRIS Brief, 1.  It serves real estate brokers and agent subscribers and other authorized subscribers in Maryland, Virginia and the District of Columbia and also in parts of Delaware, West Virginia and Pennsylvania.  MRIS Brief, 1.   MRIS maintains a database of real estate listing information ("MRIS Database") that it alleges it has registered with the U.S. Copyright Office under procedures applicable to automated databases. Complaint, ¶¶ 17-18; MRIS Brief, 4-5. Although "automated databases" are not defined in the Copyright Act, the Copyright Office's Circular 65 considers databases a form of compilation, and registration procedures for automated databases are governed by Circular 65 and 37 C.F.R. § 202.3(b)(5). A

compilation, as defined in 17 U.S.C. § 101 (2010), is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."

MRIS claims not only rights in the automated database compilation itself, but also rights in "the original expressive contributions (e.g., photographs) MRIS has made or acquired to individual property listings in the MRIS Database …" MRIS Brief, 10; Complaint, ¶ 17.  However, MRIS has not registered copyrights to any of the individual data or photographs contained in the MRIS Database. See Memorandum in Support of Defendant AHRN, Inc.'s Rule 12(b) Motion to Dismiss [D.E. 24-1], 10-11.

The real estate listing information in the MRIS Database is sourced directly from professional brokers and agents under contract to MRIS. Complaint, ¶ 15; MRIS Brief, 3.  MRIS alleges its MRIS Database is unpublished. Complaint, ¶ 18.  However, it makes the Database content available to its subscribers through a "portfolio of technology solutions," including broker and agent software products and services.  Complaint, ¶ 14; MRIS Brief, 3.  One of the software products and services MRIS offers to its subscribers is the Internet Data Exchange Program ("MRIS IDX") which allows subscribers to display Database content to the public on their own web sites. Complaint, ¶¶ 19-21; MRIS Brief, 3-4.

The data feed in the MRIS IDX program is provided in the Real Estate Transaction Standard form ("RETS").  Complaint, ¶ 20, MRIS Brief, 3-4.  MRIS

also licenses the RETS feed to third parties.   Complaint, ¶ 21, MRIS Brief, 4. Upon information and belief, one of the third parties to which MRIS licenses its RETS feed is the NAR which displays content from the MRIS Database on its website: www.Realtor.com.  MRIS also displays content from the Database on its own website: www.HomesDatabase.com, and to journalists and others via its Pending Home Sales Index monthly market summary. Complaint, ¶13, MRIS Brief, 5.

The selected content and arrangement of listing data MRIS provides to its subscribers and the public vary widely.   For example, upon information and belief, MRIS subscribers may receive a (1) long form listing, see listing for 15230 Riding Club Drive, Exhibit 5 hereto; (2) an agent synopsis listing, see synopsis for 15230 Riding Club Drive, Exhibit 6 hereto; and various condensed listing summaries, see Weichert listing summaries, Exhibit 7 hereto.  The information provided to the public through www.homesdatabase is yet another type of condensed listing summary, *see* homesdatabase listing for 214 Watkins Pond Road, Exhibit 8.

### D.  BACKSTORY OF THIS LITIGATON

The NAR held its annual meeting in Anaheim, California from November 11 to 14, 2011.   Defendants have learned that the annual meeting featured discussions of the perceived threat AHRN, Inc. poses to the industry and what the industry could do to shut down AHRN, Inc.  5/18/12 Cardella Decl., ¶ 10.

Beginning in November just before the Anaheim meeting, AHRN, Inc. began to receive what would become an onslaught of cease-and-desist letters

from brokers and multiple listing services. These have continued into 2012. Most of the letters, 20 in all since early November, 2011, are substantially similar as to form and content, allege copyright infringement and threaten legal action. Three (3) additional letters are from brokers objecting to AHRN, Inc's referral program; and three (3) letters involve complaints to governmental agencies related to either alleged copyright infringement and/or licensing violations. On November 15, 2011, the morning after the Anaheim NAR meeting closed, AHRN, Inc. received one of these cease-and-desist letters from an attorney for the NorthStar MLS in Minnesota. Three days later, on November 18, 2011, AHRN, Inc. received a cease-and-desist letter from MRIS, attached as Exhibit B to the Complaint. *Id.*, ¶ 11.

