**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,** | **CIVIL ACTION NO. 12-cv-0954** |
| **Plaintiff,** | |
| **v.** | |
| **AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,** | |
| **Defendants.** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS AMERICAN HOME REALTY
NETWORK, INC.'S AND JONATHAN J. CARDELLA'S
<u>RULE 12(b) MOTIONS TO DISMISS</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................... 2

    A.    MRIS and Its Activities in This District ................................................. 2

    B.    Defendants' Activities in This District .................................................... 3

III.    ARGUMENT ....................................................................................................... 9

    A.    The District of Maryland Has Personal Jurisdiction over Defendants AHR and Cardella ............................................................................................ 9

        1.    Personal Jurisdiction Is Proper Under the Maryland Long-Arm Statute and Due Process Standards ............................................. 9

            a.    The District of Maryland Has Personal Jurisdiction over AHR ............................................................................... 12

                i.    AHR's Forum-Related Activities Satisfy § 6-103(b)(1) ................................................................... 13

                    (a)    The NeighborCity.com Website Targets Maryland ............................................................... 14

                    (b)    AHR's Referral Business Targets Maryland ........ 15

                ii.    AHR's Tortious Conduct Satisfies § 6-103(b)(4) ............. 17

            b.    The District of Maryland Has Personal Jurisdiction over Cardella ........................................................................... 20

    B.    Venue Is Proper in the District of Maryland and This Case Should Not Be Transferred .......................................................................................... 23

        1.    Venue Is Proper Under 28 U.S.C. § 1391 ................................. 23

        2.    Transfer Is Not Warranted Under 28 U.S.C. § 1404 ................. 24

    C.    Defendants' Rule 12(b)(6) Motion Must Be Denied ............................. 25

        1.    MRIS Has Made a Prima Facie Case of Copyright Infringement ........... 25

        2.    MRIS' Copyright Registrations to the MRIS Database Include the Constituent Elements Contained Therein .................................. 27

            a.    Fourth Circuit Precedent Strongly Favors MRIS .......................... 27

i

b. *Muench*, *Alaska Stock*, and *Bean* Are Distinguishable on Their Facts and Inapposite ........................................................... 28

c. MRIS Fully Complied with Section 409 of the Copyright Act .................................................................................................. 30

IV. CONCLUSION ............................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AAI Corp. v. Applied Geo Technologies, Inc.*,
  No. 11-608, 2011 WL 3678903 (D. Md. Aug. 22, 2011) ........................................24

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*,
  No. 3:09-cv-0061-HRH, 2010 WL 3785720 (D. Alaska Sept. 21, 2010) ...............27

*ALS Scan, Inc. v. Digital Service Consultants, Inc.*,
  293 F.3d 707 (4th Cir. 2002) ...........................................................................10, 11

*Bean v. Houghton Mifflin Harcourt Publishing Co.*,
  No. CV10-8034-PCT-DGC, 2010 WL 3168624 (D. Ariz. Aug. 10, 2010)...........27

*Calder v. Jones*,
  465 U.S. 783 (1984)..............................................................................................11

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
  334 F.3d 390 (4th Cir. 2003) ...........................................................................9, 21

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)..............................................................................................32

*Consulting Engineers Corp. v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ...........................................................................9, 10

*CoStar Group, Inc. v. LoopNet, Inc.*,
  106 F. Supp. 2d 780 (D. Md. 2000) ......................................................................21

*CoStar Group, Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ................................................................................25

*CoStar Realty Information, Inc. v. Copier Country New York, LLC*,
  No. 08-cv-3469, 2009 WL 3247431 (D. Md. Oct. 1, 2009) ..................................24

*CoStar Realty Information, Inc. v. Field*,
  612 F. Supp. 2d 660 (D. Md. 2009) ................................................... 11-12, 18, 25

*CoStar Realty Information, Inc. v. Meissner*,
  604 F. Supp. 2d 757 (D. Md. 2009) ......................................................................24

*Davis Media Group, Inc. v. Best Western International, Inc.*,
  302 F. Supp. 2d 464 (D. Md. 2004) ......................................................................24

*Erickson v. Pardus*,
    127 S. Ct. 2197 (2007)..................................................................................25

*Estate Construction Co. v. Miller & Smith Holding Co.*,
    14 F.3d 213 (4th Cir. 1994) .........................................................................25

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
    499 U.S. 340 (1991).....................................................................................25

*Giannaris v. Cheng*,
    219 F. Supp. 2d 687 (D. Md. 2002) .............................................................11

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945).....................................................................................10

*JetForm Corp. v. Unisys Corp.*,
    11 F. Supp. 2d 788 (E.D. Va. 1998) ............................................................25

*Johns Hopkins Health System Corp. v. Al Reem General Trading & Co.'s Rep. Est.*,
    374 F. Supp. 2d 465 (D. Md. 2005) ......................................................11, 20

*King Records, Inc. v. Bennett*,
    438 F. Supp. 2d 812 (M.D. Tenn. 2006)......................................................28

*Lee v. Walworth Valve Co.*,
    482 F.2d 297 (4th Cir. 1973) .......................................................................17

*M. Kramer Manufacturing Co. v. Andrews*,
    783 F.2d 421 (4th Cir. 1986) .......................................................................26

*Mascendaro v. Sadr*,
    No. 09-cv-02787, 2010 WL 1427499 at * 4 (D. Md. Apr. 8, 2010)...............15

*Masterfile v. Gale*,
    No. 2:09-cv-966, 2011 WL 4702862 (D. Utah Oct. 4, 2011).................28, 30

*Montgomery County Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*,
    878 F. Supp. 804 (D. Md. 1995), *aff'd on other grounds*, 91 F.3d 132 (4th Cir. 1996)..........28

*Morris v. Business Concepts, Inc.*,
    259 F.3d 65 (2d Cir. 2001)...........................................................................28

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*,
    712 F. Supp. 2d 84 (S.D.N.Y. 2010)......................................................27, 29

*Mylan Laboratories, Inc. v. Akzo, N.V.*,
    2 F.3d 56 (4th Cir. 1993) ...............................................................................9

*Nichols v. G.D. Searle & Co.*,
    991 F.2d 1195 (4th Cir. 1993) ................................................................16, 17

*Planet Technologies, Inc. v. Planit Technology Group, LLC*,
    735 F. Supp. 2d 397 (D. Md. 2010) .......................................................21, 22

*Ratliff v. Cooper Laboratories, Inc.*,
    444 F.2d 745 (4th Cir. 1971) ................................................................16, 17

*Silo Point II LLC v. Suffolk Construction Co.*,
    578 F. Supp. 2d 807 (D. Md. 2008) .............................................................23

*Splitfish AG v. Bannco Corp.*,
    727 F. Supp. 2d 461 (E.D. Va. 2010) ...........................................................18

*TECH USA, Inc. v. Evans*,
    592 F. Supp. 2d 852 (D. Md. 2009) .............................................................24

*Teletronics International, Inc. v. CNA Insurance Co./Transportation Insurance Co.*,
    No. 04-1509, 2005 WL 115487 (4th Cir. Jan. 20, 2005) ...........................12

*United States v. Haggar Apparel Co.*,
    526 U.S. 380 (1999) ....................................................................................32

*Wolf v. Richmond County Hospital Authority*,
    745 F.2d 904 (4th Cir. 1984) ................................................................16, 17

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ....................................................................................10

*Xoom, Inc. v. Imageline, Inc.*,
    323 F.3d 279 (4th Cir. 2003) *abrogated on other grounds by Reed Elsevier v.*
    *Muchnick*, 130 S. Ct. 1237 (2010) .........................................................27, 28

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) .......................................................................15

**STATE CASES**

*Allen v. Dackman*,
    991 A.2d 1216 (Md. 2010) ..........................................................................21

