**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,** | **CIVIL ACTION NO. 12-cv-0954** |
| **Plaintiff,** | |
| **v.** | |
| **AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,** | |
| **Defendants.** | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR
<u>PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................... 1

II.    MRIS's MOTION WAS TIMELY ............................................................................. 2

III.   ARGUMENT ............................................................................................................ 3

      A.     MRIS Has Shown a Substantial Likelihood of Success on the Merits on Its
            Copyright Infringement Claims ........................................................................... 3

            1.     The MRIS Database Is Protected by Copyright......................................... 3

            2.     MRIS's Copyright Registrations to the MRIS Database Include the
                 Constituent Elements Contained Therein ................................................... 6

            3.     AHR Has Infringed, and Continues to Infringe, the MRIS Database......... 8

      B.     MRIS Has a Substantial Likelihood of Success on Its Lanham Act Claims .......... 9

      C.     MRIS Has Been, and Will Continue to Be, Irreparably Harmed by AHR's
            Infringing Activities in the Absence of Preliminary Injunctive Relief................ 11

      D.     Ongoing Damage to MRIS and Its Reputation Outweighs Any Harm
            Suffered by Defendants If Preliminary Injunction Is Granted............................. 13

      E.     Public Interest Is Not Served by Encouraging Copyright Infringement in
            the Name of "Competition" ................................................................................ 14

      F.     MRIS's Enforcement of Its Copyrights Is Not Copyright Misuse ...................... 15

            1.     Fourth Circuit Law Weighs Against AHR's Copyright Misuse
                 Defense .................................................................................................... 17

            2.     MRIS's Actions Do Not Violate the Department of Justice's
                 Consent Judgment with the National Association of Realtors.................. 18

            3.     Defendants Fail to Demonstrate Concerted Action on the Part of
                 MRIS that Constitutes Copyright Misuse................................................. 19

            4.     AHR Mischaracterizes the Nature of Its "Overture" to Obtain a
                 License from MRIS.................................................................................. 22

IV.    CONCLUSION....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................16

*Adobe Systems, Inc. v. Brenengen*,
  928 F. Supp. 616 (E.D.N.C. 1996)........................................................15

*Advance Magazine Publishers, Inc. v. Leach*,
  466 F. Supp. 2d 628 (D. Md. 2006) ......................................................15

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*,
  No. 3:09-cv-0061, 2010 WL 3785270 (D. Alaska Sept. 21, 2010) ..........................7

*Apple Computer, Inc. v. Franklin Computer Corp.*,
  714 F.2d 1240 (3d Cir. 1983)..............................................................15

*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009) ..................................................18

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
  758 F. Supp. 1522 (S.D.N.Y. 1991)......................................................16

*Bean v. Houghton Mifflin Harcourt Publishing Co.*,
  No. CV10-8034, 2010 WL 3168624 (D. Ariz. Aug. 10, 2010)...............................7

*Bell Atlantic Business Systems Services, Inc. v. Hitachi Data Systems Corp.*,
  No. C93-20079, 1995 WL 798935 (N.D. Cal. Mar. 10, 1995)................................23

*CoStar Group, Inc. v. Loopnet, Inc.*,
  164 F. Supp. 2d 688 (D. Md. 2001) ..................................................17, 18

*Data General Corp. v. Grumman Systems Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994)..............................................................22

*EMI April Music, Inc. v. White*,
  618 F. Supp. 2d 497 (E.D. Va. 2009) ....................................................15

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991)....................................................................4, 15

*Fox Film Corp. v. Doyal*,
  286 U.S. 123 (1932)....................................................................22, 23

*Franklin Machine Products v. Heritage Food Service Equipment, Inc.*,
  No. 1:06-cv-379, 2007 WL 4287568 (N.D. Ind. Dec. 5, 2007)................................5

*In re Independent Service Organizations Antitrust Litigation*,
   910 F. Supp. 1537 (D. Kan. 1995) .......................................................................15

*Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.*,
   945 F.2d 509 (2d Cir. 1991).................................................................................4

*Kregos v. Associated Press*,
   937 F.2d 700 (2d Cir. 1991)..................................................................................4

*Lasercomb America, Inc. v. Reynolds*,
   911 F.2d 970 (4th Cir. 1990) ..........................................................................17, 18

*Laurel Sand & Gravel, Inc. v. CSX Transportation Inc.*,
   924 F.2d 539 (4th Cir. 1991) ..............................................................................20

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*,
   43 F.3d 922 (4th Cir. 1995) ................................................................................10

*M. Kramer Manufacturing Co. v. Andrews*,
   783 F.2d 421 (4th Cir. 1986) ............................................................................3, 9

*Masterfile v. Gale*,
   No. 2:09-cv-966, 2011 WL 4702862 (D. Utah Oct. 4, 2011)....................................7

*Maverick Recording Co. v. Chowdhury*,
   No. 07-CV-200, 2008 WL 3884350 (E.D.N.Y. Aug. 19, 2008)...............................17

*Montgomery County Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*,
   878 F. Supp. 804 (D. Md. 1995), *aff'd*, No. 95-2488, 1996 WL 412584
   (4th Cir July 24, 1996). ..............................................................................7, 16, 17

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*,
   712 F. Supp. 2d 84 (S.D.N.Y. 2010)......................................................................7

*Nautical Solutions Marketing, Inc. v. Boats.com*,
   No. 8:02-CV-760, 2004 WL 783121 (M.D. Fla. Apr. 1, 2004)..................................6

*Philip Morris Inc. v. MidWest Tobacco Inc.*,
   19 U.S.P.Q.2d 1210, 1215
   (E.D. Va. Nov. 4, 1988) ......................................................................................10

*Pizzeria Uno Corp. v. Temple*,
   747 F.2d 1522 (4th Cir. 1984) ..............................................................................11

*Realcomp II, Ltd. v. Federal Trade Commission*,
   635 F.3d 815 (6th Cir. 2011) ..........................................................................20, 21

*Robertson LLC v. Sea Pines Real Estate Cos.*,
　Nos. 11-1538-1541, 2012 WL 1672487 (4th Cir. May 14, 2012) ..........................................21

*Splitfish v. AG v. Bannco Corp.*,
　727 F. Supp. 2d 461 (E.D. Va. 2010) ........................................................................12, 13, 14

*Tattoo Art, Inc. v. TAT International, LLC*,
　794 F. Supp. 2d 634 (E.D. Va. 2011) ...................................................................................15

*Teaching Co. Ltd. Partnership v. Unapix Entertainment, Inc.*,
　87 F. Supp. 2d 567 (E.D. Va. 2000) .....................................................................................11

