**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

_____

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 12-cv-954** |
| **v.** ) | |
| ) | |
| **AMERICAN HOME REALTY NETWORK, INC.** ) | |
| **and JONATHAN J. CARDELLA,** ) | |
| ) | |
| **Defendants,** ) | |

_____ )

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT AMERICAN HOME REALTY NETWORK, INC.'S
RULE 12 (b) MOTION TO DISMISS**

FARKAS+TOIKKA, LLP
Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)

Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California 94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

_Counsel for Defendants American Home Realty Network, Inc. and Jonathan J. Cardella_

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iii

I.   INTRODUCTION ................................................................................... 1

II.   MRIS DOES NOT STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ... 1

   A.   17 U.S.C. § 204(A) BARS MRIS AS A LEGAL ASSIGNEE OF THE   PURPORTED
   COPYRIGHTS, THUS THE ASSIGNMENTS ARE VOID ................................................ 2
   B.   THE MRIS TERMS OF USE VIOLATE 17 U.S.C. § 204(A) ............................................. 3
   C.   MRIS CANNOT MAKE A PRIMA FACIE CASE OF INFRINGEMENT ....................................... 5
   D.   MRIS CONFUSES THE JURISDICTIONAL DEFENSE IN XOOM WITH ................................... 6
   THE FAILURE TO STATE A CLAIM DEFENSE ASSERTED BY AHRN, INC. .................................. 6
      1.   The Fourth Circuit Has Declined to Rule on the Validity and Infringement
      Theories MRIS Is Advancing ................................................................................... 6
      2.   Absent Fourth Circuit or Maryland Law, The Court ................................................. 8
      Should Follow Muench, Alaska Stock, and Bean ......................................................... 8
      3.   MRIS Offers No Support For Its Argument That It .................................................. 9
      Need Not Identify the Authors of its Compilation Elements ........................................ 9

III.   PERSONAL JURISDICTION IS LACKING OVER DEFENDANT AHRN. INC. ....... 11

   A.   OVERVIEW ...................................................................................... 11
   B.   ARGUMENT ..................................................................................... 13
      1.   The Due Process Clause Prohibits The Exercise of Personal Jurisdiction Over
      AHRN, Inc. Because It Lacks Required Jurisdictional Contacts With Maryland ...... 14
      2.   MRIS Also Does Not Establish Specific Jurisdiction Over AHRN, Inc. Under
      The Maryland Long-Arm Statute ........................................................................ 21

IV.   VENUE IS IMPROPER IN THIS JUDICIAL DISTRICT ........................................... 24

V.   CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                             **PAGE**

*Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676 (D. Md. 2011) ...................................................................................................................................23

*ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ........................14

*Am, Ass'n of Blood Banks v. Boston Paternity, LLC.*, Case No. DKC-08-2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009) ....................................................................................................22

*Amirmokri v. Abraham*, 437 F. Supp. 2d 414 (D. Md. 2006) ..........................................................2

*Bass v. Energy Transp. Corp.*, 787 F. Supp. 530, 534 (D. Md. 1992) ..........................................22

*Calder v. Jones*, 465 U.S. 783, 789 (1984) ...................................................................................19

*Camelback Ski Corp. v. Behning*, 539 A.2d 1107 (Md. 1988), cert, denied, 488 U.S. 849 (1988)..............23

*Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 815 (D. Md. 2010)...................................19

*Cole-Tuve, Inc. v. Am. Machine Tools Corp.*, 342 F. Supp. 2d 362, 367 (2004) ..........................19

*CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) .......................................1

*CoStar Realty Info., Inc. v. Copier Country N.Y., LLC.*, No. 08-cv-3469, 2009 WL 3247431 at *1 (D. Md. Oct. 1, 2009) ...........................................................................................................25

*CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757 (D. Md. 2009).................................25

*Crispin v. Christian Audigier, Inc.*, No. CV 09-9509 ABC (JEMx), 2011 U.S. Dist. LEXIS 151150 at *1 (C.D. Cal. 2011).......................................................................................................3

*Davis v. Meridian Films, Inc.*, 14 Fed. Appx. 178, No. 00-1359, 2001 U.S. App. LEXIS 15695 at *1 (4th Cir 2001) .....................................................................................................................3

*EASB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997) .......................................16, 18, 19, 20

*Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ...........................................3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)....................................................7

*Gallman v. Sovereign Equity Grp., Inc.*, Case No. AW-11-2750, 2012 WL 983937, at *1 (D. Md. March 21, 2012) ...........................................................................................................................23

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (_____) .................................................................21

*Jafarzadeh v. Feisee*, 776 A.2d 1 (Md. Ct. Spec. App. 2001)......................................................23

*King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812 (M.D. Tenn. 2006) ........................................8

*Mascendro v. Sadr*, No. 09-cv-02787, 2010 WL 1427499 at *4, 2010 U.S. Dist. LEXIS 34713 at *11-12 (D. Md. Apr. 8, 2010) ....................................................................................................15, 16

*Masterfile, Co. v. Gale*, 2011 U.S. Dist. LEXIS 114638, at *1 (D Utah 2011)................................8

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)................................................................14

*Montgomery Cnty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804 (D. Md. 1995) *aff'd on other grounds*, 91 F.3d 132 (4th Cir. 1996)...............................................8

*Morris v. Business Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2001) ......................................................8

*Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233 (D. Md. 1992), *aff'd* 991 F.2d 1195 (4th Cir. 1993). ........22

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).....................................13, 17, 18

*Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ...................................................17

*Reed Elsevier v. Muchnick*, 130  S. Ct. 1237 (2010) .....................................................................7

*Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 353 (D. Md. 1997) ................14

*Tharp v. Colao*, No. WDQ-11-3202, 2012 U.S. Dist. LEXUS 76539 at *10-11 and n. 20 (D. Md. May 31, 2012) .................................................................................................................19, 22, 23

*Weinstein Co. v. Smokewood Entertainment Group, LLC*,  664 F. Supp. 2d 332 (S.D. N.Y. 2009) ..........3, 5

*Wolf v. County Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1971) ...................................................17

*Woods v. Resnick*, 725 F. Supp. 2d 809, 825(W.D. Wisc. 2010) ..................................................3

*Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279 (4th Cir, 2003) ........................................................6

*Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) ...........................................15

**STATUTES**

17 U.S.C. § 101 ...........................................................................................................................10

