**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| METROPOLITAN REGIONAL | * | |
| INFORMATION SYSTEMS, INC., | * | |
|    Plaintiff, | * | |
| | * | |
|        v. | * | Civil Action No. 12-cv-00954-AW |
| | * | |
| AMERICAN HOME REALTY NETWORK, | * | |
| INC., *et al.*, | * | |
|    Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

Plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS") brings this action against Defendants Jonathan J. Cardella ("Cardella") and American Home Realty Network, Inc. ("AHRN"). The following motions are pending before the Court: (1) Cardella's Motion to Dismiss, Doc. No. 23; (2) AHRN's Motion to Dismiss, Doc. No. 24; (3) MRIS's Motion for Leave to File a Surreply to Defendants' Replies in Support of their Motions to Dismiss, Doc. No. 30; and (4) MRIS's Motion for Preliminary Injunction, Doc. No. 16. The Court has reviewed the motion papers and finds no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011).

For the reasons articulated below, the Court GRANTS Cardella's Motion to Dismiss for lack of personal jurisdiction, DENIES AHRN's Motion to Dismiss, DENIES as moot MRIS's Motion for Leave, and GRANTS MRIS's Motion for Preliminary Injunction.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Complaint and the parties' briefs and attached exhibits. Plaintiff MRIS is a Delaware corporation with its principal place of business in Rockville, Maryland. MRIS provides what is known in the real estate industry as "multiple

listing services" ("MLS").  Specifically, MRIS facilitates real estate transactions in the mid-Atlantic region by operating and maintaining an automated database consisting of compiled property listings and related informational content (the "MRIS Database").  To use the database, real estate brokers and agents are required to execute a subscription agreement.  Subscribers agree to upload their real estate listings to the MRIS Database and to assign to MRIS the copyrights in each photograph included in those listings.  Upon payment to MRIS and subject to terms and conditions, subscribers are granted access to all the real estate listings in the MRIS Database and the right to display those listings on their own websites via a licensed data feed.  MRIS oversees the use and content of the listings to ensure that subscribers are complying with MRIS's rules and regulations and information quality standards.  In addition to the services provided to subscribers, MRIS makes limited content available to consumers through a free website, www.homesdatabase.com.

MRIS files its claims of copyright ownership in the MRIS Database with the U.S. Copyright Office ("Copyright Office") each quarter, in accord with the registration procedures applicable to automated databases.  The copyright registrations for the MRIS Database list "text" and "photographs" as pre-existing material and the basis of the copyright claims.  To protect its intellectual property, MRIS affixes its mark and copyright notice—*i.e.*, "© 2012 MRIS" —to photographs in the MRIS Database.

Defendant AHRN is a Delaware corporation with its principle place of business in San Francisco, California.  Defendant Cardella is the Chief Executive Officer of AHRN.  AHRN is a registered California real estate broker with nine employees.  AHRN owns and operates the website NeighborCity.com, a national real estate search engine and provider of real estate agent ratings and rankings.  The data displayed on NeighborCity.com comes from real estate brokers

and agents, county tax assessors' offices and other public records, and through foreclosure data

providers and FSBO ("For Sale by Owner") aggregators.  The website also incorporates school

data and maps from third party providers.  NeighborCity.com derives its own performance

metrics, statistics, and rankings for about one million real estate agents throughout the country.

Users of the NeighborCity.com website can find nationwide real estate listings using search

parameters such as geographic region and price range.  If users find a real estate agent or a

property that interests them, NeighborCity.com connects the user with the local agent of choice

or a recommended agent for the requested property.  NeighborCity.com is compensated for its

agent matching and referral services if the lead turns into a sale.

On March 28, 2012 MRIS filed suit in this Court alleging direct copyright infringement

AHRN has not acquired a license or permission from MRIS to reproduce, display, or

otherwise use the MRIS Database.  However, NeighborCity.com has displayed Maryland real

estate listings containing photographs from the MRIS Database.  On November 18, 2011, MRIS

sent a letter to AHRN putting it on notice of the alleged copyright infringement and demanding

cessation of all infringing activities. AHRN responded on December 21, 2011 by suggesting that

the parties develop a "custom license" whereby AHRN could continue to use the listing data to

which MRIS claimed a proprietary interest.  MRIS rejected AHRN's suggestion on January 26,

2012.

On March 28, 2012 MRIS filed suit in this Court alleging direct copyright infringement

against AHRN for the reproduction, public display, and creation of derivative works from the

copyrighted MRIS Database, inducement of copyright infringement and contributory copyright

infringement against AHRN, vicarious copyright infringement against AHRN and Cardella, false

designation and other claims under the Lanham Act against AHRN, and tortious conversion and

unjust enrichment against AHRN.  On April 4, 2012 MRIS filed a motion for a preliminary

injunction.  Defendants filed separate motions to dismiss on May 11, 2012 for lack of personal

jurisdiction, improper venue and failure to state a claim.  Following briefing on the motions to

dismiss, MRIS filed a motion for leave to file a surreply on June 19, 2012.

## II.     DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A.  Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is

properly challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the

jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately

to prove grounds for jurisdiction by a preponderance of the evidence."  *Carefirst of Md., Inc. v.*

*Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v.*

*Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)).  If the existence of jurisdiction turns on disputed

factual questions the court may resolve the motion on the basis of an evidentiary hearing.  *See*

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  However, if the court rules on the motion

without conducting an evidentiary hearing and relies solely on the basis of the pleadings,

allegations in the complaint, motion papers, affidavits, and discovery materials, "the plaintiff

need only make a prima facie showing of personal jurisdiction."  *Screen v. Equifax Info. Sys.,*

*LLC*, 303 F. Supp. 2d 685, 688 (D. Md. 2004) (quoting *Carefirst of Md.*, 334 F.3d at 396)); *see*

*also CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 667 (D. Md. 2009).  "In deciding

whether the plaintiff has made the requisite showing, the court must take all disputed facts and

reasonable inferences in favor of the plaintiff."  *Carefirst of Md.*, 334 F.3d at 396.

B.  Analysis

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1)

jurisdiction is authorized under the long-arm statute of the forum state; and (2) the assertion of

jurisdiction comports with Fourteenth Amendment due process requirements. *See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Maryland courts have consistently held that Maryland's long-arm statute is co-extensive with the scope of jurisdiction permitted by the Due Process Clause. *See Carefirst of Md.*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (1977)). Although the statutory and constitutional inquiries merge, the Court must address both elements in the personal jurisdiction analysis. *See Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (citing *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (2006)).

