**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

_____

| | |
|---|---|
| **METROPOLITAN REGIONAL** | ) |
| **INFORMATION SYSTEMS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 12-cv-954** |
| | ) |
| **AMERICAN HOME REALTY NETWORK, INC.** | ) |
| **and JONATHAN J. CARDELLA,** | ) |
| | ) |
| **Defendants,** | ) |

_____ )

### AHRN'S MOTION TO CLARIFY, RECONSIDER OR SUSPEND
### PRELIMINARY INJUNCTION ORDER

FARKAS+TOIKKA, LLP
Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)

Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General
Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California 94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

*Counsel for Defendant American Home
Realty Network, Inc.*

## I.  INTRODUCTION

Defendant American Home Realty Network ("AHRN") by counsel moves pursuant to Rules 54(b), 62(c) and 65(c) and (d) of the Federal Rules of Civil Procedure to reconsider, clarify or suspend the Court's interlocutory Order of August 27, 2012 (Docket Entry, "D.E.," 35) (hereinafter, "8/27/2012 Order") granting MRIS's motion for preliminary injunction because (1) the Order fails to comply with (a) the security requirement of Rule 65(c) and (b) the specificity requirement of Rule 65(d); and (2) the Court's holding that MRIS has valid assignments to the photographs in its Database merits reconsideration.  Moreover, AHRN asks the Court to stay the preliminary injunction pending AHRN's appeal to the Fourth Circuit Court of Appeals.

## II.  STANDARD OF REVIEW

### A.  MOTION TO CLARIFY

#### 1.  Rule 65(c) Requires Security

Rule 65(c) provides that:

Security. The court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

> *Emphasis added.*

#### 2.  Rule 65(d) Requires Specificity

Rule 65(d) provides as follows:

Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

> (C) describe in reasonable detail -- and not by referring to the complaint or
> other document -- the act or acts sought to be restrained or required.

*See IDG USA, LLC v. Schupp*, 416 Fed. Appx. 86, 2011 U.S. App. LEXIS 6114, at *1

(2d Cir. Mar. 25, 2011) (unpublished) (Order granting a preliminary injunction against a

former employee did not meet the requirements of Fed. R. Civ. P. 65(d) because it did

not specify which trade secrets or confidential information were to be protected and did

not specify the duration of any of its prohibitions).

## B.  MOTION FOR RECONSIDERATION

"Motions for reconsideration of an interlocutory order are governed by Rule 54(b),

under which "any order or other decision . . . may be revised at any time before the

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Fed. R. Civ. P. 54(b).  Thus, when warranted, a district court retains the power to

reconsider and modify its interlocutory judgments at any time before final judgment.

*Martin v. Conner*, 2012 U.S. Dist. LEXIS 117295 (D.Md. Aug. 20, 2012); *Am. Canoe*

*Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).  Resolution of the

motion is "committed to the discretion of the district court." *Id.* at 515. "[T]he goal is to

reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*,

704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted).

## C.  MOTION TO STAY PENDING APPEAL

The prerequisites for a stay pending appeal require the party seeking the stay to

show "(1) that it will likely prevail on the merits of the appeal; (2) that it will suffer

irreparable injury if the stay is denied; (3) that other parties will not be substantially

harmed by the stay; and (4) that the public interest will be served by granting the stay."

See *Dairy King, Inc. v. Kraft, Inc.,* 665 F. Supp. 1181, 1189 (1987) *citing Long v. Robinson,* 432 F.2d 977 (4th Cir.1970).

## III. DISCUSSION

### A. THE PRELIMINARY INJUNCTION ORDER FAILS COMPLY WITH RULE 65

#### 1. Rule 65(c) Requires the Court to Order MRIS to Post Security

The Court's preliminary injunction Order does not mention the posting of security by MRIS.  MRIS has moved to modify the Order to address the security issue and has offered $5,257.50 as security based on AHRN's estimated 2011 referral fees from Maryland-based brokers.  *See* Motion for Modification of Order (September 4, 2012, D.E. 37).  Based on its investigation, which is ongoing, AHRN intends to file an opposition to MRIS's motion and to propose a fairer and more appropriate security amount based on the true costs AHRN would suffer from being wrongfully enjoined. AHRN's opposition is due on September 21, 2012.

#### 2. The Preliminary Injunction Order Fails to Specify The Conduct Enjoined

The Court's Order, filed on August 27, 2012, provides that:

> MRIS's Motion for Preliminary Injunction, Doc. No. 9, is GRANTED. Defendant AHRN and all persons acting under its direction, control or authority are hereby enjoined from unauthorized copying, reproduction, public display, or public distribution of copyrighted content from the MRIS Database, and from preparing derivative works based upon the copyrighted content from the MRIS Database.

The Order is insufficiently specific in the scope of the injunction and the act(s) sought to be restrained under Rule 65(d) of the Federal Rules to permit AHRN to be certain of its compliance with the Court's Order.

