## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

_____

METROPOLITAN REGIONAL ... )
INFORMATION SYSTEMS, INC., ... )
... )
        **Plaintiff,** ... )
... )
v. ... )  **Civil Action No. 12-cv-954**
... )
AMERICAN HOME REALTY NETWORK, INC. )
and JONATHAN J. CARDELLA, ... )
... )
        **Defendants,** ... )
_____ )

### DEFENDANT AMERICAN HOME REALTY NETWORK, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR MODIFICATION OF ORDER

FARKAS+TOIKKA, LLP
Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)

Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General
Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

*Counsel for Defendant American Home
Realty Network, Inc.*

## I.  INTRODUCTION

Defendant American Home Realty Network ("AHRN") by counsel, hereby and for the reasons set forth herein, opposes in part the Motion for Modification of Order (Docket Entry ("D.E.") 37) filed by Plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS") (hereinafter, "MRIS Mot."). MRIS argues that the Court's Preliminary Injunction Order (D.E. 35) is deficient because MRIS has failed to give security in an amount that the Court considers proper to pay costs and damages sustained by a wrongfully enjoined party. *See* MRIS Mot. at 1.

AHRN agrees with MRIS that the preliminary injunction ("PI") does not comply with Rule 65(c) absent MRIS giving security in an amount the Court deems sufficient to protect AHRN from its costs and damages incurred as a result of compliance with the PI order should it be found to have been wrongfully enjoined. However, for the reasons set forth below and in the Declaration of its CEO Jonathan J. Cardella (hereinafter, 9/21/2012 Cardella Decl."), attached hereto as Exhibit 1, AHRN disagrees with MRIS that a sufficient and adequate security amount is $5,257.50 as MRIS proposes. *See* MRIS Mot. at 1-2. Instead, as shown in more detail below, AHRN proposes that MRIS be required to give security in the amount of $275,000.

## II.  <u>STANDARD OF REVIEW</u>

A district court may issue a preliminary injunction only if the movant gives security  in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined …" Fed. R. Civ. P. 65(c); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F. 3d 411, 421 (4th Cir. 1999) ("district court must fix a bond whenever it grants a preliminary injunction or restraining order… . Fed.R.Civ.P. 65(c) … is mandatory and unambiguous"), citing *District 17, UMWA v. A & M Trucking, Inc.,* 991 F.2d 108, 110 (4th Cir.1993). Although a district court has discretion to set the bond amount "in such sum as the court deems proper," it is not free to disregard the bond requirement altogether. In view of the clear language of Rule 65(c), failure to require a bond upon issuing injunctive relief is reversible error. *Id.*

"In fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order. The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party." *Hoechst*, 174 F.3d at 421 n.3.  "[T]he judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined … party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained." *Id.*

However, when the falsely enjoined party would "suffer little harm," or the "risk of harm [from the injunction] is remote," the court may take those factors into account in

3

setting the amount of security required.  *See Candle Factory, Inc. v. Trade Associates Group, Ltd.*, 23 Fed. Appx. 134 at 139, 2001 U.S. App. LEXIS 25457 at **15 (4th Cir. 2001), *citing Hoechst*, 174 F.3d at 421 n.3.

### III. ARGUMENT

MRIS bases its proposed $5,257.50 security figure entirely on the amount of referral fees AHRN stated it received from Maryland real estate brokers during 2011. See MRIS Mot. at 2; AHRN's Memorandum in Support of its Rule 12(b) Motion to Dismiss ("AHRN Rule 12(b) Mem.)(D.E. 24-1), at 17.  As AHRN shows herein, this proposal is not reasonably related to "the potential incidental and consequential costs as well as the losses" MRIS would suffer from being unjustly enjoined during the period MRIS would be prohibited from posting listings on its website. *Hoechst*, 174 F.3d at 421 n.3. and MRIS has not shown that harm to AHRN from being falsely enjoined is "little," or that "the risk of harm is remote."  *Candle Factory, Inc.,* 23 Fed. Appx. at 139, 2001 U.S. App. LEXIS 25457 at **15; *Hoechst*, 174 F.3d at 421 n.3.

