**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

_____

| | |
|---|---|
| **METROPOLITAN REGIONAL** | ) |
| **INFORMATION SYSTEMS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **AMERICAN HOME REALTY NETWORK, INC.** | ) |
| **and JONATHAN J. CARDELLA,** | ) **Civil Action No. 12-cv-954-AW** |
| | ) |
| | ) |
| **Defendants,** | ) |
| | ) |
| **AMERICAN HOME REALTY NETWORK, INC.,** | ) |
| | ) |
| **Counterclaimant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **METROPOLITAN REGIONAL** | ) |
| **INFORMATION SYSTEMS, INC.,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **NATIONAL ASSOCIATION OF REALTORS,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **Does ## 1 – 25,** | ) |
| | ) |
| **Counterclaim Defendants.** | ) |

_____

**AMERICAN HOME REALTY NETWORK, INC.'S**
**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM**
<u>**AND JURY DEMAND**</u>

## ANSWER

For its Answer to plaintiff Metropolitan Regional Information System's ("MRIS's") Complaint, defendant American Home Realty Network, Inc. ("AHRN") states as follows:

1.  The allegations contained in paragraph 1 of the Complaint are Plaintiff's own summary of its allegations contained in the rest of the Complaint, are not allegations in themselves and thus do not require a response by Defendant; to the extent a response is required Defendant denies the allegations.

2.  Defendant denies the allegations contained in paragraph 2 of the Complaint except that it admits that it received the letter contained in Exhibit B to the Complaint.

3.  Defendant denies the allegations contained in paragraph 3 of the Complaint.

4.   Defendant denies the allegations contained in paragraph 4 of the Complaint.

5.  The allegations contained in paragraph 5 of the Complaint raise questions of law to which Defendant is not required to plead.

6.  Defendant denies the allegations contained in paragraph 6 of the Complaint.

7.  Defendant denies the allegations contained in paragraph 7 of the Complaint.

8.  Unpon information and belief, Defendant admits the allegations contained in paragraph 8 of the Complaint.

9.  Defendant admits the allegations contained in paragraph 9 of the Complaint.

10. Defendant denies the allegations contained in paragraph 10 of the Complaint.

11. Defendant admits that Cardella is CEO of AHRN and denies all other allegations contained in paragraph 11 of the Complaint.

12. Defendant denies the allegations contained in paragraph 12 of the Complaint.

13.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint.

14.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint.

15.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.     Defendant admits upon information and belief that the registration numbers contained within paragraph 18 of the Complaint are those of public record with the United States Copyright Office.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Complaint.

19.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

21.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint.

26.    Defendant admits the allegations contained in the first and last sentences of paragraph 26 of the Complaint, and denies the remaining allegations contained in paragraph 26.

27.    Defendant admits the truth of the allegations contained in the second sentence of paragraph 27, and denies the remaining allegations contained in paragraph 27.

28.    Defendant admits the truth of the allegations contained in paragraph 28 of the Complaint but denies the implication that it needs a license or permission from MRIS to implement its business model.

29.    Defendant denies the allegations contained in the first sentence of paragraph 29 of the Complaint.  Defendant admits the truth of the remaining allegations contained in paragraph 29 of the Complaint but denies the implication that it needs permission from MRIS or listing agent/brokers to implement its business model.

30.    Defendant denies the allegations contained in paragraph 30 of the Complaint.

31.   As to the allegations contained in paragraph 31 of the Complaint, Defendant admits that it received the letter of which a copy appears in Exhibit B to the Complaint and asserts that the letter speaks for itself.

32.   As to the allegations contained in paragraph 32 of the Complaint, Defendant asserts that the referenced letter speaks for itself.

33.   As to the allegations contained in paragraph 33 of the Complaint, Defendant admits that it composed and sent the letter of which a copy appears in Exhibit C to the Complaint and asserts that the letter speaks for itself.

34.   As to the allegations contained in paragraph 34 of the Complaint, Defendant asserts that the referenced letter speaks for itself.

35.   As to the allegations contained in the first two sentences of paragraph 35 of the Complaint, Defendant admits that it received the letter a copy of which appears in Exhibit D to the Complaint and asserts that the referenced letter speaks for itself.  As to the allegations contained in the last sentence of paragraph 35, Defendant admits that it did not respond to the referenced letter and did not comply with MRIS's demands except it denies the implication that it had any obligation to respond or comply with MRIS's demands.

36.   As to the allegations contained in paragraph 36 of the Complaint, Defendant admits that it did not attempt to obtain a RETS license from MRIS and offered a licensing arrangement set forth in Exhibit C to the Complaint.  Defendant denies the remaining allegations of paragraph 36 to the Complaint.

37.     As to the allegations contained in paragraph 37 of the Complaint, Defendant
        incorporates herein by reference each of the foregoing paragraphs of this
        Answer.

38.     Defendant is without knowledge or information sufficient to form a belief as to
        the truth of the allegations contained in paragraph 38 of the Complaint.

39.     Defendant is without knowledge or information sufficient to form a belief as to
        the truth of the allegations contained in paragraph 39 of the Complaint.

40.     Defendant is without knowledge or information sufficient to form a belief as to
        the truth of the allegations contained in paragraph 40 of the Complaint.

41.     Defendant denies the allegations contained in paragraph 41 of the Complaint.

42.     Defendant denies the allegations contained in paragraph 42 of the Complaint.

43.     Defendant denies the allegations contained in paragraph 43 of the Complaint.

44.     Defendant denies the allegations contained in paragraph 44 of the Complaint.

45.     Defendant denies the allegations contained in paragraph 45 of the Complaint.

46.     As to the allegations contained in paragraph 46 of the Complaint, Defendant
        incorporates herein by reference each of the foregoing paragraphs of this
        Answer.

