**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,**<br><br>Defendants. | CIVIL ACTION NO.<br>12-cv-00954-AW |

**PLAINTIFF'S OPPOSITION TO DEFENDANT AMERICAN HOME REALTY NETWORK, INC.'S MOTION TO CLARIFY, RECONSIDER, OR SUSPEND <u>PRELIMINARY INJUNCTION ORDER</u>**

## I. INTRODUCTION

Despite the Court's clear Order to Defendant American Home Realty Network, Inc. ("AHRN") instructing it to cease copying, distributing, displaying publicly, and/or creating derivative works from the MRIS Database, Defendant continues to do so. Although AHRN appears to have disabled photographs bearing the MRIS copyright notice from its website, neighborcity.com, AHRN continues to flaunt the Order by copying the entire MRIS Database and creating derivative works based on the MRIS Database. AHRN's Motion to Clarify, Reconsider, or Suspend Preliminary Injunction Order (Dkt. 42 or "Motion to Clarify"), in which AHRN admits that it is not in compliance with the Order, is a transparent ploy, the sole purpose of which is to put forth arguments already considered and rejected by this Court in connection with AHRN's Motion to Dismiss (converted to a Motion for Summary Judgment) and MRIS's Motion for Preliminary Injunction. AHRN's tactical decision to ignore the Order allows it to continue to profit illegally from the unauthorized use of the MRIS Database and continue the practices that harm MRIS.[1] Defendant offers no legitimate reason why the Court's Memorandum Opinion and Order are insufficient, and accordingly the Motion to Clarify should be denied and the Order should be enforced.

## II. MRIS HAS AGREED TO POST A BOND PURSUANT TO FED. R. CIV. P. 65(c)

MRIS has already offered to post a substantial bond pursuant to Fed. R. Civ. P. 65(c) (Dkt. 37.)[2] The bond offered by MRIS is more than adequate under Fourth Circuit precedent where, as here, the Defendant is merely enjoined from infringing another's copyrights. *Candle Factory, Inc. v. Trade Associates Group, Ltd.,* 23 Fed. Appx. 134 (4th Cir. 2001). Indeed,

---

[1] According to AHRN's Opposition to MRIS's Motion for Modification of Order, AHRN expects to profit from such harm at an estimated $312,868.24 for 2013 based on AHRN's "year over year growth rate" of 582.59 percent. (Dkt. 45 at 5.)

[2] MRIS will more fully brief this issue in its Reply to Defendant's Opposition to MRIS's Motion for Modification of the Court's Order (Dkt. 45.)

AHRN makes no argument whatsoever in the Motion to Clarify that complying with the Order will harm it in any way.  Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction was similarly silent on that issue.  (Dkt. 25 at 21-22.)  AHRN should not now be permitted to exploit a technical omission in the court's order to make new, unsupported claims of harm.

### III.   THE PRELIMINARY INJUNCTION COMPLIES WITH FED. R. CIV. P. 65(d)

#### A.   *AHRN Continues to Copy the MRIS Database in Violation of the Order*

##### 1.   *The MRIS Database is Subject to Copyright Protection*

AHRN justifies its continued violation of the Preliminary Injunction Order and infringement by attempting to parse the different individual elements of the MRIS Database, and trying to convince the Court that this parsing should somehow change the Court's Memorandum Opinion.  The Court, however, already considered and rejected AHRN's arguments.  Specifically, in its Memorandum Opinion, the Court found that MRIS was likely to succeed on the merits of its claims because the "Court finds that the MRIS Database exhibits the requisite originality for copyright protection.  MRIS oversees and controls the quality and accuracy of the content in the MRIS Database."  (Dkt. 34 at 26.)  The Court further explained that "the Court finds that the database is entitled to copyright protection because MRIS makes creative decisions in arranging and compiling the data." (Id. at n. 9.)  Accordingly, the Court found that the MRIS Database as a whole, in addition to its constituent elements, is subject to copyright protection.  This finding is well supported by precedent and evidence and conforms with the practices of the Copyright Office, which registers quarterly versions of the MRIS Database.  (Dkt. 34 at 17-21.)  As noted by the Court, MRIS's copyright registrations cover both the photographs and text contained therein. (Dkt. 34 at 21), and protection extends to both the copyrightable contributions and the compilation as whole.  As the Court explained, "One infringes a copyright when he or she violates any part of the copyrighted work." (Dkt. 34 at 17.)

