IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA, <br><br> Defendants. | CIVIL ACTION NO. 12-cv-0954-AW |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR MODIFICATION OF ORDER**

Plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS") has established that a bond of $5,257.50 is more than adequate under Federal Rule of Civil Procedure 65(c). In its Opposition to MRIS's Motion for Modification of this Court's August 27, 2012 Order (Dkt. 35)(hereinafter, "Order") granting MRIS's Motion for Preliminary Injunction (Dkt. 9), AHRN raises new and unsubstantiated arguments about the harm it would allegedly suffer following the issuance of a preliminary injunction and proposes that MRIS be required to provide security in the amount of $275,000 (Def. Opp. (Dkt. 45) at 2) or $250,000 (Dkt. 45 at 7).

AHRN's requested bond, whether $250,000 or $275,000, rests entirely upon new arguments conspicuously absent from AHRN's Opposition to MRIS's Motion for Preliminary Injunction (or any other filing by AHRN), as well as an unsupported declaration from Jonathan J. Cardella. Indeed, AHRN previously cited only its ongoing legal fees as the "harm" suffered by AHRN in this action, a measure of harm rejected by this Court. (Def. Opp to Motion for Preliminary Injunction (Dkt. 25) at 21-22.)

1

Contrary to AHRN's arguments in its Opposition, the Order granting MRIS's Motion for Preliminary Injunction *does not* prevent or in any way inhibit AHRN from doing business lawfully within the geographical areas served by MRIS or elsewhere.  The Order merely prevents AHRN from unlawfully infringing rights related to the MRIS Database.  AHRN remains free to avail itself of any of the opportunities available through the authorized channels provided by MRIS to obtain access, under license, to the MRIS Database (such as, for example, MRIS's Internet Data Exchange program, if AHRN qualifies under established rules generally applicable, or an Authorized Developer license, as outlined by MRIS in its Motion for Preliminary Injunction (Dkt. 9 at 3-4)), or to demonstrate that it has actually secured permission from MRIS broker subscribers to display their own specific listings on NeighborCity.com (either directly or through the listing syndication vendor used by MRIS, ListHub (see Pl. Reply in Support of Motion for Preliminary Injunction (Dkt. 27) at 22-24)).  AHRN's circumvention of these authorized channels and failure to demonstrate its alleged permissions from MRIS broker subscribers, as well as its insistence on a $250,000/$275,000 bond, underscore AHRN's continued assertion of an untenable position: that it may build and sustain its business upon stolen copyrighted content from MRIS under the pretext of "competition."  Accordingly, AHRN's requested bond should be denied.

**I.     ARGUMENT**

    **A.     Fourth Circuit Law is Clear that a Zero Dollar Bond is Acceptable**

As acknowledged by AHRN, Fourth Circuit precedent recognizes that "where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of bond accordingly" and "in some circumstances, a nominal bond may suffice." *Hoescht Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n. 3 (4th Cir.

1999) (affirming district court's fixing a security bond of *zero* dollars in the absence of evidence regarding likelihood of harm).

District courts within the Fourth Circuit, citing *Hoescht*, have similarly held a bond amount of $100 or even $0 to be appropriate. *See Prosperity Systems, Inc. v. Ali*, No. CCB-10-2024, 2010 WL 5174939 at *6 (D. Md. Dec. 15, 2010) (finding a "nominal bond" appropriate due to high likelihood that plaintiff would prevail on the merits); *Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 521 (W.D.N.C. 1999) (finding a bond of $100 to be sufficient given plaintiff's strong shown of likelihood of success on the merits and "given that prima facie proof of trademark infringement raises a presumption of injury and harm"). Where, as here, the Court has already found that MRIS has "made a clear showing of a likelihood of success on the merits on their copyright claims" (Dkt. 35 at 29), this Court has the authority to set a "nominal bond" of zero dollars.

### B. AHRN's Opposition Contains New Arguments Regarding "Harm" Not Contained in its Opposition to MRIS' Motion for Preliminary Injunction

As AHRN admits, the law in the Fourth Circuit is clear that "the amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party." *Hoescht*, 174 F.3d at 421; (Dkt. 45 at 3.) AHRN's Opposition to MRIS' Motion for Modification contains new and unsubstantiated arguments regarding harm to AHRN following the issuance of a preliminary injunction that are conspicuously absent from AHRN's Opposition to MRIS's Motion for Preliminary Injunction. Notably, AHRN previously cited only ongoing legal fees as the harm it would suffer in the event an injunction issued. (Def. Opp. to Motion for Preliminary Injunction (Dkt. 25) at 21-22.) The entirety of AHRN's argument regarding the balancing of the equities and potential harm to AHRN following the issuance of a preliminary injunction is reproduced below:

> The timing and activities of the NAR, Northstar MLS, MRIS and other multiple listing services in late 2011 and early 2012 strongly suggests that this suit is part of an effort spearheaded by the National Association of Realtors to shut down Defendants' Internet-based real estate agent ranking and rating website, www.NeighborCity.com by forcing AHRN, Inc. to spend its resources fighting off litigation. Thus for AHRN, Inc. these possible additional lawsuits are an existential threat, the very intent of which is expressed by the Mosey email, Exhibit 9.

