**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | | |
|---|---|---|
| METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., <br> *Plaintiff,* <br><br> v. <br><br> AMERICAN HOME REALTY NETWORK, INC., et al., <br> *Defendants,* | ) ) ) ) ) ) ) ) ) ) | Civil Action No. 12-cv-954-AW |
| AMERICAN HOME REALTY NETWORK, INC., <br> *Counterclaimant,* <br><br> v. <br><br> METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., et al., <br> *Counterclaim Defendants.* | ) ) ) ) ) ) ) ) ) ) ) | |

**MEMORANDUM OF COUNTERCLAIM-DEFENDANT
NATIONAL ASSOCIATION OF REALTORS®
IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

      A.    The Parties. .............................................................................. 2

      B.    This Litigation............................................................................ 3

      C.    AHRN's Counterclaim................................................................ 5

ARGUMENT ........................................................................................................ 8

I.     AHRN HAS FAILED TO STATE A CLAIM FOR VIOLATION OF
SECTION ONE OF THE SHERMAN ACT ......................................... 9

      A.    Alleged Sham Litigation. ......................................................... 10

            1.    The filing of non-frivolous lawsuits is immune from
liability under the antitrust laws.................................. 11

            2.    AHRN has failed to allege any anticompetitive effect. ............... 13

      B.    Alleged Unlawful Rules.......................................................... 15

      C.    Alleged Refusal to Deal. ......................................................... 18

            1.    AHRN fails to plausibly allege the existence of a
conspiracy to restrain trade. ........................................ 19

            2.    AHRN has failed to allege any anticompetitive effect from
any refusal to deal. ...................................................... 21

II.    AHRN HAS FAILED TO STATE A CLAIM UNDER SECTION 43(a)
OF THE LANHAM ACT. ................................................................ 21

III.   AHRN HAS FAILED TO STATE A CLAIM FOR UNFAIR
COMPETITION UNDER EITHER MARYLAND OR CALIFORNIA
LAW. ........................................................................................ 24

      A.    AHRN Fails to State a Claim under Maryland Law. ................. 24

      B.    AHRN Fails to State a Claim Under California Law. .............. 26

IV.   AHRN HAS FAILED TO STATE A CLAIM FOR BARRATRY..................... 27

CH1 7139313v.6

A.      There Is No Private Right of Action for Barratry. .................................... 27

B.      AHRN Has Failed to Establish the Elements of Barratry. ........................ 28

CONCLUSION ........................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accrued Fin. Servs., Inc. v. Prime Retail, Inc.,*
    298 F.3d 291 (4th Cir. 2002) ..................................................................................28, 29

*Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co.,*
    4 F.3d 327 (4th Cir. 1993) ................................................................................................22

*American Chiropractic Ass'n v. Trigon Healthcare, Inc.,*
    367 F.3d 212 (4th Cir. 2004) ...........................................................................................19

*Aquatherm Indus., Inc. v. Florida Power & Light Co.,*
    154 F.3d 1258 (11th Cir. 1998) .......................................................................................14

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009)........................................................................................................8

*Basic Books, Inc. v. Kinko's Graphics Corp.,*
    758 F. Supp. 1522 (S.D.N.Y. 1991)................................................................................26

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................................8, 20, 21, 24

*Blue Chip Stamps v. Manor Drug Stores,*
    421 U.S. 723 (1975)..........................................................................................................17

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)..........................................................................................................14

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962)..........................................................................................................13

*California Motor Transport Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972)..........................................................................................................11

*Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.,*
    454 A.2d 367 (Md. App. 1983).........................................................................................24

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.,*
    973 P.2d 527 (Cal. 1999) .................................................................................................26

*Cooper v. Forsyth County Hosp. Authority, Inc.,*
    789 F.2d 278 (4th Cir. 1986) ...........................................................................................19

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003)............................................................................................................23

iii

*Dickson v. Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002) ...............................................................................9, 10, 13, 15

*Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*,
   691 F.2d 241 (6th Cir. 1982) .........................................................................................13

*Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961).......................................................................................................11

*Electronics Store, Inc. v. Cellco Partnership*,
   732 A.2d 980 (Md. App. 1999).....................................................................................25

*Johnson v. Oroweat Foods Co.*,
   785 F.2d 503 (4th Cir. 1986) ........................................................................................26

*Keller v. Greater Augusta Ass'n of Realtors, Inc.*,
   760 F. Supp. 2d 1373 (S.D. Ga. 2011)..........................................................................16

*Kreuzer v. Am. Acad. of Periodontology*,
   735 F.2d 1479 (D.C. Cir. 1984).....................................................................................20

*Laurel Sand & Gravel, Inc. v. CSX Transp., Inc.*,
   924 F.2d 539 (4th Cir. 1991) ...........................................................................................9

*Moiel v. Sandlin*,
   571 S.W.2d 567 (Tex. Civ. App. 1978).....................................................................27, 28

*Mylan Laboratories, Inc. v. Matkari*,
   7 F.3d 1130 (4th Cir. 1993) ......................................................................................22, 24

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com Inc.*,
   591 F.3d 250 (4th Cir. 2009) ........................................................................2, 8, 23, 28

*Oksanen v. Page Mem'l Hosp.*,
   945 F.2d 696 (4th Cir. 1991) ........................................................................................20

*Omni Resource Dev. Corp. v. Conoco, Inc.*,
   739 F.2d 1412 (9th Cir. 1984) ......................................................................................12

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
   469 U.S. 189 (1985).......................................................................................................22

*Pope v. Mississippi Real Estate Comm'n*,
   872 F.2d 127 (5th Cir. 1989) ........................................................................................16

*Proctor v. Washington Metro. Area Transit Auth.*,
   990 A.2d 1048 (Md. 2010) ...........................................................................................26

iv

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993).................................................................................................11, 12

*Reifert v. South Cent. Wisc. MLS Corp.*,
   450 F.3d 312 (7th Cir. 2006) ................................................................................16

*Reynolds v. Butts*,
   312 F.3d 1247 (11th Cir. 2002) ............................................................................17

*RMLS v. American Home Realty Network, Inc.*,
   2012 WL 4470286 (D. Minn. Sept. 27, 2012) ...............................................10, 12

*Robertson v. Sea Pines Real Estate Cos., Inc.*,
   679 F.3d 278 (4th Cir. 2012) ........................................................................9, 16, 17

*Schackow v. Medical-Legal Consulting Serv., Inc.*,
   416 A.2d 1203 (Md. App. 1980)...........................................................................27

*Son v. Margolius*,
   689 A.2d 645 (Md. App. 1997), *rev'd on other grounds*, 709 A.2d 112................29

*Son v. Margolius*,
   709 A.2d 112 (Md. 1998) ...............................................................................27, 28

*U.S. v. Nat'l Ass'n of Realtors*,
   2008 WL 5411637 (N.D. Ill. Nov. 18, 2008) .............................................17, 18, 19

*United States v. American Soc'y of Composers, Authors and Publishers*,
   341 F.2d 1003 (2d Cir. 1965).................................................................................17

*Wahi v. Charleston Area Med. Ctr., Inc.*,
   562 F.3d 599 (4th Cir. 2007) .....................................................................2, 8, 24

## STATUTES & RULES

17 U.S.C. § 204(a) ..................................................................................4, 5, 6, 7

15 U.S.C. § 1...................................................................................... passim

15 U.S.C. § 1125(a) .............................................................................. passim

Cal. Bus. & Prof. Code § 17200 .............................................................7, 26

Federal Rule of Civil Procedure 12(b)(6) ............................................... passim

Federal Rule of Civil Procedure 8(a)(2) ............................................................8

Md. Code Ann., Bus. Occ. & Prof., § 10-604(b)(1) .........................................7, 27, 29

## INTRODUCTION

Having had a preliminary injunction entered against it based on the copyright infringement allegations of plaintiff Metropolitan Regional Information Systems, Inc. ("MRIS"), defendant American Home Realty Network, Inc. ("AHRN") has now asserted five counterclaims against the National Association of Realtors® ("NAR")—an entity that was not even a party to the original case.  Two of the counterclaims arise under federal law—Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count IV), and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I).  The remaining three counterclaims arise under state law.  They include claims of unfair competition under Maryland and California law (Counts II and III) and a claim under Maryland's criminal barratry statute (Count V).