On November 15, 2011, the morning after the Anaheim NAR meeting closed, AHRN, Inc. received one of these cease-and-desist letters from an attorney for the NorthStar MLS web site in Minnesota. Three days, later on November 18, 2011, AHRN, Inc. received a cease-and-desist letter from MRIS, attached as Exhibit B to the Complaint. *Id.*

On December 22, 2011 AHRN, Inc. was copied on an email, attached as Exhibit 9, from John Mosey of the NorthStar MLS to his attorney Mitchell Skinner, in which Mosey complained of a sense that after "dropping C&D's on the head of the bad fellow," i.e. Jonathan Cardella, nothing had changed, and he called for following up the "full force and fury" of the cease-and-desist letters with:

- ▪ "Collective action;"
- ▪ Imparting a "world of hurt" on Cardella;
- ▪ Using copyright litigation as the means to do that;
- ▪ Sharing the cost of litigation among the MLSs;

- ▪ "Connecting the dots between all of the MLSs;"
- ▪ "Sending a message that our copyrights are enforceable and we are serious about punishing anyone who doesn't take us seriously."

The result of the Mosey email was the present lawsuit filed on March 19, 2012, followed by an additional suit filed on April 18, 2012, in Minnesota, *Regional Multiple Listing Service of Minnesota, Inc., d/b/a NorthstarMLS v. American Home Realty Network, Inc.*, 0:12cv965 (D. Minn).   5/18/12 Cardella Decl., ¶ 12.

These actions by brokers and multiple listing services came shortly after AHRN, Inc. rolled out updated profile pages for 850,000 agents that feature agent scores and performance metrics based on their transaction history.   See Inman News Daily Real Estate News (May 15, 2012), copy attached as Exhibit 10; 5/18/12 Cardella Decl., ¶ 13.   Other companies that rolled out real estate agent profile pages were forced to discontinue publication of those pages within days after their respective launches, such as Redfin, another innovative real estate brokerage.   See Inman News article, *supra*; 5/18/12 Cardella Decl., ¶ 14.

## IV. <u>ARGUMENT</u>

### A. <u>MRIS CANNOT SUCCEED ON THE MERITS</u>

In order to establish copyright infringement of a compilation copyright, plaintiff MRIS must show a likelihood of success on the merits.   "The two elements of copyright infringement are: (1) ownership of a valid copyright by the party complaining of infringement, and (2) unauthorized copying of the protected work by the infringing party." *Universal Furniture Intl., Inc. v. Collezione Europa USA, Inc.*, 2006 U.S. App. LEXIS 22212 at *14 (4th Cir. Aug. 29, 2006) (*unpublished*), *citing Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1065

(4th Cir. 1988).

MRIS cannot succeed on the merits because it: (1) has failed to establish the eligibility for copyright of its database or any valid copyright in the underlying text and photographs of its compilation patent; (2) even if the subject matter of MRIS's compilation copyright were theoretically copyrightable, MRIS has failed to identify sufficiently, nor indeed at all, the text, photographs, authors and photographers.