*Bahn v. Chicago Motor Club Insurance*,
    634 A.2d 63 (Md. Ct. Spec. App. 1993) .................................................11, 13

*Bond v. Messerman*,
    892 A.2d 990 (Md. 2006) ...............................................................................9

**FEDERAL STATUTES**

17 U.S.C. § 101 ..................................................................................................................30

17 U.S.C. § 103 ..................................................................................................................29

17 U.S.C. § 408 ..................................................................................................................30

17 U.S.C. § 409 .................................................................................................27, 30, 31, 32

17 U.S.C. § 410 ..........................................................................................................26, 32

28 U.S.C. § 1091 ...............................................................................................................1

28 U.S.C. § 1391 ..............................................................................................................23

28 U.S.C. § 1404 ..............................................................................................................24

Lanham Act, Section 43(a) .............................................................................................19

**STATE STATUTES**

Md. Code. Ann., Cts. & Jud. Proc. § 6-103 ..................................................... passim

**FEDERAL RULES**

Fed. R. Civ. P. 12(b) ............................................................................................ passim

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution Amendment XIV, § 1 ........................................................................9

**OTHER AUTHORITIES**

Compendium of Copyright Office Practices II § 615.06 .............................................31

## I.    INTRODUCTION

Plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS") respectfully submits this Opposition to Defendant American Home Realty Network, Inc.'s ("AHR") Rule 12(b) Motion to Dismiss and Defendant Jonathan J. Cardella's ("Cardella") Rule 12(b) Motion to Dismiss (Dkts. 23 and 24).  For the reasons stated herein, Defendants' Motions to Dismiss must be denied.

As discussed below, MRIS had a good-faith belief at the time of filing, and continues to have a good-faith belief, that both AHR and Cardella have sufficient contacts with the District of Maryland to support this Court's exercise of personal jurisdiction.  This belief is supported by information found on Defendants' website, NeighborCity.com, as well as communications and other actions from AHR and Cardella, which target real estate professionals, homebuyers, and home sellers located in Maryland.  Defendants AHR and Cardella have flagrantly and repeatedly misappropriated copyrighted real estate content from or sourced from the MRIS Database, which is maintained through MRIS's Rockville, Maryland, headquarters, and engaged in other tortious conduct injuring MRIS in Maryland.  Through NeigborCity.com, Defendants have used that infringing copyrighted content as advertising material to target real estate purchasers and sellers in Maryland, and provided Maryland consumers with referrals to and "ratings" for Maryland-based real estate professionals.  These contacts are sufficient for the District of Maryland to have personal jurisdiction over Defendants AHR and Cardella under both the Maryland Long-Arm Statute and due process standards.

Similarly, venue is proper in this District under 28 U.S.C. § 1091(b)(2), because this Court may exercise personal jurisdiction over Defendants.  Venue is also proper under 28 U.S.C. § 1091(b)(2) because "the property that is the subject of the action," namely, the MRIS Database,

1

is operated and maintained by MRIS at its headquarters in Rockville, Maryland.  Consequently,

Defendants' Rule 12(b)(3) Motions to Dismiss must be denied.

   MRIS has stated a prima facie case of copyright infringement, alleging both ownership of

U.S. Copyright Office registrations to the MRIS Database and willful, verbatim, unauthorized

copying (and other infringing actions) by Defendants.  As alleged in the Complaint,

NeighborCity.com publicly displays photographs and other copyrighted content prominently

bearing MRIS's copyright notice, "© MRIS."  Through an assignment program, MRIS is the

owner of all right, title, and interest in photographic images within the MRIS Database, in

addition to other database content authored and owned by MRIS.  MRIS's copyright

registrations, as accepted by the Copyright Office, specifically note the "photos" and "text"

contained within that database.  Accordingly, Defendants' Rule 12(b)(6) motions must be

denied.

## II.    STATEMENT OF FACTS

### A.    MRIS and Its Activities in This District

   As alleged in the Complaint, MRIS is one of America's largest Multiple Listing Services

("MLS"), with its headquarters located in Rockville, Maryland.  (Compl. ¶ 13.)  MRIS creates,

maintains, operates, protects, and provides authorized, licensed subscribers and other authorized

licensees with access to and use of its copyrighted compilation of regional real estate property

listings and related informational content (collectively, the "MRIS Database").  (*Id.*)  MRIS

creates, maintains, processes, and stores information related to the MRIS Database at its

Rockville headquarters.

   MRIS licenses the MRIS Database to brokers, agents, and other authorized licensees in

Maryland and other states in the Mid-Atlantic region via a portfolio of technology solutions,

including broker and agent products and services.  (*Id.* ¶ 14.)  To use the MRIS service, licensed

real estate professionals are required to execute an MRIS subscription agreement ("MRIS Subscriber Agreements"). Through these MRIS Subscriber Agreements, subscribers commit to upload their inventory of available real estate properties into the MRIS service, and when uploading their photos, irrevocably assign to MRIS the worldwide copyrights in photographs incorporated in the MRIS Database. From its Maryland headquarters, MRIS serves as the owner of the MRIS Database and the materials contained therein.

### B.      Defendants' Activities in This District

Defendants AHR and Cardella operate a national real estate referral business through the NeighborCity.com website, which provides Internet users with access to real estate listings, including listings for properties located in Maryland. (*Id*. ¶ 26.) Defendants copy these listings without authorization from the MRIS Database, and publicly display such listings as advertising material on NeighborCity.com to solicit customers in Maryland who are interested in Maryland real estate properties. NeighborCity.com provides tools to search listings by neighborhood, real estate agent or broker, and MLS number. (Declaration of Whitney Devin Cooke in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss ("Cooke Decl.") ¶ 2, Exhibit 1.) These search criteria allow a visitor to NeighborCity.com to focus on a particular geographical area or location within Maryland. For example, a search for properties in "Rockville, MD" on NeighborCity.com generated the following results:



Photographs bearing MRIS's copyright notice, "© MRIS" feature prominently in the real estate listings returned in the NeighborCity.com Rockville search, as shown in the listing featured below, located at http://www.neighborcity.com/property/9320-Falls-Bridge-Ln-Rockville-MD-20854-MC7838876-27488220/ (Cooke Decl. ¶ 3, Exhibit 2):



One of the purposes of Defendants' NeighborCity.com website is to attract real estate professionals in Maryland to the NeighborCity.com referral program.  In addition, "client specialists" from NeighborCity.com have directly contacted Maryland real estate professionals in an attempt to solicit business for the NeighborCity.com referral program.  For example, reproduced below is an unsolicited email sent to Boyd Campbell, a Maryland real estate broker and subscriber to the MRIS Service, in which NeighborCity.com offers "broker-to-broker" referrals in exchange for a referral fee.  (Declaration of Boyd Campbell in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss ("Campbell Decl.") ¶¶ 4-6, Exhibit 1.)  This solicitation is related to a Maryland property listed in the MRIS Database and displayed on the Neighborcity.com website.

**From:** Ben Major [mailto:ben@neighborcity.com]
**Sent:** Sunday, April 29, 2012 12:47 PM
**To:** Boyd@BoydCampbell.com
**Subject:** Boyd, I have a client who is interested in 5615 HAWTHORNE ST in Cheverly

Hi Boyd,

I would like to introduce you to our client Linda B., on a standard broker-to-broker referral basis. Linda is not currently working with another agent and is interested in getting more information on a property in Cheverly. I've identified you as a qualified local agent.

Property Information
Address: 5615 HAWTHORNE ST, Cheverly, MD 20785
MLS: PG7817605
Price: $279,900

Client comments: *"Please contact me to confirm a viewing of this property on 04/30/2012 in the evening. Thank you. I would like to work with a buyers agent; I can only purchase a house after the sale of my n.w. dc petworth house"*

Our referral fee is 30% of your broker's gross commission (one side only) and there are never any other fees.