*United States v. National Association of Realtors*,
　Civ. A. No. 05 C 5140 (N.D. Ill. Nov. 18, 2008) .................................................................18

*Universal Furniture International, Inc. v. Collezione Europa USA, Inc.*,
　196 F. App'x 166 (4th Cir. 2006) .......................................................................................5, 6

*Xoom, Inc. v. Imageline, Inc.*,
　323 F.3d 279 (4th Cir. 2003), *abrogated on other grounds by Reed Elsevier v.*
　*Muchnick*, 130 S. Ct. 1237 (2010) ........................................................................................6

## FEDERAL STATUTES

15 U.S.C. § 1125(a)(1)(A) ........................................................................................................11

17 U.S.C. § 101 ...........................................................................................................................4

17 U.S.C. § 409 ....................................................................................................................6, 7, 8

17 U.S.C. § 410(c) .......................................................................................................................3

## RULES

Federal Rule of Civil Procedure 65 .......................................................................................... 25

**OTHER AUTHORITIES**

Compendium of Copyright Office Practices II § 615.06............................................................ 7-8

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.09[A][1][a] (2011) ..........16

## I.    INTRODUCTION

Plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS") has established a substantial likelihood of success on the merits for its copyright and trademark infringement claims against Defendants American Home Realty Network, Inc. d/b/a NeighborCity.com and its founder and CEO, Jonathan J. Cardella (collectively, "AHR" or "Defendants"), and has shown that it has suffered, and will continue to suffer, irreparable harm in the absence of immediate preliminary injunctive relief.  The balance of equities also favors MRIS, as Defendants cannot under the law rely on infringing content to operate their business, and should not be rewarded for their efforts to continue to do so.  An injunction serves the public's interest in enforcing copyright and trademark law, as well as the public interest in avoiding the consumer confusion caused by the posting of inaccurate or outdated listings on NeighborCity.com  by Defendants. Accordingly, MRIS respectfully requests the Court to grant its motion for an immediate preliminary injunction designed to stop the present, continuing infringement and to protect MRIS's reputation.

Contrary to Defendants' specious and unsupported insinuations, MRIS did not file this action or request for injunctive relief in an anticompetitive effort to harm Defendants or discourage Defendants from pursuing their referral-based/agent scoring business model.  Rather, MRIS asks the Court to enjoin AHR and Cardella from continuing to commit acts of willful copyright and trademark infringement.  That is, abide by the law.  Neither AHR nor Cardella deny that the NeighborCity.com website features misappropriated MRIS Database content and prominently displays the MRIS trademark and copyright notices.  MRIS simply requests that Defendants be immediately ordered to cease: (1) unlawfully copying and displaying the MRIS Database and materials wrongfully taken therefrom, and (2) infringing the MRIS trademark, use

1

of which implies that MRIS is affiliated with, related to, or approves of AHR or

NeighborCity.com.

AHR further argues that injunctive relief is not appropriate because it requested a license

to the MRIS Database from MRIS.  In reality, AHR responded to a demand letter by first

denigrating MRIS's copyrights and then recognizing them by of requesting a vague "custom"

license.  Defendants did not provide any evidence of any consent on the part of brokers whose

listings are displayed on NeighborCity.com, despite MRIS's request for such evidence in its

demand letter.  (Compl. at Exhibit B.)  What AHR failed to do was apply for an MRIS license

before electing to instead infringe MRIS's rights, or request permission from the individual

brokers to use their own listings on the NeighborCity.com website.  Either approach was

available to AHR and Cardella.  Indeed, MRIS offers various license arrangements to the MRIS

Database to a variety of businesses, in accordance with MRIS policies and rules.  MRIS staff is

well-versed in discussing these offerings and real estate professionals routinely advertise their

listings outside of the multiple listing service ("MLS") system, both with the cooperation of

MRIS and independently of MRIS.  Defendants' decision to avoid these well-established

programs and instead take the shortcut of free riding on the MRIS Database and the MRIS

trademark shows the deliberate, willful nature of AHR's and Cardella's infringement, which

must be immediately enjoined, and not rewarded, as Defendants contend.

## II.    MRIS's MOTION WAS TIMELY

Without citation or credible evidence, Defendants fault MRIS for not bringing this action

sooner, arguing that MRIS's efforts to investigate Defendants' wrongdoing prior to initiating

litigation establishes a lack of urgency.  (Def. Opp'n 1.)  In fact, MRIS filed this lawsuit upon

completion of its investigation into the nature and scope of Defendants' infringing activities and

after requests to AHR to cease its infringing activities failed.

MRIS first learned of Defendants and the activities of NeighborCity.com in early November 2011 and conducted an investigation.  (Heithaus Decl. ¶ 19.)  MRIS sent its initial demand letter on November 18, 2011.  (Compl. at Exhibit B.)  It filed suit and requested preliminary injunctive relief once it became apparent that Defendants did not intend to cease their infringing activities.  (Heithaus Decl. ¶ 19.)  Defendants' reasoning suggests that a prospective plaintiff, such as MRIS, should file a lawsuit whether or not it has completed its due diligence or has given the prospective defendant a meaningful opportunity to respond, or otherwise face a claim that it was "dilatory" in asserting its rights.  Defendants' contentions that MRIS's decision to conduct investigations and due diligence, and to communicate with Defendants before bringing this action, constitute "dilatory tactics" must be rejected.

## III.   ARGUMENT

### A.   MRIS Has Shown a Substantial Likelihood of Success on the Merits on Its Copyright Infringement Claims

#### 1.   The MRIS Database Is Protected by Copyright Law

MRIS owns copyrights in and to the unpublished MRIS Database, as evidenced by its federal copyright registrations issued by the U.S. Copyright Office.  (Cooke Decl. Dkt. 26, Exhibit 13.)  Under Section 410(c) of the Copyright Act, a "certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  The Fourth Circuit has held that a certificate of registration granted by the Copyright Office "is prima facie proof of the validity of plaintiff's copyright, including the existence of the elements of originality and fixation."  *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986).  Despite this presumption, Defendants attack the validity of MRIS's registrations,

claiming, without substantiation that the MRIS Database lacks the requisite originality to be copyrightable.  (Def. Opp'n 13-15.)