17 U.S.C. § 204(a) ......................................................................................................................12

28 U.S.C. § 1391(b)(1)...........................................................................................................24, 25

28 U.S.C. § 1391(b)(2) ...............................................................................................................24
28 U.S.C. § 1400(a) .............................................................................................................24, 25
Md. Code Ann., Cts. & Jud. Proc. § 6-103 ............................................................................19
Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). .......................................................................21
Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1) ............................................................13, 21
Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(4) ............................................................passim

**RULES**

FRCP 12(b) ...........................................................................................................................1, 12
FRCP 12(b)(3) ............................................................................................................................1
FRCP 12(b)(6) ......................................................................................................................1, 13
FRCP 56 ......................................................................................................................................2

**TREATISES**

2 Melville B. Nimmer and David Nimmer, Nimmer of Copyright § 7.16[B][5][c] at 7-187, 188 & n. 337
   (Mathew Bender, Rev. Ed.) .................................................................................................7

## I.  INTRODUCTION

Defendant American Home Realty Network, Inc. (hereinafter, "AHRN, Inc."), by and through its attorneys, hereby submits this Reply Memorandum in support of its motion to dismiss this action in whole or in part.  Defendant AHRN, Inc. also adopts and relies upon the arguments, statements of fact and citations of legal authorities contained in the Reply Memorandum in Support of Defendant Jonathan Cardella's Rule 12(b) Motion to Dismiss (hereinafter, "Defendant Cardella's Reply").  There are three parts to Defendant AHRN's Rule 12(b) Motion: (1) Rule 12(b)(6) (dismissal for failure to state a claim upon which relief may be granted); (2) Rule 12(b)(2) (dismissal for lack of personal jurisdiction); and (3) Rule 12(b)(3) (dismissal for improper venue); and Defendant's arguments in reply to MRIS's Opposition to Defendants AHRN, Inc.'s and Jonathan J. Cardella's Rule 12(b) Motions to Dismiss (hereinafter, "MRIS Opp.") are set forth below in the following three sections.

## II.  MRIS DOES NOT STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

MRIS contends that it established a prima facie case for copyright infringement by alleging in its Complaint: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  See MRIS Opp. at 25 *citing CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (citation omitted). In AHRN, Inc.'s Opening Memorandum and in Defendants' Opposition to MRIS's Motion for Preliminary Injunction, AHRN, Inc. challenged both the validity and infringement of MRIS's claimed copyrights.  *See* Opening Mem. at 10-11; Defendants' Opposition to PI Motion at 11-18.

MRIS has responded to AHRN's Rule 12(b)(6) Motion with a mountain of

purported evidence going beyond the four corners of the Complaint without requesting that the motion be treated as a motion for summary judgment under Rule 56. Accordingly, with one exception, the Court should decline to consider and strike for purposes of the 12(b)(6) Motion the materials extraneous to the Complaint submitted by MRIS in its Opposition . *See Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 418-419 (D. Md. 2006) (Alexander, J.).[1]

The one exception is MRIS's Terms of Use ("TOU") for its subscribers to submit photos to MRIS's database[2] which refutes MRIS's copyright claims, as shown below.

### A.      17 U.S.C.  § 204(a) Bars MRIS As a Legal Assignee of the Purported Copyrights, Thus the Assignments Are Void

MRIS's subscribers submit text of listings and photographs to MRIS's database through MRIS's website:    "MRIS subscribers execute the MRIS TOU as part of the upload process for new listings, and all photographs uploaded by that subscriber become the property of MRIS before being added to the MRIS Database."  MRIS Opp. at 29.

MRIS asserts that:

Per the MRIS Terms of Use Agreement, MRIS owns all images submitted by real estate agent and broker subscribers and contributes those images to the MRIS Database. These images are the property of MRIS and are irrevocably assigned to MRIS.

Heithaus Declaration ¶ 8.  MRIS's Opposition explains further that:

MRIS owns the MRIS Database, owns copyright registrations

---

[1]   The Court should strike:
Cooke Declaration, ¶¶ 3, 10,  13, 14; Exhibits 2, 9,12, 13;
Heithaus Declaration, except ¶¶ 7- 8;and
MRIS Opp. Br.: p. 26 last paragraph to end of paragraph on p. 27; p 28 last paragraph, p. 29 to top of p. 30; p. 31, first full paragraph to p. 32, to "Conclusion." (except for citations to Complaint Exhibits)

[2]    Heithaus Declaration ¶¶ 7-8; Exhibit 1 thereto..

for the MRIS Database, and MRIS's copyright ownership claims extend to the constituent elements MRIS has contributed to the MRIS Database.  In addition, MRIS is responsible for the selection and arrangement of material in the MRIS Database, and is the author of materials contained therein.

MRIS Opp. at 28-29, *citing* Heithaus Decl. ¶ 7 and Exhibit 1.[3]

### B.    The MRIS Terms of Use Violate 17 U.S.C. § 204(a)

Title 17, section 204(a) provides that:

> A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

The courts have construed Section 204(a) to require a signature on paper.  *Davis v. Meridian Films, Inc.*, 14 Fed. Appx. 178, No. 00-1359, 2001 U.S. App. LEXIS 15695 at *13 (4th Cir 2001);  *Woods v. Resnick*, 725 F. Supp. 2d 809, 825 (W.D. Wisc. 2010), *quoting Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir. 1990):

> § 204(a)'s "requirement is not unduly burdensome … The rule is really quite simple: If the copyright  holder agrees to transfer ownership to another party, that party must get the copyright  holder to sign a piece of paper saying so."

*See also Crispin v. Christian Audigier, Inc.*, No. CV 09-9509 ABC (JEMx), 2011 U.S. Dist. LEXIS 151150 at *10-11 (C.D. Cal. 2011).

In *Woods,* the Court also stated that  "[t]o be valid, an assignment under § 204(a) must clearly identify the deal and its basic parameters,"  725 F. Supp 2d at 826 *quoting Weinstein Co. v. Smokewood Entertainment Group, LLC*,  664 F. Supp. 2d 332, 342 (S.D. N.Y. 2009) (internal punctuation omitted) (motion to dismiss granted).

---

[3]   The last clause, "MRIS …. is the author of materials" must be a typo.  Authors do not need assignment of works, they generally own the works. Moreover, the Heithaus Declaration does not support MRIS's authorship, only ownership.