The Maryland long-arm statute limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself. Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). In this case, MRIS argues that this Court may exercise personal jurisdiction over Defendants pursuant to sections 6-103(b)(1) and 6-103(b)(4) of the Maryland long-arm statute.

Section 6-103(b)(1) authorizes jurisdiction when a person "[t]ransacts any business or performs any character of work or service in the state." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). "Transacting business pursuant to subsection (b)(1) 'requires actions that culminate in purposeful activity within the state.'" *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 689 (D. Md. 2007) (quoting *Bahn v. Chi. Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. 1993)). "Subsection (b)(1) does not require the defendant to have been present physically in Maryland." *Capital Source Fin., LLC*, 520 F. Supp. 2d at 689 (citations omitted). In *Bahn*, for example, the court found that the nonresident defendant "transacted business" within the

meaning of section 6-103(b)(1) because it mailed notices to the Maryland plaintiffs, contracted with the Maryland plaintiffs, and received payments from Maryland.  634 A.2d at 67–68.

Section 6-103(b)(4) applies to any person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4).  Copyright infringement is an intentional tort, and a persistent course of conduct in committing copyright infringement satisfies section 6-103(b)(4).  *See CoStar*, 612 F. Supp. 2d at 671.  Establishing a "persistent course of conduct" under section 6-103(b)(4) is "not tantamount to establishing general jurisdiction, but it does require greater contacts that those necessary to establish jurisdiction under [section 6-103(b)(1)]."  *American Ass'n of Blood Banks v. Bos. Paternity, LLC*, No. 2008-2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009).

In addition to making a prima facie showing that this Court has jurisdiction over Defendants under Maryland's long-arm statute, MRIS must show that this Court's jurisdiction complies with the Due Process Clause.  A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). Courts have recognized two types of personal jurisdiction: general and specific jurisdiction.  *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  General jurisdiction is proper where a defendant's contacts with the forum are "continuous and systematic." *Id.* at 416.  Specific jurisdiction is appropriate when "(1)

the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, that is, consistent with 'traditional notions of fair play and substantial justice.'" *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 366 (D. Md. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). In this case, MRIS does not appear to argue that either defendant could be subject to the general jurisdiction of Maryland courts, so the Court will focus on the specific jurisdiction inquiry.

The jurisdictional question is particularly complex where, as here, the alleged contacts between the defendants and the forum state are largely based on electronic communications and Internet activity. The Fourth Circuit has held that a court may, consistent with due process, exercise judicial power over a nonresident when the nonresident "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). This test is not dissimilar to the "effects test" applied in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984), in which the Supreme Court held that a California court could constitutionally exercise jurisdiction over a Florida citizen whose only material contact with California was to write a libelous story, directed at a California resident for a publication circulated in California, knowing that the injury would be felt by the California resident in her state. *See ALS Scan*, 293 F.3d at 714. The Fourth Circuit has emphasized, however, that merely feeling the effects of out-of-state conduct is insufficient to establish personal jurisdiction: "Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it

must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997).

With these principles in mind, the Court will discuss personal jurisdiction over Cardella and AHRN in turn.

### 1. Personal Jurisdiction over Cardella

MRIS has failed to make a prima facie showing that this Court has personal jurisdiction over Cardella. Personal jurisdiction over Cardella must be based on his personal contacts with the state of Maryland, not simply his status as AHRN's CEO. *See, e.g.*, *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 513–14 (D. Md. 2004); *see also Amhil Enter. Ltd. v. Wawa, Inc.*, No. HAR 93-1349, 1994 WL 750535, at *4 (D. Md. Dec. 16, 1994) ("The potential for personal liability of a corporate officer . . . is no substitute for a determination of whether the Court may exercise personal jurisdiction over that officer."). MRIS's allegations with respect to Cardella are based almost exclusively on AHRN's Maryland activities and not on Cardella's personal contacts with the state or its residents. For example, MRIS alleges that Cardella has "oversight and management responsibility" for AHRN's activities, that he has "actual knowledge" of AHRN's alleged infringement and failed or refused to stop it, and that he has a "financial interest" in AHRN's infringement. Doc. No. 1, Compl. ¶¶ 4, 11–12, 78–82. MRIS also maintains that because Cardella is the "public face" of AHRN, it is implausible that Cardella is not personally involved in AHRN's infringing activities in Maryland. *See* Doc. No. 26, at 22. These arguments are speculative at best and find no specific factual support in the record. The only specific evidence MRIS presents to establish Cardella's personal contact with Maryland is Cardella's 44-page Twitter feed, which includes a

8

single tweet, "Realtor® Performance Profile for Catherine Cusack in Edgewater, MD," followed by a link to the real estate agent's online profile. *See* Doc. No. 26, Cooke Decl. Ex. 8.

These are insufficient grounds for this Court's exercise of personal jurisdiction under the Maryland long-arm statute. MRIS has failed to demonstrate that Cardella transacted business within the state or engaged in regular business or a persistent course of conduct in the state. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1), (b)(4). Due process principles also prohibit this Court's exercise of personal jurisdiction. Although Cardella arguably directed electronic activity to Maryland residents, the Court will not conclude that he intended to engage in business in the state based on an isolated tweet. MRIS also fails to articulate how this particular tweet would have created a cause of action in Maryland courts. Finally, the Court concludes that it would be constitutionally unreasonable to hale Cardella, a California resident who has never been to Maryland, into a Maryland court based on a single tweet that referenced the state.

MRIS argues that Cardella's involvement in AHRN's operations satisfies the *Calder* "effects test." *See* 465 U.S. at 789; *see also Carefirst of Md.*, 334 F.3d at 398 n.7. However, personal jurisdiction in this case must be based on Cardella's personal contacts with Maryland, not simply his status as an officer and employee or vague allegations of "involvement" with AHRN. Absent such personal contacts, the fact that the injury may be felt in Maryland is insufficient for this Court to exercise personal jurisdiction over Cardella. *See, e.g.*, *ESAB Grp.*, 126 F.3d at 626.