As explained in more detail below, MRIS does not own copyrights to, and has not

identified, the textual elements in, the database ostensibly protected.  Moreover, the facts, information and raw data in the property listings are uncopyrightable, even if MRIS had identified them sufficiently for purposes of Rule 65(d).  Moreover, to the extent that anyone owns them, they are not owned by MRIS but by MRIS's Principal Broker Subscriber, which owns all right, title and interest in the property listing data. *See* MRIS Subscriber and License Agreement, Exhibit 1 to AHRN's Reply in support of its Motion to Dismiss [D.E. 29], at ¶ 4.5.

Moreover, the Court's Order does not specifically identify photographs as part of the "copyrighted content" to be removed from AHRN's website.  To the extent that the Court holds that MRIS has valid assignments of ownership in the photographs in the MRIS Database, AHRN respectfully asks the Court to reconsider and reverse this holding based on noncompliance with Copyright Act Section 204(a), the "statute of frauds" of the Act, for the reasons explained below.  *See Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, 2009 U.S. Dist. LEXIS 27787, *15 (D. Kansas Mar. 31, 2009) ("While Section 204(a)'s signed writing requirement is sometimes called the "copyright statute of frauds," it is in fact different from a statute of frauds.  Section 204 "is a prerequisite to a valid transfer of copyright ownership, and not merely an evidentiary rule."  A transfer of copyright is simply not valid without the required written instrument.") (footnotes omitted).

     a.  The Order Fails to Mention, Name or Identify The Protected Textual Elements of MRIS's Database

The Court held that for purposes of AHRN's motion to dismiss, MRIS has a valid compilation copyright for its automated Database. See the Court's August 27, 2012 Memorandum Opinion, D.E. 34 (hereinafter, "8/27/2012 Mem. Op.") at 25-26. However,

such a compilation copyright is limited to the "selection, coordination and arrangement" of the elements in the compilation. *Id.* at 25, citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991). *See also id.* at 16, citing to 17 U.S.C. § 101.

The Court's Opinion is silent on whether MRIS owns a copyright in any of the individual elements in the MRIS Database other than the photographs that bear a copyright notice. See 8/27/2012 Mem. Op. at 25 ("MRIS appears to have obtained copyrights in the photographs by assignment.") The Court's references in its Opinion to copyrights on "individual elements" or "underlying works" in the Database usually is in the context of whether MRIS owns copyrights in the photographs. *See, e.g.*, 8/17/2012 Mem. Op. at 17 ("Defendants argue that they are entitled to judgment as a matter of law to the extent Plaintiffs seeks to enforce copyrights on the individual elements — i.e., the photographs — of the copyrighted MRIS Database." *But see also* Mem. Op. at 20 n.5 ("[b]ecause the MRIS Database contains photographs and *text that are independently copyrightable works*, the database is also a 'collective work' under the Copyright Act.") (emphasis provided), suggesting that MRIS may own copyrights in the text elements in its Database. However, the Memorandum states only that text is "independently copyrightable," but that falls far short of a finding that all *text in MRIS's database is copyrighted*. Before the Order bars the use of text by AHRN, the Court is expected to determine which textual elements are in fact copyrighted. MRIS itself has never specified which individual textual elements it claims as copyrighted content in the Database.

For MRIS to enforce copyrights on any of the textual elements they must first be copyrightable, and second, MRIS must own them. MRIS has trouble on both counts.

First, while "compilations of facts may be copyrightable," "facts are not copyrightable," *Feist Publ'ns, Inc.*, 499 U.S.at 344.  This Court has not held to the contrary.

Second, in its Memorandum Opinion, the Court states that the central holding of *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279 (4th Cir. 2003) is that "an owner and registrant of a compilation may bring an infringement action on the underlying parts where it also owns copyrights in the underlying parts, even where those parts have not been individually registered."  8/27/2012 Mem. Op. at 18. Thus, under the Court's own interpretation of *Xoom*, MRIS may enforce its copyright only on any individual parts of the Database it owns.  However, the Court never states that MRIS owns any copyrights in the individual elements of property listings other than the photographs.  Indeed, the Court could not reach this conclusion because as stated above, all right, title and interest in the property listing data is owned not by MRIS but by MRIS's Principal Broker Subscriber.  Thus, the reference to "copyrighted content" in the Preliminary Injunction can only refer to the compilation's "selection, coordination and arrangement" but not to the individual text elements in the property listings.  This should be so stated in a modified injunction order.

b.  The Order Does Not Identify Photographs

The Court's Preliminary Injunction Order does not specifically mention photographs as part of "copyrighted content" and does not identify any photographs covered by the Order.

In addition, the Court accepts MRIS's Terms of Use's ("ToU's") purported transfer by undisclosed persons of the copyright in the photographs to MRIS under the ESIGN

law.  8/27/2012 Mem. Op. at 22.  The ESIGN statute was first raised by MRIS in its

motion for leave to file a surreply after AHRN in its Reply brief in support of its motion to

dismiss cited Title 17, section 204(a) for the insufficiency of the ToU to transfer the

purported copyright in the Photos to MRIS.  The ESIGN law was signed by the President on

June 30, 2000, yet section 204(a) has invalidated unsigned copyright transfers after 2000.