### A. MRIS Uses an Inappropriate Methodology to Derive its Proposed Security Amount

First, MRIS uses a 2011 referral fee figure for only Maryland-based real estate brokers rather than the entire MRIS jurisdiction, which MRIS states encompasses "Maryland, Virginia, and the District of Columbia, as well as parts of Delaware, West Virginia, and Pennsylvania."  *See* MRIS's Memorandum in Support of Plaintiff's Motion for Preliminary Injunction (D.E. 9-1) at 1.  Second, MRIS uses the year 2011 for which AHRN's referral fees are less than even its part-year fees for this year 2012, which AHRN stated as $6,195.00.  *See* AHRN Rule 12(b) Mem., at 17.  Third, MRIS's security

figure ignores the costs of removing and placing back the listings subject to the preliminary injunction.  These issues are discussed in more detail below.

    **B.**  **A More Appropriate Methodology Produces a Security Amount of at Least $275,000.**

    A more appropriate methodology is based on the potential incidental and consequential costs as well as the losses MRIS would suffer from being improvidently enjoined during the pendency of this lawsuit.  Hoechst, 174 F.3d at 421 n.3.  Such an analysis must begin with AHRN's current referral revenue from *all* of the MRIS broker listings on its website, not just for the Maryland-based MRIS broker listings. The year-to-date (through September 21, 2012) referral fees earned by AHRN on properties with MRIS listings is $38,883.31.  *See* 9/21/2012 Cardella Decl. at ¶ 4 .  Annualizing that through December 31, 2012 produces a figure of $53,702.99.  *Id.*  This represents significant growth over the annual revenue realized by AHRN from referrals for properties with MRIS listings, which was $7,867.50.  *Id.*

    Based on the foregoing, AHRN is experiencing year-over-year growth of 582.59 percent in referral fees in MRIS broker jurisdictions.  *Id.* at ¶ 5.   Projecting revenue growth forward into 2013 using that year-over-year growth rate produces an estimate of 2013 revenue from referrals on MRIS listed properties of $312,868.24.  *Id.* at ¶ 6.  Thus, a reasonable pro rata projection of loss in AHRN revenue from October 1, 2012 to September 30, 2013 would be $248,076.93 calculated as $13,425.75 for the months of October through December in 2012 and $234,651.18 for the months of January through September in  2013.  *Id.* at ¶ 7.  This 12 month time period for AHRN's lost revenue

over the pendency of this litigation is reasonable in view of the litigation still being at an early stage with additional parties likely to be added through AHRN's counterclaim.

Total AHRN damages and costs must also reflect the costs of removing and putting back up listing information.  AHRN estimates that this would entail two person weeks of its Lead Architect (one week for removal and the other for reestablishing the listings).  His annual total compensation is $250,000.  Two weeks of his time comes out to approximately $9,615.  9/21/2012 Cardella Decl. at ¶ 8.  Adding this figure to the loss in revenue produces a total damages plus costs of  $257,691.92. *Id.*

This figure is conservative.  Harder to quantify losses involve the reduction in the company's growth (and thus its market valuation) and its ability to raise cash or find a buyer for the company caused by the injunction.  *Id.* at ¶ 9.  Thus AHRN proposes that MRIS give security of at least $275,000.  *Id.*

## IV. CONCLUSION

For the foregoing reasons, if the Court decides to leave the preliminary injunction in place and not suspend or withdraw it as AHRN has requested, it should rule that MRIS must give security of at least $250,000.

Respectfully submitted,

FARKAS+TOIKKA, LLP

_____/S/ Richard S. Toikka_____
Richard S. Toikka, Federal Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)


Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General
Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)


*Counsel for Defendant American Home
Realty Network, Inc.*

**CERTIFICATE OF SERVICE**

I, Richard S. Toikka, herby certify that on this the 21st of September, 2012, a

copy of the foregoing Opposition was served by electronic means using the Court's

CM/ECF system upon:

John T. Westermeier, Esquire
Margaret A. Esquenet, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*/S/ Richard S. Toikka*
Richard S. Toikka