47.     Defendant denies the allegations contained in paragraph 47 of the Complaint.

48.     Defendant denies the allegations contained in paragraph 48 of the Complaint.

49.     Defendant denies the allegations contained in paragraph 49 of the Complaint.

50.     Defendant denies the allegations contained in paragraph 50 of the Complaint.

51.     Defendant denies the allegations contained in paragraph 51 of the Complaint.

52.     As to the allegations contained in paragraph 52 of the Complaint, Defendant incorporates herein by reference each of the foregoing paragraphs of this Answer.

53.     Defendant denies the allegations contained in paragraph 53 of the Complaint.

54.     Defendant denies the allegations contained in paragraph 54 of the Complaint.

55.     Defendant denies the allegations contained in paragraph 55 of the Complaint.

56.     Defendant denies the allegations contained in paragraph 56 of the Complaint.

57.     Defendant denies the allegations contained in paragraph 57 of the Complaint.

58.     As to the allegations contained in paragraph 58 of the Complaint, Defendant incorporates herein by reference each of the foregoing paragraphs of this Answer.

59.     Defendant denies the allegations contained in paragraph 59 of the Complaint.

60.     Defendant denies the allegations contained in paragraph 60 of the Complaint.

61.     Defendant denies the allegations contained in paragraph 61 of the Complaint.

62.     Defendant denies the allegations contained in paragraph 62 of the Complaint.

63.     Defendant denies the allegations contained in paragraph 63 of the Complaint.

64.     Defendant denies the allegations contained in paragraph 64 of the Complaint.

65.     Defendant denies the allegations contained in paragraph 65 of the Complaint.

66.     Defendant denies the allegations contained in paragraph 66 of the Complaint.

67.     As to the allegations contained in paragraph 67 of the Complaint, Defendant incorporates herein by reference each of the foregoing paragraphs of this Answer.

68.     Defendant denies the allegations contained in paragraph 68 of the Complaint.

69.     Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.     Defendant denies the allegations contained in paragraph 70 of the Complaint.

71.     Defendant denies the allegations contained in paragraph 71 of the Complaint.

72.     Defendant denies the allegations contained in paragraph 72 of the Complaint.

73.     Defendant denies the allegations contained in paragraph 73 of the Complaint.

74.     Defendant denies the allegations contained in paragraph 74 of the Complaint.

75.     Defendant denies the allegations contained in paragraph 75 of the Complaint.

76.     In response to the allegations contained in paragraph 76 of the Complaint, Defendant incorporates herein by reference each of the foregoing paragraphs of this Answer.

77.     Defendant denies the allegations contained in paragraph 77 of the Complaint.

78.     Defendant denies the allegations contained in paragraph 78 of the Complaint.

79.     Defendant denies the allegations contained in paragraph 79 of the Complaint.

80.     Defendant denies the allegations contained in paragraph 80 of the Complaint.

81.     Defendant denies the allegations contained in paragraph 81 of the Complaint.

82.     Defendant denies the allegations contained in paragraph 82 of the Complaint.

83.     Defendant denies the allegations contained in paragraph 83 of the Complaint.

84.     Defendant denies the allegations contained in paragraph 84 of the Complaint.

85.     Defendant denies the allegations contained in paragraph 85 of the Complaint.

86.     In response to the allegations contained in paragraph 86 of the Complaint, Defendant incorporates herein by reference each of the foregoing paragraphs of this Answer.

87.     Defendant denies the allegations contained in paragraph 87 of the Complaint.

88.    Defendant denies the allegations contained in paragraph 88 of the Complaint.

89.    Defendant denies the allegations contained in paragraph 89 of the Complaint.

90.    In response to the allegations contained in paragraph 90 of the Complaint, Defendant incorporates herein by reference each of the foregoing paragraphs of this Answer.

91.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91 of the Complaint.

92.    Defendant denies the allegations contained in paragraph 92 of the Complaint.

93.    Defendant denies the allegations contained in paragraph 93 of the Complaint.

94.    Defendant denies the allegations contained in paragraph 94 of the Complaint.

95.    Defendant denies the allegations contained in paragraph 95 of the Complaint.

96.    Defendant denies the allegations contained in paragraph 96 of the Complaint.

WHEREFORE, Defendant AHRN requests judgment in its favor against Plaintiff MRIS dismissing all claims against Defendant with an award of attorney's fees and costs of this suit and all other relief the Court finds appropriate and just.


## AFFIRMATIVE DEFENSES

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's copyright infringement claims are barred by copyright invalidity in that the MRIS Database is not original and contains elements lacking copyrightable subject matter.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's copyright infringement claims are barred by copyright invalidity in that the Plaintiff is not the owner of the alleged copyrighted works.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's copyright infringement claims are barred from being enforced because the copyrights were improperly registered.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's copyright infringement claims are barred in that any copying alleged by the Defendant was "de minimus."

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's copyright infringement claims are barred in that any alleged copying by the Defendant was of works not protectable by copyright.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's copyright infringement claims fail as the alleged infringing works are not substantially similar to Plaintiff's alleged copyrighted work.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's copyright infringement claims are barred by fair use.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's copyright infringement claims are barred, in whole or in part, by the copyright owner's permission or grant of a license.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff's copyright infringement claims are barred by copyright misuse.