### 2.     AHRN Misappropriates the Entire MRIS Database Causing Irreparable Harm

By its argument, AHRN implies that it is merely copying unprotected individual elements of the MRIS Database. This is both irrelevant and untrue. It is not relevant because the registrations for the MRIS Database, which the Court has already found to be valid, cover both text and images within the MRIS Database, in addition to the database in its entirety. AHRN cannot copy either the MRIS Database as a compilation nor can it copy its constituent elements. It is not true because even if AHRN was copying only allegedly unprotected factual elements of the MRIS Database, which it is not, it would nonetheless need to obtain such the MRIS Database in a legitimate, non-infringing manner. AHRN is not authorized to access the MRIS Database. There is substantial evidence, detailed below, that AHRN is instead stealing the MRIS Database via an unauthorized RETS feed.[3]

MRIS's analysis of information available from AHRN's neighborcity.com website reveals that AHRN copies the entirety of the MRIS Database. Specifically, AHRN is copying the entire MRIS Database and then programmatically disabling the photographs supplied by MRIS and replacing them with photographs supplied by Google. (Declaration of Michael Belak ("Belak Decl."), ¶ 2.) This unauthorized copying is illustrated by the fact that the neighborcity.com website features fictitious listings included in the MRIS Database by MRIS for the purpose of quality control and enforcement. (Id. at ¶ 3, Ex. A.) For example, the following is a fictitious listing created by MRIS for Rockville, Maryland (MRIS MLS No. MC7917008):

---

[3] The RETS feed is more fully described in the MRIS Complaint (Dkt 1, Paragraphs 19-21.)



A true and correct copy of this entire fictitious listing, as available on AHRN's neighborcity.com, is attached to the Belak Decl. at Ex. A.

Only authorized subscribers to the MRIS Database RETS data feed, which AHRN is not, have access to this fictitious listing. (Id. ¶ 4.) For example, this fictitious listing <u>does not</u> appear on syndication services such as Zillow, Trulia, Yahoo!, or the Baltimore Sun, which only publish listings approved by the originating broker.[4] (Id. ¶ 5, Ex. B.) There is additional evidence that AHRN is copying the entire MRIS Database. For example, the Coastal Association of Realtors (CAR) operates an MLS in Ocean City, MD, but MRIS has a number of subscribers with listings in the Ocean City area in the MRIS Database. (Id. ¶ 6.) These listings bear MRIS MLS numbers. (Id.) MRIS analyzed a sampling of the Ocean City listings on the neighborcity.com website by Ocean City-area zip codes and determined that only those Ocean City listings with an **MRIS** MLS number had their photos replaced with Google photos. (Id. ¶ 7.) In contrast, the

---

[4] The syndication system and how AHRN's could take advantage of it but does not, are more fully explained in MRIS's Reply in Support of Motion for Preliminary Injunction. (Dkt. 27 at 23-24.)

listings with a **CAR** MLS number were unaffected. (Id. ¶ 8, Ex. C.) This analysis establishes that AHRN can and does delineate the data on the neighborcity.com website by altering the content based on its source, namely the MRIS Database RETS feed. (Id. ¶ 9.) Additionally, it appears that AHRN is using this unauthorized access to the MRIS Database RETS feed to disable photos from the MRIS Database. (Id. ¶ 10.) This process not only results in the creation of mutilated and unauthorized derivative works of the MRIS Database in violation of the Order and, but also violates at least 17 U.S.C. § 506(c), § 506(d), and § 1202(b), each of which prohibit the removal or alteration of copyright notices and other copyright management information. *See*, *e.g.*, *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011). AHRN's disabling of photographs, removal of copyright notices, continued unauthorized copying, and intentional refusal to comply with the Court's preliminary injunction Order is causing further irreparable harm to MRIS, which continues to be deprived of the right to control the distribution of its copyrighted work. Moreover, the replacement of the MRIS photos with Google photos may lead customers to believe mistakenly that MRIS approves of the display of portions of the MRIS Database by AHRN or that MRIS is not offering the variety and quality of photos intended to be included in a property listing, causing irreparable harm to MRIS and its subscribers and compromising MRIS's reputation. These harms alone are sufficient to deny AHRN's Motion to Clarify.