(Id. at 21-22.)

*At no time* did AHRN mention any harm due to lost referral fees for the entire "MRIS jurisdiction," a "pro-rata projection of loss in AHRN revenue," "the costs of removing and placing back the listings subject to the preliminary injunction" or "harder to quantify losses" involving "the reduction in the company's growth (and thus market valuation) and its ability to raise cash or find a buyer for the company caused by the injunction." (Dkt. 45 at 5-6.) Among AHRN's new arguments is its claim that a "more appropriate methodology" for calculating its alleged harm and thus the bond amount would "begin with AHRN's current referral revenue from all of the MRIS broker listings on its website, not just for the Maryland-based MRIS broker listings" and that such listings should include all MRIS listings for "the entire MRIS jurisdiction, which MRIS states encompasses 'Maryland, Virginia, and the District of Columbia, as well as parts of Delaware, West Virginia, and Pennsylvania.'" (Dkt. 45 at 4.)

This argument stands in stark contrast with AHRN's previous contentions in its Motion to Dismiss, in which it sought to minimize its activities and the consequent profits it derived from its use of the MRIS Database, claiming that "[o]nly 2.58 percent of the total listings (active and closed) on the NeighborCity web site are for properties located in Maryland" and "AHRN, Inc.'s referrals to local Maryland real estate brokers have been minimal." (AHRN Mot. to Dismiss (Dkt. 24) at 5.) While AHRN sought to *confine* its involvement in the "MRIS jurisdiction" for the purposes of its Motion to Dismiss, it now seeks to *expand* the scope of that

4

involvement to avoid obeying this Court's unambiguous Order and to continue its unauthorized infringement of the MRIS Database.

AHRN's brand-new arguments regarding "harm," just like its previous "legal fees" argument, cannot constitute legally cognizable harm because any such "harm" is the completely avoidable, direct, and foreseeable result of its own deliberate, infringing activities.  The Fourth Circuit has held that where, as here, the evidence of record supports a finding of ownership of copyright, and that a defendant had no right to offer infringing products constituting or incorporating the copyrighted work "*in the first instance*," that a bond in the sum of $500 was an appropriate exercise of its discretion.  *See Candle Factory, Inc. v. Trade Associates Group, Ltd.*, 23 Fed. Appx. 134, 139 (4th Cir. 2001) (emphasis added).  Here, AHRN has no right to unlawfully obtain, copy, display, or create derivative works from the MRIS Database.  Consequently, any "harm" to AHRN is the direct result of its own unlawful acts.  MRIS's proposed bond of $5,257 is based upon evidence submitted by AHRN regarding its referral fees for 2011: "For example, AHRN Inc.'s referral fees from Maryland-brokers totaled $5,270.50 or 2.4 percent of revenue in 2011 . . . ." (Dkt. 24 at 17.)  This amount is more than adequate to pay the costs and damages sustained by AHRN in the event it is found to have been wrongfully enjoined by the Court's August 27, 2012 Order.

      **C.**     **AHRN's Claim that a $250,000/$275,000 Bond is Appropriate Rests Entirely Upon an Unsubstantiated Declaration from Jonathan J. Cardella**

AHRN's proposed bond of $250,000/$275,000 is further flawed in its substantial reliance upon an unsupported declaration from Jonathan J. Cardella, the Chief Executive Officer of AHRN. (Dkt. 45-1.)  This self-serving declaration merely presents "calculations" and "extrapolations" regarding AHRN's referral fees and the costs of "removing and putting back up

listing information," without providing any exhibits, detail, or explanation as to the source of the data or the methodology used to prepare such projections.

In the Fourth Circuit, "conclusory statements set forth in affidavits must be disregarded." *Rohrbrough v. Wyeth Labs.*, 916 F.2d 970, 975 (4th Cir. 1990) (affirming district court's disregard of affidavit filed in support of opposition to motion for summary judgment which was "nearly entirely conclusory and devoid of specific facts to support his opinion"); *see also Amatulli & Sons, LLC v. Great Northern Ins. Co.*, No. 3:06-cv-286, 2008 WL 90092 at * 3 (W.D.N.C. Jan. 8, 2008) (granting motion to strike portions of affidavit submitted in opposition to motion for summary judgment because it contained conclusory statements with no specific facts in support).