These claims are utterly meritless.  More specifically, AHRN's principal claim under the Sherman Act, *i.e.* that NAR encouraged and financially supported "sham" copyright infringement lawsuits in two separate federal courts, is eviscerated by the fact that both federal courts deemed those suits sufficiently meritorious to enter a preliminary injunction against the challenged conduct.  The other federal claim, *i.e.* that NAR violated the Lanham Act by making an allegedly false statement, falls victim, among other things, to the fact that AHRN has not identified a single statement by NAR—let alone a false or deceptive one.

AHRN's state law claims fare no better.  Initially, AHRN's invocation of the unfair competition law of Maryland and California fails because AHRN has not alleged a single specific false statement or unfair practice by NAR.  Its reliance on California law fails for the additional reason that the California statute which it cites has no application in this Court. Finally, its assertions under Maryland's criminal barratry statute fail both because that statute does not provide a private right of action and because AHRN has not alleged the elements of barratry, *i.e.* that NAR either solicited MRIS to engage in litigation or obtained any personal gain

1

from such solicitation.  Indeed, AHRN's resort to a claim of barratry underscores just how frivolous its counterclaim against NAR really is.

For all these reasons, NAR has moved to dismiss that counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In the Argument section of this memorandum, we start with AHRN's federal claims—taking its Sherman Act claim first and its Lanham Act claim second.  We then discuss AHRN's common law claims under Maryland and California unfair competition law and under Maryland's barratry statute.  We begin, however, by setting forth relevant background and by summarizing the allegations of the counterclaim.  For purposes of this motion to dismiss, we accept as true all well-pled factual allegations of the counterclaim. *See, e.g.*, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2007).

## BACKGROUND

### A.     The Parties.

AHRN operates a website, www.neighborcity.com, through which consumers can search for homes for sale and obtain referrals to real estate agents.  Counterclaim (Dkt. 46) ¶ 7.  It does not itself offer real estate brokerage services.  *Id.*  NAR is a national association of real estate brokers and agents.  *Id.* ¶ 17.  MRIS provides a multiple listing service ("MLS") that serves real estate brokers in the Mid-Atlantic region.  *Id.* ¶ 25.

An MLS is a system by which listing brokers and agents offer cooperation and compensation to other MLS participants who come forward with a willing and able buyer for the listed property.  *Id.* ¶¶ 25-27.  By collecting many member brokers' listings in one database, an MLS allows brokers easily to disseminate information about their listings available for sale.  *Id.* Through the MLS, brokers representing potential buyers are able to view those listings and may cooperate with the listing broker to make a sale.  *Id.*

2

###### B.      This Litigation.

This litigation began when MRIS filed suit against AHRN and defendant Jonathan J. Cardella alleging copyright infringement.  Compl. (Dkt. 1).  MRIS charged that AHRN and Cardella infringed copyright in the MRIS Database and elements of that database.  Specifically, MRIS alleged that when real estate brokers and agents subscribe to its MLS, they "contractually commit to upload their inventory of available real estate properties into the MRIS service" and to assign to MRIS the copyright in photographs uploaded to the MRIS Database.  *Id.* ¶ 15.  Thus, MRIS alleged that it holds a copyright in "the collection and compilation of the real estate listings in the MRIS Database" and in the "expressive contributions created by MRIS or acquired by MRIS including the photographs included in the listings."  *Id.* ¶¶ 17-18.

MRIS alleged that AHRN and Cardella infringed its copyrights by "reproduc[ing] and otherwise us[ing] MRIS Database content on their NeighborCity.com website" without a license or permission from MRIS.  *Id.* ¶¶ 27-29.  MRIS further alleged that AHRN's "unauthorized use of MRIS's copyrighted content bearing a copyright notice and the MRIS trademark" constitutes trademark infringement under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  *Id.* ¶ 87.  MRIS sought a preliminary injunction against the alleged infringements.  Dkt. 9.

Defendants moved to dismiss MRIS's complaint.  Both defendants asserted that this Court lacks personal jurisdiction over them.  AHRN further argued that the complaint should be dismissed for improper venue.  Dkt. 23, 24.  AHRN also made several other arguments.  In particular, it asserted that MRIS's copyright claim should be dismissed in part under Federal Rule of Civil Procedure 12(b)(6) on the ground that MRIS does not hold a copyright in the individual elements contained within the MRIS Database.  AHRN Mtn. to Dismiss (Dkt. 24-1) at 6-15.  It contended that MRIS does not hold a validly assigned copyright to the elements

3

submitted by its subscribers to the MRIS database on the ground that the MRIS Terms of Use agreement did not create a valid assignment and were not signed as required by 17 U.S.C. § 204(a).  AHRN Reply re Mtn. to Dismiss (Dkt. 29) at 2-9.

This Court ruled on MRIS's motion for preliminary injunction and on defendants' motions to dismiss in a consolidated order entered on August 27, 2012.  The Court granted Cardella's motion to dismiss on personal jurisdiction grounds.  However, it held that the Court does have personal jurisdiction as to AHRN.  Order (Dkt. 34) at 4-14.  It denied AHRN's motion to dismiss the case for improper venue.  *Id.* at 14-15.

Substantively, the Court denied AHRN's Rule 12(b)(6) motion as to MRIS's copyright in the elements of the MRIS Database.  *Id.* at 15-24.  It held that MRIS has alleged an enforceable copyright in the elements of the MRIS Database, including the photographs.  Specifically, the Court ruled that, by registering the Database compilation, MRIS had obtained copyright protection for the photographs contained within the compilation.  *Id.* at 17-21.  The Court also explained that MRIS had obtained valid assignments of copyright in the photographs in the Database through its Terms of Use agreement, which satisfied the signature requirements of 17 U.S.C. § 204(a).  *Id.* at 22-24.

Most notably, the Court issued a preliminary injunction in favor of MRIS.  The Court first found that MRIS had established a likelihood of success on the merits of its copyright infringement claim.  Having already rejected certain of AHRN's arguments as to the validity of MRIS's copyright in the Database and its elements, the Court rejected AHRN's assertion that the Database was insufficiently original to warrant copyright protection, observing that "MRIS's creation and ongoing maintenance of the MRIS Database certainly requires more creativity than simply listing subscribers' submissions in alphabetical order."  *Id.* at 25-26.  The Court also

4

found that "MRIS has shown that AHRN has copied constituent, original elements of the MRIS Database." *Id.* at 27.