1.  <u>A Substantial Question Exists Whether The Underlying Text is Copyrightable</u>

a. Catalogs Are Less Copyrightable

MRIS asserts that its Database provides its subscribers access to "… a copyrighted automated **catalog**, containing a compilation of regional real estate listings and related informational content."  MRIS Brief 1 (emphasis added).  The courts have held that raw data and facts are not copyrightable and that due "to their highly factual nature, . . . generally fall towards the less-protected end of the spectrum" of copyrightable material.  *Franklin Mach. Prods. v. Heritage Food Serv. Equip, Inc.,* 2007 U.S. Dist. LEXIS 89666 at *9, *12 (N.D. Ind. Dec. 5, 2007) (Court dismissed complaint) ("*Franklin Machine I*"); 2008 U.S. Dist. LEXIS 18989 at *2, *7 (N.D. Ind. Mar. 11, 2008)  (Court ordered plaintiff to pay defendant's attorneys fees) ("*Franklin Machine II*").

In *Franklin Machine I* at *5, the court also stated that "[t]he copyright in a compilation -- like the catalogs at issue in this case -- extends only to the material contributed by the author of such work, but not to the preexisting materials," citing 17 U.S.C. § 103(b).  *See* plaintiff's counsel's advice to MRIS and others in

D. Charron and J. Westermeier, MRIS Guidance Paper, attached as Exhibit 11.[1]

   b. MRIS's Catalog Databases Are Not Copyrightable,
     As They Lack Originality

   Copyright protection is unavailable for both derivative works and compilations alike unless, when analyzed as a whole, they display sufficient originality so as to amount to an "original work of authorship." *See* 17 U.S.C. § 101 (defining a "derivative work", *inter alia*, as a work containing alterations "which, as a whole, represent an original work of authorship"); *id.* (defining a "compilation" as requiring that "the resulting work as a whole constitutes an original work of authorship"). The originality required for copyright protection is essentially the same. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 358 (U.S. 1991) ("Originality requires only that the author make the selection or arrangement independently . . . and that it display some minimal level of creativity.")   *Matthew Bender & Co. v. West Publishing Co.* 158 F.3d 674, 680 (2d Cir. 1998) (affirmed district court finding that the "elements of the West case reports for which West seeks copyright protection lack sufficient originality or creativity to be protectable--whether considered separately or together.") *Id.* at 681.

   In *Universal Furniture,* 2006 U.S. App. LEXIS 22212 at *12-13, the Fourth Circuit affirmed the denial of a motion for preliminary injunction based "on the uncertainty that [the] … compilations are in fact copyright able" where they likely

---

[1] "Our recommended practice, which we address through the Program, is to provide separate copyright protection for each listing beyond the compilation [because] … the copyright protection for automated databases as compilations is even weaker than the protection accorded more "traditional", hard-copy compilations."   MRIS Guidance Paper, Exhibit 11, at 20.

failed to meet the Fourth Circuit's test that "the design must reflect the designer's artistic judgment exercised independently of functional influences." *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.,* 74 F.3d 488, 494 (4th Cir. 1996), (quoting *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1145 (2d Cir. 1987)).

Nowhere in its motion does MRIS describe the identification, selection or arrangement of its databases in such a way that the resulting work as a whole constitutes an original work of authorship.  The Supreme Court in *Feist* noted that "facts are not copyrightable," but "compilations of facts generally are." *Feist,* 499 U.S. at 344.

> Many compilations consist of nothing but raw data *i.e.,* wholly factual information, not accompanied by any original written expression. On what basis may one claim a copyright in such a work?  Common sense tells us that 100 uncopyrightable facts do not magically change their status when gathered in one place….
>
> The *sine qua non* of copyright is originality.

*Id.* at 345.  *See Nautical Solutions Mktg. v. Boats.com,* 2004 U.S. Dist. LEXIS 6304, at *7 (M.D. Fla. Apr. 1, 2004)  (extraction of facts from a website by competing yacht broker's web site was unprotectable because alleged infringer only cut and pasted the industry standard yacht descriptions from the registrant and the photographs had been taken by others without transfer of copyrights.)

> Where the compilation compiler adds no written expression, but rather lets the facts speak for themselves …. [t]he only conceivable expression is in the manner in which the compiler has selected and arranged the facts…  No matter how original the format, however, the facts themselves do not become original through association.
>
> This inevitably means that the copyright in a factual compilation is thin.  Notwithstanding a valid [compilation] copyright, a subsequent

compiler remains free to use the facts contained in another's publication….