To learn more about this client and how to work with NeighborCity, please visit this page:
http://www.neighborcity.com/agent-claim-buyer/?source=email&key=9a07734d3bbbb180d79c8d4ee62d7c89/

5

Our clients are claimed on a first-come, first-serve basis.

If you have any questions, concerns, or need immediate assistance please feel free to reply or contact me directly at 1(800) 357-3321. Otherwise, the link above will explain everything.

I look forward to working with you!

Kind regards,

Ben Major
Client Specialist
ben@neighborcity.com
(800) 357-3321
NeighborCity is part of American Home Realty Network, Inc. (License# 1825905)

NeighborCity.com also directs its activities to Maryland by generating and providing to

users "ratings" of Maryland real estate agents through its "Agent Match" feature, as shown in the

search below for real estate agents in Rockville, located at

http://www.neighborcity.com/MD/Rockville/agent-search-results/.  (Cooke Decl. ¶ 4, Exhibit 3.)



Each agent is given an "NC Agent Score" by NeighborCity.com that, according to

NeighborCity.com, "represents this real estate agent's performance when working with buyers

and sellers to list, purchase and sell their properties, relative to their agent peer group." (Cooke Decl. ¶ 4, Exhibit 3), Agent Match Profile for Boyd Campbell, located at http://www.neighborcity.com/MD/agent-profile/607614-Boyd-Campbell/.) NeighborCity.com solicits Maryland agents featured on the website to "claim" their profile, stating: "*Is this you? Claim your profile today!*" (Cooke Decl. ¶ 5, Exhibit 4.) These materials show, among other things, that the listing broker or agent does not know that NeighborCity.com is using and publicly displaying their listings.

As the founder and Chief Executive Officer of AHR, Defendant Cardella directs, manages, and supervises activities of AHR and NeighborCity.com, including those activities that target Maryland property buyers and real estate professionals, described above. Cardella's statements on behalf of AHR to publications available in Maryland, including the *New York Times* (Cooke Decl. ¶ 6, Exhibit 5), the *Boston Herald* (Cooke Decl. ¶ 7, Exhibit 6), and *Inman News*[1] (Cooke Decl. ¶ 8, Exhibit 7) exemplify his role as the "public face" of AHR and demonstrate his involvement in all aspects of AHR's business. Cardella has responded publicly and directly to real estate professionals who comment on AHR's rating system and point out the inaccuracies of NeighborCity.com vis-à-vis MRIS, as shown in the "Comments" section of the *Inman News* article, as illustrated below:

---

[1] *Inman News* is a prominent source of news for the real estate industry.



Cardella also uses his Twitter account, located at http://twitter.com/#!/joncardella, to "tweet" reviews for real estate professionals located in Maryland (Cooke Decl. ¶ 9, Exhibit 8):

**jonathan cardella** @**joncardella**

Realtor® Performance Profile for Catherine Cusack in Edgewater, MD
http://www.neighborcity.com/MD/agent-profile/2046409-Catherine-Cusack/

AHR is built in large part upon its continuing, blatant, verbatim infringement of the MRIS Database. As founder and CEO, Cardella has used social media and more traditional media outlets to promote and defend AHR's activities in Maryland.

AHR and Cardella's activities constitute persistent, continuous, and ongoing contacts with Maryland. These activities caused and continue to cause MRIS, Maryland real estate professionals, and Maryland residents injury, justifying this Court's exercise of personal jurisdiction in this matter.

## III.   ARGUMENT

### A.   The District of Maryland Has Personal Jurisdiction over Defendants AHR and Cardella

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the requirements of the forum state's long-arm statute are satisfied, and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1. When a district court addresses the issue of personal jurisdiction on the basis of motion papers and legal memoranda, without an evidentiary hearing, a plaintiff need only make a prima facie showing of a "sufficient jurisdictional basis." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). The court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

### 1.   Personal Jurisdiction Is Proper Under the Maryland Long-Arm Statute and Due Process Standards

The Maryland Court of Appeals has held that the Maryland Long-Arm Statute is coextensive with the scope of jurisdiction permitted by due process standards, and therefore the statutory and constitutional inquiries merge. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003); *see also Bond v. Messerman*, 892 A.2d 990, 999 (Md. 2006) (finding that Maryland courts "have construed [the] long arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause").

The Maryland Long-Arm Statute provides in relevant part that a court may exercise personal

jurisdiction over a person, who directly or by an agent:

> (1) transacts any business or performs any character of work or service in the state;
>
> . . .
>
> (4) causes tortious injury in the state or outside of the state if he regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state; . . . .

Md. Code. Ann., Cts. & Jud. Proc. § 6-103(b)(1)-(4).  After determining whether a defendant's

conduct violates a specific provision of the Maryland Long-Arm Statute, the court must then

determine whether the exercise of specific personal jurisdiction comports with due process.  The

Due Process Clause is satisfied if the defendant has "certain minimum contacts with [the forum]

such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

To establish "minimum contacts," the defendant's actions must be "such that [the defendant]

should reasonably anticipate being haled into court [in the forum state]."  *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In determining whether a defendant's contacts with the forum give rise to specific

jurisdiction, the court must consider: "(1) the extent to which the defendant [has] 'purposefully

avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs'

claims arise out of those activities directed at the State; and (3) whether the exercise of personal

jurisdiction would be constitutionally 'reasonable.'"  *ALS Scan, Inc. v. Digital Serv. Consultants,*

*Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (alteration in original); *see also Consulting Eng'rs*,

561 F.3d at 279 (stating the constitutional "reasonableness" factors).

10

Where a nonresident defendant acts outside of the forum in a manner that causes injury in the forum, the court may apply the "effects test."  Under the "effects test," a court may exercise specific jurisdiction over a nonresident defendant who has "expressly aimed" his tortious conduct at the forum state, knowing that the injury would be felt there.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  The Fourth Circuit has adapted the "effects test" in the Internet context, and specific jurisdiction "may be based only on an out-of-state person's Internet activity directed at Maryland and causing injury that gives rise to a potential claim cognizable in Maryland."  *ALS Scan*, 293 F.3d at 714.

Applying these due process standards, personal jurisdiction is proper under § 6-103(b)(1) when a defendant "[t]ransacts any business or performs any character of work or service in the State," and does not require that the defendant be physically present in Maryland.  *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est*., 374 F. Supp. 2d 465, 472 (D. Md. 2005) (alteration in original).  This provision requires that defendant conduct actions which "culminate in purposeful activity within the state."  *Bahn v. Chi. Motor Club Ins*., 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993).  "Purposeful activity" may be shown by a nonresident defendant initiating contact with the forum state.  *See Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692-93 D. Md. 2002).

Pursuant to § 6-103(b)(4), a Maryland court may exercise personal jurisdiction over a nonresident defendant who "[c]auses tortious injury in the State or outside of the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State . . . ."  Md. Code. Ann., Cts. & Jud. Proc. § 6-103(b)(4).  Copyright infringement is an intentional tort, and a defendant's persistent course of conduct in committing copyright infringement satisfies § 6-103(b)(4).  *See CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660,

671-72 (D. Md. 2009) (citing *Teletronics Int'l, Inc. v. CNA Ins. Co./Transp. Ins. Co.*, No. 04-1509, 2005 WL 115487, at *3 n.3 (4th Cir. Jan. 20, 2005)).

a.       **The District of Maryland Has Personal Jurisdiction over AHR**

Defendant AHR's forum-related activities satisfy both § 6-103(b)(1) and § 6-103(b)(4) of the Maryland Long-Arm Statute, in accordance with due process standards.  Given AHR's targeting of Maryland, Maryland real estate professionals, and Maryland property buyers through NeighborCity.com, and its tortious conduct toward MRIS, AHR's statement that it could not have "reasonably anticipated being haled into a Maryland court" (Def. AHR Mot. 19) is without merit.