The MRIS Database constitutes an "original work of authorship" under Section 101 of the Copyright Act, 17 U.S.C. § 101, and under the Supreme Court's decision in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991).  Numerous compilations containing far less original content than the MRIS Database have been upheld following *Feist*. For example, in *Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.*, the Second Circuit found sufficient originality in a "yellow-pages"-style telephone directory for New York's Chinese-American community.  945 F.2d 509, 513 (2d Cir. 1991).  Similarly, in *Kregos v. Associated Press*, the Second Circuit upheld the copyright in plaintiff's "pitching form," comprised of statistics about a pitcher's performance.  937 F.2d 700, 704 (2d Cir. 1991).  Unlike the compilations in *Key Publications* and *Kregos*, the MRIS Database contains photographs of real estate properties and original text, reflecting creative decisions made by MRIS and its real estate broker subscribers—not only bare facts, such as telephone numbers or statistics.  Though Defendants claim that evidence of MRIS's selection and arrangement of its database is "nowhere" to be found in MRIS's Motion (Def. Opp'n 14), MRIS stated the following in its Motion: "Copyright protection for MRIS extends not only to the compilation of property listings in the MRIS Database, but also to the original expressive contributions MRIS has made or acquired to individual property listings in the MRIS Database."  (Mot. for Prelim. Inj., Dkt. 9-1, at 4.)

MRIS is responsible for selecting, arranging, and coordinating material uploaded by real estate broker subscribers to the MRIS Database, and combining that material with third-party content, including information obtained from over five million public records.  As a core

4

function related to the quality of the MRIS Database, MRIS maintains a "compliance department," which exercises oversight over the listings uploaded by MRIS subscribers, to assure that the content supplied by MRIS subscribers complies with the MRIS Rules and Regulations.  (Heithaus Decl. ¶ 6).  Each month, the compliance department sends out thousands of notices to MRIS subscribers identifying violations of MRIS Rules and Regulations for correction.  (Heithaus Decl. ¶ 7).  Through the compliance department, MRIS ensures that the MRIS Database contains the most current and accurate content available.  The quality of the content of the MRIS Database resulting from this process, and the various systems MRIS applies in the course of providing its services, makes MRIS a quality control leader in the real estate industry.  (Heithaus Decl. ¶ 7).  Consequently, and contrary to Defendants' assertions, the MRIS Database is not created, as Defendants contend, merely by "automatic pilot."  (Def. Opp'n 15.)

The cases cited by Defendants in support of their argument that the MRIS Database is a mere "catalog" of facts that lacks the originality required for copyright protection (*id.* at 13-14) are easily distinguished and unpersuasive.  Defendants rely upon *Franklin Machine Products v. Heritage Food Service Equipment, Inc*. for the proposition that, due "to their highly factual nature, catalogs generally fall towards the less-protected end of the spectrum" of copyrighted material.  No. 1:06-cv-379, 2007 WL 4287568, at *9, *12 (N.D. Ind. Dec. 5, 2007).  The catalogs at issue in *Franklin Machine Products*, however, consisted of "raw data" in the form of equipment and part numbers.  *Id*.  Defendants' contention notwithstanding, the MRIS Database is not a mere catalog of facts.  Rather, the MRIS Database features, for example, inherently protectable photographs and text.

Defendants also rely upon the Fourth Circuit's opinion in *Universal Furniture International, Inc. v. Collezione Europa USA, Inc*. to argue that compilations have limited

copyright protection.  196 F. App'x 166 (4th Cir. 2006).  This reliance is puzzling because the

facts in the *Universal Furniture* case are clearly inapplicable.  In *Universal Furniture*, the Fourth

Circuit found that the compilation copyright for design elements of a chair were not

copyrightable because such elements were not "conceptually separable" from the chair's

utilitarian function.  *Id.* at 171.  The Fourth Circuit's concerns regarding the inclusion of

utilitarian elements in a compilation copyright for the chair design at issue in *Universal*

*Furniture* have no bearing on this case, given the obvious differences between the nature of the

MRIS Database and a chair design.

Defendants' reliance on *Nautical Solutions Marketing, Inc. v. Boats.com* is similarly

misplaced.  No. 8:02-CV-760, 2004 WL 783121 (M.D. Fla. Apr. 1, 2004).  In that case, as

Defendants acknowledge, the compilation at issue involved the copying and pasting of "industry-

standard yacht descriptions and photographs that have been taken by others *without* transfer of

copyrights."  (Def. Opp'n 14 (emphasis added).)  The MRIS Database is not limited to "industry

standard descriptions" and, as explained in a previous submission to this Court (Dkt. 26 at 29)

and adopted by reference, copyrights in photographs contained in the MRIS Database are

irrevocably assigned to MRIS.

2.      **MRIS's Copyright Registrations to the MRIS Database Include the Constituent Elements Contained Therein**

MRIS fully responded to Defendants' argument regarding the sufficiency of MRIS's

copyright registrations under 17 U.S.C. § 409 in MRIS's Opposition to Defendants' Motions to

Dismiss.  (Dkt. 26 at 27-32.)  MRIS adopts and incorporates by reference that response in this

Reply.  Accordingly, MRIS only briefly addresses this argument below.

MRIS's copyright registrations for the MRIS Database cover the photographs and text

contained therein, were filed according to Copyright Office procedure, and were duly accepted

and registered by the Copyright Office.  Citing *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. 3:09-cv-0061, 2010 WL 3785270, at *11-12 (D. Alaska Sept. 21, 2010), and *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, No. CV10-8034, 2010 WL 3168624, at *6-7 (D. Ariz. Aug. 10, 2010), Defendants incorrectly state that MRIS's registrations are invalid under Section 409 of the Copyright Act. *See, e.g.*, *Masterfile v. Gale*, No. 2:09-cv-966, 2011 WL 4702862 (D. Utah Oct. 4, 2011).

The Fourth Circuit and this Court have held that copyright in a compilation extends to constituent elements of that compilation.  *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003), *abrogated on other grounds by Reed Elsevier v. Muchnick*, 130 S. Ct. 1237, 1241 (2010); *see also Montgomery Cnty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 810 (D. Md. 1995) (holding that an MLS's database of property listings possessed the minimum degree of creativity to be protectable, even without the incorporation of the property photos), *aff'd on other grounds*, No. 95-2488, 1996 WL 412584 (4th Cir July 24, 1996).

The decisions in *Muench*, *Alaska Stock*, and *Bean* are distinguishable from the facts of this case and are not persuasive because, in contrast to the plaintiffs in those cases, MRIS owns the copyrights in the MRIS Database, including the photographs in the database, as well as the exclusive right to enforce the copyrights for such works.  Moreover, MRIS filed its copyright applications for the MRIS Database in accordance with the Copyright Act and Copyright Office procedure, and the resulting registrations are valid and subsisting.  As the Copyright Office's Compendium of Office Practices II states:

> Where a collective work is being registered, the application should name the author of the collective work. ***The names of the individual authors of separate***

> ***contributions being registered as part of the claim need not be given on the application.*** The registration may cover (a) the collective work authorship, (b) any contribution by the employee or other party commissioned by the author of a work made for hire, and (c) any other contributions that the claimant of the collective work obtained by transfer.