MRIS's Terms of Use fails on both counts.  First, as to the real estate listing information in which MRIS claims a copyright, listing information is not even covered by the TOU which relates only to images.[4]  Thus, MRIS cannot be the owner or assignee of the listing information, to the extent it is even copyrightable.  *See* AHRN's Opposition to Motion for Preliminary Injunction at 12.

Second, the TOU specifies as to images that it is the act of "SUBMITTING AN IMAGE TO THE MRIS SERVICE," that binds the person uploading images to "assign (and agree to assign) to MRIS … all of your rights  … in and to the image submitted." Exhibit 1 to Heithaus Declaration.   No document is signed.  Indeed, the name of the assignor is not specified.  Thus it is not even clear whether the unnamed purported assignor has any rights to assign in the image, in the first place.  Moreover, there is no indication MRIS makes any effort to determine whether or not the person uploading the image is the creator of the image or is himself an assignee and if so, on what basis.

Third, the purported assignment fails to state the basic parameter of the deal: it fails to identify the author/photographer, fails to identify the chain of title from the author/photographer to the person uploading the image, fails to identify that person as an agent of the subscriber; and fails to identify the image(s) allegedly assigned by their uploading.

Fourth, inasmuch as "title vests initially with the author of the work," 17 U.S.C. §

---

[4]  ¶ 4.5 of MRIS's Subscriber License and Access Agreement ("SLAA"), available on MRIS's web site www.mris.com and attached as Exhibit 1 hereto, provides that "[a]ll listing information submitted by MRIS® Subscriber to MRIS for inclusion in the MRIS System shall be owned by MRIS® Principal Broker Subscriber. … MRIS® Subscriber hereby irrevocably assigns to MRIS® Principal Broker Subscriber, all right, title and interest in any and all such listing information including the ownership of any copyright rights related to and in any such listing information. Thus, MRIS cannot claim a copyright in "all listing information" from the SLAA or the TOU.  Indeed, the SLAA specifically leaves ownership with the Principal Broker Subscriber, not with MRIS.

201(a), the purported assignment to MRIS requires compliance with section 204(a) from

the photographer to the subscriber as well as from the subscriber to MRIS.  MRIS has

not satisfied this requirement of the Copyright Act either.

Accordingly, the alleged assignment by the subscriber is void under section

204(a) and all copyright claims must be dismissed.  *See Weinstein, supra,* 664 F. Supp.

2d at 349.

### C.    MRIS Cannot Make a Prima Facie Case of Infringement

Putting aside the failure to establish a valid assignment, MRIS's contention that it

has asserted a *prima facie* case of copyright infringement depends on a false

equivalence between the compilation database copyright that MRIS registered and

AHRN's use of public facts and photographs on its website.  Specifically, MRIS argues

that:

> MRIS established that (1) it owns valid copyright registrations to the MRIS
> Database, and (2) Defendants have taken original, copyrighted material
> from the MRIS Database without authorization for reproduction and public
> display on the NeighborCity.com website.

MRIS Opp. at 26.

MRIS's claims that its copyrights cover its database. However, in the very next

clause of MRIS's statement, it charges AHRN, not with copying the database, but of

having taken "original copyrighted material from the MRIS database."

Thus, MRIS does not allege that AHRN copied its database only that it copied

material that may be in its database, which is unpublished, but is available on "third

party websites." [5]    MRIS does not contend that AHRN copied its database.  *See* fn 5,

---

[5] "MRIS believes that AHR is receiving and copying copyrighted content from the MRIS Database via
multiple possible sources, including, by way of example, from a RETS data feed that is sent to a licensed
real estate brokerage, and/or by copying and compiling such content from MRIS or third party websites,"

below.

MRIS does not allege that the materials available on third party websites were covered by the very same database compilation copyright registrations that it alleges are valid.   Accordingly, independent of MRIS's failure of assignment under section 204(a), its copyright claims must also be dismissed, because MRIS has not established a prima facie case that AHRN infringes either any registered compilation copyright or the purported copyrights, admittedly unregistered, in the constituent elements, the individual listings and photos.

     **D.**    **MRIS Confuses The Jurisdictional Defense in *Xoom* With The Failure to State a Claim Defense Asserted By AHRN, Inc.**

          **1.**    **The Fourth Circuit Has Declined to Rule on the Validity and Infringement Theories MRIS Is Advancing**

MRIS errs in relying on *Xoom, Inc. v. Imageline, Inc.,* 323 F.3d 279, 283-84 (4th Cir, 2003) for the propositions: "that copyright in a compilation extends to its constituent elements" and that "the Fourth Circuit held that an owner's registration of a compilation was sufficient to permit an infringement action with regard to individual works contained therein."  MRIS Opp. 27.  The *Xoom* Court merely held that Imageline had jurisdictional standing to assert a copyright infringement counterclaim, not that it stated a claim for it. In fact, the court specifically declined to consider what MRIS claims it held:

> We do not conclude that the registration of SuperBundle and Master Gallery constituted an effective registration of the underlying preexisting works.

*Id.* at 284, n. 5.

---

but not including from MRIS's database, MRIS claims is infringed.   *See* Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, Doc. 9-1 at 6, 11.

In *Xoom* the Fourth Circuit stated that "the issue on appeal centers around the question of whether [plaintiff] effectively registered its copyright in the materials it claims [defendant] infringed. Copyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act." *Id.* at 283. Therefore in declining to reach the registration issue for the underlying pre-existing works *Xoom* did not reach the issue of whether the jurisdictional requirement to sue for their copyright infringement was met.  Thus, the statement by the appellate court that an infringement action on the underlying parts whether new or pre-existing could go forward, *id.* at 284, is at best "inconsistent[]",  *See* 2 Melville B. Nimmer and David Nimmer, Nimmer of Copyright § 7.16[B][5][c] at 7-187, 188 & n. 337 (Mathew Bender, Rev. Ed.) (court not reaching the issue of effective registration of the underlying preexisting works was inconsistent).

Further, the above block quote confirms that MRIS also errs in stating that *Xoom* was "abrogated on other grounds" by *Reed Elsevier v. Muchnick*, 130  S. Ct. 1237, 1241 (2010).   The Supreme Court in *Muchnick* rejected the actual holding in *Xoom*, namely, that the registration was a jurisdictional requirement.