MRIS also relies on this Court's decision in *Planet Technologies, Inc. v. Planit Technology Group, LLC*, 735 F. Supp. 2d 397 (D. Md. 2010) to argue that this Court has personal jurisdiction over Cardella. In *Planet Technologies*, this Court exercised personal jurisdiction over a defendant CEO of a Virginia corporation in a trademark infringement and

unfair competition action.  However, *Planet Technologies* is distinguishable from the instant

case.  There, the plaintiff alleged that the defendant CEO personally participated in selecting the

allegedly infringing mark, directly controlled the service mark, directed the company's counsel

to file for federal trademark registration, and directed his company to provide competing

services.  *Id.* at 399.  Unlike the plaintiff in *Planet Technologies*, however, MRIS cites to no

specific evidence that Cardella directed or personally participated in AHRN's allegedly

infringing activities.  *See id.* at 403 ("[T]he plaintiff must . . . point to specific activity indicating

that the defendant expressly aimed its tortious conduct at the forum.") (citation omitted).  As

discussed above, the fact that Cardella is CEO of AHRN is insufficient to subject him to the

Court's jurisdiction for the acts of AHRN in Maryland.  Absent more fact-based allegations that

Cardella was involved with AHRN's Maryland-related activities and that he engaged in tortious

conduct in the forum, the Court cannot exercise personal jurisdiction here.

Accordingly, Cardella's Motion to Dismiss for lack of personal jurisdiction, Doc No. 23,

is GRANTED, and he is hereby DISMISSED from this action.

### 2. Personal Jurisdiction over AHRN

MRIS has made a prima facie showing that the Court has personal jurisdiction over

AHRN.  It is undisputed that NeighborCity.com lists Maryland properties and Maryland-based

real estate professionals.  AHRN admits that as a result of its operation of NeighborCity.com, it

is compensated for real estate agent matching and referral services.  AHRN does not dispute that

NeighborCity.com "Client Specialists" have directly contacted Maryland real estate

professionals to solicit business for the website's referral program.  As an example, MRIS cites

an unsolicited e-mail from NeighborCity.com to a Maryland real estate broker in which a Client

Specialist identified the recipient as a "qualified local agent" in Maryland, identified a Maryland

property of interest to a NeighborCity.com client, offered broker-to-broker referrals in exchange

for a fee, and directed the broker to the NeighborCity.com website and phone number.  Doc. No.

26, at 5–6, Campbell Decl. ¶ 4–6.  AHRN also admits to earning more than $11,000 in referral

fees from Maryland brokers since the beginning of 2011.  *See* Doc. No. 24, Vahabzadeh Decl. ¶

13.

      Furthermore, as of at least March 8, 2012, NeighborCity.com's listing pages stated that

the website was owned and operated by AHRN, Inc., that its headquarters was in Gaithersburg,

Maryland, and that AHRN, Inc. had a Maryland real estate license.  Doc. No. 1, Compl. Exs. A-

1–A-6.  AHRN maintains that this information was inaccurate and that the language was

removed in or about February 2012.  *See* Doc. No. 24, Vahabzadeh Dec. ¶ 16.  It further

maintains that the Gaithersburg location was operated by AHRN, LLC, a separate legal entity,

that AHRN, Inc. was not involved in the LLC's business, and that the Maryland real estate

license belonged to the LLC.  *See id.* ¶ 15.  However, the Disclaimer on NeighborCity.com

stated, as of May 22, 2012, that AHRN, LLC and AHRN, Inc. "are brother/sister entities that are

organized in the state of Delaware.  For convenience of reference the term 'American' will be

used to refer to one of both of these entities."  Doc. No. 26, Cooke Dec. ¶ 11, Ex. 10.

      The Court finds ample grounds to exercise personal jurisdiction over Defendant AHRN.

AHRN has "transacted business" in Maryland within the meaning of section 6-103(b)(1) by

contacting Maryland real estate professionals and soliciting business for its website, as well as by

earning substantial revenues from transactions with Maryland residents in 2011 and 2012.  The

Court also finds that it may exercise personal jurisdiction over AHRN under section 6-103(b)(4)

of the long-arm statute.  MRIS has alleged a colorable claim of tortious copyright infringement[1]

and Lanham Act violations that cause injury both inside and outside Maryland.  AHRN has

---

[1] *See infra* Part IV.

engaged in regular transactions with Maryland residents, regularly solicits business from

Maryland residents, and has earned substantial revenue as a result of transactions with Maryland

residents.  Furthermore, until at least May 2012, AHRN represented itself or a closely affiliated

entity as having a Maryland headquarters and real estate license.  The Court is also satisfied that

exercising personal jurisdiction over AHRN comports with due process for many of the same

reasons that personal jurisdiction is appropriate under the long-arm statute.  AHRN actively and

repeatedly directed electronic activity into Maryland with the clear intent of engaging in business

with Maryland residents, the causes of action in this case result from AHRN's display of MRIS's

copyrighted content on NeighborCity.com's Maryland real estate listings, and the Court discerns

nothing unreasonable in exercising jurisdiction over the defendant in these circumstances.

AHRN claims that the NeighborCity.com website is "essentially passive" because it does

"little more" than make information available to the public.  Doc. No. 24, at 18.  This

mischaracterizes the nature and operation of NeighborCity.com, however.  In its own motion,

AHRN describes an interactive process in which the website enables users to connect with real

estate professionals.  *Id.* at 3.  Specifically, the user hits a "contact" button on a desired agent's

profile, after which the website sets up a meeting between the user and the agent.  The website

similarly facilitates communications between users and agents when users express interest in

particular properties.  As previously discussed, AHRN also derives compensation from the

website based on its agent matching and referral services.  This does not meet the definition of

"passive Internet activity" as defined by the Fourth Circuit.  *See ALS Scan*, 293 F.3d at 714.

AHRN also maintains that its website is of a national character and that it does not

specifically target Maryland or focus its activities on the state.  AHRN emphasizes that only

2.4% of its revenue since 2011 has come from Maryland transactions, only 2.58% of its listings

have been for Maryland properties, and Maryland referral agreements have constituted only 2.05% of all NeighborCity.com referral agreements. *See* Doc. No. 24, Vahabzadeh Dec. ¶¶ 13–14. The fact that Maryland transactions form a relatively minor part of the NeighborCity.com portfolio does not alter the conclusion that AHRN expressly aimed its activities at Maryland and transacted business in Maryland, as discussed above. *See, e.g.*, *Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713, 717 (D. Md. 2004) (concluding that exercise of personal jurisdiction over Internet retailer was proper because defendant could not dispute that it engaged in business in Maryland, even where an exceedingly low 0.02% of its nationwide sales occurred there).