*See Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1090-91 (C.D. Cal. 2011);

*Luar Music Corp. v. Universal Music Group, Inc.*, 2012 U.S. Dist. LEXIS 71914, at *12-

13 (D.P.R. May 22, 2012) (Email insufficient to constitute an instrument of conveyance

and even if assuming *arguendo* that it was, there was no evidence that the sender was

a duly authorized agent of the copyright owner); *McMunigal v. Bloch*, 2010 U.S. Dist.

LEXIS 136086*,* at *23-24 n.4 (N.D. Cal. Dec. 22, 2010) (plaintiff argues that emails

assenting to a contract constitute a "signature" under the E-SIGN Act.  The Court need

not reach the issue of whether the E-SIGN Act applies to transfer of copyright interests,

however, as there is no writing from defendant alleged here.")

No court has held the ESIGN Act to trump Section 204(a), the statute of frauds

for copyright transfers.  The Court cites *Vergara Hermosilla, v. Coca-Cola Co.*, No.

10-21418-CIV, 2011 WL 744098, 2011 U.S. Dist. LEXIS 17517 (S.D. Fla. Feb. 23,

2011) as an example.  But that case is inapposite here.  First, that case was decided

on summary judgment, after discovery was closed, on a full record of communications

by both parties relating to their an intent to enter into a transfer of copyrights, the facts

taken from Statements of undisputed facts. Based on the summary judgment for

Coca-Cola, the injunction was lifted.  *Id.* at *12.  Thus the burden of persuasion and

presumption in Coca-Cola are exactly the opposite of what they are here on a motion

for preliminary injunction.

Secondly, the Court in *Coca-Cola* cited the ESIGN Act as a "*see also*" cite without discussion or reliance.  *Id.* at *7.  Indeed, the Court cited a provision of the ESIGN law that has no application here: "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form").  AHRN's argument was that there was no signature, there was no contract, there was no written identification of the parties.  The ToU doesn't meet the ESIGN standard.   AHRN's argument is not that the copyright transfer is unenforceable solely because it is in electronic form, but because, unlike the email communications in Coca-Cola, the "click transfer" by the mere act of an anonymous person uploading an image, does not have any of the indicia of a contract signed electronically by a known, identifiable individual with authority to transfer the copyright.  *Vergara Hermosilla, v. Coca-Cola Co*, *aff'd on other grounds,* 2011 U.S. App. LEXIS 22241 (11th Cir. Nov. 3, 2011) (Summary judgment affirmed without citing either §204(a) or ESIGN: "Under Florida law, parties enter a contract when "there was a definite proposal by one party which was unconditionally accepted by the other."),

In view of the foregoing cases on the ESIGN Act, AHRN respectfully requests that the Court reconsider its ruling with respect to the ESIGN Act validating MRIS's ToU as a valid mechanism for assigning copyright interests.  Without the linchpin of the ToU, MRIS clearly has no ownership interest in the photographs in its Database, and the photographs should also be excluded from the "copyrighted content" referred to in the preliminary injunction order.

### B.  THE COURT SHOULD RECONSIDER THE ORDER

The Court should reconsider the order based on the arguments in support of clarification under Rule 65.  While amendment of the order to comply with Rule 65(c) would be relatively simple and AHRN intends to respond to MRIS's motion to amend the Order, revising the Order to comply with Rule 65(d) is not simple.  The two arguments for Rule 65(d) compliance would require findings that: (1) the textual listing content is copyrightable; (2) the  textual listing content was not retained by the broker as stated in the Subscription Agreement; and (3) the copyright transfer of the images through the "click assignment" of the copyright complies with both §204(a) and the ESIGN Act.  The Court has not made any of these finding, and they warrant reconsideration.  Upon reconsideration, we respectfully submit, the Court will determine that the facts before the Court and the applicable law does not support such findings, particularly not on a motion for preliminary injunction.

### C.  THE COURT SHOULD STAY THE ORDER

The Court should stay the preliminary injunction pending appeal.  AHRN meets the test articulated in *Dairy King,* 665 F. Supp. at 1189, *citing Long v. Robinson,* 432 F.2d 977 (4th Cir.1970), particularly in view of the arguments for clarification and reconsideration made herein which support that AHRN will prevail on the merits, and the arguments made in AHRN's Opposition to MRIS's Motion for Preliminary Injunction [D.E. 25] at 11-24.

### III.    CONCLUSION

For the reasons stated above, AHRN respectfully requests the Court to withdraw the Order dated August 27, and, if it deems necessary, replace it with a modified order compliant with Rule 65(c) and (d) and, suspend any preliminary injunction pending appeal.

Respectfully submitted,

FARKAS+TOIKKA, LLP

_____/S/ Richard S. Toikka_____
Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)


Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General
Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)


*Counsel for Defendant American Home
Realty Network, Inc.*

**CERTIFICATE OF SERVICE**

I, Richard S. Toikka, herby certify that on this the 10th of September, 2012, a

copy of the foregoing Motion was served by electronic means using the Court's

CM/ECF system upon:

John T. Westermeier, Esquire
Margaret A. Esquenet, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*/S/ Richard S. Toikka*
Richard S. Toikka