**ELEVENTH AFFIRMATIVE DEFENSE**

The alleged damages sustained by plaintiff, if any, are the proximate result of the acts and/or omissions of parties over which defendant exercised no control.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiff's Lanham Act claims are barred, in whole or in part, because there is no likelihood of confusion in the marketplace.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiff is not entitled to statutory damages or attorneys' fees under 17 U.S.C. § 412(2) as Plaintiff did not register its claims of copyright prior to Defendant's alleged infringements or within three months after first publication.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Any statutory damages Plaintiff may be entitled to under 17 U.S.C. § 412(2) would be limited to one count on its alleged compilation copyright.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiff has suffered no harm and/or irreparable harm as a consequence of Defendant's alleged acts or omissions.

**COUNTERCLAIM**

Counterclaimant, AMERICAN HOME REALTY NETWORK, INC., (hereinafter, "Counterclaimant" or "AHRN") by its counsel hereby complains of counterclaim defendants METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC. AND

NATIONAL ASSOCIATION OF REALTORS and DOES ## 1-25 (collectively

"Counterclaim Defendants," or "Defendants") as follows:

1.      Counterclaimant, AMERICAN HOME REALTY NETWORK, INC. ("AHRN"), is

        a corporation organized under the laws of the State of Delaware with its

        principal place of business at 222 7th Street, 2nd Floor, San Francisco,

        California.

2.      Counterclaim Defendant, METROPOLITAN REGIONAL INFORMATION

        SYSTEMS, INC. ("MRIS") is a corporation organized under the laws of the

        State of Delaware with its principal place of business at 9707 Key West

        Avenue, Suite 200, Rockville, Maryland.

3.      Counterclaim Defendant, NATIONAL ASSOCIATION OF REALTORS,

        ("NAR"), is a trade association organized under the laws of Illinois with its

        principal place of business at 430 North Michigan Avenue. Chicago, Illinois

        60611. NAR establishes and enforces policies and professional standards for

        its over one million individual member brokers and their affiliated agents and

        sales associates ("Realtors"), and 1,600 local and state member boards.

        NAR's member brokers compete with one another in local brokerage services

        markets to represent consumers in connection with real estate transactions.

4.      Counterclaim Defendants DOES ## 1-25 are thought to be brokers and/or

        MLSs and their principals, who are part of the NAR orchestrated conspiracy

        against AHRN to suppress competition in the real estate industry for their

        mutual benefit.  The true names and capacities of the Defendants named

        herein as Does 1-25 are unknown to Plaintiff, who therefore sues them under

these fictitious names.  AHRN will amend this counterclaim to add their true names and capacities when they become known. Upon information and belief each of the Doe Defendants was an agent and principal of each of the other Defendants and each was acting in the course and scope of his authority.

5.  At this time AHRN does not name Regional Multiple Listing Service of Minnesota, Inc. (hereinafter, "Northstar") as a party although it notes that Northstar is the plaintiff in  *Regional Multiple Listing Service of Minnesota, Inc., d/b/a NorthstarMLS v. American Home Realty Network, Inc.*, 0:12cv965 (D. Minn) filed on May 18, 2012.  As more facts are learned in discovery, if appropriate, AHRN will add Northstar as one of its Doe Defendants.

## B.  NATURE OF THE ACTION

6.  AHRN brings this action against the Counterclaim Defendants' (hereinafter, "Defendants" or "Counterclaim Defendants") concerted anti-competitive group boycott of AHRN. MRIS's lawsuit against AHRN in this Court, and Northstar's lawsuit against AHRN in Minnesota are in furtherance of NAR's efforts to drive AHRN out of business and eliminate AHRN as a competitor in the market for real estate broker services.  AHRN seeks damages and injunctive relief to bar Defendants' unlawful predatory conduct and to prevent harm to consumers in the market for residential real estate brokerage services.

7.  AHRN is a San Francisco start-up that provides on a nation-wide basis home buyers and sellers information about homes for sale in their local market. AHRN owns NeighborCity®, an online residential real estate service.  AHRN operates a website, www.neighborcity.com, that includes a real estate search

engine as well as a realtor ratings and rankings service. Consumers can use www.neighborcity.com to search for homes for sale.   Once a property is identified, AHRN may introduce homebuyers and sellers to qualified and vetted real estate agents who are available to exclusively represent them in the purchase or sale of the home.   Consumers in the real estate market have responded positively to the increased access to information about properties and real estate agents that AHRN provides.   As a result, AHRN has grown significantly in the last year.

8.      Defendant MRIS, is a regional Multiple Listing Service ("MLS") operating in Maryland, Virginia, Washington, D.C. and parts of Pennsylvania, Delaware and West Virginia.   NAR, MRIS and its member-brokers, and other MLSs have taken notice of AHRN's success and banded together at the behest, with the encouragement, and with the promise, of financial support from NAR and in collaboration with NAR and other MLSs, to stop AHRN before it becomes a larger threat to their business of making referrals to buy-side real estate agents and brokers for residential real estate listed on www.neighborcity.com.

9.      As NAR, the MLSs and their member-brokers have done before when innovative businesses attempt to enter the real estate market, they seek hereto prevent competition by maintaining an iron grip on real estate data that is critical to consumers. In furtherance of that anti-competitive goal, Defendants have agreed not to license AHRN any allegedly copyrighted

material from their respective websites with the intent of "[t]hrowing a world of hurt" on AHRN and destroying its business.