  **B.**  **The Preliminary Injunction Order Meets FRCP 65(d) Standards**

In its Motion to Clarify, AHRN discusses only the preliminary injunction Order while virtually ignoring the Memorandum Opinion expressly incorporated therein by reference. The Court's Memorandum Opinion (Dkt. 34) together with its Order enjoining AHRN from further

infringing the MRIS Database (Dkt. 35) fully comply with Fed. R. Civ. P. 65(d). There is no need for the Court to clarify the Order.

In *Schmidt v. Lessard*, 414 U.S. 473, 476-77 (1974), the Supreme Court held that Rule 65(d) serves a dual purpose: (1) "to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood" and (2) to enable the "appellate tribunal to know precisely what it is reviewing." Significantly, the Fourth Circuit held that "where it gives a fair warning of the acts that it forbids, and injunction may not be avoided on merely technical grounds. Moreover, the language of an injunction must be read in the light of the circumstances surrounding its entry." *U.S. v. Fuller*, No. 90-5798, 1990 WL 190495, at *3 (4th Cir. 1990). Here, when the Order is read in conjunction with the accompanying Memorandum Opinion, it is abundantly clear that the Court rejected AHRN's arguments regarding the insufficiency of MRIS's copyrights in the MRIS Database. Rather, the Court found the MRIS Database was a compilation entitled to copyright to protection, both as a whole and in its constituent elements, and ordered AHRN to stop copying, reproducing, publicly displaying, publicly distributing, or creating derivative works from the copyrighted MRIS Database.

If AHRN's position is that the Court should specifically delineate in the preliminary injunction order every fact in the MRIS Database and somehow separate it from the text and images claimed in the MRIS copyright registrations, such an argument also lacks merit under Fourth Circuit precedent. The Fourth Circuit holds that "[t]he mere fact that . . . interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him." *Scardelletti v. Rinkwitz*, 68 Fed. App'x 472, 479 (4th Cir. 2003).

The decision in *Kremen v. Blank*, 55 B.R. 1018 (D. Md. 1985), is instructive. In *Kremen*, the injunction forbade the defendants from "releasing, assigning, transfering[sic], collecting, or encumbering property of the Bankrupt Estate of Albert S. Blank or any proceeds thereof, and any Mortgages or Deeds of Trust securing repayment of the Bankrupt Estate of Albert S. Blank." *Id*. at 1022. The defendants argued that the language violated Rule 65(d) because it was "too broad and vague in scope, and because it require[d] them to make determinations of just what property is part of Albert Blank's bankrupt estate, or the proceeds thereof." The Fourth Circuit rejected this argument holding that "[a]ppellate courts have upheld injunctions that have required the enjoined parties to make more complex judgments." *Id.* at 1022-23 (citing *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1150 (3rd Cir. 1982) (upholding injunction that forbade "any ... action which hinders or impedes the operation of Magnesco's business," including "interfering with Magnesco's sources of supply....")); *Syntex Opthalmics, Inc. v. Tsuetaki,* 701 F.2d 677 (7th Cir.1983) (upholding injunction that forbade defendants from using plaintiff's trade secrets).