No supporting evidence or detailed description is provided in Mr. Cardella's Declaration to explain how the following "calculations" contained therein were performed, or who performed them: $38,883.31 ("AHRN's referral fee income from MRIS brokers on a year-to-date basis in 2012"); $53,702.99 (AHRN's annual revenue estimate for 2012 "based on number of days remaining in the year after September 21 (101 days)…"); 582.59% ("ARRN [sic]'s year over year growth rate"); $312,868.24 (estimated revenue for 2013, found by "[a]pplying the 582.59 (percent) growth rate to 2012 annualized revenue from referrals on MRIS listed properties"); and $248,076.93 ("pro rata estimate of revenue for the period October 1, 2012 to September 30, 2012"). (Dkt. 45-1 at ¶¶ 4-7.)

Mr. Cardella's Declaration further states that "AHRN will incur costs for the removal and reinstatement of its listings which it estimates will entail two weeks of time by its Lead Architect whose annual compensation is $250,000" and that two weeks of the Lead Architect's time will cost AHRN approximately $9,615. (Id. at ¶ 8.) AHRN cites no authority to establish that such

6

alleged harm can be part of a bond calculation.  Even if appropriate, however, Mr. Cardella's Declaration provides no explanation for its estimate of "two weeks of time" to remove and reinstate listings containing content taken from the MRIS Database.  Nor does Mr. Cardella's Declaration provide the identity of AHRN's "Lead Architect."  Moreover, AHRN's estimate regarding "costs for the removal and reinstatement of its listings" is highly questionable, given that MRIS's analysis of information available from AHRN's neighborcity.com website reveals that AHRN copies the entirety of the MRIS Database.  (Declaration of Michael Belak in Support of Plaintiff's Motion for Modification  (Dkt. 48-1) at ¶ 2.)  For example, the Coastal Association of Realtors (CAR) operates an MLS in Ocean City, MD, but MRIS has a number of subscribers with listings in the Ocean City area in the MRIS Database.  (Id.  ¶ 6.)  These listings bear MRIS MLS numbers.  (Id.)  MRIS analyzed a sampling of the Ocean City listings on the neighborcity.com website by Ocean City-area zip codes and determined that only those Ocean City listings with an **MRIS** MLS number had their photos replaced with Google photos.  (Id.  ¶ 7.)  In contrast, the listings with a **CAR** MLS number were unaffected.  (Id.  ¶ 8, Ex. C.)  This analysis establishes that AHRN can and does delineate the data on the neighborcity.com website by altering the content based on its source, namely the MRIS Database RETS feed.  (Id. ¶ 9.)

Mr. Cardella's Declaration further contains an estimate of "other damages and costs to AHRN which are harder to quantify" and "intangible factors." (Dkt. 45-1 at 3.)  AHRN relies upon this vague estimate of "other damages and costs" and "intangible factors" to increase its suggested bond amount of $257,691.92 to $275,000.  (Dkt. 45 at 6.)  Mr. Cardella defines these "other damages and costs" as "the adverse impact of the preliminary injunction on [AHRN]'s revenue and growth rate (and thus its valuation), its ability to raise cash or find buyers for the

company." (Dkt. 45-1 at ¶ 9.) Neither AHRN nor Mr. Cardella provide any authority or explanation as to why these vague "intangible factors" justify increasing the bond to $275,000.

In light of these substantial deficiencies, the Court should not accord Mr. Cardella's declaration any weight in considering amount of the bond, if any.

## II.   CONCLUSION

For the reasons discussed above, MRIS respectfully requests that the Court's Order (Dkt. 35) be modified to reflect a security in the amount between $0 and $5,257.50.

Respectfully submitted,

Dated:  October 3, 2012         By:  /s/Margaret A. Esquenet
                                Margaret A. Esquenet (Bar No. 27775)
                                (margaret.esquenet@finnegan.com)
                                John T. Westermeier (Bar No. 04364)
                                (jay.westermeier@finnegan.com)
                                Whitney Devin Cooke (*pro hac vice*)
                                (whitney.cooke@finnegan.com)

                                FINNEGAN, HENDERSON, FARABOW,
                                  GARRETT & DUNNER, L.L.P.

                                *Attorneys for Plaintiff*
                                Metropolitan Regional Information Systems, Inc.

## CERTIFICATE OF SERVICE

I, Margaret A. Esquenet, hereby certify that on October 3, 2012 a copy of the foregoing Plaintiff's Reply in Support of Motion for Modification of Order was served using the Court's CM/ECF system upon:

Richard S. Toikka
L. Peter Farakas
FARKAS & TOIKKA, L.L.P.
1101 30th Street N.W., Suite 500
Washington, DC 20007
rst@farkastoikka.com
lpf@farkastoikka.com


Christopher Ralph Miller
AMERICAN HOME REALTY NETWORK INC.
222 7th Street, Second Floor
San Francisco, CA 94103
c.miller@neighborcity.com

/s/Margaret A. Esquenet