The Court rejected AHRN's defense of copyright misuse on the ground that "MRIS filed this lawsuit in collusion with other Multiple Listing Services to shut down AHRN" and that "MRIS and other MLSs may be in violation of a Consent Decree that the Department of Justice entered with the National Association of Realtors ('NAR') regarding anticompetitive activity." *Id.* at 28. As the Court explained, "[e]ven if the Court accepted that MRIS was collectively enforcing its copyrights with other MLSs, that would not, alone, amount to copyright misuse." *Id.* Moreover, "MRIS's refusal to grant AHRN a license is not probative of an unlawful or anticompetitive purpose, especially where AHRN's offer followed its infringement of MRIS's copyrights and the receipt of a cease-and-desist letter." *Id.* at 28-29. The Court went on to hold that MRIS had established a likelihood of irreparable harm, and that the balance of the equities and the public interest favored entry of a preliminary injunction. *Id.* at 29-32.

### C.      AHRN's Counterclaim.

One month after this Court's issuance of a preliminary injunction in favor of MRIS, AHRN filed various causes of action, styled as a counterclaim (even though NAR was not a party to the underlying litigation) against MRIS, NAR, and 25 unnamed defendants. Dkt. 46. The focus of AHRN's counterclaim is what it refers to as "sham litigation." Counterclaim (Dkt. 46) ¶¶ 56, 59, 73, 76. According to AHRN, the counterclaim defendants "have conspired to engage in sham litigation against AHRN to raise its barriers to entry, to keep it out of the market for residential real estate broker services in the United States." *Id.* ¶ 56.

As it relates to NAR, the counterclaim makes the following allegations:   NAR promulgates rules and regulations that local Realtor® associations adopt for the MLSs that they operate. Counterclaim (Dkt. 46) ¶¶ 17-19. An MLS "allows MLS members to communicate

5

information among themselves, such as descriptions of listed properties for sale and offers to

compensate other members if these other members locate buyers for the listing agent or broker."

*Id.* ¶ 26.  "By providing an efficient means of exchanging information on real estate listings,

MLSs are intended to benefit real-estate buyers and sellers and, in turn buyers of real-estate

brokerage services in the MLS Service Areas." *Id.* ¶ 27.  Membership in an MLS is "critically

important for any brokerage seeking to serve clients efficiently in an MLS Service Area." *Id.*

¶ 28.

AHRN alleges, however, that MRIS "with the support, encouragement and financial

assistance of NAR has made and is making numerous false and misleading statements on its

website and elsewhere." *Id.* ¶ 34.  Specifically, AHRN asserts that "MRIS purports to acquire

copyrights to photos and real estate listings from its members through a 'click wrap' assignment

by the member's uploading of photos into MRIS's database," but that the assignments are "in

fact invalid to assign a copyright or grant an exclusive license." *Id.* ¶ 34(a).  MRIS is also

alleged to "add[] false and misleading copyright notices on photos on its website," and "falsely

and misleadingly inform[] its members that uncopyrightable real estate listing information can be

treated as copyrightable musical lyrics by treating real estate listing information as 'content.'"

*Id.* ¶ 34(b)-(c).

Additionally, AHRN alleges that NAR hosts annual meetings at which "its member

MLSs and brokers convene to discuss matters of industry concern." *Id.* ¶ 20.  It asserts that, at a

November 2011 annual meeting held in Anaheim, "NAR led discussions about AHRN." *Id.*

Similarly, it avers that, before and after the November 2011 meeting, "AHRN began to receive

what would become a torrent of cease-and-desist letters from brokers and MLSs," "alleg[ing]

copyright infringement and threaten[ing] legal action. *Id.* ¶ 36.  Although AHRN purportedly

"offer[ed] to negotiate" licenses to allow it to continue using brokers' copyrighted works, "[i]n each case, AHRN's overture to license was rebuffed out of hand without negotiations." *Id.* ¶ 42. AHRN contends that this lawsuit and another filed in the District of Minnesota, *Regional Multiple Listing Service of Minnesota, Inc., d/b/a NothstarMLS v. American Home Realty Network, Inc.*, 0:12cv965 (filed May 18, 2012), "are the direct and concerted action discussed and sought by the concerted action at the Anaheim NAR Annual Meeting." *Id.* ¶ 40.

The NAR held a Midyear Meeting in May 2012. *Id.* ¶ 46. At that meeting the NAR Board allegedly "voted … to fund the instant MRIS lawsuit and Minnesota Northstar lawsuit against AHRN." *Id.* According to AHRN, "NAR has conducted no, or insufficient, due diligence on the merits of MRIS's copyright claims to fund such litigation. Nonetheless, NAR's payment or offer of payment or financial contribution to MRIS and Northstar's litigation is an endorsement by NAR of the merits of their respective claims." *Id.* at ¶ 55. In sum, AHRN alleges that "(d)efendants' coordinated: (a) cease and desist letters to AHRN, (b) refusals to deal letters to AHRN; (c) repudiation letters to AHRN, (3) sham lawsuits against AHRN and (d) agreement or offer to pay for or contribute to the costs of litigation against AHRN by MLSs and real estate brokers, was intended to and did have anti-competitive effects on AHRN in the market for real estate services." *Id.* ¶ 59.

Based on these allegations, AHRN asserts five causes of action against NAR: violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); violation of Maryland unfair competition law; violation of California unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.*; violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; and barratry, Md. Code Ann., Bus. Occ. & Prof., § 10-604(b)(1).

7

**ARGUMENT**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "a court accepts all well-pled facts as true" for purposes of a motion to dismiss, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet*, 591 F.3d at 255; *see also Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Similarly the Court need not credit "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi*, 562 F.3d at 615 n.26.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. If the alleged facts do not allow the court to infer "'more than the mere possibility of misconduct,'" then "the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are 'merely consistent with a defendant's liability,' fail to nudge claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet*, 591 F.3d at 256 (citations omitted) (quoting *Iqbal*, 129 S. Ct. at 1947, 1949, 1950, 1951). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

8

## I.      AHRN HAS FAILED TO STATE A CLAIM FOR VIOLATION OF SECTION ONE OF THE SHERMAN ACT .

In Count IV, AHRN asserts that NAR and the other counter-defendants violated Section

1 of the Sherman Act.  Counterclaim (Dkt. 46) ¶¶ 79-85.  That Act provides:

> Every contract, combination in the form of trust or otherwise, or
> conspiracy, in restraint of trade or commerce among the several
> states or with foreign nations, is declared to be illegal.

15 U.S.C. § 1.  "To establish a violation of § 1 of the Sherman Act, [the plaintiff] must prove the

following elements: (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable

restraint of trade."  *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002) (citing

*Oksanen v. Page Mem'l Hosp.,* 945 F.2d 696, 702 (4th Cir. 1991) (en banc)).  If the plaintiff's

claim is to succeed, "it must be shown that there is a common scheme to achieve an illegal goal."