*Id.* at 349. *See Richmond Homes Mgt, Inc. v. Raintree, Inc*, 1995 U.S. App. LEXIS 26452, at *9 (4th Cir. Sep. 18, 1995):

> "The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of and does not affect or enlarge the scope, duration, ownership or substance of, any copyright protection in the preexisting material."

Here the compiler MRIS has added no written expression, as far as can be detected (the compilation is itself unpublished). The compiler does not make any selections, texts or photographs; they are provided on automatic pilot through uploading by the subscribers. MRIS Brief at 3.

In short, the compilations allegedly infringed lack the originality to be copyrightable.

2. MRIS's Purported Registrations of Text and Photographs Are <u>Invalid For Failure To Identify Any Author and Photographer</u>

All of MRIS's copyright registrations list MRIS as the copyright claimant and refer to preexisting "text and photograph(s)." None of the registrations lists an actual author for either text or photographs.

In *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.,* 712 F. Supp. 2d 84 (S.D.N.Y. 2010); the court granted summary judgment against Muench, a company owned by two photographers, which had sued a textbook publisher and its printer for infringement of database compilation copyrights. The Court held that under 17 U.S.C.S. § 103(b), when the work at

issue is a compilation, the copyright extends only to the material contributed by the author of the compilation (and not to the underlying works).   *Muench Photography*, 712 F. Supp. 2d at 90; *see also Richmond Homes,* 1995 U.S. App. LEXIS 26452, at *8-9.

The *Muench* court further held that: (1) the registration of a collective work reaches the individual works only when the author of the collective work authored each of the individual works, *id.* at 94; (2) in any event, the registrant of a compilation copyright must list the names of the authors of the underlying works, *id.* ; and (3) suggested that the author who filed registration for collective work must be the same author of the underlying individual works that were the subject of the infringement, *id.*; *citing Woods v. Universal City Studios, Inc.,* 920 F. Supp. 62, 64 (S.D.N.Y.1996), *Richmond Homes,* 1995 U.S. App. LEXIS 26452, at *8-9 ("Having concluded that the district court's finding of common ownership … of the copyrights is clearly erroneous, it follows that the … copyrights cannot be merged as derivative creations of the same owner").

Thus, MRIS's failure to provide the names of all authors of independent works contained in the database, limits the registration and the scope of any infringement suit to the database as a whole.   It does not cover the individual works contained therein.  *See Muench Photography*, 712 F. Supp. 2d at 95; *see also Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ. Co.*, 2010 U.S. Dist. LEXIS 108041, at *11-12 (D. Alaska Sep. 21, 2010) (same); *Bean v. Houghton Mifflin Harcourt Publ. Co.*, 2010 U.S. Dist. LEXIS 83676, at *6-7 (D. Ariz. Aug. 10, 2010) (same).

16

Without identification of the text and its authors, the photographs and their photographers found in the MRIS database, the compilation copyright is invalid or unenforceable as to those individual elements of the database.

### 3.   MRIS Has Not Established Infringement of Its Database

Plaintiff's copyright infringement claims are rooted in its broad non-specific allegations that (1) "[d]efendants are obtaining and copying MRIS copyrighted information, without authorization, from or sourced from the [allegedly unpublished] MRIS database,"   Complaint, ¶¶ 18, 29; and (2) AHRN, Inc. "provides [its] customers unauthorized access to and use of the copyrighted MRIS Database and informational content in support of their referral business," Complaint, ¶ 26, MRIS Brief, 1, 6.   In its Brief, MRIS twice expresses its belief that AHRN, Inc. "is receiving and copying copyrighted content from the MRIS Database via multiple sources, including by way of example, from a RETS data feed that is sent to a licensed real estate brokerage, and/or by copying and compiling such content from MRIS or third party web sites."   MRIS Brief, 6, 11. In support of these broad allegations and speculative beliefs, MRIS points to a series of screen shots allegedly taken from the NeighborCity web site.   See MRIS Brief, 11, referring to Exhibits F-1, F-2, F-3, F-4, F-5, and F-6 to Plaintiff's Motion.   MRIS alleges that these screenshots show that AHRN, Inc. uses materials that are "…*identical*… to MRIS's copyrighted content … since the website incorporates MRIS's copyrighted content in its *entirety*" (emphasis in original).  MRIS Brief, 11.