AHR recognizes that its nationwide referral business means that it could be haled into court in any jurisdiction where it solicits real estate property purchasers and sellers, and real estate professionals who are willing to pay AHR a referral fee.  NeighborCity.com's own website Terms of Use Agreement ("TOU") concedes jurisdiction in each state in which it lists properties.  Paragraph 8 of the TOU states that, in the event a dispute arises with regard to any of the listings featured on that site, that the "applicable law shall be the law of the state (i) where you reside; (ii) where the property which is the subject of the dispute is located, and/or (iii) where the broker most connected to the issue in dispute is licensed . . . ."  (Cooke Decl. ¶ 10, Exhibit 9, NeighborCity.com's Terms of Use.)  AHR's TOU acknowledges that it expects to be subject to litigation in *any* forum where a visitor to NeighborCity.com is located, where a property at issue is located, or where the broker for that listing is located.  AHR therefore clearly anticipated and recognized that jurisdiction is directly connected to the location of its website users, and of the properties displayed on its site.

12

i.      **AHR's Forum-Related Activities Satisfy § 6-103(b)(1)**

AHR's contacts with Maryland "culminate in purposeful activity within the state" and

justify application of § 6-103(b)(1) of the Maryland Long-Arm Statute.  *Bahn*, 634 A.2d at 67.

As an initial matter, AHR has represented itself as holding a Maryland real estate license

and as being located in and conducting business in Maryland, and in particular, Gaithersburg.

Prior to the filing of the Complaint, the NeighborCity.com website stated the following, as

shown in Exhibits A-1, A-2, A-3, A-4, A-5, and A-6 to the Complaint:



AHR revised the NeighborCity.com website to remove these jurisdictional admissions only after

the MRIS Complaint was filed.  AHR cannot rely on post-filing changes to its website to

disguise the fact that AHR previously represented that its "headquarters" was located in

Maryland and that it held a Maryland real estate license.  Moreover, AHR's sister entity,

American Home Realty Network, LLC, is located in Gaithersburg.  The relationship between

these entities is described on the NeighborCity.com disclaimer page found at

http://www.neighborcity.com/disclaimer/ (*see* Cooke Decl. ¶ 11, Exhibit 10), which states:

> American Home Realty Network, LLC and American Home Realty Network, Inc.
> (American) are brother/sister entities that are organized in the state of Delaware.
> For convenience of reference the term "American" will be used to refer [to] one
> or both of these entities.

AHR cannot assert a connection with Maryland and/or a Maryland entity to further its business

goals, but then hide that connection to shield itself from the jurisdiction of this Court.

AHR's persistent course of conduct in Maryland includes copying and displaying MRIS copyrighted content, including Maryland properties that are listed for sale on the NeighborCity.com website, soliciting customers in Maryland who are interested in Maryland real estate properties, soliciting real estate professionals who are willing to represent an AHR referral customer in exchange for paying AHR a referral fee, and conducting business in Maryland by entering into referral agreements with Maryland real estate brokers.

### (a)   The NeighborCity.com Website Targets Maryland

NeighborCity.com may be a real estate search engine, but it is not a "passive" website. AHR's targeting of the MRIS Database content in the course of its targeting Maryland real estate profesionals and consumers through its NeighborCity.com website constitutes "purposeful activity" in Maryland.  NeighborCity.com, though "national" in its scope, targets local real estate markets across the United States, including Maryland.  NeighborCity.com permits website visitors to search the site for real estate listings by locale or neighborhood, by real estate agent or broker, and by MLS number.  These search criteria focus on and target particular geographic areas and neighborhoods within Maryland and other specific jurisdictions.  Despite Defendants' arguments to the contrary, the representation that "currently only 2.58 percent of all real estate listings appearing on the site (active and closed) are for properties located in Maryland" (Def. AHR Mot. 18) does not change the fact that these listings target Maryland residents, and justify this Court's exercise of personal jurisdiction.

Through the NeighborCity.com website, Maryland users are able to connect to a Maryland real estate professional.  NeighborCity.com facilitates making these connections with Maryland real estate professionals, assists in scheduling a viewing of Maryland properties the user wants to see, makes suggestions of local Maryland real estate professionals, and monitors

the relationships it recommends with Maryland real estate professionals.  And for sellers, NeighborCity.com provides an 800 telephone number and recommends Maryland real estate professionals to represent the seller.  (*See* Cooke Decl. ¶ 12, Exhibit 11, NeighborCity.com Frequently Asked Questions.)

Despite Defendants' protestations, NeighborCity.com is not an "essentially passive website that does 'little more' than make information available to those who might be interested."  (Def. AHR Mot. 18.)  To the contrary, and as detailed above, NeighborCity.com's Maryland-focused activities manifest a specific intent to reach out to Maryland residents.  *See Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (finding that the question for purposes of asserting personal jurisdiction is whether the defendant "manifested an intent to direct [its] website content . . . [to the forum state's] audience").  In addition, this Court has held that Internet activities aimed at "causing, informing, and guiding" action on the part of Maryland real estate owners are sufficient to establish personal jurisdiction.  *Mascendaro v. Sadr*, No. 09-cv-02787, 2010 WL 1427499 at * 4 (D. Md. Apr. 8, 2010) ("While mere internet posting may be insufficient to establish personal jurisdiction absent some level of targeting the audience in question, in this case, Ms. Sadr's email appears to be sent with the intent of causing, informing, and guiding action by property owners in the state of Maryland.").  NeighborCity.com posts and publicly displays copyrighted real estate listing content, taken without authorization verbatim from the MRIS Database, to "cause, inform, and guide" Maryland residents' decisions regarding the buying and selling of real estate properties.

### (b)    AHR's Referral Business Targets Maryland

AHR's "purposeful activity" in Maryland includes its referral business.  Through NeighborCity.com, AHR refers customers to agents and brokers located in Maryland.  As part of its referral business, AHR solicits and recruits agents and brokers in Maryland who are willing to

accept referral customers in exchange for a 30% referral fee.  As shown above, Ben Major, a client specialist at AHR, sent an unsolicited email to Boyd Campbell, a Maryland real estate broker and MRIS subscriber, stating, "I would like to introduce you to our client Linda B., on a standard broker-to-broker referral basis.  Linda is not currently working with another agent and is interested in getting more information on a property in Cheverly.  *I've identified you* as a qualified local agent . . . . Our referral fee is 30% of your broker's gross commission (one side only) and there are never any other fees."  (Emphasis added.)  (*See* Campbell Decl. ¶ 4, Exhibit 1.)  Through such solicitations, AHR initiates contact with "identified" Maryland real estate agents, offers a "broker-to-broker" referral with a referral fee of 30%, and states that clients are "claimed on a first-come, first-serve basis."  (*Id.*)

In its Motion to Dismiss, AHR attempts to minimize the business relationships formed by its referral business in Maryland, stating that "since its inception, only 2.05 percent of referral agreements have been with Maryland brokers; and revenue from Maryland referrals during 2011 and 2012 has been only 2.4 percent of total revenue."  (Def. AHR Mot. 19.)  This argument, similar to AHR's claim that it does not target Maryland residents because "currently only 2.58 percent of all real estate listings appearing on the site (active and closed) are for properties located in Maryland" (*id.* at 18), actually substantiates AHR's contacts with Maryland.