Compendium of Copyright Office Practices II § 615.06 (emphasis added).

Defendants mistakenly rely upon cases factually distinguishable from the case at bar and an unduly narrow interpretation of Section 409 that directly contradicts Fourth Circuit precedent. MRIS's copyright registrations in the MRIS Database are valid and subsisting, and should be afforded the presumption of validity contemplated by Fourth Circuit precedent.

### 3.    AHR Has Infringed, and Continues to Infringe, the MRIS Database

There is no question that AHR has copied, publicly displayed, and distributed copyrighted content from the MRIS Database without MRIS's authorization.[1] Photographs displaying a "© MRIS" notice appear repeatedly on NeighborCity.com. (*See* Compl. at Exhibits A-1, A-2, A-3, A-4, A-5, A-6.) In their Opposition, Defendants do not deny their copying, but instead seek to excuse their willful infringement by misdirecting this Court into a "dissection" of MRIS's copyrighted content and an unfounded attack upon the originality of the MRIS Database. Specifically, Defendants claim that MRIS erred in comparing "unprotected elements of its database, unpublished and undisclosed, with individual elements of AHRN Inc.'s webpage, without first removing the unprotected individual elements from consideration." (Def. Opp'n 18.) This approach ignores the Fourth Circuit's position that a registration granted by the Copyright Office constitutes "prima facie proof" of the originality of a plaintiff's copyright. *Andrews*, 783 F.2d at 434.

---

[1] Defendant Cardella is liable individually for vicarious copyright infringement based on both his right and ability to supervise AHR's infringing activities and his direct financial interest in the exploitation of the MRIS Database in support of AHR's business, as more fully discussed in Plaintiff's Opposition to Defendants' Motion to Dismiss. The infringing material from the MRIS Database acts as a draw for new customers and the generation of referral fees from them.

Defendants state that to show direct copying, MRIS "must show substantial similarity between its copyrighted work and what it alleges AHRN, Inc. to have copied." (Def. Opp'n 18.) MRIS has shown that AHR's website features materials that are not only "substantially similar" to MRIS's copyrighted content, but *identical*, because NeighborCity.com incorporates MRIS's copyright content in its entirety and even includes MRIS's name and copyright notice. AHR has misappropriated entire property listings from the MRIS Database and redistributed such listings for its own commercial gain. (*See* Compl. at Exhibits F-1, F-2, F-3, F-4, F-5, F-6.)

Defendants' claim that "MRIS has failed to conduct a proper dissection analysis" (Def. Opp'n 18) conveniently overlooks the fact that where, as here, "there [is] clear proof of actual copying by the defendants, that is the end of the case." *Andrews*, 783 F.2d at 445. Defendants even admit in their Terms of Use that NeighborCity.com publishes and displays the property listings from listing services without alteration (Cooke Decl. Dkt. 26, Exhibit 9):

> 9.      You understand that all the data on properties available for sale or rent is maintained by various real estate brokers, real estate agent boards, MLSs, and associations in the communities where you are searching or where your property is located. These local boards of real estate are independent of American and are solely responsible for the accuracy of the information on the properties entered into their own MLS data. American does not alter or add to this information on the properties in any way.

Given AHR's admission that it "does not alter or add to" information taken from the MRIS Database, and in light of the fact that the copyrights in the MRIS Database extend to the photographs and text contained therein as shown in section III.A.2, *supra*, AHR's contention that MRIS has not established infringement of the MRIS Database is simply without merit.

### B.      MRIS Has a Substantial Likelihood of Success on Its Lanham Act Claims

Defendants assert that MRIS's Motion relies exclusively on MRIS's copyrights. (Def. Opp'n 1.) MRIS's Motion, however, details the harm caused by Defendants' copyright infringement as well as the reputational harm caused by the misuse of the MRIS name and mark.

(Mot. 12-13.)  Indeed, the Lanham Act issues are effectively inseparable from the copyright claims because Defendants use the MRIS name in the context of displaying the MRIS copyright notice on listings taken from the MRIS Database.

In trademark infringement actions, irreparable injury ordinarily follows when a likelihood of confusion of trademarks exists or possible risk to reputation appears.  *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938-39 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement.").  As the Fourth Circuit recognized in *Lone Star*, trademark infringement represents an injury to reputation:

> [Infringement] gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff.

*Id.* at 939 (quoting *Philip Morris Inc. v. MidWest Tobacco Inc.*, 9 U.S.P.Q.2d 1210, 1215 (E.D. Va. Nov. 4, 1988) (alteration in original)).

AHR's unauthorized distribution of real estate listings bearing the "© MRIS" copyright notice includes the MRIS trademark and is therefore likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of AHR's listings and/or the NeighborCity.com website as a whole.  AHR's wrongful use of the MRIS name and mark thus constitutes trademark infringement, false designation of origin, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).[2]  Given the virtually identical nature of the channels or medium through which the services are offered and

---

[2] MRIS also owns federal trademark registrations issued by the United States Patent and Trademark Office for the MRIS trademark, including Reg. Nos. 2031616, 2377102, 2868571, and 4021535.  These registrations cover a variety of goods and services related to real estate, including, for example, "Internet services, namely providing multiple user access to data on the Internet in the field of real estate for use by real estate professionals in International Class 38."  (Reg. No. 4021535.)  True and correct copies of these registrations are attached to the Declaration of John Heithaus (Heithaus Decl.¶ 3, Ex. 1).

the identical nature of the parties' target consumer group, confusion is highly likely.  *See Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 582 (E.D. Va. 2000) ("The Fourth Circuit focuses on whether the goods serve the same purpose and if the purposes are related." (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984)).  Moreover, NeighborCity.com's posting of listings bearing the MRIS trademark in connection with the "© MRIS" notice has caused, and will continue to cause, confusion among consumers seeking information when purchasing a real estate property, and diverts them from MRIS's own consumer-facing website, Homesdatabase.com.  Accordingly, MRIS has shown that it is likely to prevail on the merits of its Lanham Act claims, and is entitled to immediate preliminary relief.