Neither the Fourth Circuit, nor the District Court for Maryland has ever read *Xoom* to hold or held that a compilation copyright separately protects constituent elements of a compilation.  That is because in *Feist,* the Supreme Court held that "a compilation is copyrightable only to the extent that it features an *original* selection, coordination or arrangement," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 360 (1991).  "Common sense tells us that 100 uncopyrightable facts do not magically change their status when gathered together in one place." *Id.* at 345.  Clearly, the

7

Supreme Court's holding in *Feist* precludes MRIS's interpretation of *Xoom*.

MRIS's subsection heading that "Fourth Circuit Precedent Strongly Favors MRIS" evaporates, as recognized in MRIS's Opposition by its discussion of a Utah and a Tennessee case.[6]   *See* MRIS Opp. at 27-28.   In any event, neither *Masterfile, Co. v. Gale*, 2011 U.S. Dist. LEXIS 114638 (D Utah 2011) nor *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 841 (M.D. Tenn. 2006) supports MRIS's theory that it does not require registration of the listings and photos to bring suit.   In *Masterfile* the same entity owned both a compilation copyright, p.4, and the 27 individually registered copyrights. p.3. *King Records* is equally unsupportive because unlike MRIS, it involved published works by plaintiff who was both the author and copyright claimant of musical albums and, in registering the albums with the Copyright Office, deposited a label copy identifying each individual song on the albums.[7]

Thus neither *Xoom*, *Masterfile*, nor *King Music* supports MRIS's insistence on a right to bring suit for infringement of unregistered constituent elements of MRIS's registered database.

**2.      Absent Fourth Circuit or Maryland Law, The Court
            Should Follow *Muench*, *Alaska Stock*, and *Bean***

MRIS attempts to distinguish *Muench*, *Alaska Stock* and *Bean* cases by offering

---

[6]   MRIS and *Xoom* also erroneously rely on *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 67 (2d Cir. 2001).   *Morris* affirmed the district court's summary judgment to the defendants on the ground that the magazine's registration did not extend to the articles and thus the court lacked subject matter jurisdiction. That proves AHRN, Inc.'s point that *Xoom* is a jurisdictional case, overruled by *Reid Elsevier* and on the merits here, as *Xoom* specifically declined to decide the issue for which MRIS cites *Xoom*.

[7]   That *Montgomery Cnty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 810 (D. Md. 1995) *aff'd on other grounds*, 91 F.3d 132 (4th Cir. 1996) found sufficient creativity in a database at issue in that case has no impact on whether MRIS's different, now industry standard database, meets the minimum creativity test 17 years later.

material extraneous to the Complaint, which should not be considered.  However, the distinction MRIS offers does not carry the day.  Specifically, MRIS claims that "MRIS's copyright ownership claims extend to the constituent elements MRIS has contributed to the MRIS Database."  Opp. Br. at 28.  However, regardless what MRIS claims, it has not registered copyrights on those constituent elements.

The TOU appears to be a sham, because by its own terms it is not even an exclusive license, given that the assignor of copyright can continue to use it as before the purported conveyance[8] and leaves open the possibility that the conveyor retains the copyright.[9]

### 3.    MRIS Offers No Support For Its Argument That It Need Not Identify the Authors of its Compilation Elements

MRIS relies on the Brief for the United States of America as Amicus Curiae in Support of Reversal filed by the United States on December 13, 2010 in *Bean v. Houghton Mifflin Harcourt Publishing Co.*, No., 10-16771 before the U.S. Court of Appeals for the Ninth Circuit, ("Amicus Brief"), attached as Exhibit 12 to Cooke Declaration for its argument that MRIS need not identify the authors/photographers of its real estate listings and photos in its registration.  First, this is extraneous material to the Complaint which the Court should disregard because its submission is simply a way

---

[8]  "So that you may continue to use the image in your business, MRIS grants to you and your broker the perpetual right and license to use, copy, adapt, modify, display and distribute the image tor your own business purposes, including posting the image on your own web site, your broker's web site, or in your own property listings, in any form or manner now or in the future available."  MRIS TOU attached as Exhibit 1 to Heithaus Declaration.

[9]  "If and to the extent you retain any copyrights or other ownership rights in or to the image despite this assignment, you waive and agree never to assert any such rights against MRIS or its successors, licensees, or customers …."  Exhibit 1 to Heithaus Declaration.

around the page limit on MRIS's Opposition.  Should the Court consider the Amicus

Brief over AHRN's objection, it should also consider the Brief of Appellee Houghton

Mifflin Harcourt Publishing Co. attached as Exhibit 2.

Second, the Amicus Brief is premised on the fact that the author of the

copyrighted compilation is the same as the author of the constituent works:

> Compilations – including "collective works," which are compilations that
> include independently copyrightable materials – are afforded copyright
> protection, but this protection "extends only to the material contributed by
> the author of such work, as distinguished from the preexisting material
> employed in the work, and does not imply any exclusive right in the
> preexisting material." See 17 U.S.C.§§ 101, 103, 201(cz).[10]   However, if
> the author of a collective work is also the author of the component works,
> or if the authors of the component works transfer all rights in the works to
> him, the author of the collective work may claim a copyright in the
> component works that make up the collective work. See 17 U.S.C.
> §201(d).
>
> This case concerns the ways in which a collective work claimant who also
> holds a copyright in the collective work's component works may register
> his copyrights in those component works.

See Amicus Brief of the United States at 5-6.

By contrast, here MRIS has no valid assignment of either photographs or other

listing information, *see* above; is not the author of either the listing information or the

photographs; and has no copyright in the constituent elements of the database.

Finally, the Defendant Houghton Mifflin declared bankruptcy before oral

argument, thus it will be a while before the *Bean* case is likely to heard and decided, if

---

[10] The Copyright Act defines a "compilation" as a "work formed by the collection and assembling of
preexisting materials or of data that are selected, coordinated, or arranged in such a way that the
resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Thus, the term
"compilation" includes collections of data that are not in themselves copyrightable material, such as a list
of stock prices for a certain day. A "collective work," such as a newspaper, is a type of compilation that
includes independently copyrightable component works. *See id.* Because the issue presented in this case
involves only collective works – not compilations more generally – this brief refers only to "collective
works." [This footnote appears as footnote 2 in the United States' Amicus Brief.]

ever.   See Notice of Bankruptcy dated May 25, 2012, attached as Exhibit 3. Accordingly, there is little, if any point for this Court to delay AHRN's Rule 12(b)(6) motion to await the Ninth Circuit's decision in *Bean*.