AHRN relies on *Gallman v. Sovereign Equity Group, Inc.*, No. AW-11-2150, 2012 WL 983937 (D. Md. Mar. 21, 2012) to argue that the exercise of personal jurisdiction in this case does not comport with due process or the Maryland long-arm statute. In *Gallman*, however, this Court held that it lacked jurisdiction because the plaintiff failed to provide any evidence that the defendant's alleged contacts with Maryland related to the plaintiff's claims, there was no evidence that the defendant sought to target Maryland residents, and there was no evidence that the defendant was even aware that she was communicating with Maryland residents. *Id.* at *4–5. In this case, MRIS has presented competent evidence that AHRN has infringed its copyrights on Maryland real estate listings and that AHRN knowingly targeted, communicated with and transacted business with Maryland residents. AHRN also relies on *Allcarrier Worldwide Services, Inc. v. United Network Equipment Dealer Ass'n*, 812 F. Supp. 2d 676 (D. Md. 2011), but this case too is distinguishable. In *Allcarrier*, this Court declined to exercise personal jurisdiction over an out-of-state website operator where the operator did nothing more than establish website membership and grant access to members. *Id.* at 682. Unlike the *Allcarrier*

defendant, AHRN's website actively engaged in communications and business with Maryland residents.

Accordingly, AHRN's Motion to Dismiss for lack of personal jurisdiction is hereby DENIED.

## III.    DEFENDANTS' MOTIONS TO DISMISS FOR IMPROPER VENUE

"To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  In considering motions to dismiss under Federal Rule of Civil Procedure 12(b)(3), "all inferences are to be drawn in plaintiff's favor." *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 488 (D. Md. 2007).  Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b).  For venue purposes, an entity with the capacity to be sued "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).  In copyright actions, venue is proper "in the district in which the defendant or his agent resides or may be found." *Id.* § 1400(a).

In this case, venue in this District is proper under Section 1391(b)(1) because this Court may exercise personal jurisdiction over AHRN, thereby making it a Maryland resident for the purposes of the venue statute, *id.* § 1391(c)(2), and because AHRN is the only remaining Defendant in this action.  Venue is also proper under Section 1391(b)(2) because a substantial part of the property that is the subject of the action is situated in Maryland.  *See CoStar Realty*

*Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 773 (D. Md. 2009) (holding in copyright infringement action that venue is proper in Maryland where "Plaintiffs' servers and associated copyrighted material, which constitute property that is the subject of the action, are located in Maryland"). In this case, MRIS operates and maintains its MRIS Database from its Maryland headquarters, and Defendants have allegedly misappropriated copyrighted content from or sourced from the database. Doc No. 26, at 24. Finally, venue is proper under Section 1400(a) because AHRN resides and may be found in Maryland. *See id.* (concluding that the term "may be found" in Section 1400(a) means any district which may assert personal jurisdiction over a defendant).

Accordingly, Defendants' Motion to Dismiss for improper venue is DENIED.

## IV.   DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Standard of review

If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as for one summary judgment under Rule 56. Fed. R. Civ. Pro. 12(d). "It is well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, allowing them to assess whether genuine issues of material fact do indeed exist." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). In this case, both parties have submitted items of extrinsic evidence with their briefs. As such, this Court will treat Defendants' Motion to Dismiss under Rule 12(b)(6) as a motion for summary judgment. *See, e.g.*, *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 419 (D. Md. 2006); *Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 639 (D. Md. 2002).[2]

---

[2] Defendants complain that MRIS responded to their 12(b)(6) Motion to Dismiss with evidence going beyond the four corners of the Complaint without requesting that the motion be treated as one for summary judgment, and that the Court should decline to consider and strike these materials. Doc. No. 29, at 1–2. Defendants appear to cite

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

B.  Analysis

Copyright protection extends to "original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102.  Under Section 103(a) of the Copyright Act, copyright protection extends to compilations, which are works "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  A

---

*Amirmokri* in support of this argument, but the court in *Amirmokri* did not strike any evidence from the record. *See* 437 F. Supp. 2d at 418–19.  The Court discerns no unfairness in considering the extrinsic evidence and reviewing Defendants' Motions under Rule 56, particularly because Defendants have been permitted to respond to MRIS's evidence in their Reply Briefs and have submitted their own extrinsic evidence for the Court's consideration. Therefore, to the extent that Defendants move to strike evidence attached to Plaintiff's Response Brief, their motion is denied.  That portion of Plaintiff's Motion for Leave to File a Surreply to respond to Defendants' motion to strike is denied as moot.

copyright holder has certain exclusive rights to the work, including the right to reproduce all or any part of the copyrighted work. *Id.* § 106.  One infringes a copyright when he or she violates one of the copyright owner's exclusive rights. *See* 17 U.S.C. § 501. "[T]o establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Subject to limited exceptions, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a).  Regulations promulgated by the Register of Copyrights provide for the registration of compilations, including "automated databases" such as the MRIS Database. *See* 37 C.F.R. § 202.3(b)(5).  A certificate of registration issued by the Copyright Office is *"prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  When such a certificate exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid. *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010).

Defendants argue that they are entitled to judgment as a matter of law to the extent Plaintiffs seeks to enforce copyrights on the individual elements—*i.e.*, the photographs—of the copyrighted MRIS Database.  Specifically, Defendants assert that MRIS does not have an infringement cause of action with respect to the photographs because it did not individually register the photographs with the Copyright Office or list the author and title of each photograph on its copyright registrations for the MRIS Database.  Defendants' arguments are contradicted by Fourth Circuit precedent and based on an incorrect reading of the relevant statutory authorities.