10.     Defendants' exclusionary practices continue a pattern in the real estate industry in which traditional brokerages have undertaken various suppressive measures whenever they were challenged by an innovative business model. This conduct has prompted lawsuits by the Department of Justice ("DOJ") and investigations by the Federal Trade Commission ("FTC"), all seeking to promote access to property information for new entrants to the real estate industry who challenge the traditional broker model.  Defendants' conduct is simply another strategy by powerful real estate brokers to suppress information, from which they derive value, to the detriment of consumers. Absent this court's intervention, Defendants' illegal conduct will continue unabated.

## C.     JURISDICTION AND VENUE

11.     This Complaint is filed under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Section 4 of the Clayton Act, 15 U.S.C.  § 15, to prevent and restrain violations by Defendants of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1337(a), and 1367.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the counter claims

occurred, and the Defendants are subject to personal jurisdiction, in this district.

13. This Court has personal jurisdiction over MRIS, a Delaware corporation because it maintains its principal place of business at 9707 Key West Avenue, Suite 200, Rockville, Maryland.

14. This Court has personal jurisdiction over NAR, a trade association organized under the laws of Illinois, with offices at 500 New Jersey Avenue, NW, Washington, DC 20001-2020 because it regularly transacts business in Maryland and under the Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) and § 6-103(b)(4) by virtue of it's conspiracy to restrain trade and monopolize with, among others, MRIS.

15. This Court has personal jurisdiction over Doe Defendants under the Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) and § 6-103(b)(4) by virtue of their conspiracy to restrain trade and monopolize with NAR among and MRIS.

16. Defendants are engaged in interstate commerce.   MRIS, and Does ## 1- 25 broker, market and sell real estate throughout the United States.  NAR has members nationwide to whom it provides information and assistance and against whom it enforces its policies and standards. Defendants' activity represents a regular, continuous and substantial flow of interstate commerce and therefore their wrongful activities have a substantial adverse effect on interstate commerce in the United States.

### D.     FACTUAL STATEMENT

*National Association of Realtors*

17.    Upon information and belief, NAR is a trade association that establishes and enforces policies and professional standards for its over one million individual member real estate brokers and their affiliated agents and sales associates ("Realtors"), and 1,600 local and state member boards. NAR's member brokers compete with one another in local brokerage services markets to represent consumers in connection with real estate transactions.

18.    NAR's policies govern the conduct of its members in all fifty states, including all Realtors and all of NAR's member boards.   Upon information and belief, NAR's member boards control approximately eighty percent of the approximately 1,000 MLSs in the United States.

19.    NAR promulgates rules governing the conduct of MLSs and requires its member boards to adopt these rules.

20.    Each year, NAR holds an Annual Meeting, 2011 it was held in Anaheim, California in November and a Mid Year Meeting in Washington, D.C. at which its member MLSs and brokers convene to discuss matters of industry concern.  At the November 2011 Annual Meeting, NAR led discussions about AHRN and at May 2012 Mid Year Meeting in Washington, DC, the litigation by MRIS and Northstar against AHRN were discussed by the NAR Board.

21.    In 2005, the United States Department of Justice brought suit against NAR for violating Section 1 of the Sherman Act, in promulgating and enforcing rules on its members that discriminated against and excluded Internet-based real

estate brokers in order to maintain brokers' real estate sales commissions at inflated values. *U.S. v. NAR*, Civil Action No. 05C-5140 (E.D. Ill. September 8, 2005) ("DOJ Complaint").

22.  The government sought to enjoin NAR "from maintaining or enforcing a policy that restrains competition from brokers who use the Internet to more efficiently and cost effectively serve home sellers and buyers, and from adopting other related anti-competitive rules."   Complaint at ¶ 1.

23.  On November 18, 2008, NAR agreed to settle the DOJ Complaint by Department of Justice and entered a consent decree with a Final Judgment by imposing certain prohibitions on the real estate industry. NAR accepted prohibitions imposed upon it against promulgating and enforcing any rule that:

-  Prohibits, restricts, or impedes access to, or discriminates against a web-based broker who provides to its customers all of the listing information that is permitted under traditional methods; mail, fax, etc.;

-  Prohibits, restricts, or impedes the referral of customers whose identities are obtained from a website by a web-based broker to any other person, or establishes the price of any such referral; and

-  Imposes fees or costs upon any broker who operates a website or upon any person operating a website for a broker that charges fees in excess of the reasonably estimated actual costs incurred by a multi list board in providing listing information to the broker or discriminates in fees or costs charged to a broker versus a person operating a website for a broker.

*Multiple Listing Services*

24.    Defendant MRIS, Northstar, and, upon information and belief, one or more of

the Doe Defendants are Multiple Listing Services ("MLS").  MLSs are entities

to which virtually all real estate brokerages belong and pay periodic dues.  In

exchange for these dues, MLSs provide member brokerages access to an

electronic  database  of  supply,  pricing,  and  property-characteristics

information  relating  to  past  and  current  real-estate  listings  in  the  MLSs'

respective Service Areas.

25.    Upon  information  and  belief,  MRIS  serves  brokers  in  Maryland,  Virginia,

Washington, D.C. and parts of Pennsylvania, Delaware and West Virginia and

lists  close  to  85%  of  listed  properties—as  measured  by  dollar  volume  of

closed  transactions—in  its  service  area.    Northstar  serves  brokers  in

Minnesota,  and  the  Doe  Defendant  MLSs  serve  brokers  in  their  respective

Service  Areas.    Defendant  MLSs  (including  one  or  more  of  the  Doe

Defendants)  are thus marketwide joint ventures of supposed competitors that

possess substantial market power, and to compete successfully, a brokerage

must be an a member of these MLSs.