The *Kremen* court emphasized that "[a]ll that is required under Fed. R. Civ. P. 65(d) is for the language of the injunction to be as specific as possible under the totality of the circumstances, such that a reasonable person could understand what conduct is proscribed." *Id.* at 1023 (emphasis added). Denying the defendant's request to revise the preliminary injunction, the court held that "[g]iven the number of defendants, the amount of property involved, and the embryonic stage of the litigation, the Court could not practically frame a more specific order."

There is nothing unclear in the Memorandum Opinion and Order because together they accomplish the twin goals articulated in *Lessard*: namely, putting AHRN on sufficient notice of what it is prohibited from doing and at the same time providing sufficient information to allow

8

for appellate review. AHRN's Rule 65(d) argument appears to be nothing more than an attempt to sidestep and distract from a valid injunction because it does not want to comply. Here, despite AHRN's best efforts to complicate it, the interpretation and required actions are straightforward: stop copying, modifying, displaying publicly, or distributing the MRIS Database or any derivatives thereof.

## IV.     MRIS PROCEDURES COMPLY WITH SECTION 204 and THE E-SIGN ACT

### A.     Standard for Motion for Reconsideration

AHRN asks this Court to revisit the same questions of law and fact it already considered and decided in the Memorandum Opinion and Order. This request is inappropriate under the Fourth Circuit standards for requests for reconsideration. Specifically, courts have recognized three limited grounds for granting a motion for reconsideration, none of which are applicable here: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *CK Franchising, Inc. v. Ford*, No. DKC-2007-1852, 2009 WL 3488381 at *1 (D. Md. Oct. 21, 2009). Significantly, "[a] motion to reconsider is not a license to reargue the merits or present new evidence." *Id*. (citing *RGI, Inc. v. Unified Indus., Inc.,* 963 F.2d 658, 662 (4th Cir.1992)). Motions for reconsideration are "an extraordinary remedy which should be used sparingly." *Id*.

Several decisions apply the same standard in the context of motions related to preliminary injunctive relief. For example, in *AFL Telecommunications LLC v. Fiberoptic Hardware, LLC*, No. CV11-0181, 2011 WL 5828185 (D. Az. Nov. 18, 2011), the defendants sought reconsideration of a preliminary injunction on the copyright infringement and Lanham Act claims. The court held that "motions for reconsideration are disfavored and should be

granted only in rare circumstances. A motion for reconsideration will be denied 'absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence.' Mere disagreement with an order is an insufficient basis for reconsideration. Nor should reconsideration be used to ask the Court to rethink its analysis." *Id*. at *1 (internal citations omitted).

Similarly, in *Maynard v. Colorado Supreme Court Office of Attorney Regulation Counsel*, No. 09-cv-02052, 2009 WL 3711560 (D. Colo. Nov. 5, 2009), the court refused to reconsider an order denying a preliminary injunction. The court held that the plaintiff had not "shown that extraordinary circumstances exist justifying reconsideration." *Id*. at *2. The court explained that "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. at *1.

AHRN's Motion to Clarify clearly fails to meet the standard for a motion for reconsideration. Rather than showing an intervening change in the law, previously unavailable evidence, or clear error, AHRN merely reformulates an argument already expressly considered and rejected by this Court in its Memorandum Opinion, namely, that MRIS's copyrights in the MRIS Database are invalid because the MRIS Terms of Use Agreement ("TOU") do not comply 17 U.S.C §204(a). This rehashed argument does not justify reconsideration of this Court's ruling that MRIS's TOU is a valid mechanism for assigning copyright interests.

### B. MRIS Does not Rely on "Anonymous" Transfers

AHRN mischaracterizes the MRIS TOU, stating that "click transfers" resulting from the "mere act of an anonymous person" do not have the indicia of a contract under Section 204(a). (Dkt. 42 at 9). This is another new and unsupported contention by AHRN. Far from

"undisclosed" or "anonymous," persons executing MRIS' TOU are in fact MRIS subscribers who have logged into password-protected MRIS accounts to access and update their real estate listings in the MRIS Database. MRIS photo uploads to listings are accomplished using the Keystone Photo Upload tool. (Belak Dec. ¶ 11.) The tool is a subscriber-only tool, accessible only once a MRIS subscriber is logged into his or her account. (Id ¶ 12.) A broker or agent wishing to upload a photo into his or her listing using the tool first must click agreement to the EULA before he or she is permitted to use the photo upload tool. (Id. ¶ 13.) Use is not anonymous. (Id. at ¶ 13.)