*Laurel Sand & Gravel, Inc. v. CSX Transp., Inc.*, 924 F.2d 539, 542 (4th Cir. 1991).  The

plaintiff must show that the defendant held a "conscious commitment to a common scheme

designed to achieve an unlawful objective," and must "bring forward evidence that excludes the

possibility that the alleged coconspirators acted … based upon a legitimate business purpose."

*Id.* at 542-43 (internal quotation marks omitted).

AHRN's claim is reviewed under the rule of reason.  *See Robertson v. Sea Pines Real

Estate Cos., Inc.*, 679 F.3d 278, 290 (4th Cir. 2012) ("Because trade associations may be

protective of consumer interests and not just inimical to them, the cooperative actions of MLS

members are not per se unreasonable" and are reviewed under the rule of reason.).  Further, an

antitrust plaintiff must "prove the existence of '*antitrust* injury, which is to say injury of the type

the anti-trust laws were intended to prevent and that flows from that which makes defendants'

acts unlawful."  *Dickson*, 309 F.3d at 202-03 (emphasis in original) (quoting *Atl. Richfield Co. v.*

*USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).  In other words, the plaintiff must show harm to competition; a showing of mere "[h]arm to one or many competitors will not suffice."  *Id.* at 206.

AHRN's allegations regarding the counterclaim-defendants' supposed "conspiracy" to impose a restraint of trade can be divided into three categories: (1) allegations regarding so-called "sham litigation"; (2) allegations regarding a supposedly unlawful rule that NAR has purportedly imposed on MLSs; and (3) allegations regarding an asserted refusal to deal.  In no instance, however, has AHRN offered factual, non-conclusory allegations necessary to establish an actionable conspiracy to impose an unreasonable restraint of trade or any anticompetitive effect.

### A.    Alleged Sham Litigation.

AHRN contends that NAR has violated the Sherman Act by offering financial support for and thereby "endors[ing] … the merits" of both MRIS's copyright infringement claim and a similar copyright infringement claim brought by a separate MLS, Regional Multiple Listing Service of Minnesota, Inc. ("RMLS").  *See RMLS v. American Home Realty Network, Inc.*, 2012 WL 4470286, *7-10 (D. Minn. Sept. 27, 2012); Counterclaim (Dkt. 46) ¶¶ 5, 50-56.  According to AHRN, these suits constitute "sham litigation" designed to "raise [AHRN's] barriers to entry, to keep it out of the market for residential real estate broker services in the United States." Counterclaim (Dkt. 46) ¶ 56.

The claim fails as a matter of law for two independent reasons.  First, it is well established that actions taken to petition the government, including the filing of lawsuits, are immune from antitrust liability as a matter of law, except in circumstances not remotely present here.  Second, the claim fails because AHRN has entirely failed to establish any form of anticompetitive effect from the alleged "sham litigation."

10

**1.**      **The filing of non-frivolous lawsuits is immune from liability under the antitrust laws.**

Petitioning the government, including through the filing of lawsuits, is a protected activity that is immunized from antitrust liability. *See Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 65 (1993); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961). Indeed, the Supreme Court has directly addressed the issue of antitrust liability based on the filing of a supposed "sham" copyright action. In *Professional Real Estate Investors*, plaintiff Columbia sued defendant PRE for copyright infringement, and PRE filed a counterclaim alleging a violation of the antitrust laws through the filing of a so-called "sham" copyright suit. 508 U.S. at 51-53.

Columbia's copyright claim was rejected at summary judgment. *Id.* at 53. Nonetheless, the Supreme Court explained, Columbia's action in bringing a copyright suit was immunized from liability under the Sherman Act unless the suit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized …, and an antitrust claim premised on the sham exception must fail." *Id.* at 60. Even though Columbia's suit was ultimately unsuccessful, its copyright infringement action could not be deemed a sham because "[a]ny reasonable copyright owner in Columbia's position could have believed that it had some chance of winning an infringement suit against PRE." *Id.* at 65.

Here, this Court has already determined that MRIS's lawsuit is not objectively baseless. Quite to the contrary, the Court has found that MRIS's copyright claims have a likelihood of success on the merits sufficient to warrant the granting of a preliminary injunction. Dkt. 34 at

11

24-29.  Indeed, the Court considered and rejected the very same arguments regarding the validity of MRIS's copyright that AHRN now re-raises in its counterclaim.  *Compare* Dkt. 34 at 17-29 (discussing AHRN arguments related to originality, registration, and assignment), *with* Counterclaim (Dkt. 46) at ¶¶ 50-56 (re-leveling these same arguments).  Whether or not MRIS ultimately succeeds on the merits, this Court's decision to grant a preliminary injunction in favor of MRIS conclusively establishes that MRIS's suit does not constitute "sham litigation" for purposes of the antitrust laws.  *See Omni Resource Dev. Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984) (A. Kennedy, J.) (lawsuit did not constitute "sham litigation" as a matter of law where, "although we do not know the outcome, at least to the point of a preliminary injunction the … plaintiffs were successful"); *see also Prof'l Real Estate Investors*, 508 U.S. at 58 ("[W]e have explicitly observed that a successful effort to influence governmental action … certainly cannot be characterized as a sham.") (internal quotation marks omitted; ellipsis in original).

In this connection, it is noteworthy that in the similar litigation brought by RMLS against AHRN, the federal court in Minnesota, like this Court, found that plaintiff's copyright infringement claims against AHRN warranted entry of a preliminary injunction against AHRN. Much like this Court, the *RMLS* Court concluded that RMLS's copyright claim against AHRN is likely to succeed on the merits.  2012 WL 4470286, *7-10.  And like this Court, the *RMLS* court granted a preliminary injunction in favor of RMLS.  *Id.* at *11.

On these facts, neither this infringement lawsuit standing alone nor this suit taken in combination with the *RMLS* infringement suit can constitute "sham litigation" as a matter of law. Therefore, NAR and the other counterclaim-defendants are necessarily immunized from any antitrust liability that is premised on the bringing of this suit.  *See Prof'l Real Estate Investors*,

508 U.S. at 56-57 ("an objectively reasonable effort to litigate cannot be sham regardless of

subjective intent").

**2.      AHRN has failed to allege any anticompetitive effect.**

Even if AHRN could plausibly allege that the infringement lawsuits constitute "sham

litigation," which it cannot, the counterclaim should nonetheless be dismissed because AHRN

has failed to allege any anticompetitive effect.  Section 1 of the Sherman Act is violated only

where a plaintiff can show adverse effects on competition—not merely adverse effect on a single

competitor.  As the Fourth Circuit has explained, "[t]o have an anticompetitive effect, conduct

must harm the competitive *process* and thereby harm consumers.  Harm to one or many

competitors will not suffice."  *Dickson*, 309 F.3d at 206 (brackets, internal quotation marks, and

citations omitted); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (antitrust

laws are concerned "with the protection of competition, not competitors").  Thus, if a plaintiff

fails to allege "unreasonable restraints on trade that caused *antitrust injury to consumers*, [its

claim] fail[s] as a matter of law.  *Cf. Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*, 691 F.2d

241, 245 (6th Cir. 1982) ('Since the complaint does not allege facts suggesting that [the

manufacturer's] refusal to deal had any significant anticompetitive effect on the market, there is

no rule of reason case alleged.')."  *Dickson*, 309 F.3d at 213 (emphasis added; third alteration in

original).