However, *Feist* makes clear that: (1) "a compilation is copyrightable only

to the extent that it features an *original* selection, coordination or arrangement," and (2) establishing infringement of a compilation copyright requires "copying of constituent elements of a work that are *original*," *Feist* 499 U.S. at 360-61 (emphasis added).  This has come to require what is known as a "dissection analysis." *Haslett v. Hasselbeck,* 757 F. Supp. 2d 73, 81 (D. Mass. 2010).

To establish infringement, MRIS must show substantial similarity between its copyrighted work and what it alleges AHRN, Inc. to have copied.  In evaluating substantial similarity for determining copyright infringement, the courts "first 'dissect' the work to remove those aspects not protected by copyright….That dissection analysis is an appropriate method of evaluating substantial similarity even when actual copying has occurred.  "By dissecting the accused work and identifying those features which are protected the court can also determine those aspects of the work that should be considered in the comparative analysis under the ordinary observer test."   *Yankee Candle Co. v. Bridgewater Candle*, LLC, 259 F.3d 25, 34 (1st Cir. 2001).

In its Brief, MRIS has failed to conduct a proper dissection analysis and indeed, to the extent it compares anything, it compares the proverbial apples to oranges.  The proper thing to compare would be the "selection, coordination or arrangement" of MRIS's registered database to that of the AHRN, Inc. database. Instead, MRIS compares unprotected elements of its database, unpublished and undisclosed, with individual elements of AHRN, Inc.'s NeighborCity.com webpage, without first removing the unprotected individual elements from consideration.

### B.    MRIS HAS FAILED TO ESTABLISH IRREPARABLE INJURY

MRIS's Complaint is largely silent as to the extent and nature of its alleged damages from copyright infringement.   It alleges only that it is entitled to the maximum statutory damages based on willful infringement, and alternatively, its actual damages plus AHRN, Inc.'s profits from infringement "as will be proven at trial," see, e.g., Complaint, ¶¶ 43, 49, 55, 64, 73, 83, but provides no other specific allegations of damages.

In its Brief, MRIS alleges it is likely to suffer irreparable harm in the absence of injunctive relief on the basis that AHRN, Inc.'s alleged infringement "hinders MRIS's rights to control the means and methods by which its copyrighted works will be seen by the public." MRIS Brief, 11.[2]  It also alleges significant harm to its real estate brokers and agent subscribers by allegedly "making it impossible for brokers to maintain control over the dissemination of their own listing information."  Id., 8.

MRIS has presented three declarations in support of irreparable injury. Two are by MRIS subscribers: Campbell Declaration, MRIS Brief Exhibit D and Coile Declaration, id Exhibit E; one by its Chief Marketing Officer, Heithaus Declaration, id. Exhibit A.  These declarations are grossly inadequate to establish MRIS's irreparable injury.

Indeed, the Court should strike or disregard the two subscriber Declarations as irrelevant, because "[t]he two more important factors [in the four part preliminary injunction test are] … those of irreparable injury to the plaintiff

---

[2] At the same time, MRIS contends its Database is "unpublished," see Complaint, ¶ 18, and thus not disclosed to the public.

without a decree and of likely harm to the defendant with a decree." *Universal Furniture,* 2006 U.S. App. LEXIS 22212 at *6 (emphasis added).   This is true as a general matter even outside the realm of copyrights.  The court lacks subject matter jurisdiction unless the plaintiff asserts his own injury.  See *Warth v. Sedin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to *protect against injury to the complaining party*, even though the count or judgment may benefit others collaterally.") (emphasis added).