AHR cites *Ratliff v. Cooper Laboratories, Inc*., 444 F.2d 745 (4th Cir. 1971), *Wolf v. Richmond County Hospital Authority*, 745 F.2d 904, 909 (4th Cir. 1984), and *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993), for the proposition that conducting 2-3% of a company's business in a state is insufficient to establish jurisdiction over that company.  This reliance is misplaced.  *Ratliff* involved a dispute between a *nonresident* plaintiff suing a *nonresident* drug company that had minimum contacts with Maryland.  444 F.2d at 748.  The

court in *Wolf* found that the defendant never solicited any business in South Carolina, and the claims arose in Georgia rather than South Carolina.  745 F.2d at 910.  In *Nichols*, none of the plaintiffs resided in Maryland and none of the causes of action arose here.  991 F.2d at 1199. Indeed, the *Nichols* court observed that

> "[t]his Court did hold in *Lee v. Walworth Valve Co.*, 482 F.2d 297 (4th Cir. 1973), that *promotional and solicitation activities by a non-resident corporate defendant* in South Carolina *were sufficient by themselves* to justify general jurisdiction in South Carolina over a suit brought by a South Carolina resident.  *Lee* relied heavily, and distinguished *Ratliff*, on the grounds that, first, South Carolina had an interest in the case because it involved a South Carolina plaintiff, *id.* at 299-300, and, second, South Carolina was as appropriate a forum as any other state because the cause of action arose in Cuba, *id.* at 299.  *Lee* is not applicable in considering the case at bar because neither ground exists in this case, which is similar to *Ratliff.*  First, *none of the plaintiffs here* [in the *Lee* case] *are Maryland residents* and, second, Maryland is a less appropriate forum than Illinois, where Searle has its principal place of business, or than any other of the states where plaintiffs' causes of action arose."

*Nichols*, 991 F.2d at 1199 n.3 (emphases added).

MRIS's status as a Maryland plaintiff and AHR's admissions regarding the scope of its business in Maryland support the proposition that AHR targets Maryland real estate professionals, and justify this Court's exercise of personal jurisdiction.  AHR's direct solicitation of Maryland real estate professionals like Boyd Campbell, referral agreements with Maryland real estate professionals, as well as its targeting of Maryland residents and properties via NeighborCity.com, constitute "purposeful activity" that justifies the exercise of personal jurisdiction over AHR under § 6-103(b)(1) of the Maryland Long-Arm Statute.

### ii.    AHR's Tortious Conduct Satisfies § 6-103(b)(4)

AHR's persistent course of conduct, as described above, includes AHR's unauthorized use of copyrighted content from the MRIS Database.  AHR's copyright infringement constitutes tortious conduct that has caused MRIS injury in Maryland, and thus satisfies § 6-103(b)(4) of the

Maryland Long-Arm Statute.  *See CoStar Realty Info.*, 612 F. Supp. at 671-72 ("copyright infringement is an intentional tort").

As alleged in the Complaint, AHR misappropriates real estate listings from or sourced from the MRIS Database, stored on servers at MRIS's headquarters in Rockville, Maryland, and uses that content on NeighborCity.com for its own commercial purposes.  (Compl. ¶ 27.)  The presence of the MRIS copyright notice affixed to materials publicly displayed by AHR on NeighborCity.com establishes AHR's unlawful copying.  (*See id*. at Exhibits A-1, A-2, A-3, A-4, A-5, A-6.)  AHR has never acquired a license or any form of permission from MRIS allowing Defendants to access, reproduce, modify, publicly display, or otherwise use the MRIS Database, or any portion thereof.  (*Id*. ¶ 28.)

In addition, NeighborCity.com admits to verbatim copying, stating in Paragraph 9 of its "TOU" that real estate listings taken from MLS operators like MRIS are not altered in any way before being posted and displayed publicly on the site:

> 9. You understand that all the data on properties available for sale or rent is maintained by various real estate brokers, real estate agent boards, MLSs and associations in the communities where you are searching or where your property is located. These local boards of real estate are independent of American and are solely responsible for the accuracy of the information on properties entered into their own MLS data. American does not alter or add to this information on the properties in any way.

(Cooke Decl. ¶ 10, Exhibit 9.)

AHR's tortious conduct causes MRIS injury in Maryland by hindering MRIS's ability to control the means and methods by which it administers the MRIS Database; its copyrighted works will be seen by the public, impermissibly compromising its rights as a copyright owner. *Splitfish AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 467 (E.D. Va. 2010) ("[A]llowing defendants to continue to distribute products containing plaintiffs' copyrighted work would 'deprive the

copyright holder of intangible exclusive rights' to control the means and methods by which its work will be seen by the public."). This usurpation of MRIS's control of its copyrighted materials injures MRIS, as well as the Maryland brokers who have entrusted their content to MRIS. (Declaration of John Heithaus in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss ("Heithaus Decl.") ¶¶ 9-12.) The harm caused by AHR's tortious conduct is exemplified by AHR's distribution of out-of-date information from the MRIS Database on NeighborCity.com, tarnishing MRIS's reputation as the source of accurate and reliable MLS information. (*Id.* ¶ 11.) This harm is acutely felt by MRIS in Maryland, and by Maryland real estate professionals whose listings are posted inaccurately by AHR on NeighborCity.com. (*Id.* ¶ 10.)

AHR's tortious conduct extends beyond copyright infringement to include violations of the Lanham Act and tortious conversion of MRIS Database content. AHR's unauthorized use of MRIS's copyrighted content bearing a copyright notice and the MRIS trademark is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of AHR's referral and ratings services, and, as such, constitutes false designation of origin and unfair competition under Section 43(a) of the Lanham Act. The harm associated with AHR's misuse of the MRIS mark is felt by MRIS in Maryland, and by Maryland residents who rely upon real estate listings on NeighborCity.com under the false belief that such content is sponsored and approved by MRIS when in fact it is not.

AHR's misappropriation of the MRIS Database and conversion of the information contained therein for its own commercial use and benefit constitutes tortious conversion. This misappropriation harms MRIS and is felt directly in Maryland, where MRIS has invested time,

resources, and effort to create the MRIS Database.  (*Id*. ¶ 10.)  AHR is unjustly enriched by this misappropriation and owes MRIS compensation for AHR's use of the MRIS Database.

Given AHR's active participation in posting real estate listings for Maryland properties; initiation of contact with MRIS agent and broker subscribers based in Maryland; its purposeful and unauthorized use, reproduction, public display, and distribution of content from the MRIS Database; its assertion that it holds a Maryland real estate license; and, its identification of a "headquarters" in Maryland and the location of its "sister entity" in Maryland, AHR's claim that it lacked knowledge that it could be subject to suit in this District is without merit.  In addition, for many of the reasons discussed below with regard to venue, and the contacts AHR has with this District, there is no question that the Court's jurisdiction over this dispute is "reasonable." Accordingly, this Court has personal jurisdiction over AHR under § 6-103(b)(1) and (4) of the Maryland Long-Arm Statute.  Defendant AHR's Rule 12(b)(2) Motion to Dismiss should be denied.

> **b.**	**The District of Maryland Has Personal Jurisdiction over Cardella**

Defendant Cardella's forum-related activities satisfy both § 6-103(b)(1) and § 6-103(b)(4) of the Maryland Long-Arm Statute, in accordance with due process.  Defendant Cardella argues in his Motion to Dismiss that personal jurisdiction over him is improper because, among other things, he does not "conduct business in Maryland" and "has never been in the State of Maryland."  (Def. Cardella Mot. 1.)  As an initial matter, the fact that Cardella has never been to Maryland does not prevent this Court from exercising jurisdiction over him under the Maryland Long-Arm Statute.  *Johns Hopkins Health Sys.*, 374 F. Supp. 2d at 472 (not required that defendant be physically present in Maryland for § 6-103(b)(1) to apply).