### C.   MRIS Has Been, and Will Continue to Be, Irreparably Harmed by AHR's Infringing Activities in the Absence of Preliminary Injunctive Relief

Far from being "largely silent" (Def. Opp'n 19), MRIS has established irreparable harm that merits an award of preliminary injunctive relief.  As an initial matter, Defendants mistakenly argue that the Declarations of Boyd Campbell and Jon Coile, real estate broker subscribers to MRIS and, through their brokerages, contributors to the MRIS Database, are "grossly inadequate" to establish MRIS's irreparable injury, and that harm to these third parties cannot be relied upon to establish irreparable harm to MRIS.  (*Id.* at 22.)  This short-sighted argument misunderstands the nature of MRIS's business, which is built upon its *relationships* with users and subscribers like Boyd Campbell and Jon Coile, who count on timely, accurate information reflecting the properties they represent, disseminated in accordance with MRIS agreements, rules, and policies.  Those relationships, which are indispensible to MRIS's business, are severely damaged if AHR's infringing activities are allowed to continue and MRIS cannot protect the quality and distribution of the copyrighted content that real estate professionals entrust to MRIS.  Should AHR's infringing activities be allowed to persist, real estate

professionals will lose control over the distribution of their own listings, and content wrongly purporting to be maintained by such professionals will be perpetuated in the marketplace. (Heithaus Decl. ¶ 9.)

MRIS has shown additional irreparable harm, including MRIS's loss of control over its copyrighted content, which is copied and displayed on NeighborCity.com without MRIS's authorization. Allowing NeighborCity.com to continue to display real estate listings that contain MRIS's copyrighted work deprives MRIS of its ability "to control the means and methods by which its work will be seen by the public," a key right of all copyright owners. *Splitfish v. AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 467 (E.D. Va. 2010). It also undermines the legitimate means through which MRIS disseminates information on behalf of its subscribing brokers, and the trust that these brokers have placed in MRIS to safeguard their listing information. The combination of the prominent appearance of copyrighted photographs from the MRIS Database bearing a "© MRIS" notice on NeighborCity.com without authorization from MRIS, as well as the display of stale or inaccurate listing information, exemplify the harm directly caused by this loss of control.

MRIS has further shown irreparable damage in the form of the reputational harm associated with AHR's posting of inaccurate real estate listings on NeighborCity.com. Defendants maintain that such "alleged inaccuracies on AHRN, Inc.'s website would presumptively harm AHRN, Inc., not MRIS." (Def. Opp'n 20-21.) This disingenuous argument overlooks the fact that consumers would associate listings on NeighborCity.com with MRIS, both because of the appearance of "© MRIS" on photographs displayed in connection with information and because Defendants' Terms of Use expressly seek to place that liability on the MLS from whom they misappropriate information. (*See* Cooke Decl. Dkt 26, Exhibit 9.)

12

Consumers may also blame the MRIS real estate broker subscribers whose names are attached to such listings, or, to the detriment of MRIS, confuse them with listings that are current, accurate and legitimately displayed on sites approved by the subscribers.  (Heithaus Decl. ¶ 8.) Moreover, Defendants seek to insulate themselves from any responsibility to consumers, as they expressly disclaim such responsibility for the listings on the NeighborCity.com site.  (*See* Cooke Decl. Dkt 26, Exhibit 9)  The incongruity of Defendants' positions is extraordinary.

Defendants flippantly dismiss the harm to MRIS as "zero damages."  (Def. Opp'n 22.) The irreparable harm suffered by MRIS on a variety of fronts due to Defendants' ongoing conduct, which cannot be remedied by money damages alone, is precisely the type of harm that the Copyright Act and the Lanham Act were enacted to prevent.

### D.     Ongoing Damage to MRIS and Its Reputation Outweighs Any Harm Suffered by Defendants If Preliminary Injunction Is Granted

The "balance of equities" analysis weighs in favor of injunctive relief for MRIS, and equity requires that AHR be ordered to cease its unauthorized use of copyrighted content from the MRIS Database.  *Splitfish*, 727 F. Supp. 2d at 468.  The harm to MRIS, the MRIS Database, and MRIS's real estate broker and agent subscribers that will continue if injunctive relief is not granted far outweighs any harm that Defendants would suffer if such relief is granted.

Defendants' Opposition cites only ongoing legal fees as the "harm" suffered by AHR in this action, stating that copyright infringement suits such as this one have forced AHR "to spend its resources fighting off litigation."  (Def. Opp'n 21-22.)  Defendants cite no cases to establish that litigation costs constitute cognizable "harm" or that such fees constitute a basis for denying a motion for preliminary injunctive relief. [3]  Moreover, to the extent that litigation costs can be seen as "harm," unlike the irreparable injury suffered by MRIS, such costs were completely

---

[3] In any event, Defendants' insurance company is defending AHR and Cardella in this action, although it has disputed its obligation to do so.  (Heithaus Decl. ¶ 22, Exhibit 5, Travelers's Compl.)

foreseeable and avoidable.  Had AHR elected to build its business with content from MRIS obtained through authorized channels and not chosen to steal that information from MRIS using the pretext of "competition," there would be no litigation.  Consequently, the alleged "harm" suffered by AHR is the direct and foreseeable result of its own infringing activities.

The preliminary injunctive relief sought by MRIS is no more extensive than necessary, and would serve only to protect MRIS's copyrights and trademark rights, not—as Defendants claim—to prevent competition between MRIS and NeighborCity.com.  A preliminary injunction would ensure that any competition would be based on lawful, authorized use of MRIS's copyrighted content, or based on other content appropriately licensed or otherwise acquired from third parties, such as real estate brokers who elect to display their listings on NeighborCity.com. As a result, the balance of equities decidedly favors MRIS.

### E.	Public Interest Is Not Served by Encouraging Copyright Infringement in the Name of "Competition"

Defendants' infringing activities cannot be excused in the name of "competition," particularly because Defendants willfully ignored the authorized channels available for AHR to obtain copyrighted content from MRIS (detailed in Section F.4, *infra*).  As stated in MRIS's Opening Brief, "Congress has indicated that the public interest is served by upholding copyright owners' exclusive statutory rights to control the use of their work."  *Splitfish*, 727 F. Supp. 2d at 469; *see also Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628, 638 (D. Md. 2006) ("Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254-55 (3d Cir. 1983))).  In

addition, district courts within the Fourth Circuit have repeatedly affirmed the public's interest in protecting copyright.  *See, e.g.*, *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 660 (E.D. Va. 2011) ("It is easy to understand that the public interest reflected in the constitutional protection of copyright, and the Congressional enactment of the Copyright Act, is enhanced by [the] issuance of a permanent injunction where copyright infringement has taken place." (quoting *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 511 (E.D. Va. 2009))); *Adobe Sys., Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996) ("[A]n injunction will serve the public interest by protecting the 'special reward' of copyright, which motivates 'the creative activity of authors[,] inventors,' and programmers." (second alteration in original) (citation omitted)).