Accordingly, this Court should dismiss MRIS's copyright claims.

## III. PERSONAL JURISDICTION IS LACKING OVER DEFENDANT AHRN. INC.

### A.    Overview

Plaintiff MRIS in its Opposition to Defendants AHRN, Inc.'s and Jonathan J. Cardella's Rule 12(b) Motions to Dismiss (hereinafter, "MRIS Opp.") argues that this Court has specific jurisdiction over AHRN, Inc. based on its alleged "targeting" of Maryland, Maryland real estate professionals, and Maryland property buyers to the detriment of MRIS in Maryland, MRIS Opp. at 12, and its alleged copying listing information, including such for Maryland properties, from or sourced from MRIS's unpublished database located in Maryland, i*d.* at 14.  MRIS further argues that AHRN, Inc. "concedes jurisdiction" in each state for which there are property listings on AHRN, Inc.'s website www.NeighborCity.com.   *Id. at 12.*   MRIS also argues that despite AHRN's never having had an office or real estate license in Maryland, AHRN, Inc.'s inadvertent failure to remove material stating otherwise from its website somehow constitutes a basis for jurisdiction in Maryland. *Id.* at 13.

As shown below in more detail, none of these arguments is persuasive.  First, AHRN, Inc. and its website does not target Maryland or Maryland residents but merely displays information on homes for sale nationally that may be accessed through use of a search engine and/or web browser.  In fact AHRN, Inc. does not advertise its services as a matter of practice within Maryland or to Maryland residents.  Second, AHRN's

referral program does not target Maryland real estate professionals but instead is national in scope and focus, and MRIS's claims here do not arise out of these referrals to Maryland brokers and agents but solely out of the alleged publication of copyrighted material on the NeigborCity website.   Third, AHRN, Inc. does not copy material from MRIS's unpublished database in Maryland.   Fourth, AHRN, Inc. has not conceded jurisdiction in Maryland or any other state for which property listings appear on its website based on Terms of Use provisions that do not relate to the claims in this lawsuit or any actual contact of AHRN, Inc. with Maryland, and in any event provide for mandatory arbitration of disputes, not for litigation in court.   Finally, AHRN, Inc. does not have any office in Maryland and is not licensed as a real estate broker in Maryland.   As AHRN, Inc. explained in its Memorandum in support of its Rule 12(b) Motion to Dismiss (hereinafter, "AHRN, Inc. Opening Mem."), AHRN, Inc. removed the incorrect information from its website as soon as the error was made known to its management. See Opening Mem. at 4-5 and Exhibits 2, 3 and 4 thereto.   In any event it cannot be disputed that AHRN, Inc. has never operated an office, or held a real estate license, in Maryland, so such incorrect allegations cannot be used as contacts relevant for personal jurisdiction over AHRN, Inc.

MRIS's Terms of Use for its subscribers to upload material to its database is unsigned and would not cover real estate listings in MRIS's database if it were, and lacks any detail of the specifics of the "the deal." Accordingly, the Terms of Use cannot effectively assign either the listing information, which it does not purport to do on its face, or the images. 17 U.S.C. § 204(a). Thus, MRIS erroneously relies on the ineffective assignment: (a) to assign purported copyrights to MRIS for its prima facie

case of validity, Opp. Br. at 2; and (b) for its copyright notice "©MRIS" to establish infringement, Opp. Br. at 2, 26. Indeed, MRIS's "©MRIS" copyright notices on images on its website are unsupported, false and misleading for want of any signed assignment from the photographer.

The Court should therefore dismiss MRIS's claims of copyright infringement against Defendants AHRN (Counts I, II, III, IV, V and VI) and Cardella (Count VI) for failure to state a claim under Rule 12(b)(6) for the reasons explained below which apply equally to the likelihood of success on the merits argument in AHRN's opposition to MRIS's motion for a preliminary injunction.

### B.    Argument

MRIS does not assert in its Opposition that this Court has general jurisdiction over Defendant AHRN, Inc. for all purposes.  Moreover, AHRN, Inc has demonstrated that it lacks the "continuous and systematic" contacts with Maryland that would subject it to general jurisdiction of the Court. *See* AHRN, Inc. Opening Mem. at 15-17, and Exhibit 2 thereto (Vahabzadeh Declaration). See *also Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) (because specific jurisdiction has expanded tremendously, "broad constructions of general jurisdiction should be generally disfavored").

Instead MRIS bases its arguments on allegations that AHRN, Inc.'s conduct comes under two sections of the Maryland Long-Arm Statute (Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1) and 6-103(b)(4)) and that the Court may exercise specific personal jurisdiction over AHRN, Inc. consistent with the requirements of due process. See MRIS Opp. at 10.  Defendant shows below that the contacts of AHRN, Inc. with Maryland are not sufficient for an exercise of specific jurisdiction over it, and moreover,

that its conduct does not come under either of the two sections of the Long-Arm Statute on which MRIS relies.

### 1. The Due Process Clause Prohibits The Exercise of Personal Jurisdiction Over AHRN, Inc. Because It Lacks Required Jurisdictional Contacts With Maryland

To make out its required prima facie case for specific jurisdiction, MRIS must demonstrate that: (1) AHRN, Inc. purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities therein; (2) MRIS's causes of action arise out of or result from AHRN, Inc.'s Maryland-related contacts; and (3) this Court's exercise of personal jurisdiction over AHRN, Inc. in this case is reasonable, i.e. is consistent with "fair play and substantial justice."  AHRN, Inc. Opening Mem. at 14 (citations omitted).   These contacts must create a "substantial connection" with Maryland, *id.* at 17 *citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957), and must be "tantamount to physical presence there," Opening Mem. at 13-14 *quoting Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 353 (D. Md. 1997) (citation omitted).   Where electronic activity is the asserted basis for specific jurisdiction in this Court, MRIS must additionally demonstrate that AHRN, Inc. (1) directs electronic activity into Maryland, (2) with the manifested intent of engaging in business or other interactions within Maryland, and (3) that activity creates in MRIS a potential cause of action cognizable in this Court.   AHRN, Inc. Opening Mem. at 15 (citations omitted).  As shown below, MRIS does not meet these standards.