In *Xoom, Inc. v. Imageline, Inc.*, the Fourth Circuit held that the registration of compilations is "sufficient to provide copyright protection to the underlying works which those [compilations] encompassed."  323 F.3d 279, 283–84 (4th Cir. 2003).  In *Xoom*, the defendant Imageline, which had registered compilations of electronic clip-art images with the U.S. Copyright Office, claimed that the plaintiff Xoom infringed its copyrights by sublicensing and distributing the individual clip-art images.  *See id.* at 281–282.  The court concluded that

> because Imageline owned copyright [in the compilations] and in the underlying works of each, its registration of [the compilations] was sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting. . . . If Xoom improperly used *any* copyrightable image contained in the [registered compilations], new or preexisting, that usage would give rise to potential statutory damages.

*Id.* at 284 (emphasis in original).  Defendants argue that this Court should not rely on *Xoom* because the Fourth Circuit's treatment of registration as a "jurisdictional prerequisite" to an infringement suit has been overruled, *see Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1241 (2010), and because the *Xoom* court declined to decide whether Imageline's registration of the compilations also constituted a registration of the underlying parts, *see Xoom*, 323 F.3d at 283–84.   But these factors do not alter the *Xoom* court's central holding that an owner and registrant of a compilation may bring an infringement action on the underlying parts where it also owns copyrights in the underlying parts, even where those parts have not been individually registered. *See id.*  In this case, MRIS, the owner and registrant of the MRIS Database compilation, has presented credible evidence that it also owns the copyrights in the underlying photographs.  *See* Doc. No. 26, Heithaus Decl. ¶ 8.  The Court recognizes that there is a split of authority on this

issue,[3] but under Fourth Circuit precedent, Defendants are not entitled to judgment as a matter of law on the grounds that MRIS did not individually register the photographs.

Defendants' statutory arguments are also unpersuasive.  First, Defendants contend that MRIS's claims on the photographs are unenforceable under Section 409 of the Copyright Act. Section 409 provides, in relevant part:

> The application for copyright protection shall be made on a form prescribed by the Register of Copyrights and shall include--
> …
> (2) in the case of a work other than an anonymous or pseudonymous work, the name and nationality or domicile of the author or authors, and, if one or more of the authors is dead, the dates of their death;
> …
> (6) the title of the work, together with any previous or alternative titles under which the work can be identified.

17 U.S.C. § 409.  Defendants argue that MRIS's failure to provide the names of the authors and the titles of all underlying works in its database registrations limits the registrations and scope of copyright protection to the MRIS Database as a whole, but does not cover the individual, underlying works such as the photographs.  The Court disagrees with Defendants' reading of Section 409.  The statute does not unambiguously require every application for a compilation to include the author and title of each underlying work.  In fact, the statute could easily be read to require only the listing of the author and title of the compilation itself.

---

[3] In the context of automated databases, at least one district court has reached the conclusion this Court reaches today.  *See, e.g.*, *Masterfile Corp. v. Gale*, No. 2:09-cv-966, 2011 WL 4702862, at *2 (D. Utah Oct. 4, 2011) ("Because Masterfile owns the constituent parts of the collection the registration of the collection extends copyright protection to the constituent parts.").  At least three other district courts have ruled that copyright registration of an automated database that did not include authors' names for each underlying work did not cover the individual, underlying works.  *See, e.g.*, *Muench v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84 (S.D.N.Y. 2010); *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, No. CV10-8034-PCT-DGC, 2010 U.S. Dist. LEXIS 83676 (D. Ariz. Aug. 10, 2010); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. 3:09-cv-0061-HRH, 2010 U.S. Dist. LEXIS 108041 (D. Alaska Sept. 21, 2010).  These courts relied on Sections 409 and 103(b) of the Copyright Act in holding the copyright protection did not extend to the individual, underlying works.  For the reasons stated herein, the Court does not find this reasoning persuasive.

The only reference Section 409 makes to the registration of compilations does not explicitly require the listing of all authors and titles of each underlying or preexisting work, nor does it address whether the registration of the compilation covers independently copyrightable component works that the registrant owns.  Section 409(9) provides that applications shall include, "in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."  17 U.S.C. § 409(9).  MRIS's identification of "photographs" and "text" as preexisting material and the basis of the copyright claims in its copyright registrations appears to be adequate under this provision.[4]  *See* Doc. No. 24 Ex. 1.

In implementing Section 409, the Copyright Office has not required registrants of collective works[5] such as the MRIS Database to list the author and title of each underlying work in their applications:

> Where a collective work is being registered, the application should name the author of the collective work.  *The names of the individual authors of separate contributions being registered as part of the claim need not be given on the application.  The registration may cover* (a) the collective work authorship, (b) any contribution created by the employee or other party commissioned by the author of a work made for hire, and (c) *any other contributions that the claimant of the collective work obtained by transfer.*

Compendium of Copyright Office Practices II § 615.06 (1984) (emphasis added).[6]  Because Section 409 is silent as to whether the author and title of each underlying or preexisting work

---

[4] The Fourth Circuit in *Xoom* did not analyze Section 409.  Unlike MRIS, the registrant in that case did not even mention the underlying, individual clip-art images in its registration application, although it did deposit copies of the individual images with the application.  323 F.3d at 281.  The *Xoom* court's holding did not appear to depend on these facts, however.

[5] This Opinion has generally referred to the MRIS Database as a "compilation," a term which includes "collective works" under the Copyright Act.  17 U.S.C. § 101.  The Copyright Act defines "collective work" as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."  *Id.*  Because the MRIS Database contains photographs and text that are independently copyrightable works, the database is also a "collective work" under the Copyright Act.

must be listed, and because the Copyright Office's interpretation of Section 409 is reasonable, the Court will defer to that interpretation. *See, e.g.*, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–140 (1944); *see also Batjac Prods., Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1230–31 (9th Cir. 1998) (deferring to Register's reasonable interpretation of copyright laws as provided in Compendium of Copyright Office Practices).[7]

Defendants' reliance on Section 103(b) of the Copyright Act is misplaced.  Section 103(b) provides that "[t]he copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103(b).  Section 103(b) covers the subject matter of copyrights, not registrations, and prevents a compilation copyright holder from acquiring rights to other authors' works simply by including them in the compilation.  That is not the basis of MRIS's infringement claims.  In this case, MRIS claims copyright ownership in the underlying works—the photographs—and the question is whether MRIS's registration of the MRIS Database permits an infringement action based on unauthorized display of those photographs.  Section 103(b) does not undermine the Court's conclusion that the registration of a compilation covers the underlying or preexisting works of the compilation that are also owned by the registrant.