26.    MRIS's  database  (and  other  MLSs'  databases)  allows  MLS  members  to

communicate  information  among  themselves,  such  as  descriptions  of  listed

properties for sale and offers to compensate other members if these other

members locate buyers for the listing agent or broker.  These databases also

allow members representing buyers to search the listed properties to match

buyers' needs.

27.   By providing an efficient means of exchanging information on real estate listings, MLSs are intended to benefit real-estate buyers and sellers and, in turn, buyers of real-estate brokerage services in the MLS Service Areas.  And since virtually all for-sale properties in a MLS's Service Area are listed with the MLS, buyers' agents must use MLS when assisting buyers in making a purchasing decisions in order to inform them of the availability of real estate on the market, each property's characteristics, and the sellers' asking prices

28.   The MLSs' dominant roles makes access to the MLS databases—and therefore MLS membership—critically important for any brokerage seeking to serve clients efficiently in an MLS Service Area.  Indeed, access to the MRIS, Northstar and other MLS databases is critical to being successful in their respective Service Areas as brokers, as for the most part the MLSs are the only providers of this service in their respective Service Areas. Therefore, brokerages seeking to meaningfully provide real-estate-brokerage services in an MLS Service Area must be MLS members.  "Particularly in an area served by only one MLS, access to MLS resources may be critical for a brokerage to successfully participate in the relevant real estate market."  *Robertson v. Sea Pines Real Estate Cos.,* 679 F.3d 278, 282 (4th Cir. 2012).

29.   Defendants and brokers — through their various employees' participation on the NAR and MLS Boards of Trustees and by using the MLSs as conduits — have created rules that govern MLS members' conduct and business practices and have set standards for admitting new members.  Through these rules, Defendants and other MLSs have profited by illegally inhibiting

competition over the method by which they provide real-estate-brokerage services to customers (i.e., property sellers) in the MLS Service Areas and have illegally stabilized and inflated the prices that these customers pay for real estate-brokerage services.

30.    The methods of making MLS information available to customers have changed as technology has evolved. From the 1920s, when MLSs first became prevalent, brokers allowed customers to view a printed "MLS book." Later, the availability of copy machines allowed brokers to reproduce pages from the MLS book and deliver the pages with responsive listings to customers by hand or mail. The advent of facsimile transmission — and, later, electronic mail — further quickened the process of delivering MLS listings to customers.

31.    The relevant market in this action consists of residential real estate brokerage services in the markets in which Defendants operate. MLSs are local cooperatives run by local broker-members, usually affiliated with the National Association of Realtors ("NAR"), who pool and disseminate information on homes available for sale in their regions. Each MLS combines its members' data and then makes it available to all of its member-brokers, which enables more efficient exchange of information among brokers. According to an April 2007 Joint Report by the Federal Trade Commission and the U.S. Department of Justice entitled "Competition in the Real Estate Brokerage Industry,"

MLSs are so important to the operation of real estate markets that, as a practical matter, any broker who wishes to compete effectively in a market must participate in the local MLS and brokers must have access to their local multiple listing service (MLS) to compete effectively. Because brokers usually set the rules for each others' participation in the MLS, it is possible for one dominant group of brokers to establish rules that disfavor other brokers who compete in a manner they dislike.

32.   The August 27, 2009 Final Judgment upon consent in *United States v. Consolidated Listing Service, Inc.*, Case No. 2:08-CV-01786-SB (D.S.C.), stated that the defendant MLS "shall not adopt, maintain, or enforce any Rule, *or enter into or enforce any agreement or practice*, that directly or indirectly . . . discriminates against or disadvantages any Member or Licensee based on the Member's or Licensee's office location, pricing or commission rates, *business model*, contractual forms or types used, or services or activities the Member or Licensee performs or does not perform for any home buyer or home seller[.]" (emphasis supplied).

33.   Other courts have similarly found that anti-competitive MLS rules are unreasonable, "[w]hen broker participation in the [MLS] is high, the service itself is economically successful and competition from other listing services is lacking, rules which invite the unjustified exclusion of any broker should be found unreasonable." *United States v. Realty Multi-List*, 629, F.2d 1351, 1374 (5th Cir. 1980). Defendants' conduct is the old guard real estate industry's next effort to stifle competition.

*False and Misleading Statements*

34.    MRIS, with the support, encouragement and financial assistance of NAR has
made and is making numerous false and misleading statements on its
website and elsewhere, including but not limited to the following:

    (a) MRIS purports to acquire copyrights to photos and real estate listings
from its members through a "click wrap" assignment by the member's
uploading of photos into MRIS's database for display on its website.
The assignment called "Terms of Use" (ToU") is not clearly identified
as an assignment and is in fact invalid to assign a copyright or grant
an exclusive license;

    (b) MRIS adds false and misleading copyright notices on photos on its
website; and

    (c) MRIS falsely and misleadingly informs its members that
uncopyrightable real estate listing information can be treated as
copyrightable musical lyrics by treating real estate listing information
as "content."

*The Combination or Conspiracy in Restraint of Trade*

35.    NAR held its annual meeting in Anaheim, California from November 11 to 14,
2011.    On information and belief, the NAR annual meeting featured
discussions of the perceived threat AHRN poses to the industry and what the
industry could do to shut down AHRN.