### C. MRIS's TOU Complies with Section 204(a) and ESIGN

As explained in MRIS's Motion for Leave to File Surreply to Defendants' Replies in Support of Their Rule 12(b) Motions to Dismiss (Dkt. 30) and held by the Court (Dkt. 34 at 22), Section 204(a) of the Copyright Act states: (a) A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent. 17 U.S.C. § 204(a). AHRN's insistence that Section 204(a) requires a signature on paper ignores both E-SIGN as well as relevant state law in Maryland, e.g., the Maryland Uniform Electronic Transactions Act ("UETA") and the Maryland Uniform Computer Information Transactions Act ("UCITA").

MRIS is not arguing that ESIGN "trumps" Section 204(a), as AHRN contends (Dkt. 42 at 8.) Rather, MRIS maintains that its TOU is valid under Section 204(a) because it constitutes a valid electronic contract as permitted under ESIGN. Moreover, to date, AHRN has not addressed relevant state law that similarly upholds the validity of electronic signatures, namely, the Maryland Uniform Electronic Transactions Act, which states "if a law requires a signature,

an electronic signature satisfies the law" (Md. Code Ann. Section 21-106 (West 2012), and the Maryland Uniform Computer Information Transactions Act, which also recognizes the validity of electronic transactions. Md. Code Ann., Com. Law section 22-102 et seq. (West 2012).

Notably, none of the cases cited by AHRN support its argument that the TOU at issue is invalid under Section 204(a) of the Copyright Act. In *Crispin v. Christian Audigier, Inc.,* the alleged "writing" at issue was an unsigned agreement and a few unsigned checks. More importantly, the "writings" at issue in that case were not electronic in nature and thus not even subject to ESIGN or relevant to the case at bar. 839 F. Supp. 2d 1086, 1090-91 (C.D. Cal. 2011). AHRN similarly relies upon *Luar Music Corp. v. Universal Music Group, Inc.* to support its claim that MRIS' TOU is invalid. In that case, the U.S. District Court for the District of Puerto Rico held that an email exchange coupled with an unsigned agreement did not amount to an exclusive license or writing that satisfied Section 204(a). No. 09-2263, 2012 U.S. Dist. LEXIS 71914 at *12-13 (D.P.R. May 22, 2012).

AHRN dedicates a significant portion of its analysis of ESIGN to a discussion of *Vergara Hermosilla v. Coca-Cola Co*., No. 10-21418-CV, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011), a Southern District of Florida case cited by this Court in its Memorandum Opinion (Dkt. 42 at 23). Although AHRN attempts to distinguish this case to try to minimize the importance of the Court's reliance on ESIGN in that case, it fails to mention that *Vergara Hermosilla* case, like *Luar Music Corp*., involved an exchange of emails. Unlike the parties asserting valid transfer of copyright in *Crispin*, *Luar Music Corp.* and *Vergara Hermosilla*, MRIS is not claiming that signed checks or an exchange of emails constitute a "writing" for the purposes of the Copyright Act. Rather, MRIS has established that its TOU constitutes a valid transfer of copyright

12

ownership under ESIGN and ESIGN does not contain a statutory exception that limits its application to the Copyright Act, including Section 204(a).

AHRN further contends in its Motion to Clarify that this Court's reliance upon *Vergara Hermosilla* is misplaced due to the limited reference to Section 7001(a)(1) of ESIGN in that case. (Dkt. 42 at 9) ("Secondly, the Court in *Coca Cola* cited the ESIGN Act as a 'see also' cite without discussion or reliance…Indeed, the Court cited a provision of the ESIGN law that has no application here: 'a signature, contract or other record relating to such transaction may not be denied legal effect, validity or enforceability solely because it is in electronic form.'")