AHRN's claims of anticompetitive effect boil down to complaints that AHRN would be

more successful if it could take MRIS's and other MLSs' copyrighted materials with impunity.

Thus, the counterclaim repeatedly asserts that the injury from the counterclaim-defendants'

supposed restraint of trade is an injury *to AHRN*—not to competition in a relevant market or to

consumers.  Counterclaim (Dkt. 46) ¶ 56 ("Defendants have conspired to engage in sham

litigation against AHRN to raise its barriers to entry, to keep it out of the market for residential

13

real estate broker services"), ¶ 59 (alleged conspiracy "was intended to and did have anti-competitive effects on AHRN in the market for real estate brokerage services"), ¶ 83 (alleged conspiracy "rais[ed] barriers to impede AHRN's entry into, and eventually drive AHRN out of, the Relevant Markets").  But such allegations do not address the effect that the purported conspiracy has on competition and consumers.  Accordingly, they cannot support a claim under Section 1 of the Sherman Act.

Merely alleging that the counterclaim-defendants supposedly acted to harm AHRN's business is insufficient to state a claim because such allegations do not establish harm to competition.  Indeed, even if AHRN could show an intentional and coordinated campaign to harm its business, which it cannot, it would not have stated a claim under the Sherman Act. "Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'"  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) (citation omitted); *see also Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 154 F.3d 1258, 1262-63 (11th Cir. 1998) ("As long as no restraint on competition occurred, there is no cause of action under § 1.").[1]

What limited reference the counterclaim makes to harm to competition are entirely conclusory and thus insufficient to state a claim.  *See* Counterclaim (Dkt. 46) ¶ 59 ("Anti-competitive effects include the elimination of price competition and price maintenance on brokerage services above market levels nationwide, impeding and blocking market entry by

---

[1] For these reasons, AHRN's allegation that John Mosey, an employee of non-party Northstar MLS, indicated a desire to harm AHRN's business, Counterclaim (Dkt. 46) ¶ 39, does not save the counterclaim.  In any event, AHRN has alleged no basis for attributing Mr. Mosey's statements to NAR—and has not even alleged that NAR knew of those statements.

AHRN and other innovative providers of broker analyses and impeding and blocking innovation in real estate brokerage services."), ¶ 60 ("Defendants' activities, and the violations alleged in this Complaint, affect home buyers and sellers located throughout the United States."), ¶ 85 ("The anti-competitive acts of the Conspiracy have directly harmed competition").  Merely asserting conclusory references to harm to competition is insufficient as a matter of law:  "The pleader may not evade Rule 12(b)(6) requirements by merely alleging a bare legal conclusion; if the facts do not at least outline or adumbrate a violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust."  *Dickson*, 309 F.3d at 213 (internal quotation marks and brackets omitted).  And simply listing generic forms of anti-competitive harm (such as "elimination of price competition," Counterclaim ¶ 59) does not state a claim because AHRN has offered no factual basis from which to conclude that the alleged restraint of trade—*i.e.*, the alleged "conspiracy" to enforce copyrights—could have given rise to such an effect.  *See Dickson*, 309 F.3d at 212 (affirming dismissal of Sherman Act claim where plaintiff alleged that defendants' actions had "produced anticompetitive effects," but did "not provide any factual basis to support this allegation").  For this reason as well, the Sherman Act claim should be dismissed.

**B.  Alleged Unlawful Rules.**

AHRN also alleges that the "Defendants and brokers—through their various employees' participation on the NAR and MLS Boards of Trustees and by using the MLSs as conduits—have created rules that govern MLS members' conduct and business practices and have set standards for admitting new members," thereby "illegally inhibiting competition."  Counterclaim (Dkt. 46) ¶ 29.  AHRN fails, however, to identify any rule that imposes an unreasonable restraint of trade.

15

To begin, it is well-settled that an MLS may impose reasonable rules on its members—and may restrict access to MLS listings to those members without violating the antitrust laws. *See Robertson*, 679 F.3d at 291 (noting that "MLS rules that impose professional standards or police access to membership may serve to ensure compliance with state regulations and to prevent fraud upon consumers rather than to exclude lower-priced competition"); *Reifert v. South Cent. Wisc. MLS Corp.*, 450 F.3d 312, 316-17 (7th Cir. 2006) (rejecting antitrust challenge to MLS rule restricting MLS access to members of local Realtor® association); *Pope v. Mississippi Real Estate Comm'n*, 872 F.2d 127, 130 (5th Cir. 1989) (per curiam) ("If properly administered, [MLS] membership requirements serve pro-competitive purposes."); *Keller v. Greater Augusta Ass'n of Realtors, Inc.*, 760 F. Supp. 2d 1373, 1374 (S.D. Ga. 2011) (same).  Accordingly, to state a claim under the Sherman Act, AHRN must offer at least a facially plausible explanation of how the alleged rule restricts competition.  *See Robertson*, 679 F.3d at 290.

The counterclaim of AHRN fails to meet this standard.  It identifies only one alleged "rule" imposed by NAR:

> At its May 19, Mid-Year Meeting in Washington, D.C., the NAR Board of Directors approved new rules to further exclude competitors like AHRN from MLS websites:
>
>> [A]pproved a set of comprehensive amendments to NAR's Internet Data Exchange (IDX) policy and MLS rules to clarify that "participant websites" are those in which MLS participants have actual and apparent control of the sites. … Control means participants can add, delete, modify, or update their information, and a reasonable consumer would recognize the information as the participants.

Counterclaim (Dkt. 46) ¶ 49.

AHRN fails to explain the competitive significance of this alleged "rule." *Id.*  The alleged "rule" does no more than define what constitutes a "participant website"—namely those websites "in which MLS participants have actual and apparent control of the sites." *Id.*  AHRN

does not detail the context in which the definition is to be implemented, how it excludes competitors from MLS websites—or, more importantly, how it might restrain trade. Thus, unlike the plaintiff in *Robertson*, AHRN has entirely failed to "plausibly suggest that the MLS rule[] harmed market competition." 679 F.3d at 290. Moreover, as explained in Part I.A.2, *supra*, the Counterclaim as a whole entirely fails to offer any factual, non-conclusory allegation of *any* anticompetitive effect from *any* of the alleged conduct.

AHRN also implies that NAR has somehow violated the consent decree that it reached with the Department of Justice. *See U.S. v. Nat'l Ass'n of Realtors*, 2008 WL 5411637 (N.D. Ill. Nov. 18, 2008); Counterclaim (Dkt. 46) ¶¶ 21-23. In the consent decree, NAR agreed not to "adopt, maintain, or enforce any Rule" that discriminated against brokers' use of Virtual Office Websites ("VOWs")—*i.e.*, websites used to provide real estate brokerage services. 2008 WL 5411637, at *2-3. Initially, the consent decree is legally irrelevant here because AHRN is not a party to it and has no standing to enforce it. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) ("[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."); *Reynolds v. Butts*, 312 F.3d 1247, 1249 (11th Cir. 2002); *United States v. American Soc'y of Composers, Authors and Publishers*, 341 F.2d 1003, 1007-08 (2d Cir. 1965).