Both Campbell and Coile make the identical allegation that "the NeighborCity.com website has caused and is causing irreparable harm to my real estate brokerage and business in Maryland."  Campbell Decl. ¶ 4, Coile Decl. ¶ 4.  Allegations of injury to third parties are of no moment to the determination of irreparable injury to Plaintiff MRIS. *See Warth*, 422 U.S., at 499.

The Declaration by MRIS's Heithaus is also inadequate to establish irreparable injury for several reasons.  First, MRIS alleges no "irreparable injury" to itself. Heithaus alleges only "significant harm."  Heithaus Decl. at ¶ 9.  Second, the preponderance of harm that Heithaus alleges is, again, harm to MRIS's "subscriber brokers and agents," *id.* ¶ 10, and "reducing the revenues that MRIS broker subscribers and agents would otherwise earn," *id.* ¶12.

The only harm MRIS alleges to itself is the result of inaccuracies in the current status of properties on the NeighborCities.com website, which, MRIS claims affects the credibility and integrity of the information MRIS publishes and disseminates and hurts its reputation, *id.* ¶ 9, and "dilutes the value of the MRIS's database," *id.* ¶ 13.  But the alleged inaccuracies on AHRN, Inc.'s website would

presumptively harm AHRN, Inc., not MRIS.   Moreover this allegation has no support and is entirely speculative, in that MRIS fails to present any evidence from any witness in whose eyes MRIS's reputation was actually harmed by alleged mistakes on the NeighborCity web site.   It is also inconsistent with copyright injury because the greater the discrepancies in the comparison between the MRIS Database, a "thinly" copyrighted compilation database, and the NeighborCity listings, the less likely there is infringement.

The only remaining allegation of harm, not "irreparable injury," is that AHRN, Inc.'s unauthorized use of real estate listings "dilutes the value of the MRIS database."  *Id.* ¶ 13.   Again, this allegation is speculative and unsupported by any evidence.   It is based on the assumption that purely informational real estate listings are copyrightable.   It also lacks any allegation, let alone proof, of the historic value of the database and the current value of the database and proof of cause and effect between AHRN, Inc.'s use of the listings and any provable reduced value of the database.   Finally, this alleged type of harm would be compensable with money damages, and therefore, not a proper basis for an irreparable injury determination.

### C.   THE BALANCE OF EQUITIES FAVORS AHRN, INC.

The timing and activities of the NAR, Northstar MLS, MRIS and other multiple listing services in late 2011 and early 2012 strongly suggests that this suit is part of an effort spearheaded by the National Association of Realtors to shut down Defendants' Internet-based real estate agent ranking and rating website, www.NeighborCity.com by forcing AHRN, Inc. to spend its resources

fighting off litigation.  Thus for AHRN, Inc. these and possible additional lawsuits are an existential threat, the very intent of which is expressed by the Mosey email, Exhibit 9.

By contrast, MRIS has established no cognizable injury to itself.  First, injury to third parties is not recognized for irreparable injury, which means that the Campbell and Coile declarations must be disregarded.   Second, MRIS's claimed loss of "sweat of the brow" investment must also be disregarded because that is a concept that has been completely repudiated by the Supreme Court in *Feist*, 499 U.S. at 359-360.

Thus, the ongoing damages to AHRN, Inc. clearly outweigh the zero damages to MRIS.  The equities tip decidedly in AHRN, Inc.'s favor.