A corporate officer or agent can be held liable for a tort, including copyright

infringement, that they "'personally commit, or which [they] inspire or participate in, even

though performed in the name' of the corporation."  *Planet Techs., Inc. v. Planit Tech. Grp.,*

*LLC*, 735 F. Supp. 2d 397, 402 (D. Md. 2010) (alteration in original) (quoting *Allen v. Dackman*,

991 A.2d 1216, 1228 (Md. 2010)).  Contrary to Cardella's arguments (Def. Cardella Mot. 5-6),

this Court has asserted personal jurisdiction over a chief executive officer (CEO) under the

Maryland Long-Arm Statute and due process standards, based on the "fact that he allegedly

committed intentional torts in his [corporate] capacity . . . [and] as a result of his personal

participation in the alleged wrongdoing directed at a Maryland resident."  *Planet Techs.*,

735 F. Supp. 2d at 404 n.2.  In asserting personal jurisdiction over a CEO, this Court has applied

the "effects test," which requires the plaintiff to establish that a nonresident defendant

"(1) . . . committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum,

such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly

aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of

the tortious activity."  *Id.* at 403 (citing *Carefirst of Md.*, 334 F.3d at 398 n.7).  To establish the

third prong of the "effects test," a plaintiff must show that the defendant "knew that the plaintiff

would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to

specific activity indicating that the defendant expressly aimed his tortious conduct at the forum."

*CoStar Group, Inc. v. LoopNet, Inc*., 106 F. Supp. 2d 780, 785 (D. Md. 2000) (citation omitted).

As CEO of AHR, Cardella conducts business in Maryland.  According to Defendants,

AHR is a "small California real estate broker with nine (9) employees."  (Def. AHR Mot. 1).

The limited size of AHR's staff alone makes it implausible that Cardella is *not* personally

involved in AHR's unauthorized reproduction, distribution, or public display of copyrighted

21

material from the MRIS Database and solicitation of Maryland real estate agents and brokers for

AHR's referral program.  As a founder, investor, and CEO, and as the public face of the

company, Cardella furthered AHR's business, which is built in part upon AHR's infringement of

the MRIS Database.  Cardella manages and supervises the activities of AHR and its website

NeighborCity.com in his role as CEO, including those "purposeful activities" detailed above that

give rise to jurisdiction under § 6-103(b)(1) and the tortious conduct that gives rise to jurisdiction

under § 6-103(b)(4).  Cardella's statements to the *New York Times*, *Boston Herald*, and to *Inman

News* (*see* Cooke Decl. ¶¶ 6-8, Exhibits 5, 6, and 7) underscore his role as the "public face" of

AHR and demonstrate his involvement in all aspects of AHR's business.  Cardella has also

responded publicly and directly to real estate agents who object to AHR's rating system and

point out the inaccuracies of NeighborCity.com vis-à-vis MRIS, as shown in the "Comments"

section of the *Inman News* article (*see* Cooke Decl. ¶ 8, Exhibit 7), and described above.  In

addition, Cardella uses his Twitter account, located at http://twitter.com/#!/joncardella, to

"tweet" reviews for real estate professionals located in Maryland.  (*See* Cooke Decl. ¶ 9, Exhibit

8.)

   Cardella's involvement in AHR's operations as CEO satisfies the "effects test."  Through

his active management and supervisory activities as CEO, Cardella has participated in AHR's

infringement of copyrighted material in the MRIS Database, as well as its Lanham Act violations

and tortious conversion of the MRIS Database for AHR's commercial gain.  MRIS has felt the

"brunt of the harm" related to the infringement in Maryland, such that Maryland can be said to

be "the focal point of the harm."  *See Planet Techs.*, 735 F. Supp. 2d at 403.  Cardella and AHR

have expressly aimed their tortious conduct at Maryland, specifically, the MRIS Database owned

and operated therein, such that Maryland can be said to be the focal point of Cardella's and

AHR's tortious activity. *Id.* Accordingly, this Court has personal jurisdiction over Cardella under § 6-103(b)(1) and (4) of the Maryland Long-Arm Statute. Defendant Cardella's Rule 12(b)(2) Motion to Dismiss should be denied.

**B.    Venue Is Proper in the District of Maryland and This Case Should Not Be Transferred**

**1.    Venue Is Proper Under 28 U.S.C. § 1391**

To establish proper venue under 28 U.S.C. § 1391(b)(1), a plaintiff must show that the defendants are subject to personal jurisdiction in this Court. Venue is also proper under 28 U.S.C. § 1391(b)(2) in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of [the] property that is the subject of the action is situated." In ruling upon a Rule 12(b)(3) motion to dismiss for improper venue, a court is free to look at matters outside of the pleadings; however, the court still must draw all reasonable inferences in the light most favorable to plaintiff. *See Silo Point II LLC v. Suffolk Constr. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008).

Venue is proper in the District of Maryland under 28 U.S.C. § 1391(b)(1), because, as discussed above, Defendants are subject to personal jurisdiction in this District. Defendants' "purposeful activities" directed toward Maryland residents, including property buyers and real estate professionals, and tortious conduct toward MRIS and the MRIS Database, give rise to personal jurisdiction under § 6-103(b)(1) and (4) of the Maryland Long-Arm Statute.

Venue is also proper in this District under 28 U.S.C. § 1391(b)(2). In a copyright infringement action, "the property that is the subject of the action" includes the copyrighted material at issue in the litigation. *See CoStar Realty Info., Inc. v. Copier Country N.Y., LLC*, No. 08-cv-3469, 2009 WL 3247431, at *5 (D. Md. Oct. 1, 2009) (finding Maryland to be the proper venue in part because plaintiff's web-based services, including a real-estate database,

23

were based in Maryland); *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 773 (D. Md. 2009) (finding Maryland to be proper venue in part because "Plaintiffs' servers and associated copyrighted material, which constitute property that is the subject of the action, are located in Maryland").  MRIS operates and maintains the MRIS Database from its headquarters in Rockville, Maryland, and Defendants have misappropriated and continue to misappropriate copyrighted content from or sourced from the MRIS Database.

### 2.    Transfer Is Not Warranted Under 28 U.S.C. § 1404

Defendants AHR and Cardella do not move to transfer venue in this action, only to dismiss this action for improper venue under Rule 12(b)(3).  (Def. AHR Mot. 20-22.) Defendants imply that California would be a more proper venue, describing AHR as a "small California real estate broker with nine (9) employees."  (*Id.* at 1.)

Transfer of this case is not warranted under 28 U.S.C. § 1404.  Section 1404(a) provides that "[f]or the convenience of [the] parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Factors relevant to determining whether a transfer of venue is proper include (1) the weight accorded to the plaintiff's choice of venue, (2) witness convenience and access, (3) the convenience of the parties, and (4) the interests of justice. *AAI Corp. v. Applied Geo Techs., Inc.*, No. 11-608, 2011 WL 3678903, at *3 (D. Md. Aug. 22, 2011) (citing *Davis Media Grp., Inc. v. Best W. Int'l, Inc*., 302 F. Supp. 2d 464, 470 (D. Md. 2004)).  The moving party bears the burden of establishing that transfer to another venue is proper.  *Id.* at *2 (citing *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 857 (D. Md. 2009)).  A plaintiff's choice of venue, if proper, is entitled to substantial weight, and should not ordinarily be disturbed without a very compelling justification.

24

Applying the factors above to the case at bar, Maryland is the proper venue.  Maryland is

MRIS's chosen forum, and MRIS's headquarters is located in Rockville, Maryland.  In addition,

MRIS's expected witnesses and documentation relating to Defendants' infringing activities are

located in Maryland.  Consequently, MRIS's choice of forum in the U.S. District Court for the

District of Maryland is entitled to deference and should not be disturbed.