The public is best served by preventing the unauthorized use of MRIS's copyrighted material, and not creating a new justification for infringement in the form of an alleged desire to "compete."  *See In re Indep. Serv. Orgs. Antitrust Litig.*, 910 F. Supp. 1537, 1545-46 (D. Kan. 1995) (in issuing the preliminary injunction, the court observed that the public interest "is best served by the issuance of the injunction to prohibit [the defendant] from continuing to thumb its nose at the requirements of the Copyright Act").  Beyond the enforcement of copyright law, the public has an interest in avoiding confusion, such as that caused by NeighborCity.com's posting of inaccurate or outdated content that affects consumers seeking to buy or sell a real estate property and the unauthorized use of the MRIS name and mark, which falsely suggests sponsorship or affiliation.  The public interest in avoiding confusion necessitates immediate injunctive relief.

### F.  MRIS's Enforcement of Its Copyrights Is Not Copyright Misuse

AHR charges, without substantiation or reference to facts related to MRIS, that MRIS filed this lawsuit in collusion with other MLSs, at the direction of the National Association of Realtors ("NAR"), to thwart competition and shut down NeighborCity.com.  (Def. Opp'n 9-11.)

Defendants allege that such activities constitute copyright misuse and bar MRIS from prevailing in this action.  (*Id.* at 23-24.)  Defendants' copyright misuse defense is without factual basis or legal merit and poses no barrier to the entry of preliminary injunctive relief.

The Copyright Act accords to each copyright owner a limited form of monopoly. 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* ("*Nimmer on Copyright*") § 13.09[A][1][a] (2011).  The defense of copyright misuse "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1026 (9th Cir. 2001).  A plaintiff's enforcement of its copyrights "does not in and of itself violate the antitrust laws" or constitute an impermissible effort to control areas outside of that monopoly.  *See Montgomery Cnty. Ass'n*, 878 F. Supp. at 816, *aff'd*, No. 95-2488, 1996 WL 412584 (4th Cir. July 24, 1996).

Although, as a factual matter, MRIS is not cooperating with any other entity in connection with this lawsuit, it is important to note that the leading treatise on copyright law and the courts recognize that even collective action to enforce copyrights does not amount to illegal collusion or copyright misuse.  *Nimmer on Copyright* § 13.09[A][1][a] n.4 (citing *Basic Books, Inc. v. Kinko's Graphics Corp*., 758 F. Supp. 1522, 1538-39 (S.D.N.Y. 1991) (finding that plaintiff book publishers "acted reasonably" in their efforts to stop defendant's duplication business from infringing their copyrights and did not act "collusively for some illegal, monopolistic purpose")); *see also Maverick Recording Co. v. Chowdhury*, No. 07-CV-200, 2008 WL 3884350 at *3 (E.D.N.Y. Aug. 19, 2008) (holding that collectively bringing infringement suits cannot be considered anticompetitive).

### 1.   Fourth Circuit Law Weighs Against AHR's Copyright Misuse Defense

The Fourth Circuit reserves the copyright misuse defense for instances in which a copyright owner is attempting "to control competition in an area *outside of* its copyright." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990) (emphasis added).  This Court has previously held, and the Fourth Circuit has affirmed, that an attempt by a copyright owner to enforce its copyright in a directory of real estate listings via an infringement lawsuit does not constitute a violation of antitrust law.  *Montgomery Cnty. Ass'n*, 878 F. Supp. at 816.  In *Montgomery County Association of Realtors*, the Montgomery County Association of Realtors ("MCAR") sued a photographic service, alleging that the service's efforts to combine the MCAR database with its own photographs constituted copyright infringement, among other things.  *Id*. at 808-09.  Like AHR, Defendant Realty Photo alleged that MCAR's refusal to allow it access to the MCAR database constituted a "concerted refusal to deal" in violation of antitrust law.  *Id*. at 816.  This Court rejected Photo Realty's position, noting that "[t]he antitrust laws do not impose upon MCAR the duty to give [defendant] its copyrighted database for free to allow [defendant] to compete with it more effectively."  *Id*. at 817.  In addition, in *CoStar Group, Inc. v. Loopnet, Inc.*, this Court rejected a copyright misuse defense asserted against a real estate listing service on grounds that "there is no allegation of tying or abuse of copyright serious enough to offend the public policy behind copyright and rise to the level of misuse."  164 F. Supp. 2d 688, 709 (D. Md. 2001) (noting that the Fourth Circuit is "hesitant" to find copyright misuse).

Defendants err in relying upon the *Lasercomb* opinion for their copyright misuse defense.  In *Lasercomb*, plaintiff's standard license agreement contained a covenant against competition that prohibited licensees and their directors, officers, and employees from writing, developing, producing, or selling any software that achieved the same results as the Lasercomb software.

911 F.2d at 973.  The court concluded that Lasercomb's inclusion of the covenant against competition in its standard license agreement was a misuse of Lasercomb's copyright, finding that the provision at issue "essentially attempts to suppress any attempt by the licensee to independently implement the idea which [the software] expresses."  *Id.* at 978; *compare Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 940 (N.D. Cal. 2009) (distinguishing *Lasercomb* and finding that Apple's licensing agreement "simply attempts to control the use of Apple's own software—an area that is the *focus* of the copyright").

MRIS does not have any agreement with Defendants, is not seeking to control competition, and seeks a preliminary injunction only to protect its copyrights in the MRIS Database, and its rights in the MRIS name and trademark.  MRIS is neither trying to protect the "idea" of a real estate listing service nor seeking to prevent Defendants from operating NeighborCity.com.  MRIS is only protecting the MRIS Database from the harm caused by AHR's infringing activities.

## 2.   MRIS's Actions Do Not Violate the Department of Justice's Consent Judgment with the National Association of Realtors

Defendants attached a copy of the Final Judgment in the *United States v. National Association of Realtors*, Civ. A. No. 05 C 5140 (N.D. Ill. Nov. 18, 2008), as Exhibit 4 to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (the "NAR Consent Judgment").  The NAR Consent Judgment was consented to by NAR and the United States, and entered into "without trial or adjudication of any issue of fact, and without the Final Judgment constituting any evidence against, or any admission by, any party regarding any issue of fact or law."  (NAR Consent J. 1.)  In the NAR Consent Judgment, NAR did not admit to any liability or wrongdoing.  (*Id*.)

The NAR Consent Judgment is not relevant to MRIS's lawsuit against Defendants AHR and Cardella, and Defendants' allegation that MRIS has violated the NAR Consent Judgment is false.  As an initial matter, the NAR Consent Judgment does not mention, much less create any obligations, regarding copyright or other intellectual property rights.  In this case, MRIS is unilaterally enforcing the valid copyrights and other legal rights it owns.  MRIS may lawfully enforce its copyright rights within the boundaries of the copyright laws.