> a.   **AHRN, Inc.'s Website Does Not Target Maryland So As To Constitute Purposeful Direction Toward Residents of Maryland Or Purposeful Availment of the Privilege of Conducting Activities in Maryland**

AHRN's website www.NeighborCity.com cannot be a basis for specific jurisdiction because it is essentially a passive website that does "little more" than make information available to all who might be interested, and who actively seek out the website or the information contained therein.  AHRN, Inc, Opening Mem. at 18 *citing ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir. 2002). MRIS does not dispute that the website "serves to make information available to the public but a user may not upload computer files to, and no transactions may be processed through, the site." Opening Mem. at 2 and Exhibit 2 thereto (Vahabzadeh Decl.).

Instead MRIS argues that the NeighborCity website targets Maryland because it "permits website visitors to search the site for real estate listings by locale or neighborhood, by real estate agent or broker, and by MLS number," and "[t]hese search criteria focus on and target particular geographic areas and neighborhoods within Maryland and other specific jurisdictions."  MRIS Opp. at 14.  However, this is hardly the website "targeting" Maryland any more than it would be "targeting" Maryland by national search engines such as Google® or Yahoo® if users' searches lead them to certain Maryland sites.  It is the user who selects the search parameters and determines where his search leads him.  There is nothing about the NeighborCity site that invites a visitor to the site specifically to select pages showing listings for Maryland properties or displaying information on Maryland agents or brokers – that choice is the visitor's alone.

Thus, there is nothing about the website that would support a conclusion that AHRN, Inc. "manifested an intent to direct [its] website content … [to a Maryland] audience."  *Id.* at 15 citing *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002).

MRIS also cites to *Mascendro v. Sadr*, No. 09-cv-02787, 2010 WL 1427499 at *4, 2010 U.S. Dist. LEXIS 34713 at *11-12 (D. Md. Apr. 8, 2010) for the proposition that Internet activities aimed at "causing, informing, and guiding" action on the part of Maryland real estate owners are sufficient to establish specific jurisdiction.  However, *Mascendro* is very far off point because the Internet activity referred to by the court in that case was an email sent specifically and purposefully to influence Maryland property owners, not the activity of a website search engine directed by a visitor to the site.  See 2010 U.S. Dist. LEXIS at *11. Moreover, in *Mascendro* the defendant and her agent had a number of other jurisdictionally relevant contacts with Maryland, including the defendant's filing suits in Maryland courts related to the subject matter of the claims against her, and her agent telling the plaintiff that the refinancing program at issue was available to select Maryland property owners. *Id.* at *10-11.

Thus, because the NeighborCity website is targeted to a national audience, not specifically directed at Maryland residents, and the percent of its listings for Maryland properties is relatively small, the website cannot be a basis for specific jurisdiction.  See AHRN. Inc. Opening Mem. at 18-19, citing *EASB Grp., Inc. v. Centricut*, Inc., 126 F.3d 617, 625-26 (4th Cir. 1997) .

### b.    AHRN, Inc.'s Referral Business Does Not Target Maryland

MRIS points to AHRN, Inc's referrals to Maryland brokers for a fee as showing that AHRN. Inc.'s referral business targets Maryland.  MRIS Opp. at 15-17.  But MRIS

does not dispute that AHRN, Inc's referral business is national in scope and that the share of AHRN's referrals that are to Maryland brokers and agents is relatively small whether measured by number of agreements or revenue. See AHRN, Inc. Opening Mem. at 19-20.

AHRN, Inc.'s referral business is nationwide and solely website-driven.  No referrals occur unless a user of the website requests a contact with a Maryland broker or agent, or requests information or a property viewing.  See AHRN, Inc. Opening Mem. at 3.  As with the NeighborCity search engine, it is the user of the website, not AHRN, Inc., that takes the targeting actions that may ultimately culminate in a referral.  Thus, AHRN, Inc. may not be said to be purposefully directing overtures toward residents of Maryland or purposely availing itself of the privilege of conducting activities there.

Moreover, MRIS does not allege, as is required for a showing of specific jurisdiction, that its causes of action arise out of or result from AHRN's referrals of business to Maryland agents or brokers. See AHRN, Inc. Opening Mem. at 19.  Instead MRIS's allegations arise from the operation of the NeighborCity website which, as explained above, does not target Maryland or Maryland residents.

MRIS attempts to distinguish *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745, 748 (4th Cir. 1971); *Wolf v. County Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1971); and *Nichols* (*supra*), which all held that general jurisdiction was lacking over the particular defendant in view of its limited connection with the forum state.  AHRN, Inc. Opening Mem. at 16-17; MRIS Opp. at 16-17.  However, these are cases cited by AHRN, Inc. to support its argument that the Court does not have general jurisdiction over it for all purposes, see AHRN, Inc. Opening Mem. at 16-17; and in its Opposition MRIS does not assert that

this Court has general personal jurisdiction over AHRN, Inc.   The only jurisdictional issue in each of these cases was whether an exercise of general jurisdiction over an out-of-state defendant with limited contacts with the forum state and having no contacts related to plaintiff's cause of action satisfied due process requirements. *See Ratliff*, 444 F.2d at 747; *Wolf*, 745 F.2d at 909; *Nichols*, 991 F.2d at 1199.

In *Nichols*, the Fourth Circuit also commented that "because specific jurisdiction has expanded tremendously [citations omitted], plaintiffs now may generally bring their claims in the forum in which they arose.  …  As a result, 'obsolescing notions of general jurisdiction,' … which functioned primarily to ensure that a forum was available for plaintiffs to bring their claims, have been rendered largely unnecessary. … Thus, broad constructions of general jurisdiction should be generally disfavored (citations omitted)." 991 F.2d at 1200.   Thus the focus of the Court in deciding this jurisdictional motion should be on whether MRIS has made a prima facie case for specific jurisdiction over AHRN, Inc., and as shown herein MRIS has not made such a showing.   See *EASB Grp.*, 126 F.3d at 625 (no specific jurisdiction over defendant where only "contact" with forum state was intent and knowledge that out-of-state activities might harm plaintiff in forum state).