---

[6] According to the Copyright Office's website, the Compendium was undergoing revision as of the issuance of this Opinion.

[7] Defendants argue that Copyright Office Circular 65, which covers automated databases, contains no language providing that the copyright of an automated database extends to the independently contributed works in the database.  This is in contrast to Circular 62, which covers serials and expressly provides that "[t]he claimant registering a serial may claim copyright not only in the collective-work authorship for which the claimant is responsible, but also in any independently authored contributions in which all rights have been transferred to the claimant by the contributors."  The Court finds nothing significant about Circular 65's apparent silence on the issue, especially in light of the explicit approach adopted in the Compendium.  The Court also notes that as of the issuance of this Opinion and according to the Copyright Office's website, Circular 65 was undergoing revision.

Defendants' next statutory argument relies on Section 204(a) of the Copyright Act, which

provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid

unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and

signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C.

204(a).  Defendants argue that the purported assignments to MRIS of copyrights in the individual

photographs are void because the assignments were not in writing and signed by MRIS

subscribers.  The Court disagrees.  The Electronic Signatures in Global and National Commerce

Act ("ESIGN") provides,

> "[n]otwithstanding any statute, regulation, or other rule of law . . . with respect to
> any transaction in or affecting interstate or foreign commerce--
> (1) a signature, contract, or other record relating to such transaction may not be
> denied legal effect, validity, or enforceability solely because it is in electronic
> form; and
> (2) a contract relating to such transaction may not be denied legal effect, validity,
> or enforceability solely because an electronic signature or electronic record was
> used in its formation.

15 U.S.C. § 7001(a).  "The term 'electronic signature' means an electronic sound, symbol, or

process, attached to or logically associated with a contract or other record and executed or

adopted by a person with the intent to sign the record."  *Id.* § 7006(5).  In this case, the

assignments of the copyrights in the individual photographs are governed by the following

provision in the MRIS Terms of Use ("TOU") agreement:

> All images submitted to the MRIS Service become the exclusive property of
> Metropolitan Regional Information Systems, Inc. (MRIS).  By submitting an
> image, you hereby irrevocably assign (and agree to assign) to MRIS, free and
> clear of any restrictions or encumbrances, all of your rights, title and interest in
> and to the image submitted.  This assignment includes, without limitation, all
> worldwide copyrights in and to the image, and the right to sue for past and future
> infringement.

Doc. No. 26, Heithaus Decl. ¶ 8.  The MRIS TOU constitutes credible evidence that MRIS's

users intended to assign their copyrights to MRIS through the electronic submissions of

photographs, which would satisfy the relevant provisions of ESIGN.  Accordingly, Defendants

are not entitled to judgment as a matter of law on the grounds that the assignments of copyrights

in the individual photographs were void.  *See, e.g.*, *Vergara Hermosilla v. Coca-Cola Co.*, No.

10-21418-CIV, 2011 WL 744098, at *3 (S.D. Fla. Feb. 23, 2011) (citing ESIGN and holding that

conveyance of copyright interest by electronic mail was valid).

　　　　Finally, Defendants argue that the assignments are invalid as a matter of law on the

grounds that they fail to "clearly identify the deal and its basic parameters."  *Woods v. Resnick*,

725 F. Supp. 2d 809, 826 (W.D. Wis. 2010) (quoting *Weinstein Co. v. Smokewood Entm't Grp.,*

*LLC*, 664 F. Supp. 2d 332, 342 (S.D.N.Y. 2009)).  In *Woods*, the court concluded that an

assignment of copyright ownership was invalid because the written documents in the record were

not between the purported assignor and assignee.  725 F. Supp. 2d at 826.  Accordingly, the

record did not reveal clear and unequivocal intent to transfer rights, and the court was unable to

identify the terms of the deal.  *See id.*  In *Weinstein*, the court concluded that an assignment was

invalid because the copyright owner's communications were "noncommittal" as to the

assignment of its rights.  *See* 664 F. Supp. 2d at 341.  In this case, however, the MRIS TOU is

between MRIS (the purported assignee) and its subscribers (the purported assignors), its terms

are clear, and MRIS has a credible claim that the subscribers, in submitting the images, intended

to assign their rights to MRIS.[8]

---

[8] Defendants make a variety of other arguments in their Reply Briefs.  For example, Defendants assert that MRIS failed to comply with the Copyright Act because the assignment from the photographer to the MRIS subscriber must also comply with Section 204(a).  *See* Doc. No. 29, at 4–5.  The photographers and subscribers are not parties to this action, and Defendants present no factual support that such assignments were faulty.  Defendants also contend that because the MRIS TOU only covers images, MRIS cannot be the owner or assignee of the listing information to the extent it is copyrightable.  *Id.* at 4.  Even if the Court accepted Defendants' argument, it would not entitle them to judgment as a matter of law with respect to the photographs.  Finally, Defendants claim that the MRIS TOU is a "sham" on the grounds that the assignor of the copyright can continue to use the image following the conveyance and because the TOU leaves open the possibility that the assignor will retain the copyright.  *See id.* at 9.  Defendants cite no legal authority in support of this argument, and the Court finds no reason to grant them judgment as a matter of law on this basis.

Accordingly, based on Fourth Circuit precedent and the relevant statutory provisions, the Court finds that Defendants are not entitled to judgment as a matter of law.  AHRN's Motion to Dismiss, Doc. No. 24, is therefore DENIED.

## V.     PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### A.  Standard of review

 "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances."  *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)).

### B.  Analysis

The Court finds that MRIS has established the requisite elements for a preliminary injunction.  The Court will address each element in turn.

#### 1.  Success on the merits

As discussed above, *supra* Part IV.B, "to establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  As it did in support of its Motion to Dismiss, AHRN argues that MRIS does not have a cause of action on the photographs in the MRIS Database because MRIS did not register the underlying works.

Doc. No. 25, at 15–17.  The Court has already rejected this argument, and will not revisit it here.  *See supra* Part IV.B.

MRIS is the owner of registered copyrights in the MRIS Database.  *See* Doc. No. 24 Ex. 1.  The certificates of registration are sufficient to constitute prima facie evidence of the validity of these copyrights.  *See* 17 U.S.C. § 410(c).  MRIS has also shown that it owns the copyrights of the underlying parts of the MRIS Database, as "© 2012 MRIS" notices are prominently displayed on the photographs of properties.  Doc. No. 1, Compl. Exs. A-1–A-6.  MRIS appears to have obtained these copyrights by assignment when the photographs were uploaded to the MRIS Database by subscribers.  *See supra* Part IV.B; Doc. No. 26, Heithaus Decl. ¶ 8.