36.    Beginning in November, just before the Anaheim meeting, AHRN began to
receive what would become a torrent of cease-and-desist letters from brokers

and MLSs.  Substantially similar cease and desist letters in form and content, 20 in all, have continued into 2012 and uniformly allege copyright infringement and threaten legal action.

37.     Three (3) additional letters are from brokers objecting to AHRN, Inc's referral program; and three (3) letters involve complaints to governmental agencies related to either alleged copyright infringement and/or licensing violations.

38.     On November 15, 2011, the morning after the Anaheim NAR meeting closed, AHRN received one of these cease-and-desist letters from an attorney for the Northstar MLS in Minnesota.  Three days later, on November 18, 2011, AHRN received a cease-and-desist letter from MRIS.

39.     On December 22, 2011, AHRN was copied on an email from John Mosey of the Northstar MLS to his attorney Mitchell Skinner, in which Mosey complained of a sense that after "dropping C&D's [Cease and Desist Letters] on the head of the bad fellow," i.e. Jonathan Cardella, AHRN's CEO, nothing had changed, and he called for following up the "full force and fury" of the cease-and-desist letters with:

- "Collective action;"
- Imparting a "world of hurt" on Cardella;
- Using copyright litigation as the means to do that;
- Sharing the cost of litigation among the MLSs;
- "Connecting the dots between all of the MLSs;"
- "Sending a message that our copyrights are enforceable and we are serious about punishing anyone who doesn't take us seriously."

40.     On information and belief, MRIS's Complaint filed on March 19, 2012, and another filed on April 18, 2012, in Minnesota, *Regional Multiple Listing Service of Minnesota, Inc., d/b/a NorthstarMLS v. American Home Realty*

*Network, Inc.*, 0:12cv965 (D. Minn) filed on May 18, 2012 are the direct and concerted action discussed and sought by the concerted action at the Anaheim NAR Annual Meeting.

41.   The actions by brokers and multiple listing services followed AHRN's roll-out of updated profile pages for 850,000 agents that feature agent scores and performance metrics based on their transaction history.   Redfin and other companies that introduced similar real estate agent profile pages were forced to discontinue publication of those pages within days after their respective launches.

*Group Boycott*

42.   In response to the sudden flood of cease-and-desist letters after the Anaheim NAR Annual Meeting, AHRN responded to each letter with an offer to negotiate a license for the use of the brokers' or multiple listing services' website.   In each case, AHRN's overture to license was rebuffed out of hand without negotiations.   Each rejection used the same format and essentially the same language.

43.   In the few instances in which AHRN was able to reach agreement or had negotiations with real estate brokers over referral agreements with AHRN and AHRN's use of listings information, the brokers repudiated such agreements starting in January, 2012   Upon information and belief, this repudiation was in response to pressure from the MLSs.

44.   Each letter to AHRN from the CEO, Vice President or general counsel of a broker states in remarkably similar language essentially that:

It has come to my attention that American Home Realty Network, Inc. d/b/a NeighborCity ("NeighborCity") has been soliciting or may intend in the future to solicit agents of Reese & Nichols to ask them to execute referral agreements that purport to bind Reece & Nichols. Please be advised that Reece & Nichols has no interest in entering into any referral or other agreements with NeighborCity, and Reece & Nichols….

Accordingly, to the extent any agent has executed an agreement with NeighborCity that purports to bind Reece & Nichols that agreement is void and of no legal effect. Alternatively, Reece & Nichols hereby terminates any such agreement.

45.   AHRN has received nearly identical "it-has-come-to-my-attention" broker letters intending to stop solicitations of referral agreements by AHRN and repudiating referral agreements with AHRN from brokers in Louisville, Kentucky; Fort Mitchell, Kentucky; Winston Salem, North Carolina; Edina, Minnesota; Lancaster, Pennsylvania; and Severna Park, Maryland.

46.   The NAR held its Midyear Meeting in Washington D.C. between May 14 and 19, 2012.  On information and belief, NAR's Board voted on Saturday, May 19, 2012 to fund the instant MRIS lawsuit and Minnesota Northstar lawsuit against AHRN.

47.   NAR has no direct stake in the substance of MRIS's and Northstar's litigation against AHRN.  NAR, however, seeks to fund the litigations for its own financial gain.

48.   On information and belief, the cease and desist letters, refusal and repudiation letters were coordinated by discussions and agreements among NAR, MLSs and brokers.

49.   At its May 19, Mid-Year Meeting in Washington, D.C., the NAR Board of

Directors approved new rules to further exclude competitors like AHRN from

MLS websites:

   [A]pproved a set of comprehensive amendments to NAR's Internet
   Data Exchange (IDX) policy and MLS rules to clarify that "participant
   websites" are those in which MLS participants have actual and
   apparent control of the sites.  …  Control means participants can add,
   delete, modify, or update their information, and a reasonable consumer
   would recognize the information as the participants.

   Separately, the board acknowledged the growing complexity of
   MLS technology issues by creating an MLS Technology and Emerging
   Issues Subcommittee, which will anticipate and analyze MLS
   technology issues.

   Approved $161,667 in legal assistance for seven cases, involving
   … 4) challenging misappropriation of MLS data by a third-party Web
   site….

   *See*, http://www.realtor.org/governance/board-of-directors/report-

   from-the-may-19-board-of-directors-meeting.

*Sham Litigation*

50.   Real estate listing information is an amalgam of facts: location of the listed

residential real estate, the date it was built, number of bedrooms, asking

price, days on market, name and affiliation of listing agent and other facts.