AHRN mischaracterizes the nature of this Court's ruling on the validity of MRIS's TOU. In its Memorandum Opinion, this Court did not rely solely upon *Vergara Hermosilla* and Section 7001(a)(1) of ESIGN, but also on the definition of "electronic signature" provided in ESIGN and the language found in MRIS's TOU.  In its analysis, this Court directly addressed and rejected the argument repeated by AHRN in its Motion for Reconsideration, namely, that MRIS's TOU is invalid because "there was no signature, there was no contract, there was no written identification of the parties."  (Dkt. 42 at 9.)  Specifically, this Court found that the "MRIS TOU constitutes credible evidence that MRIS's users intended to assign their copyrights to MRIS through the electronic submissions of photographs, which would satisfy the relevant provisions of ESIGN." (Dkt. 34 at 22-23.)  The Court further held, "the MRIS TOU is between MRIS (the purported assignee) and its subscribers (the purported assignors), its terms are clear, and MRIS has a credible claim that the subscribers, in submitting the images, intended to assign their rights to MRIS." (Dkt. 34 at 23.)  Accordingly, this Court has already held that MRIS' TOU has the requisite indicia of a contract, and that the parties uploading images to MRIS are not "anonymous person[s]" as described by AHRN, but "MRIS subscribers."

## V.     AHRN MAKES NO SHOWING ON ITS MOTION TO STAY

In its Motion to Clarify AHRN also requests a stay of the preliminary injunction. (Dkt. 42 at 10.) It fails, however, to even attempt to make a showing as to why a stay is appropriate. The Fourth Circuit has identified the following factors to consider on a motion to stay: "Briefly stated, a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970); *see also Candle Factory*, 23 F. App'x at 137 (denying defendant's motion for stay in a copyright infringement action). AHRN does not even make a half-hearted attempt to address these factors. Rather, it consigns its treatment to two sentences on page 10 which can be summarized as "the Court should grant stay because we asked for one." Clearly, AHRN cannot make a showing that it will win on the merits of the appeal because it has already lost on summary judgment. It has not and cannot articulate *any* harm it will suffer if it is required to stop infringing the MRIS Database and comply with the law because there is no evidence that it will suffer any harm. In contrast, MRIS, in its Motion for Preliminary Injunction and related Reply, declarations, and exhibits, and this Opposition, has detailed the harm it has suffered and continues to suffer due to the infringement, and the public benefits when real estate information is accurate and copyrights are enforced. AHRN has not expressed any basis for a stay of the Order and the motion should be denied.

## VI. CONCLUSION

For the reasons discussed above, Defendant AHRN's Motion to Clarify, Reconsider, or Suspend should be denied.

Respectfully submitted,

Dated:  September 27, 2012

By:  /s/Margaret A. Esquenet
Margaret A. Esquenet (Bar No. 27775)
(margaret.esquenet@finnegan.com)
John T. Westermeier (Bar No. 04364)
(jay.westermeier@finnegan.com)
Whitney Devin Cooke (*pro hac vice*)
(whitney.cooke@finnegan.com)

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.

*Attorneys for Plaintiff*
Metropolitan Regional Information Systems, Inc.

## CERTIFICATE OF SERVICE

I, Margaret A. Esquenet, hereby certify that on September 27, 2012 a copy of the foregoing Plaintiff's Oppositon to Defendant American Home Realty Network, Inc.'s Motion to Clarify, Reconsider, or Suspend Preliminary Injunction Order using the Court's CM/ECF system upon:

Richard S. Toikka
L. Peter Farakas
FARKAS & TOIKKA, L.L.P.
1101 30th Street N.W., Suite 500
Washington, DC 20007
rst@farkastoikka.com
lpf@farkastoikka.com

Christopher Ralph Miller
AMERICAN HOME REALTY NETWORK INC.
222 7th Street, Second Floor
San Francisco, CA 94103
c.miller@neighborcity.com

/s/Margaret A. Esquenet