Further, the consent decree is limited to avoiding discrimination against VOWs. However, AHRN's counterclaim has nothing to do with VOWs. VOWs are online brokers' offices—*i.e.*, websites operated in order to provide brokerage services. *Nat'l Ass'n of Realtors*, 2008 WL 5411637, at *2. But AHRN's website does not offer brokerage services. Instead, as AHRN itself alleges in the Complaint, its website simply refers customers to real estate brokers.

17

Counterclaim (Dkt. 46) ¶ 7.  Since AHRN is not running a VOW, the consent decree does not apply.

### C.    Alleged Refusal to Deal.

Finally, AHRN's allegations of a concerted refusal to deal also fail as a matter of law. AHRN alleges that between the beginning of November 2011 and the filing of its counterclaim on September 24, 2012, it received "substantially similar cease and desist letters" from 20 brokers and MLSs (including MRIS and RMLS) regarding AHRN's unauthorized use of those entities' copyrighted materials.  Counterclaim (Dkt. 46) ¶ 36.  AHRN further alleges that "[i]n each case," it offered to license the copyrighted materials it had previously taken without authorization, but in each case, a license was rejected.  *Id.* ¶ 42.  According to the counterclaim, an additional seven brokers asked AHRN to stop efforts to solicit referral agreements or declined to continue existing referral agreements.[2]  *Id.* ¶¶ 43-45.  AHRN further alleges that "[o]n information and belief, the cease and desist letters, refusal and repudiation letters were coordinated by discussions and agreements among NAR, MLSs and brokers."  Counterclaim (Dkt. 46) ¶ 48.

These allegations do not state a claim against NAR for violation of the Sherman Act for two independent reasons.  First, AHRN fails to allege as a factual matter—*i.e.*, in anything more than bare legal conclusions—that NAR entered into any agreement with anyone to restrain trade by supposedly refusing to deal with AHRN.  Second, AHRN fails to allege any cognizable anticompetitive effect from the supposed refusal to deal.

---

[2] Although AHRN does not explicitly identify the number of brokers that sent the alleged letters, it states that it received them from brokers in seven locations.  *Id.* ¶ 45.

CH1 7139313v.6

1.      **AHRN fails to plausibly allege the existence of a conspiracy to restrain trade.**

Significantly, AHRN nowhere alleges that NAR itself refused to deal with AHRN. Nor does AHRN allege that NAR imposed any rule requiring or even encouraging member MLSs or brokers to refuse to deal with AHRN.[3] Instead, AHRN's sole factual allegation concerning NAR and the supposed refusal to deal is that NAR hosted a meeting or meetings at which AHRN was allegedly discussed. *E.g.*, Counterclaim (Dkt. 46) ¶ 35. AHRN then makes the conclusory, barebones assertion that "on information and belief," there existed "agreements among NAR, MLSs and brokers," *id.* ¶ 48—but AHRN offers no *factual*, non-conclusory allegation in support of that assertion. Neither the factual allegations of "discussions," nor the conclusory allegation of "agreements," suffices to state a claim of conspiracy under the Sherman Act.

According to AHRN, NAR held an annual meeting in November 2011, which "[o]n information and belief … featured discussions of the perceived threat AHRN poses to the industry and what the industry could do to shut down AHRN." Counterclaim (Dkt. 46) ¶ 35. But holding a meeting does not amount to conspiring to restrain trade as a matter of law. "[T]he federal courts consistently have recognized that mere contacts and communications, or the mere opportunity to conspire, among antitrust defendants is insufficient evidence from which to infer an anticompetitive conspiracy." *Cooper v. Forsyth County Hosp. Authority, Inc.*, 789 F.2d 278, 281 (4th Cir. 1986); *see also American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 227 (4th Cir. 2004) ("At most, the MCAP meeting shows contact between two independent economic actors, but mere contacts and communications, or the mere opportunity to conspire, among antitrust defendants is insufficient evidence of an anticompetitive conspiracy.") (internal

---

[3] Additionally, this Court has already recognized that "MRIS's refusal to grant AHRN a license is not probative of an unlawful or anticompetitive purpose, especially where AHRN's offer *followed* its infringement of MRIS's copyrights and the receipt of a cease-and-desist letter." Dkt. 34 at 28-29.

quotation marks omitted); *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488-89 (D.C. Cir. 1984) ("[T]his court will not infer a conspiracy to violate the antitrust laws based on a showing of regular contact between two independent professional associations on general matters of mutual interest and concern.  This is the very purpose and nature of professional associations and this court will erect no barriers to accomplishment of this absent much more substantial evidence of a conspiracy to restrain trade than that adduced here.").

NAR could restrain trade within the meaning of federal antitrust laws only if it somehow compelled or encouraged brokers and MLSs to refuse to deal with AHRN—not simply by holding a meeting at which AHRN was allegedly discussed.  As the Fourth Circuit explained regarding an antitrust claim against physicians who recommended that a hospital revoke the privileges of another physician: "Simply making a peer review recommendation does not prove the existence of a conspiracy; there must be *something more* such as a conscious commitment by the medical staff to coerce the hospital into accepting its recommendation."  *Oksanen*, 945 F.2d at 706 (emphasis added).  Similarly, the mere allegation that NAR hosted a meeting at which AHRN was supposedly discussed does not reflect any attempt to "coerce" brokers or MLSs into restraining trade as a matter of law.

Likewise, AHRN's conclusory assertion that NAR at some point entered into supposed "agreements" with brokers and MLSs to refuse to deal with AHRN, Counterclaim (Dkt. 46) ¶ 48, does not state a claim.  As the Supreme Court has explained, "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557; *see id.* at 564 (holding that complaint failed to state a claim under Section 1 of the Sherman Act where it contained no "independent allegation of actual agreement" except for "a few stray statements" that were "merely legal conclusions").  Here, as

20

in *Twombly*, AHRN entirely fails to offer any concrete, factual allegation of any agreement that provides the necessary "heft" to satisfy federal pleading rules. *Id.* at 557. AHRN has therefore failed to state a claim under Section 1 of the Sherman Act.

> **2.** **AHRN has failed to allege any anticompetitive effect from any refusal to deal.**

AHRN's claim of a supposed refusal to deal likewise fails to state a claim under Section 1 of the Sherman Act because AHRN has failed to allege that the supposed refusal to deal imposes any harm on competition, rather than on AHRN as an individual competitor. *See generally* Part I.A.2, *supra* (summarizing relevant law and allegations). AHRN's sole theory of harm from the alleged refusal to deal is that because AHRN could not obtain a license to use copyrighted materials, it suffered injury to its business. Tellingly, nothing in the counterclaim identifies any harm whatsoever to competition or consumers in any relevant market.

As explained in Part I.A.2, *supra*, merely alleging harm to AHRN is not sufficient to state a claim under the antitrust laws. Because AHRN has not alleged—and cannot allege—any harm to competition from the supposed refusal to deal, its counterclaim must be dismissed for this reason as well.

## II. AHRN HAS FAILED TO STATE A CLAIM UNDER SECTION 43(a) OF THE LANHAM ACT.

In Count I, AHRN contends that NAR has violated Section 43(a) of the federal Lanham Act, 15 U.S.C. § 1125(a). Counterclaim (Dkt. 46) ¶¶ 61-66. That Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his

21

or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

The purpose of the Lanham Act is to "provide[] national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985). Thus, "[t]he typical § 43(a) Lanham Act claim is brought by a plaintiff who is in competition with the defendant, and charges the defendant with using a mark—a brand name, a word, a slogan, a symbol, a combination of words and symbols, an ornamental feature, a distinctive shape, or something else intended to remind the consumer of the brand—so similar to that of the plaintiff's that the public may be confused as to the source of the good or service." *Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 333 (4th Cir. 1993).