### D.   THE PUBLIC INTEREST IS BEST SERVED BY COMPETITION

MRIS alleges that the public interest would be served by an injunction because it would prevent the "misappropriation of the skills, creative energies and resources which are invested in the protected work," *quoting Apple Computer Inc. v. Franklin Computer Corp.*, 714 F. 2d 1240, 1255 (3d Cir. 1983).  MRIS Brief 14.  This is the "sweat of the brow" or rationale for copyrights that the Supreme Court specifically repudiated in *Feist*.  In *Feist,* the Supreme Court held that its application of the 1909 Copyright Act makes clear that the "statute did not permit the 'sweat of the brow' approach. …  Without a doubt the 'sweat of the brow" doctrine flouted basic copyright principles."  *Feist,* 499 U.S. at 353-354.  Thus *Feist* overrules *Apple* on which MRIS rests its public interest argument.

### E.  **AHRN, INC.'S DEFENSE OF COPYRIGHT MISUSE**

Even before discovery, the Mosey email strongly suggests that Mr. Mosey intends to violate prohibitions of the DOJ Consent Decree with NAR.   What occurred after the NAR annual meeting redoubles suspicions that NAR, multiple listing services and certain brokers are currently engaged in what amounts to a potential *U.S. v NAR II.*

Lending further evidence of concerted anticompetitive action by the multiple listing services, in addition to the sudden flood of cease-and-desist letters after Anaheim is the following: AHRN, Inc. met every cease-and-desist letter with an offer to negotiate a license for the use of the brokers' or multiple listing services' website.  In each case, AHRN's overture to license was rebuffed out of hand without negotiations.   Each rejection used the same format and essentially the same language    Attached as Exhibit 12 are the offer to and rejection from MRIS and as Exhibit 13, the offer to and rejection from NorthStar. The universal rejections raise the spectre of concerted refusals to deal by entities with market power which violate the antitrust laws. *See Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 824, 829 (6th Cir. 2011); *Robertson v. Sea Pines Real Estate,* 2012 U.S. App. LEXIS 9694, at *8-9 (4th Cir. S.C., May 14, 2012).

"A successful defense of misuse of copyright bars a culpable plaintiff from prevailing on an action for infringement of the misused copyright." *Lasercomb America, Inc. v. Job Reynolds,* 911 F.2d 970, 972 (4th Cir. 1990).  (injunction reversed).   A full blown antitrust case need not be proven by defendants to prevail on a copyright misuse defense:

> The attempted use of a copyright to violate antitrust law probably would give rise to a misuse of copyright defense, the converse is not necessarily true -- a misuse need not be a violation of antitrust law in order to comprise an equitable defense to an infringement action. The question is not whether the copyright is being used in a manner violative of antitrust law (such as whether the licensing agreement is "reasonable"), but whether the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright.

*Id.* at 978.

In *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes,* 2003 U.S. Dist. LEXIS 16737, at *16 (N.D. Ill. Sep. 24, 2003), the Court held that assertion of a prospective copyright misuse defense cast grave doubt on whether plaintiff could prevail on the merits of its copyright infringement claim.  The existence of the defense was among the deficiencies in proof of likelihood of success on the merits that warranted denial of a motion for preliminary injunction.

## V.  CONCLUSION

For the reasons stated above, defendants AHRN, Inc. and Cardella respectfully request the Court to deny MRIS's motion for preliminary injunction.

Respectfully submitted,

    */s/ Richard S. Toikka*
Richard S. Toikka, Fed. Bar No. 13543
L. Peter Farkas (pro hac vice)
FARKAS+TOIKKA, LLP
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7802 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)

Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General
Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

*Counsel for Defendants American Home
Realty Network, Inc. and Jonathan J.
Cardella*

**CERTIFICATE OF SERVICE**

I, Richard S. Toikka, herby certify that on this the 18th of May, 2012, a

copy of the foregoing Defendants' Opposition to Plaintiff MRIS's Motion for

Preliminary Injunction was served by electronic means using the Court's CM/ECF

system upon:

John T. Westermeier, Esquire
Margaret A. Esquenet, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*/s/ Richard S. Toikka*
    Richard S. Toikka