    **C.**    **Defendants' Rule 12(b)(6) Motion Must Be Denied**

        **1.**    **MRIS Has Made a Prima Facie Case of Copyright Infringement**

To overcome a motion to dismiss, a plaintiff must provide in the complaint a "short and

plain statement of the claim showing that the pleader is entitled to relief."  *Erickson v. Pardus*,

127 S. Ct. 2197, 2200 (2007).  In that statement, "specific facts are not necessary; that statement

need only give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests."  *Id*.  In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court

must view the well-pleaded material allegations in the light most favorable to the plaintiff, and

accept the factual allegations contained within plaintiff's complaint as true.  *See CoStar Realty*

*Info.*, 612 F. Supp. 2d at 673-74 (citing *Estate Constr. Co. v. Miller & Smith Holding Co.*,

14 F.3d 213, 217-18 (4th Cir. 1994)).

To state a prima facie case for copyright infringement, a plaintiff must allege

"(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original."  *CoStar Group, Inc. v. LoopNet, Inc*., 373 F.3d 544, 549 (4th Cir. 2004) (quoting

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)).  No heightened pleading

standard exists for copyright infringement, and MRIS need only state that it holds valid

copyrights to the MRIS Database, and that Defendants infringed upon the original works

contained in that database.  *CoStar Realty Info.*, 612 F. Supp. 2d at 674 (citing *JetForm Corp. v.*

*Unisys Corp*., 11 F. Supp. 2d 788, 789-90 (E.D. Va. 1998)).

In its Complaint, MRIS established that (1) it owns valid copyright registrations to the MRIS Database, and (2) Defendants have taken original, copyrighted material from the MRIS Database without authorization for reproduction and public display on the NeighborCity.com website.  As alleged in the Complaint, MRIS owns copyrights in and to the unpublished MRIS Database, as evidenced by its federal copyright registrations issued by the  Copyright Office, including but not limited to: Registration No. TXu 001589556 (2008); Registration No. TXu 001706869 (2008); Registration No. TXu 001706872 (2009); Registration No. TXu 001734839 (2010); Registration No. TXu 001778182 (2011); and Registration No. TXu 001788712 (2012). (*See* Compl. ¶ 18; *see also* Cooke Decl. ¶ 14, Exhibit 13.)

Under 17 U.S.C. § 410(c), a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate."  The Fourth Circuit has held that a certificate granted by the Copyright Office "is prima facie proof of the validity of plaintiff's copyright, including the existence of the elements of originality and fixation."  *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986).

Where, as here, "there [is] clear proof of actual copying by the defendants, that is the end of the case."  *Id.* at 445.  Defendants admit in their Terms of Use that NeighborCity.com publishes and displays the property listings from listing services without alteration.  (*See* Cooke Decl. ¶ 10, Exhibit 9.)  MRIS has shown that NeighborCity.com displays photographs and other copyrighted material bearing a "© MRIS" notice without authorization from MRIS.  (*See* Cooke Decl. ¶ 3, Exhibit 2; *see also* Compl. at Exhibits A-1, A-2, A-3, A-4, A-5, A-6.)  Notably, Defendants do not deny that they copied the MRIS Database nor did AHR or Cardella allege any facts in their Motions to Dismiss establishing that they have the right to use any such materials.

Consequently, MRIS has stated an uncontroverted claim for copyright infringement, and dismissal under Rule 12(b)(6) is improper.

### 2. MRIS' Copyright Registrations to the MRIS Database Include the Constituent Elements Contained Therein

MRIS's copyright registrations for the MRIS Database cover the material, namely, photographs and text, contained therein and were filed according to Copyright Office procedure and duly accepted by the Copyright Office. Defendants incorrectly allege that MRIS's copyright registrations are limited to the MRIS Database as a whole, and do not cover the material contained therein because MRIS did not "provide the names of all authors of independent works contained in the database" to the Copyright Office during the registration process, in violation of Section 409 of the Copyright Act. (Def. AHR Mot. 10.) To support this argument, Defendants cite *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010); *Bean v. Houghton Mifflin Harcourt Publishing Co.*, No. CV10-8034-PCT-DGC, 2010 WL 3168624, at *6-7 (D. Ariz. Aug. 10, 2010); and *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, No. 3:09-cv-0061-HRH, 2010 WL 3785720, at *11-12 (D. Alaska Sept. 21, 2010).[2]

#### a. Fourth Circuit Precedent Strongly Favors MRIS

The Fourth Circuit has held that copyright in a compilation extends to its constituent elements. *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003), *abrogated on other grounds by Reed Elsevier v. Muchnick*, 130 S. Ct. 1237, 1241 (2010). In *Xoom*, the Fourth Circuit held that an owner's registration of a compilation was sufficient to permit an infringement action with regard to individual works contained therein. *Id*. at 283 (citing *Morris*

---

[2] The *Bean* and *Alaska Stock* decisions are currently on appeal with the Ninth Circuit (Case Nos. 10-16771 and 10-36010, respectively). The Ninth Circuit has indicated that the cases will be heard together. The *Muench* case continues to be actively litigated in the U.S. District Court for the Southern District of New York.

*v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001)).  While the Court did not make a determination of whether clip art works were effectively individually registered via the compilation registration, it found that "[i]f Xoom improperly used *any* copyrightable image contained in [the] SuperBundle and Master Gallery [compilations], new or preexisting, that usage would give rise to potential statutory damages."  *Id*. at 284 (emphasis in original).  *See also Masterfile v. Gale*, No. 2:09-cv-966, 2011 WL 4702862, at *2 (D. Utah Oct. 4, 2011) ("[T]he court declines to apply the reasoning in *Muench* to this case.  The disputed images in this case were registered as part of a collected work in an automated database.  'Registration of a collection extends copyright protection to each copyrightable element in the collection.'" (citing *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 841 (M.D. Tenn. 2006))).

Additionally, the Fourth Circuit has previously recognized that MLS databases are subject to copyright protection.  *Montgomery Cnty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 810 (D. Md. 1995) (holding that an MLS's database of property listings possessed the minimum decree of creativity to be protectable, even without the incorporation of the property photos), *aff'd on other grounds*, 91 F.3d 132 (4th Cir. 1996).

> **b.**   ***Muench***, *Alaska Stock***, and** *Bean* **Are Distinguishable on Their Facts and Inapposite**

Not only does Fourth Circuit precedent support MRIS, the facts in *Muench*, *Alaska Stock*, and *Bean* are distinguishable from the facts as pleaded in MRIS's Complaint and, accordingly, the decisions are not persuasive.  MRIS owns the MRIS Database, owns copyright registrations for the MRIS Database, and MRIS's copyright ownership claims extend to the constituent elements MRIS has contributed to the MRIS Database.  In addition, MRIS is responsible for the selection and arrangement of material in the MRIS Database, and is the author of materials

contained therein.  As stated in the MRIS TOU with its subscribers (Heithaus Decl. ¶ 7, Exhibit 1):

> All images submitted to the MRIS Service become the exclusive property of Metropolitan Regional Information Systems, Inc. (MRIS).  By submitting an image, you hereby irrevocably assign (and agree to assign) to MRIS, free and clear of any restrictions or encumbrances, all of your rights, title and interest in and to the image submitted.  This assignment includes, without limitation, all worldwide copyrights in and to the image, and the right to sue for past and future infringement.

Under the MRIS TOU, all individual images contained within the MRIS Database are the property of MRIS, and are irrevocably assigned to MRIS.  (*Id.*)  MRIS holds the exclusive right to enforce copyrights for such works.  (*Id.*)  MRIS subscribers execute the MRIS TOU as part of the upload process for new listings, and all photographs uploaded by that subscriber become the property of MRIS before being added to the MRIS Database.  (Heithaus Decl. ¶ 8).