Moreover, MRIS complies with the rules of the NAR Consent Judgment that are applicable to MLSs.[4]  There is no evidence to the contrary.[5]  Indeed, Defendants have not established the relevancy of the NAR Consent Judgment to this action, except as another attempt to justify and distract from, their willful copyright and trademark infringement.

### 3.       Defendants Fail to Demonstrate Any Concerted Action on the Part of MRIS that Constitutes Copyright Misuse

MRIS is not pursuing its claims against AHR and Cardella with any other parties.  Contrary to Defendants' claims, there is no concerted action or collusion.  MRIS investigated its claims against AHR and Cardella independently of NAR or any other real estate company, and, after its own investigation, is pursuing its own claims against AHR and Cardella based on infringement involving the intellectual property of MRIS.  (Heithaus Decl. ¶ 19.)   Although the

---

[4] The NAR Consent Judgment was a reaction to a decade-long distinction between "bricks-and-mortar" brokers and web-based brokerages that relied upon newly emerging Internet technologies.  MRIS was not involved in the litigation between NAR and the Department of Justice, and has never been accused of engaging in the anticompetitive practices at issue in that litigation.  In any event, MRIS offers both Internet Data Exchange ("IDX") and virtual office website ("VOW") access, as contemplated by the judgment.  A copy of MRIS's VOW policy is available at: http://mris.com/mris-customers/compliance/.

[5] MRIS treats its subscribers and other authorized licensees in a nondiscriminatory manner and does not discriminate against the business models its subscribers adopt.  (Heithaus Decl. ¶ 16.)  Indeed, MRIS has a long-standing and consistent practice of respecting its subscribers' decisions regarding where their listings appear.  (Heithaus Decl. ¶ 17.)  MRIS has not adopted any exclusionary practices regarding web-based brokers, and does not prohibit or impede access to, or discriminate against web-based brokers.  (Heithaus Decl. ¶ 17.)  MRIS similarly does not prohibit or impede the referral of customers whose identities are obtained from a website by a web-based broker to any other person, or establish the price of any such referral.  (Heithaus Decl., ¶ 18.)  MRIS does, however, require eligible licensees to comply with MRIS Rules and Regulations and the terms of its license agreements.  (Heithaus Decl. ¶ 18.)

NAR Legal Action Committee has approved funding assistance to MRIS to assist MRIS with the cost of this litigation, MRIS has not accepted any funding assistance from NAR.  (Heithaus Decl. ¶ 21.)  Defendants' claim that MRIS's lawsuit is an anticompetitive attempt to put AHR out of business are accordingly without merit.  MRIS is simply enforcing its own legal rights.

AHR's alleged evidence of "concerted action" on the part of MRIS and other MLSs fails to establish an antitrust violation or copyright misuse.  To establish concerted action in violation of antitrust law, AHR must prove that MRIS had a "conscious commitment to a common scheme designed to achieve an unlawful objective," and must "bring forward evidence that excludes the possibility that the alleged coconspirators acted . . . based upon a legitimate business purpose." *Laurel Sand & Gravel, Inc. v. CSX Transp. Inc*., 924 F.2d 539, 542-43 (4th Cir. 1991) (citation omitted).  Defendants have provided no evidence of any unlawful objective on the part of MRIS.

Because there is no unlawful objective, Defendants instead repeat unsupported assertions as if they were evidence, stating, by way of example, that the "timing and activities of AHR, Northstar MLS, MRIS and other multiple listing services in late 2011 and early 2012 *strongly suggests* that this suit is part of an effort spearheaded by the National Association of Realtors to shut down Defendants' Internet-based real estate ranking and rating website, NeighborCity.com . . . ."  (Def. Opp'n 21 (emphasis added).)  To support their unfounded assertion of "concerted anticompetitive action" on the part of MRIS, Defendants' point to cease-and-desist letters that allegedly "used the same format and the same language."  (*Id.* at 23.)  Defendants fail to identify any authority holding that such letters constitute reliable evidence of an unlawful objective.

The cases cited by Defendants (*id.*), *Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 829 (6th Cir. 2011), and *Robertson LLC v. Sea Pines Real Estate Cos.*, Nos. 11-1538-1541, 2012 WL 1672487, at *8-9 (4th Cir. May 14, 2012), do not involve the enforcement of copyright, do not

support the proposition that the receipt of "similar" cease-and-desist letters demonstrates copyright misuse, and are readily distinguishable from the case at bar.  In *Realcomp*, the Sixth Circuit affirmed the Federal Trade Commission's finding that a website policy adopted by Realcomp caused anticompetitive effects by prohibiting the distribution of information about nontraditional real estate listings on the association's MLS to public real estate websites. *Realcomp*, 635 F.3d at 835.  In *Robertson*, the Fourth Circuit found that bylaws passed by board members of MLSs located in South Carolina created an anticompetitive effect by illegally stabilizing prices paid by customers of real estate brokerage services.  *Robertson*, 2012 WL 1672487, at *1.  MRIS has not engaged in any exclusionary practices or other conduct even remotely similar to that at issue in *Realcomp* and *Robertson*, and there is no "anti-competitive effect" created by MRIS's filing of this lawsuit to enforce its copyright and trademark rights.

Defendants similarly fail to support their contentions regarding the alleged coordination on the part of MRIS and other MLSs with regard to these cease-and-desist letters.  Defendants overlook the obvious explanation for this "same format and same language": MLSs like MRIS and Northstar MLS are similarly situated and facing a similar harm, namely, the unauthorized copying, use, public display, and public distribution of copyrighted real estate listing content by AHR on their national website, NeighborCity.com, operating in local markets throughout the country.

To support their "facts," Defendants cite a self-serving Declaration from Jonathan Cardella, the founder and CEO of NeighborCity.com, as well as the cease-and-desist letters referenced above.  (Def. Opp'n 9-10.)  Defendants further cite an email from John Mosey, an individual with no connection to MRIS, and state, without any basis in fact, that "the result of the Mosey email was the present lawsuit filed on March 19, 2012 . . . ."  (*Id.* at 10-11.)  Defendants

21

establish no connection between the Mosey email and MRIS's initiation of this lawsuit, and no such connection exists.  MRIS did not have any role in the drafting or sending of the Mosey email, and did not solicit it or respond to it.  (Heithaus Decl. ¶ 20.)  Defendants muster no credible evidence establishing "concerted action" in support of its copyright misuse defense, and should be enjoined from continuing their infringing conduct.