### c.   MRIS Cannot Rely On the *Calder v. Jones* Effects Test Because AHRN, Inc. Lacks Sufficient Contacts With Maryland to Satisfy Due Process Requirements

MRIS concedes that AHRN, Inc. has not engaged in tortious conduct within Maryland or has waived any right to claim that AHRN, Inc. has committed tortious conduct within Maryland.  See MRIS Opp. at 17-20 (arguing only that under Section 6-103(b)(4) of Maryland's Long-Arm Statute that AHRN, Inc. has caused tortious injury in

18

the State … by an act or omission outside of the State …).   On page 10 of its

Opposition MRIS incorrectly quotes section 6-103(b) of the Long-Arm Statute as:

> "(4) causes tortious injury in the state or outside of the state if he regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state; …"

However the statute section actually reads:

> "(4) Causes tortious injury in the State or outside the State *by an act or omission outside the State* if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services or manufactured products used or consumed in the State (emphasis supplied)"

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b); see also AHRN Opening Mem. at 12-13

n.4.   The language omitted from MRIS's quote ("by an act or omission outside the

state") makes it clear that section 6-103(b)(4) is limited to tortious conduct outside of

Maryland, and by choosing to proceed under section 6-103(b)(4) to the exclusion of

section 6-103(b)(3) which covers "tortious injury in the State by an act or omission

outside the State," MRIS has waived any right to claim tortious activity in Maryland as a

basis for personal jurisdiction over either defendant.[11]

MRIS relies on the *Calder v. Jones,* 465 U.S. 783, 789 (1984) "effects test" to

argue specific jurisdiction over AHRN, Inc. based on Maryland being the locus of the

harm caused by Defendants' alleged wrongful conduct outside of Maryland.  MRIS Opp.

at 11, 17-20.  In severely limiting the application of the *Calder* effects test, the Fourth

Circuit has held that, although the locus of alleged harm to Plaintiff may be relevant to

the jurisdictional inquiry, 'it must ultimately be accompanied by the defendant's own

---

[11] Consequently, MRIS's assertion that AHRN, Inc.'s alleged copyright infringement constitutes a persistent course of conduct in Maryland, MRIS Opp. at 11-12 is of no effect because AHRN, Inc. is not alleged to have committed any tort within Maryland much less to have had a persistent course of committing such torts in Maryland.

contacts with the state if jurisdiction over the defendant is to be upheld.'"  See AHRN, Inc. Opening Mem. at 20 citing *ESAB Grp.*, 126 F.3d at 626; *ALS Scan*, 293 F.3d at 714; Defendant Cardella's Reply at 4-5,  *citing Tharp v. Colao*, No. WDQ-11-3202, 2012 U.S. Dist. LEXUS 76539 at *10-11 and n. 20 (D. Md. May 31, 2012), quoting *ESAB Grp., Inc.,* 126 F.3d at 626; *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 815 (D. Md. 2010) ("the Fourth Circuit has begun to require a greater showing"); *Cole-Tuve, Inc. v. Am. Machine Tools Corp.*, 342 F. Supp. 2d 362, 367 (2004) (Fourth Circuit has seemed to require more than the *Calder* effects test to hold exercises of jurisdiction over foreign tortfeasors constitutional), citing *EASB Grp.*, 126 F.3d at 625-26.

As shown below, the contacts MRIS alleges AHRN, Inc. has with Maryland are insufficient for specific jurisdiction under applicable due process standards.

First, as shown in Sections III.B.1 (a) and (b) above, neither AHRN's website NeighborCity or its nationwide program of referrals target Maryland as would be required for specific jurisdiction.

Second, contrary to the allegations in MRIS's Complaint, AHRN, Inc. does not have any offices in Maryland and does not have a Maryland real estate broker's license. See AHRN, Inc. Opening Mem. at 4-5.  The statements pointed to by MRIS on the NeighborCity website were mistaken and inadvertent and they were removed as soon as their management became aware of them, and the holder of the real estate license in question was a matter of public record when this lawsuit was filed.  See Opening Mem. at 4-5 & n.2 and Exhibit 3 thereto**.** Thus the alleged office and real estate license are a non-existent contact of AHRN, Inc. with Maryland and not a basis for jurisdiction.

Third, MRIS relies on a Terms of Use Agreement (AHRNTOU") downloaded from the NeighborCity website for its incorrect assertion that AHRN, Inc. consents to jurisdiction in Maryland and every other state in which properties listed on the NeighborCity site are located.  MRIS Opp., at 12 and Exhibit 1 thereto (Declaration of Whitney Devin Cooke ("Cooke Decl.")) (D.E. 26-1) at ¶ 10, Exhibit 9.  First, the AHRN TOU by its own terms provides for compulsory arbitration and thus cannot operate as a consent to personal jurisdiction in any court.  See Cooke Decl., ¶ 10 and Exhibit 9 (¶¶ 7-8 of TOU).    Second, the arbitration provision aside, the TOU cannot be a basis for personal jurisdiction in this lawsuit because none of MRIS claims arise or result from "this license or [MRIS's] use of American's websites or from services provided to [MRIS] by American."  See Cooke Decl. and Exhibit 9 (¶ 7 of TOU).  Third, as MRIS has not shown any actual contacts arising out of the AHRN TOU, it cannot serve as a basis for "due process" reasonableness.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316  (1945) (minimum contacts required for exercise of jurisdiction to be reasonable).

> **2.** **MRIS Also Does Not Establish Specific Jurisdiction Over AHRN, Inc. Under The Maryland Long-Arm Statute**
>
> **a.** **Section 6-103(b)(1) Does Not Apply to AHRN, Inc, Because the Claims Against AHRN, Inc. Do Not Arise Out Of Any Business Allegedly Conducted By AHRN, Inc. in Maryland**

The Maryland Long-Arm Statute states that "if jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).

MRIS does not establish, as required under § 6-103(a) that its alleged causes of action against AHRN, Inc. under section 6-103(b)(1) arose out of AHRN, Inc.'s "[t]ransact[ing] any business or perform[ing] any character of work or service in the

State."   First, as shown above in Section III.B.1. a, AHRN, Inc.'s web site does not target Maryland so the website is not a jurisdictionally relevant contact.  Second, MRIS does not specifically contend that its causes of action arise out of any of AHRN's relatively few referral contacts with Maryland discussed in Section III.B.1.b. above.  Third, MRIS does not allege that its causes of action arise out of any contacts referred to in the AHRN TOU.  Finally, MRIS cannot allege that its causes of action arise out of the mistakenly alleged office and real estate license.

Therefore, MRIS has not met its burden to show that its causes of action arise out of any alleged AHRN, Inc. conduct coming under section 6-103(b)(1) of the Long-Arm Statute.