Given the existence of MRIS's certificates of registration, the burden is on AHRN to prove that the claimed copyrights are invalid.  AHRN argues that the MRIS Database is not copyrightable because it is not an "original work of authorship" under the Copyright Act's definition of "compilation."  *See* 17 U.S.C. § 101.  Specifically, AHRN argues that MRIS "added no written expression" and "does not make any selections" of the texts and photographs because "they are provided on automatic pilot through uploading by the subscribers."  Doc. No. 25, at 15.  To determine whether a compilation meets the originality requirement of the Copyright Act, the court should determine "whether the selection, coordination, and arrangement are sufficiently original to merit protection."  *Feist*, 499 U.S. at 358.  "Originality requires only that the author make the selection or arrangement independently (*i.e.*, without copying that selection or arrangement from another work), and that it display some minimal level of creativity."  *Id.*  The Court in *Feist* ultimately held that a phone book lacked the requisite originality to entitle it to copyright protection:

> The selection, coordination, and arrangement of Rural's white pages do not satisfy the minimum constitutional standards for copyright protection.

> As mentioned at the outset, Rural's white pages are entirely typical.
> Persons desiring telephone service in Rural's service area fill out an
> application and Rural issues them a telephone number. In preparing its
> white pages, Rural simply takes the data provided by its subscribers and
> lists it alphabetically by surname. The end product is a garden-variety
> white pages directory, devoid of even the slightest trace of creativity.

*Id.* at 362.

The Court finds that the MRIS Database exhibits the requisite originality for copyright protection. MRIS oversees and controls the quality and accuracy of the content in the MRIS Database. Doc. No. 27, Heithaus Dec. ¶¶ 6–7. Each month, the compliance department sends thousands of notices to its subscribers identifying violations of MRIS policy, including the failure to update the status of a property or the manipulation of information in property listings. *See id.* ¶ 7. Maintenance of the MRIS Database, which provides "more than 70,000 current, active residential real estate listings integrated with over 5 million public records" and other property-related information, Doc. No. 1, Compl. ¶ 14, requires original selection, arrangement, and coordination of the material uploaded from MRIS subscribers. Furthermore, MRIS's control over the quality and content of the MRIS Database contradicts Defendants' suggestion that the Database is on "automatic pilot." MRIS's creation and ongoing maintenance of the MRIS Database certainly requires more creativity than simply listing subscribers' submissions in alphabetical order, as was the case in *Feist*.[9] *See* 499 U.S. at 362; *see also Montgomery Cnty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 810 (D. Md. 1995) (holding that arrangement of information in MLS database "possesses at least some minimal degree of creativity") (citing *Feist*, 499 U.S. at 345).

---

[9] The Court is not suggesting that the MRIS Database is entitled to copyright protection based on MRIS's efforts in compiling the data. This "sweat of the brow" or "industrious collection" theory was rejected by the Supreme Court in *Feist*. *See* 499 U.S. at 352–54. Rather, the Court finds that the database is entitled to copyright protection because MRIS makes creative decisions in arranging and compiling the data. To the extent the Court cites MRIS's efforts, it does so because they evidence control over the selection, coordination, and arrangement of the compilation.

The Court also finds that MRIS has shown that AHRN has copied constituent, original elements of the MRIS Database. MRIS has presented persuasive evidence of AHRN's direct copying of photographs containing the MRIS mark and copyright notice from the MRIS Database onto NeighborCity.com. Doc. No. 1, Compl. Exs. A-1–A-6. AHRN does not deny that these photographs appear on its website. Furthermore, the NeighborCity.com Terms of Use persuade the Court that AHRN is engaged in direct copying of information from Multiple Listing Services such as MRIS:

> You understand that all the data on properties available for sale or rent is maintained by various real estate brokers, real estate agent boards, MLSs and associations in the communities where you are searching or where your property is located. These local boards of real estate are independent of American [AHRN] and are solely responsible for the accuracy of the information on properties entered into their own MLS data. *American does not alter or add to the information on the properties in any way*.

Doc. No. 26, Cooke Decl. ¶ 10 (emphasis added).

AHRN argues that to establish infringement, "MRIS must show substantial similarity between its copyrighted work and what it alleges AHRN, Inc. to have copied." Doc. No. 25, at 18. MRIS has shown that NeighborCity.com website content is not only substantially similar, but *identical*, to constituent, original elements of the MRIS Database. Regardless, even if evidence of direct copying was insufficient in this case, copying may also be "established by proof that the defendant had access to the plaintiff's work and produced a work that is substantially similar to the plaintiff's work." *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 445 (4th Cir. 1986). AHRN does not appear to dispute that it had access to the MRIS Database via MRIS licensees or third party websites and that the photographs on NeighborCity.com are at least substantially similar to MRIS's photographs.

AHRN asserts that it has a viable copyright misuse defense in this action, thereby diminishing MRIS's likelihood of success on the merits.  *See Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02C2523, 2003 U.S. Dist. LEXIS 16737, at *12 (N.D. Ill. Sept. 23, 2003).  AHRN alleges that MRIS filed this lawsuit in collusion with other Multiple Listing Services to shut down AHRN.  They also imply that MRIS and other MLSs may be in violation of a Consent Decree that the Department of Justice entered with the National Association of Realtors ("NAR") regarding anticompetitive activity.  There is insufficient evidence before the Court, however, suggesting that MRIS is attempting "to control competition in an area *outside its copyright*" such that it is engaging in copyright misuse.  *See Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990) (emphasis added).