51.   The Supreme Court in *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S.

340, 358 (U.S. 1991) held that "facts are not copyrightable," but "compilations

of facts generally are."  *Id.* at 344.

   Many compilations consist of nothing but raw data *i.e.,* wholly factual
   information, not accompanied by any original written expression. On
   what basis may one claim a copyright in such a work?  Common sense
   tells us that 100 uncopyrightable facts do not magically change their
   status when gathered in one place….

The *sine qua non* of copyright is originality.

*Id.* at 345.

52.     MRIS' and Northstar's litigation against AHRN seek to bootstrap protection of uncopyrightable facts by including such facts in its database and filing compilation copyrights on its database.

53.     Indeed, as to MRIS, it does not even own or "license," let alone register, copyrights in the listing information.  MRIS's Subscription Agreement provides that:

> Title to the information supplied by the Subscriber such as listing information shall remain with Subscriber's undersigned Principal Broker Subscriber.  All listing information submitted by MRIS® Subscriber to MRIS® for inclusion in the MRIS® System shall be owned by MRIS® Principal Broker Subscriber.

MRIS Subscription Agreement, attached as Exhibit A, ¶ 4.5

54.     MRIS also claims copyrights in photographs of listed residential real estate in its database and displayed on its web site of real estate listings.  MRIS's Terms of Use for uploading photographs purports that by the act of hitting the enter key on a computer to upload the photographs to MRIS's database for display on its website to assign the unregistered photographs to MRIS.  This does not meet the standard of 17 U.S.C. §204(a), which requires a signed writing from the assignor of a copyright.

55.     On information and belief, NAR has conducted no, or insufficient, due diligence on the merits of MRIS's copyright claims to fund such litigation. Nonetheless, NAR's payment or offer of payment for or financial contribution

to MRIS and Northstar's litigation is an endorsement by NAR of the merits of their respective claims.

56.    Defendants have conspired to engage in sham litigation against AHRN to raise its barriers to entry, to keep it out of the market for residential real estate broker services in the United States.

*Anti-competitive Effects*

57.    MLSs have market power.  The vast majority of brokers believe that they must participate in the MLS operating in their local market in order to adequately serve their customers and compete with other brokers. As a result, few brokers would withdraw from MLS participation, even if the fees or other costs associated with that participation substantially increased.

58.    By virtue of industry-wide participation and control over a critically important input, MLS joint ventures have market power in every relevant real estate market.

59.    Defendants' coordinated: (a) cease and desist letters to AHRN, (b) refusals to deal letters to AHRN; (c) repudiation letters to AHRN, (3) sham lawsuits against AHRN and (d) agreement or offer to pay for or contribute to the costs of litigation against AHRN by MLSs and real estate brokers, was intended to and did have anti-competitive effects on AHRN in the market for real estate brokerage services.  Anti-competitive effects include the elimination of price competition and price maintenance on brokerage services above market levels nationwide, impeding and blocking market entry by AHRN and other

innovative providers of broker analyses and impeding and blocking innovation in real estate brokerage services.

60.     Defendants' activities, and the violations alleged in this Complaint, affect home buyers and sellers located throughout the United States.

### E.    CAUSES OF ACTION

Counterclaimant AHRN asserts the following claims:

### COUNT I

**Lanham Act §43(a)**
(Against NAR and MRIS)

61.     Counterclaimant AHRN hereby incorporates paragraphs 1-60 by reference as if fully set forth herein.

62.     NAR and MRIS have made false or misleading representation of fact in commercial advertising or promotion that misrepresents the nature, characteristics, and qualities of AHRN's services and commercial activities and MRIS's rights and services.

63.     NAR and MRIS's misrepresentations are material in that they have deceived or are likely to deceive MLS's brokers and home buyers in whether to deal or contract with AHRN.

64.     NAR and MRIS's misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience.

65.     The defendants placed the false or misleading statements in interstate commerce of the United States.

66.     AHRN has been or is likely to be injured as a result of defendants' misrepresentations by directly diverting sales by AHRN to MRIS and other MLSs and by lessening of goodwill associated with AHRN's services.

## COUNT II

### Maryland Unfair Competition
(Against NAR and MRIS)

67.     Counterclaimant AHRN hereby incorporates paragraphs 1-66 by reference as if fully set forth herein.

68.     NAR and MRIS's false statements, group boycott, and litigation activities constitute unfair competition.

69.     NAR and MRIS's unfair competition includes fraud, deceit and trickery.

70.     NAR and MRIS's unfair competition has damaged, threatens further damage and jeopardizes AHRN's business.

## COUNT III

### Unfair Competition, Cal. Bus. & Prof Code §17200 et seq.
(Against All Defendants)

71.     Counterclaimant AHRN hereby incorporates paragraphs 1-70 by reference as if fully set forth herein.

72.     Defendants have engaged in unlawful business acts or practices, as alleged herein, all in an effort to gain unfair competitive advantage over AHRN.

73.     These unlawful business acts or practices were committed pursuant to business activity related to group boycott and sham litigation against AHRN.

74.     The acts and conduct of Defendants constitute fraudulent, unlawful, and unfair competition as defined by CaL Bus. & Prof. Code §§ 17200, et seq.

75.     Defendants' conduct constitutes violations of numerous state and federal statutes and codes, including but not limited to, violation of section 43(a) of the Lanham Act,, 15 U.S.C. §1125(a), Section 1 of the Sherman Act , 15 U.S.C. §1.