Liability may also be established if the defendant engages in certain forms of false advertising: "In order to constitute a violation of § 43(a) of the Lanham Act, the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993). However, as the Supreme Court has explained, Section "43(a) does not have boundless application as a remedy for unfair trade practices. [B]ecause of its inherently limited wording, § 43(a) can never be a federal codification of the overall law of unfair competition, but can apply only to certain unfair trade practices prohibited

by its text." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (citation and internal quotation marks omitted; brackets in original).

AHRN appears to assert two theories of NAR's supposed liability under the Lanham Act. First, AHRN alleges that "MRIS, with the support, encouragement and financial assistance of NAR has made and is making numerous false and misleading statements on its website and elsewhere," namely statements indicating that MRIS holds valid copyrights to the photos and real estate listings on its MLS website.  Counterclaim (Dkt. 46) ¶ 34.  Second, AHRN alleges that "NAR and MRIS have made false or misleading representation of fact in commercial advertising or promotion that misrepresents the nature, characteristics, and qualities of AHRN's services."  *Id.* ¶ 62.  However, neither of these theories suffices to state a claim under Section 43(a) of the Lanham Act.

The fundamental problem with AHRN's claim is that AHRN nowhere identifies *any representation* that NAR is supposed to have made.  Rather, the representations on which AHRN relies were allegedly made by MRIS rather than by NAR.  Thus, although AHRN alleges that the certain representations by MRIS regarding the validity of MRIS's copyrights are false (an allegation that flies in the face of this Court's preliminary injunction ruling), AHRN does not—and cannot—allege that *NAR* made any such representations.

Similarly, nowhere does AHRN identify any supposed statement that NAR is alleged to have made regarding "the nature, characteristics, and qualities of AHRN's services."  Without such concrete factual allegations—namely, a basic explanation of what false representations NAR is supposed to have made—AHRN's claim cannot survive.  Its bare and conclusory allegations that NAR has "made false or misleading representation of fact in commercial advertising or promotion," *id.*, is insufficient to avoid dismissal under Rule 12(b)(6).  *See Nemet*

*Chevrolet*, 591 F.3d at 255 ("[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."); *see also Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Even if the supposedly false representations that AHRN does identify—namely, MRIS's representations that it holds valid copyrights in the photos and real estate listings in the MRIS Database, Counterclaim (Dkt. 46) ¶ 34—could somehow be attributed to NAR, AHRN still would not state a claim under Section 43(a) of the Lanham Act. That is because MRIS's representations cannot, as a matter of law, be deemed "false on [their] face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *Mylan Labs., Inc.*, 7 F.3d at 1138. As set forth above, this Court has already found, in the context of granting a preliminary injunction in favor of MRIS, that MRIS is likely to succeed in showing that it *does* hold a valid copyright in the photos and real estate listings in the Database. Dkt. 34 at 24-29. In light of that finding, the Court need not credit AHRN's renewed assertion to the contrary. *See Wahi*, 562 F.3d at 615 n.26 (the Court need not credit "unwarranted inferences, unreasonable conclusions, or arguments").

## III.   AHRN HAS FAILED TO STATE A CLAIM FOR UNFAIR COMPETITION UNDER EITHER MARYLAND OR CALIFORNIA LAW.

### A.   AHRN Fails to State a Claim under Maryland Law.

In Count II, AHRN contends that NAR has engaged in unfair competition under Maryland common law. Counterclaim (Dkt. 46) ¶ 67-70. "Unfair competition is generally defined in Maryland as, 'damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods.'" *Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*, 454 A.2d 367, 374

(Md. App. 1983) (quoting *Baltimore Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943));

*accord Electronics Store, Inc. v. Cellco Partnership*, 732 A.2d 980, 991 (Md. App. 1999).

According to AHRN, "NAR and MRIS's false statements, group boycott, and litigation

activities constitute unfair competition." *Id.* ¶ 68.  For the reasons set forth above, however, the

allegations in the counterclaim fail to identify any "fraud, deceit, trickery or unfair methods"

brought to bear by NAR.  As shown in Part II, *supra*, NAR is not alleged to have made any false

statements at all, much less any false statements that damage or jeopardize the business of

AHRN.  And even if the alleged statements of MRIS regarding the copyrights MRIS holds in

elements of the MRIS Database, Counterclaim (Dkt. 46) ¶ 34, could be attributed to NAR, those

statements are not false.  *See* pp. 11-12, 23-24 *supra*.

Similarly, NAR's alleged offer of support and "endorsement" of the copyright

infringement actions brought by MRIS and RMLS against AHRN do not constitute "fraud,

deceit, trickery, or unfair methods."  Both this Court and the Minnesota district court have

already determined that those actions are likely to succeed on the merits.  Meritorious lawsuits

cannot be deemed fraud, deceit, trickery, or unfair as a matter of law.

Finally, NAR is not alleged, except in the most conclusory of terms, to have participated

in, or organized, any "group boycott."  Even if, as AHRN has alleged, certain individual brokers

and MLSs have declined to license AHRN to use their copyrighted information and have

declined to enter into referral agreements with AHRN, AHRN has failed to allege any facts

tending to show that NAR has orchestrated—or can otherwise be held liable for—any supposed

"group boycott."

Moreover, the alleged decisions of brokers and MLSs not to license their validly

copyrighted materials to AHRN, even if made collectively, do not constitute fraud, deceit,

trickery, or unfair methods. *Cf.* Dkt. 34 at 28 ("Even if the Court accepted that MRIS was collectively enforcing its copyrights with other MLSs, that would not, alone, amount to copyright misuse. *See, e.g.*, *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1538-39 (S.D.N.Y. 1991) ('Plaintiffs' effort[] to restrain competition by [Defendant] is simultaneously an effort to stop [Defendant] from infringing their copyrights. Plaintiffs have acted reasonably in so doing, not collusively for some illegal, monopolistic purpose.')."). For all of these reasons, AHRN has failed to state a claim for unfair competition under Maryland law.

**B.     AHRN Fails to State a Claim Under California Law.**

In Count III, AHRN contends that NAR has engaged in unfair competition under California law. Counterclaim (Dkt. 46) ¶¶ 71-78. Initially, Maryland, not California, law applies to this action. "Maryland ordinarily follows the *lex loci delicti* rule when analyzing choice of law problems in tort cases." *Proctor v. Washington Metro. Area Transit Auth.*, 990 A.2d 1048, 1068 (Md. 2010). "The place of injury is the place where the injury was suffered." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (applying Maryland law). Here, the alleged injury has occurred "in the MLS Service Areas," Counterclaim (Dkt. 46) ¶ 29, namely MRIS's Service Area, which focuses on Maryland and does not extend to California, *id.* ¶ 25. To the extent AHRN alleges that any consumers have been misled, deceived, or otherwise harmed, it is Maryland consumers. Maryland law, therefore, should apply here.