MRIS's copyright applications for the MRIS Database were filed in accordance with the Copyright Act and Copyright Office procedure, and the resulting registrations are valid and subsisting.  Per 17 U.S.C. § 103(b), copyright in a compilation "extends only to the material contributed by the author of such work."  MRIS, the author of the MRIS Database, contributes all photographs to the MRIS Database via the TOU and the upload process for images.  Consequently, under 17 U.S.C. § 103(b), MRIS's copyright in the MRIS Database extends to all photographs contained therein.  These photographs constitute "material" contributed by MRIS, the author of the compilation.  Moreover, MRIS is not similarly situated to the plaintiff in *Muench*.  In *Muench*, Muench Photography, Inc. assigned its very limited rights to Corbis Corporation "solely for the purposes of copyright registration," and Corbis reassigned those rights after registration.  *Muench*, 712 F. Supp. 2d at 87 (emphasis omitted).  In contrast, MRIS is the owner of the MRIS Database, owner of all copyrights to the images contained therein by

29

irrevocable assignment, and holds the right to sue with regard to materials contributed to the MRIS Database.

Defendants' reliance on *Alaska Stock* is also misplaced.  In addition to the settled law that registration of a collection extends to the constituent parts of the collection, Alaska Stock LLC, unlike MRIS, did not author any works in the compilation at issue in that case, and the opinion does not elaborate upon what assignment agreement, if any, existed between Alaska Stock and the authors of the photographs contained in the compilation.  The *Bean* opinion is similarly distinguishable.  In contrast to MRIS, the plaintiff in *Bean* was the author of an individual work in the compilation, not the owner of the compilation, or the owner of copyrights in all individual works submitted to the compilation.

The *Masterfile* decision is more persuasive precedent.  There, as here, the plaintiff "owns, for the purposes of copyright registration, the copyrights of each of the individual images at issue.  Because Masterfile owns the constituent parts of the collection the registration of the collection extends copyright protection to the constituent parts."  *Masterfile*, WL 4702862 at *2.

### c.      MRIS Fully Complied with Section 409 of the Copyright Act

The narrow interpretation of Section 409 espoused by Defendants, and their reliance on *Muench*, *Alaska Stock*, and *Bean*, fails to recognize that Section 409 does not require identification of every author and title of constituent works in a compilation.  Indeed, Defendants' reading of Section 409 of the Copyright Act directly conflicts with the framework and history of the Copyright Act, specifically, the Copyright Act's evolution away from rigid notice and registration requirements.  *See, e.g.*, 17 U.S.C. § 408(a), 17 U.S.C. § 101.

Section 409 does not require detailed information as to every constituent element of a compilation in order for a copyright registration to extend to those constituent elements.  Section 409 only requires the "author or authors" of the compilation itself to be named—not authors of

the individual works included in the compilation.  Subsections (3) through (8) similarly

contemplate that the information provided will pertain to a single work, i.e., a compilation.

17 U.S.C. § 409(3)-(8).  For example, 17 U.S.C. § 409(6), cited by Defendants (Def. AHR Mot.

9-10), specifies only that the "title of the work" be included.  As subsections (3) through (8) do

not distinguish between the registration of a single work and a compilation, Section 409 requires

only that the author or authors and title of the compilation, in this case, the MRIS Database, be

listed on the registration.

As the Copyright Office has maintained, "Section 409 is in fact silent regarding the

application requirements for registering component works of a collective work."  (Cooke Decl.

¶ 13, Exhibit 12, Brief for the United States of America as Amicus Curiae in Support of

Reversal, *Bean v. Houghton Mifflin Harcourt Publishing Co*., No. 10-16771 (9th Cir. 2010).)

Given the silence of Section 409 as to "component works," the Copyright Office has adopted a

"long-standing administrative interpretation" of Section 409 that permits a copyright claimant to

use the same procedures followed by MRIS.  As the Copyright Office's Compendium of Office

Practices II states:

> Where a collective work is being registered, the application should name
> the author of the collective work.  The names of the individual authors of
> separate contributions being registered as part of the claim need not be
> given on the application.  The registration may cover (a) the collective
> work authorship, (b) any contribution by the employee or other party
> commissioned by the author of a work made for hire, and (c) any other
> contributions that the claimant of the collective work obtained by transfer.

Compendium of Copyright Office Practices II § 615.06.

The Copyright Office's determination not to require collective work claimants to list

author and title information for each "component" work was driven by practical considerations,

specifically, that collective works—e.g., newspapers, magazines—may contain up to thousands

of copyrightable works "that the copyright claimant owns but did not author." (*See* Cooke Decl. ¶ 13, Exhibit 12, Copyright Office Amicus Br. 17.)  Consequently, requiring a list of all authors and titles for such works could be "so burdensome on applicants as to discourage registration," and equally burdensome upon Copyright Office personnel.  (*Id*. at 17-18.)

In light of the ambiguity present in Section 409, the district courts issuing the *Muench*, *Bean*, and *Alaska Stock* opinions erred in their failure to defer to the Copyright Office's consistent and long-standing interpretation of that section.  *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *United States v. Haggar Apparel Co*., 526 U.S. 380, 392-93 (1999) (agency must use its discretion in determining how best to implement the policy in those cases not covered by a statute's specific terms).

MRIS's copyright registrations reflect the Copyright Office's "long-standing" and appropriate procedure.  Registrations issued for the MRIS Database indicate both "photos" and "text" contained within the MRIS Database in the registration, and were issued without a list of titles and authors for each of the thousands of "component" works contained therein.  (Cooke Decl. ¶ 14, Exhibit 13 (copies of representative certificates of registration).)  The MRIS registrations are accordingly valid and subsisting, and should be afforded the presumption of validity contemplated by 17 U.S.C. § 410(c) and Fourth Circuit precedent.  Defendants' mistaken reliance upon cases factually distinguishable from the facts at bar and their unduly narrow interpretation of Section 409, an interpretation which directly contradicts Fourth Circuit precedent, does not constitute sufficient grounds to dismiss the Complaint.

## IV.    CONCLUSION

For the reasons discussed above, Defendant American Home Realty Network, Inc.'s and Defendant Jonathan J. Cardella's Motions to Dismiss should be denied.

Respectfully submitted,


Dated:  May 29, 2012                    By:  /s/Margaret A. Esquenet
                                                         John T. Westermeier (Bar No. 04364)
                                                         (jay.westermeier@finnegan.com)
                                                         Margaret A. Esquenet (Bar No. 27775)
                                                         (margaret.esquenet@finnegan.com)
                                                         Whitney Devin Cooke (*pro hac vice*)
                                                         (whitney.cooke@finnegan.com)

                                                         FINNEGAN, HENDERSON, FARABOW,
                                                           GARRETT & DUNNER, L.L.P.

                                                         *Attorneys for Plaintiff*
                                                         Metropolitan Regional Information
                                                         Systems, Inc.

<u>CERTIFICATE OF SERVICE</u>

I, Margaret A. Esquenet,  hereby certify that on May 29, 2012, a copy of the foregoing Plaintiff's

Opposition to Defendants American Home Realty Network, Inc.'s and Jonathan J. Cardella's

Rule 12(b) Motions to Dismiss was served using the Court's CM/ECF system upon:


Richard S. Toikka
L. Peter Farakas
FARKAS & TOIKKA, L.L.P.
1101 30th Street N.W., Suite 500
Washington, DC 20007
rst@farkastoikka.com
lfp@farkastoikka.com

Christopher Ralph Miller
AMERICAN HOME REALTY NETWORK INC.
222 7th Street, Second Floor
San Francisco, CA  94103
c.miller@neighborcity.com


/s/Margaret A. Esquenet
Margaret A. Esquenet