> **4.    AHR Mischaracterizes the Nature of Its "Overture" to Obtain a License from MRIS**

MRIS is under no legal obligation to license its copyrighted materials to anyone who requests them.  In *Data General Corp. v. Grumman Systems Support Corp.*, , the Court of Appeals confirmed the propriety of Data General's unilateral refusal to license ADEX copyrighted software to anyone other than a limited class of licensees.  36 F.3d 1147 (1st Cir. 1994).  The Court of Appeals noted that a unilateral refusal to license a copyright is presumptively justified conduct: "The owner of the copyright, if [it] pleases, may refrain from vending or licensing and content [itself] with simply exercising the right to exclude others from using [its] property."  *Id.* at 1186 (alterations in original) (quoting *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)).  The refusal to license copyrighted information does not violate the antitrust laws or constitute misuse.  *See Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, No. C93-20079, 1995 WL 798935 at * 7 (N.D. Cal. Mar. 10, 1995).

Defendants state that "AHRN, Inc. met every cease-and-desist letter with an offer to negotiate a license for the use of the brokers' or multiple listing services' website," and that Defendants' "overture to license was rebuffed out of hand without negotiations" in each case. (Def. Opp'n 23.)  MRIS is not privy to and cannot comment on AHR's correspondence with others; however, Defendants mischaracterize the nature of their "overture" to MRIS.

Defendants neglect to mention that their "overture" only came *after* Defendants had already been systematically copying material from the MRIS Database.  (Heithaus Decl. ¶ 14-15, Ex. 4, Dec. 21, 2011, Resp. from NeighborCity.)  Defendants' response to MRIS's cease-and-desist letter did not deny or explain its unauthorized copying of MRIS's copyrighted material or agree to stop misappropriating the MRIS Database while the parties discussed the matter, and instead requested that, despite their wrongful activities, MRIS create a "custom license" for AHR.  (*Id.* at 1.)  Indeed, Defendant's response ignored the substantive points raised by MRIS in favor of a non-sequitor response requesting a "custom" license.

MRIS does not offer "custom licenses" on demand as requested by NeighborCity, but instead has a well-established program under which it licenses information from the MRIS Database.  Defendants never availed themselves of this program or any of MRIS's authorized channels to obtain copyrighted content from the MRIS Database.  Through these channels, MRIS supports and empowers its real estate professional subscribers to maintain control over the distribution of their own listing information.  AHR willfully ignored these channels in favor of flagrant, repeated, and verbatim infringement.

First, MRIS works with ListHub, a third-party vendor that provides listing syndication opportunities to brokers wishing to advertise their listings on third party websites.  (Heithaus Decl. ¶ 10.)  Once a real estate professional selects the advertising channels he or she would like to use for the listings, ListHub then releases that professional's listing(s), provided by MRIS through a licensed data feed, to the selected designations for display.  (Heithaus Decl. ¶ 10.)  AHR has never claimed to be a destination site for ListHub.  Neither has there been any evidence indicating that Defendants sought to  become such a destination site for MRIS subscribers.

Second, MRIS offers its Real Estate Transaction Standard ("RETS") licensing program, in which participating brokers and authorized third-party vendors can acquire an Authorized Developer License from MRIS to implement an Authorized Application that uses, subject to the terms and restrictions of the license, the content MRIS makes available through a RETS data feed. (Compl. ¶ 21.)  If AHR met the qualifications under the RETS program, it could potentially have received content from the MRIS Database directly as a third-party vendor, provided it abided by the terms of the license.  AHR never sought such a license.

Third, MRIS offers the Internet Data Exchange ("IDX") program to brokers.  As described in the Complaint, participating real estate professionals receive a licensed data feed of content from the MRIS Database through the MRIS IDX program.  (*Id.* ¶ 20.)  MRIS IDX is a broker-to-broker sharing program through which real estate brokers may share real estate listings on their respective websites.  (Heithaus Decl. ¶ 11.)  If AHR could establish that it met the broker qualifications for the IDX program (e.g., it is a licensed broker in the relevant jurisdictions), it could license the MRIS Database as a broker, provided that it abided by the terms of the program.

Defendants were clearly aware of all of these options.  In fact, American Home Realty Network, LLC ("AHRN"), which Defendants refer to as a sibling company to AHRN, Inc., completed an application for a "MRIS Database Access and License Agreement" in 2008, but never executed that agreement.  (Heithaus Decl. ¶ 12, Ex. 2.)  In 2009, AHRN completed an "Initial Questionnaire" for an Authorized MRIS Database License, but never finalized the contract and consequently did not receive a data feed from MRIS.  (Heithaus Decl., ¶ 13, Ex. 3.)

Defendants ignored each of these authorized channels, choosing instead the expedient option of taking MRIS's copyrighted material without burdening itself with a license, and once

24

caught, sought to secure permission for such material through a vaguely-described "custom license." Defendants' claim to have made an "overture" to MRIS, and their baseless assertion that MRIS's rejection of that "overture" constitutes copyright misuse are without merit.

## IV.    CONCLUSION

AHR's business is based on theft, tortious conversion, willful copyright infringement, and Lanham Act violations. Nothing allows Defendants to engage in a business premised on these unlawful activities. In light of the immediate and irreparable harm to MRIS, MRIS respectfully requests, pursuant to Federal Rule of Civil Procedure 65, that this Court enter a preliminary injunction enjoining Defendants from engaging in unauthorized copying, public display, use, and public distribution of copyrighted content from the MRIS Database, or creating unauthorized derivative works from copyrighted content from the MRIS Database, and using or displaying the MRIS name and trademark during the pendency of this action.

Respectfully submitted,

Dated: June 4, 2012                       By: /s/Margaret A. Esquenet
                                          John T. Westermeier (Bar No. 04364)
                                          (jay.westermeier@finnegan.com)
                                          Margaret A. Esquenet (Bar No. 27775)
                                          (margaret.esquenet@finnegan.com)
                                          Whitney D. Cooke (admitted *pro hac vice*)
                                          (whitney.cooke@finnegan.com)

                                          FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.

                                          *Attorneys for Plaintiff*
                                          Metropolitan Regional Information
                                          Systems, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Margaret A. Esquenet, hereby certify that on June 4, 2012 a copy of the foregoing

Plaintiff's Reply in Support of its Motion for Preliminary Injunction was served using the

Court's CM/ECF system upon:


Richard S. Toikka
L. Peter Farakas
FARKAS & TOIKKA, L.L.P.
1101 30th Street N.W., Suite 500
Washington, DC 20007
rst@farkastoikka.com
lfp@farkastoikka.com

Christopher Ralph Miller
AMERICAN HOME REALTY NETWORK INC.
222 7th Street, Second Floor
San Francisco, CA 94103
c.miller@neighborcity.com


/s/Margaret A. Esquenet_____
Margaret A. Esquenet