<blockquote>

**b.       Section 6-103(b)(4) Does Not Apply To AHRN, Inc. Because It Does Not Regularly Conduct or Solicit  Business in Maryland**

</blockquote>

MRIS also does not establish as required under § 6-103(b)(4) that AHRN, Inc. "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."  "The 'persistent course of conduct' standard … is not tantamount to establishing general jurisdiction, but does require greater contacts than those necessary to establish jurisdiction under subsection (b)(1)." *Tharp v. Colao*, *supra,* 2012 U.S. Dist. LEXUS 76539 at *7 and n.13 *citing Am, Ass'n of Blood Banks v. Boston Paternity, LLC.,* Case No. DKC-08-2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009).  However, when '[t]he contacts listed in [sub] section (b)(4) … [do] not arise from or relate to the plaintiff[s'] cause of action," "the defendant's contacts to the forum must be extensive, continuous and systematic."   *Tharp*, 2012 U.S. Dist.

LEXIS 76539 at *7-8, and nn. 14 & 15, citing to *Bass v. Energy Transp. Corp.*, 787 F. Supp. 530, 534 (D. Md. 1992) and *Nichols v. G.D. Searle & Co.,* 783 F. Supp. 233, 236 (D. Md. 1992) (internal quotation marks omitted), *aff'd* 991 F.2d 1195 (4th Cir. 1993).

Thus where, as here, the defendant's causes of action do not arise out of AHRN's contacts with Maryland, the standard under section 6-103(b)(4) is tantamount to that for general jurisdiction – "continuous and systematic" – which as explained above and in the Opening Memorandum, is not met.   See Section III.B. above and Opening Mem. at 15-17.

As the court noted in *Tharp*, 2012 U.S. Dist. LEXUS 76539 at *8, Maryland courts have refused to exercise jurisdiction under section 6-103(b)(4) even when defendants have (1) engaged in extensive electronic communications with someone in Maryland, *id.* and n. 16, *citing Gallman v. Sovereign Equity Grp., Inc.*, Case No. AW-11-2750, 2012 WL 983937, at *6 (D. Md. March 21, 2012) (New Jersey resident did not engage in a persistent course of conduct in Maryland when she "communicated electronically and telephonically with a Maryland individual over a period of six months as part of a much larger transaction that only tangentially involved Maryland"); (2) operated a website used by Maryland residents, *id.* & n. 17, *citing Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676, 683-84 (D. Md. 2011) (Nebraska non-profit corporation did not engage in a persistent course of conduct in Maryland even though its members included Maryland residents and its website was accessible in Maryland; the plaintiff had not shown that the corporation targeted a Maryland audience or derived substantial revenue from Maryland); and (3) advertised in Maryland, *id.* & n. 18*, citing Camelback Ski Corp. v. Behning*, 539 A.2d 1107 (Md. 1988), cert, denied, 488

U.S. 849 (1988) (defendant did not engage in a persistent course of conduct in Maryland when it sent a representative to Maryland one time, its ski resort was listed in a commercial publication distributed in the Washington, D.C.- Baltimore area, it had a toll-free number accessible to Marylanders, and it sent brochures to Maryland residents and businesses upon request); *Jafarzadeh v. Feisee*, 776 A.2d 1, 3-4 (Md. Ct. Spec. App. 2001) (Virginia doctor did not engage in a persistent course of conduct in Maryland despite being licensed in Maryland, receiving about $462 in Maryland Medicaid payments over two years, and advertising in the Persian-American Yellow Pages, which were distributed in Maryland).

Thus, MRIS has not met its burden to show that AHRN, Inc.'s contacts with Maryland meet the "persistent course of conduct" standard of section 6-103(b)(4) of the Maryland Long-Arm Statute.

### IV. VENUE IS IMPROPER IN THIS JUDICIAL DISTRICT

MRIS concedes that venue is only proper under 28 U.S.C. § 1391(b)(1) if the defendants are subject to personal jurisdiction in this Court, and as the defendants have shown in their opening and reply memoranda, the Court does not have personal jurisdiction over either of them.  Further MRIS does not argue that venue is proper under 28 U.S.C. § 1391(b)(2) based on "a substantial part of the events or omissions giving rise to the claim occur[ing]" in this District.  MRIS Op. at 23.  Nor does it argue in its Opposition that venue is proper under 28 U.S.C. § 1400(a) (copyright actions).  See Complaint, ¶ 7.

Instead, MRIS contends that venue is proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of [the] property that is the subject of the action is situated" in this District.   In arguing thus, MRIS considers its allegedly copyrighted unpublished database alleged to be located in Maryland to be the "subject of the action."  *Id.* at 23. MRIS also cites to 28 U.S.C. § 1091(b)(2), a nonexistent  code section.  *Id.* at 1. However, we assume this is a typographical error.

MRIS cites *CoStar Realty Info., Inc. v. Copier Country N.Y., LLC.*, No. 08-cv-3469, 2009 WL 3247431 at *5 (D. Md. Oct. 1, 2009); and *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 773 (D. Md. 2009) in support of its assertion of proper venue.  These cases are inapposite because in both cases the plaintiff showed, and the court held, that there was personal jurisdiction over the defendant in this District, making venue proper under both 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1400(a).   Section 1400(a) states that venue is proper for an action under the Copyright Act in a district "in which the defendant or his agent resides."   Thus venue is improper in this District for MRIS's copyright infringement claims because MRIS has failed to show that AHRN, Inc. or its agent resides in Maryland for venue purposes.

Accordingly the Court should dismiss this action based on improper venue.

## V.  CONCLUSION

Therefore, for the reasons set forth above and in Defendant Cardella's Reply, and in the opening Memorandum of each Defendant, this action should be dismissed in whole or in part.

Respectfully submitted,

FARKAS+TOIKKA, LLP

_____ /S/ Richard S. Toikka _____
Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)


Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General
Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)


*Counsel for Defendants American Home
Realty Network, Inc. and Jonathan J.
Cardella*

**CERTIFICATE OF SERVICE**

I, Richard S. Toikka, herby certify that on this the 15th of June, 2012, a copy of

the foregoing Reply Memorandum was served by electronic means using the Court's

CM/ECF system upon:

John T. Westermeier, Esquire
Margaret A. Esquenet, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*/S/ Richard S. Toikka*
                Richard S. Toikka