AHRN cites an e-mail from a NorthStar MLS employee suggesting collective action on the part of MLSs.  *See* Doc. No. 25, at 9–11, 23.  This e-mail does not mention MRIS, however. Furthermore, the only connection AHRN makes between MRIS and the other MLSs is that MRIS was one of several MLS entities that sent AHRN a cease-and-desist letter in the same time frame.  *See id.*  Even if the Court accepted that MRIS was collectively enforcing its copyrights with other MLSs, that would not, alone, amount to copyright misuse.  *See, e.g.*, *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1538–39 (S.D.N.Y. 1991) ("Plaintiffs' effort[] to restrain competition by [Defendant] is simultaneously an effort to stop [Defendant] from infringing their copyrights.  Plaintiffs have acted reasonably in so doing, not collusively for some illegal, monopolistic purpose.").  AHRN also cites, as evidence of copyright misuse, MRIS's rejection "out of hand without negotiation" of AHRN's offer to obtain a license.  Doc. No. 25, at 23.  MRIS's refusal to grant AHRN a license is not probative of an unlawful or anticompetitive purpose, especially where AHRN's offer *followed* its infringement of MRIS's copyrights and the

receipt of a cease-and-desist letter. At this time, AHRN has not presented credible evidence that MRIS is engaged in this litigation for any unlawful objective, as opposed to merely enforcing its copyrights. Accordingly, the Court finds that MRIS has made a clear showing of a likelihood of success on the merits on their copyright claims.[10]

2. Irreparable harm

"Irreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007); *see also Splitfish AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 467 (E.D. Va. 2010) ("[A]llowing defendants to continue to distribute products containing plaintiffs' copyrighted work would 'deprive the copyright holder of intangible exclusive rights' to control the means and methods by which its work will be seen by the public.") (quoting *Christopher Phelps*, 492 F.3d at 544). However, there is no presumption that copyright infringement creates irreparable harm. *See, e.g.*, *Bethesda Software, L.L.C. v. Interplay Entm't Corp.*, 452 Fed. App'x 351, 355 (4th Cir. 2011). "Rather, courts evaluating requests for injunctive relief should consider evidence of irreparable harm based on the facts of a particular case." *EMI April Music, Inc. v. Garland Enters., LLC*, No. DKC 11-3352, 2012 WL 1986529, at *4 (D. Md. June 1, 2012).

MRIS has demonstrated that its loss of exclusive control over its copyrighted content is likely to lead to irreparable harm. MRIS's Chief Marketing Officer avers that NeighborCity.com real estate listings that display MRIS's copyrighted content, including the "© 2012 MRIS" notice, contain inaccuracies regarding the listed properties. Doc. No. 9, Heithaus Decl. ¶ 10. These inaccuracies are likely to affect the credibility and integrity of the content published and

---

[10] MRIS did not argue in its Motion for Preliminary Injunction that it was likely to succeed on the merits of its claims under the Lanham Act. MRIS raises this argument for the first time in its Reply Brief. *See* Doc. No. 27, at 9–11. Defendants were unable to respond to these arguments, and the Court will not consider them here.

disseminated by MRIS, and as a result, MRIS's reputation in the real estate market will suffer. *Id.* NeighborCity.com's use of informational content from the MRIS Database is also likely to divert traffic from www.homesdatabase.com, a publicly available website that MRIS operates and uses to generate leads with potential subscribers. *Id.* ¶ 11.

Moreover, NeighborCity.com's unauthorized posting of MRIS's copyrighted content is likely to divert revenue from MRIS's subscribers. *See id.* ¶ 12. Real estate brokers who subscribe to the MRIS Database confirm that their real estate listings, which include photographs with MRIS marks and copyright notices, are displayed on NeighborCity.com without authorization. Doc. No. 9, Campbell Decl. ¶ 3, Coile Decl. ¶ 3. These brokers further state that the unauthorized use of their listings by NeighborCity.com causes them irreparable harm as it results in confusion in the real estate marketplace, diverts traffic from their websites, and reduces the revenues in real estate transactions handled by the brokers and their agents. *Id.*, Campbell Dec. ¶ 4–6, Coile Dec. ¶ 5–6. When the listings on NeighborCity.com are inaccurate, the brokers are blamed, resulting in damage to their reputation and to MRIS's reputation. *Id.*, Coile Dec. ¶ 7. This will result in a loss of customers and a decrease in customer referrals. *See id.*

AHRN's primary argument appears to be that MRIS relies on harm to third parties rather than harm to MRIS, and that harm to third parties is irrelevant in the "irreparable harm" analysis. *See* Doc. No. 25, at 19–20. However, MRIS's business model depends on brokers' and agents' subscriptions to the MRIS Database, and to the extent that MRIS's subscribers are harmed by NeighborCity.com's unauthorized postings, MRIS will also suffer harm. Regardless, even without the Campbell and Coile declarations, MRIS has presented sufficient evidence to establish a likelihood of irreparable harm. The Court also concludes that ascertaining MRIS's monetary damages based on marketplace confusion and injury to reputation would be especially

difficult in this case.  *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) ("Generally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate. . . . [W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied.") (citations and quotations omitted). Accordingly, the Court finds that MRIS has made a clear showing that it is likely to be irreparably harmed in the absence of a preliminary injunction.

### 3.  Balance of equities

The Court finds that the balance of equities tips in MRIS's favor.  AHRN profits or attempts to profit from the unauthorized display of MRIS's copyrighted content, which includes the "© 2012 MRIS" notice, on NeighborCity.com.  *See Splitfish*, 727 F. Supp. 2d at 468 ("Equity requires that defendants be ordered to cease their unlawful conduct, and that plaintiffs' intangible right to control the means and methods by which their copyrighted work is seen by the public be restored.").  Any harm to AHRN will be minimized by an injunction that is no more extensive than necessary.  The Court is not persuaded that AHRN's litigation costs demand an alternative finding, and AHRN cites no legal authority in support of that position.

### 4.  Public interest

Finally, the Court finds that granting preliminary injunctive relief will serve the public interest.  "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."  *Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628, 638 (D. Md. 2006) (quoting *Apple*

*Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254–55 (3d Cir. 1983)).  AHRN

asserts that the public interest is served by competition, but this Court's grant of preliminary

injunctive relief will not prevent AHRN from legally competing in the real estate marketplace.

## VI.    CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant Cardella's Motion to

Dismiss, DENY Defendant AHRN's Motion to Dismiss, and GRANT Plaintiff's Motion for a

Preliminary Injunction.  Plaintiff's Motion for Leave to File a Surreply to Defendants' Motions

to Dismiss is DENIED as moot.  A separate Order will follow.


___August 24, 2012___                                    _____/s/_____
        Date                                                      Alexander Williams, Jr.
                                                                  United States District Judge