76.     Defendants have improperly and unlawfully taken commercial advantage of AHRN's investment in its NeighborCity Site and business model. In light of Defendants' conduct, it would be inequitable to allow Defendants to retain the benefit of the funds obtained through the unauthorized and unlawful false and misleading statements, group boycott and sham litigation

77.     Defendants' unfair business practices have unjustly minimized AHRN's competitive advantages and have caused and are causing AHRN to suffer damages. As a result of such unfair competition, AHRN has also suffered irreparable injury and, unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury, for which AHRN has no adequate remedy at law.

78.     Defendants should be compelled to disgorge and/or restore any and all revenues earnings, profits, compensation, and benefits they may have obtained in violation of Cal. Bus. & Prof. Code § 17200 et seq. including but not limited to returning any revenue earned from the unlawful and unfair use of data misappropriated from the NeighborCity Site, and should be enjoined from further unlawful, unfair and deceptive business practices.

**COUNT IV**

**Sherman Act §1**
(Against All Defendants)

79.    Counterclaimant AHRN hereby incorporates paragraphs 1-78 by reference as if fully set forth herein.

80.    At least by their agreements in Anaheim, California in November 2011, Defendants NAR, MRIS, unnamed defendant Northstar, their respective member brokers, and certain Doe Defendants made a conscious commitment to a common scheme designed to achieve an unlawful objective that constitutes a contract combination or conspiracy (the "Conspiracy").

81.    The Conspiracy has existed since as early as November 2011, continues to this day and comprises separate economic entities.

82.    The conspiracy's unlawful objective was, and continues to be, to impose unreasonable restraints of trade in individual state and local real estate markets served by MLSs and in the national real estate market, including, but not limited to Maryland, Virginia, the District of Columbia and parts of Pennsylvania, West Virginia and Delaware, Minnesota and other states from which AHRN has received cease and desist letters ("Relevant Markets").

83.    The Conspiracy's unlawful objectives were to inhibit competition between and among member real estate brokers of MLSs and AHRN; to inhibit innovation in the delivery of information to, and for the benefit of, buyers and sellers of residential real estate, i.e. consumers of real estate brokerage services; and illegally stabilize and inflate real estate prices and real estate broker

commissions, by raising barriers to entry to impede AHRN's entry into, and eventually drive AHRN out of, the Relevant Markets.

84.   The collective action among actual and potential competitors "depriv[ed] the marketplace of independent centers of decision-making."

85.   The anti-competitive acts of the Conspiracy have directly harmed competition and have injured AHRN's sales and good will in an amount to be determined.

## COUNT V

**Copyright Misuse**
(Against MRIS)

86.   Counterclaimant AHRN hereby incorporates paragraphs 1-85 by reference as if fully set forth herein.

87.   Defendant MRIS is using its purported copyrights in a manner that violates the public policy embodied in the grant of a copyright.

88.   Defendant MRIS has and continues to illegally expand the scope of the limited rights conferred by the copyright grant.

89.   MRIS's illegal expansion of the scope of its copyright has and will continue to injure AHRN in lost sales and good will.

## COUNT VI

**Barratry, Md. Code Ann., Bus. Occ. & Prof., § 10-604(a)(1)**
(Against NAR)

90.   Counterclaimant AHRN hereby incorporates paragraphs 1-89 by reference as if fully set forth herein.

91. NAR has no interest in an existing relationship or interest in MRIS or Northstar's copyrights.

92. NAR has solicited MRIS, Northstar and others, respectively, to sue AHRN or to retain lawyers to represent MRIS, Northstar or others in a lawsuit at NAR's expense, in whole or in part.

93. NAR's solicitation, payment of or contribution to MRIS, Northstar and others has injured AHRN in its business and property.

**PRAYER FOR RELIEF**

WHEREFORE counterclaimant prays for judgment against counterclaim defendants as follows:

A. Award of compensatory damages in an amount to be determined;

B. Award of lost profits or an adequate license or royalty fee in an amount to be determined;

C. Award of declaratory relief;

D. Award of treble, punitive or exemplary damages in an amount to be determined;

E. Award of reasonable attorneys' fees;

F. Order of preliminary and permanent injunctive relief, including but not limited to:

(a) Enjoin NAR and MRIS from taking any actions to implement their plan to exclude AHRN from the market for Internet-based services to real estate brokers and buyers and sellers of residential real estate.

(b) Enjoin NAR and MRIS from participating in any way in the conspiracy against AHRN to restrain trade and engaging in the exclusionary conduct alleged herein.

G.      Grant of such other and further relief as the court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Counterclaimant AHRN hereby demands a trial by jury on all issues in its Counterclaim triable of right to a jury.

Respectfully submitted,

FARKAS+TOIKKA, LLP

_/S/ Richard S. Toikka_
Richard S. Toikka, Fed Bar No.13543
L. Peter Farkas (pro hac vice)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)


Of Counsel:

Christopher R. Miller (pro hac vice)
Chief Legal Officer and General Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)


_Counsel for Defendant and Counterclaimant American Home Realty Network, Inc._

**CERTIFICATE OF SERVICE**

I, Richard S. Toikka, herby certify that on this the 24th day of September, 2012, a

copy of the foregoing Answer, Affirmative Defenses, Counterclaim and Jury Demand

was served by electronic means using the Court's CM/ECF system upon:

John T. Westermeier, Esquire
Margaret A. Esquenet, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*Counsel for Plaintiff and Counterclaim Defendant*
*Metropolitan Regional Information Systems, Inc.*

*/S/ Richard S. Toikka*
Richard S. Toikka