But in any event, AHRN has equally failed to state a claim under California law. Under California law, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999). This definition is materially the same as the definition of unfair

26

competition under Maryland common law.  Thus, for the same reasons that AHRN has failed to state a claim under Maryland law, its claim under California law fails as well.

## IV.    AHRN HAS FAILED TO STATE A CLAIM FOR BARRATRY.

Finally, AHRN's barratry claim, Count VI, is unavailing.  The Maryland statute criminalizing barratry does not afford a right of action to private litigants like AHRN.  Md. Code Ann. Bus. Occ. & Prof., § 10-604(b)(1).[4]  Moreover, even if AHRN had authority to enforce Maryland's criminal laws, Count VI fails to state a claim under the barratry statute.

### A.    There Is No Private Right of Action for Barratry.

Maryland law establishes the criminal offense of barratry:  "Without an existing relationship or interest in an issue * * * a person may not, for personal gain, solicit another person to sue or to retain a lawyer to represent the other person in a lawsuit."  Md. Code Ann. Bus. Occ. & Prof., § 10-604(b)(1).  One who violates the barratry provision "is guilty of a misdemeanor" and is subject to criminal penalties.  *Id.* § 10-606(c).  *See also Son v. Margolius*, 709 A.2d 112, 119 (Md. 1998) ("Section 10-604 is a criminal statute.").

Neither § 10-604 nor any other provision of the Maryland Code creates a private right of action for barratry.  Nor has counsel for NAR found any reported case in Maryland holding that such a private right of action exists.[5]  Quite to the contrary, courts in other jurisdictions have held that analogous statutes establishing criminal barratry offenses do not create a private right of action.  *See* Am. Jur. 2d Champerty, Maintenance, Etc. § 16 ("Criminal barratry statutes have been held not to create a civil cause of action."); *Moiel v. Sandlin*, 571 S.W.2d 567, 571 (Tex.

---

[4] AHRN mistakenly cites to § 10-604(a)(1).  *See* Counterclaim (Dkt. 46) Count VI.  The relevant statute, however, is § 10-604(b)(1).

[5] Reported cases interpreting the barratry statute commonly involve plaintiffs seeking the invalidation of a contract as against public policy because it involves unlawful barratry.  *E.g.*, *Son*, 709 A.2d 112; *Schackow v. Medical-Legal Consulting Serv., Inc.*, 416 A.2d 1203 (Md. App. 1980).  Such cases offer no support to AHRN's claim against NAR because no relevant contract is alleged to exist in this case.

27

Civ. App. 1978) (holding, under Texas law, that "[t]he offense of barratry as defined in the penal code is a public remedy and not a private one").  Because § 10-604 creates only a "public remedy and not a private one," *id.*, it cannot support AHRN's claim against NAR in this case, and the claim should be dismissed.

> ### B.      AHRN Has Failed to Establish the Elements of Barratry.

Even if AHRN were permitted under the Maryland Code to sue for barratry, its claim should nonetheless be dismissed because AHRN has failed to establish the requisite elements of barratry.  Maryland courts have explained that barratry under § 10-604 is "stirring up, meddling in, or maintaining litigation in which the person has no interest, for personal gain."  *Son*, 709 A.2d at 121. "And the key elements to the statutory offense are 'officious meddling' and 'personal gain.'" *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 299 (4th Cir. 2002) (citing *Son*, 709 A.2d at 121).  Here, AHRN can establish neither element.

First, AHRN does not and cannot establish "officious intermeddling" by NAR, or that NAR solicited MRIS to sue AHRN.[6]  MRIS filed its complaint against AHRN on March 28, 2012.  The sole meaningful step that NAR is alleged in the Counterclaim to have taken in support of MRIS's suit occurred nearly two months *after* the complaint was filed.  Specifically, AHRN alleges that at a meeting on May 19, 2012, NAR's board "[a]pproved $161,667 in legal assistance for seven cases, involving … 4) challenging misappropriation of MLS data by a third-party Web site."[7]  Counterclaim (Dkt. 46) ¶ 49 (ellipsis in original).

---

[6] The Court need not credit AHRN's conclusory allegation that "NAR has solicited MRIS, Northstar and others, respectively, to sue AHRN or to retain lawyers to represent MRIS, Northstar or others in a lawsuit at NAR's expense, in whole or in part."  Counterclaim (Dkt. 46) ¶ 92. *See Nemet Chevrolet*, 591 F.3d at 255 ("[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

[7] AHRN speculates that this item from the minutes of the meeting of the NAR board of directors refers to cases against "competitors like AHRN."  Counterclaim (Dkt. 46) ¶ 49.  AHRN does not

The only conduct alleged to have occurred before MRIS filed its complaint is that NAR held an annual meeting at which attendees allegedly "discuss[ed]" AHRN. *Id.* ¶ 35. Significantly, AHRN does not and cannot allege that NAR solicited MRIS to sue AHRN, or that NAR initiated *any* form of contact with MRIS regarding AHRN at all. *See Son v. Margolius*, 689 A.2d 645, 655 (Md. App. 1997) (for purposes of barratry statute, "[s]olicitation requires, at the very least, that the alleged barrator initiate direct contact with the alleged victim"), *rev'd on other grounds*, 709 A.2d 112. This alone is fatal to AHRN's claim.

Second, AHRN equally fails to allege that NAR took any step for its own "personal gain." Md. Code Ann. Bus. Occ. & Prof. § 10-604(b)(1). Although AHRN has alleged that NAR undertook to provide "legal assistance" to MLSs involved in unspecified litigation, nothing in the Complaint indicates that NAR stands to gain from MRIS's suit against AHRN. In particular, AHRN does not and cannot allege that NAR is entitled to any fee from MRIS or to any share in MRIS's potential recovery. For this reason, too, AHRN's barratry claim should be dismissed.

---

allege, however, that it refers to AHRN specifically.

## CONCLUSION

For the foregoing reasons, the counterclaim against NAR should be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Matthew D. Krueger
Matthew D. Krueger (Bar No. 28386)
mkrueger@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000 phone
(202) 736-8711 facsimile

Jack R. Bierig (admitted *pro hac vice*)
jbierig@sidley.com
Tacy F. Flint (admitted *pro hac vice*)
tflint@sidley.com
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Attorneys for Counterclaim-Defendant*
National Association of Realtors®

30

## CERTIFICATE OF SERVICE

I, Matthew D. Krueger, hereby certify that on November 9, 2012 a copy of the foregoing Memorandum of Counterclaim-Defendant National Association of Realtors® in Support of Its Motion to Dismiss was served using the Court's CM/ECF system upon:

Richard S. Toikka
L. Peter Farkas
Farkas and Toikka LLP
1101 30th St. NW, Ste. 500
Washington, DC 20007
*Counsel for Defendant/Counterclaim-Plaintiff American Home Realty Network, Inc. and Defendant Jonathan J. Cardella*

Christopher Ralph Miller
American Home Realty Network, Inc.
222 7th St Second Fl
San Francisco, CA 94103
*Counsel for Defendant/Counterclaim-Plaintiff American Home Realty Network, Inc. and Defendant Jonathan J. Cardella*

John T. Westermeier
Margaret A. Esquenet
Whitney Devin Cooke
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
*Counsel for Plaintiff/Counterclaim-Defendant Metropolitan Regional Information Systems, Inc.*

*/s/* Matthew D. Krueger