**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,**<br><br>           **Plaintiff,**<br><br>**v.**<br><br>**AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,**<br><br>                **Defendants.**<br>**and**<br><br>**AMERICAN HOME REALTY NETWORK, INC.**<br><br>              **Counterclaim Plaintiff,**<br><br>**v.**<br><br>**METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., NATIONAL ASSOCIATION OF REALTORS, AND DOES 1-25,**<br><br>            **Counterclaim Defendants.** | **CIVIL ACTION NO. 12-cv-0954-AW** |

**COUNTERCLAIM DEFENDANT METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, SUMMARILY ADJUDICATE DEFENDANT AHRN'S COUNTERCLAIMS**

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTS ...................................................................................................................... 2

III.  STANDARD OF REVIEW ...................................................................................... 4

      A.    The Law of the Case Doctrine Forecloses AHRN's Counterclaims...................... 4

      B.    AHRN's Counterclaims Are Ripe for Dismissal and/or Summary
            Judgment ...................................................................................................... 5

IV.   ARGUMENT ........................................................................................................... 6

      A.    AHRN Fails to State a Claim for Relief Under Count I, Lanham Act
            § 43(a) ........................................................................................................... 6

            1.    AHRN's Lanham Act Counterclaim Fails as a Matter of Law.................. 6

            2.    Facts Underlying MRIS's Allegedly "False and Misleading"
                  Statements Regarding the Validity of Its Copyrights Have Been
                  Affirmed by This Court ........................................................................ 7

      B.    Count II, AHRN's Maryland Unfair Competition Claim, Fails as a Matter
            of Law ........................................................................................................... 9

      C.    Count III, AHRN's Unfair Competition Claim Under Cal. Bus. & Prof.
            Code § 17200 et seq., Must Be Dismissed for Lack of Jurisdiction and Is
            Impermissible As a Matter of Law ...................................................................... 10

            1.    AHRN's California Claim Does Not Apply Extraterritorially to
                  MRIS............................................................................................... 11

            2.    Even if the Court Determines It Has Jurisdiction over AHRN's
                  California Claim, it is Impermissible and Must Be Dismissed................ 13

                  a.    MRIS Is Entitled to Absolute Safe Harbor Protection Under
                        the Federal Copyright Act and Lanham Act ................................. 13

                  b.    AHRN Failed to Meet the Pleading Standards Under Rule
                        9(b) Applied to the California Claim Grounded in Fraud............ 14

                  c.    AHRN's California Claim Allegations Wrongly State that
                        MRIS Is a Competitor of AHRN .................................................. 15

      D.    Count IV, Section 1 of the Sherman Act, Is Unavailable to AHRN, Rests
            on Conclusory Allegations, and Must Be Dismissed.......................................... 16

1. MRIS's Lawsuit Does Not Constitute "Sham Litigation" Thus MRIS Has Immunity from AHRN's Antitrust Claim ............................. 16

2. Under *Twombly* and Fourth Circuit Precedent, Conclusory Allegations of Concerted Action Are Insufficient to State a Claim Under Section 1 of the Sherman Act ....................................... 17

  a. The Legal Standard for a Section 1 Sherman Act Claim ............. 17

  b. AHRN Fails to Provide Sufficient Factual Support for Its Sherman Act Claim Under *Twombly* ........................................... 19

3. AHRN Is Not a Competitor of MRIS and MRIS Has No Intention of "Driv[ing] AHRN Out of Business" .................................................... 22

4. MRIS Has the Right as a Copyright Owner to Refuse to Issue AHRN a Custom License for Content from the MRIS Database ............. 23

E. Count V, AHRN's Copyright Misuse Counterclaim, Is Improperly Asserted and Must Be Dismissed ......................................................... 24

1. Copyright Misuse Is an Affirmative Defense, Not an Affirmative Claim .................................................................................................... 24

2. AHRN's Copyright Misuse Claim Is a Reformulation of AHRN's Copyright Misuse Defense and Was Previously Dismissed by This Court .................................................................................................... 25

3. Enforcement of Copyright Does Not Constitute Copyright Misuse ......... 26

V. CONCLUSION .......................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arista Records, Inc. v. Flea World, Inc.*,
    356 F. Supp. 2d 411 (D.N.J. 2005) ...................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 66 (2009)...........................................................................................17

*Augustine v. FIA Card Servs., N.A.*,
    485 F. Supp. 2d 1172 (E.D. Cal. 2007)............................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................. passim

*Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*,
    746 F. Supp. 320 (S.D.N.Y. 1990).....................................................................24

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)...........................................................................................4

*Compliance Mktg., Inc. v. Drugtest, Inc.*,
    No. 09-cv-01241-JLK, 2010 WL 1416823 (D. Colo. Apr. 7, 2010) ....................12

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
    36 F.3d 1147 (1st Cir. 1994)............................................................................23

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961)..........................................................................................16

*Erickson v. Pardus*,
    551 U.S. 89 (2007)..............................................................................................5

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) .............................................................................7

*Interscope Records v. Kimmel*,
    307-cv-0108, 2007 WL 1756383 (N.D.N.Y. June 18, 2007) .................................24

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984)..............................................................................................10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................................14

*Lasercomb America, Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990) .............................................................................26

*Layton v. AAMCO Transmissions, Inc.*,
   717 F. Supp. 368 (D. Md. 1989) ..................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   253 F. Supp. 2d 943 (E.D. Ky. 2003), *vacated on other grounds*, 387 F.3d 522 (6th
   Cir. 2004) .....................................................................................................25

*Loren Data Corp. v. GXS, Inc.*,
   Civ. A. No. DKC-10-3474, 2011 WL 3511003 (D. Md. Aug. 9, 2011)............18, 22

*Micro Star v. Formgen, Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ......................................................................25

*Myung Ga, Inc. v. Myung Ga of MD, Inc.*,
   No. DKC-10-3464, 2011 WL 3476828 (D. Md. Aug. 8, 2011) .............................6

*Océ N. Am., Inc. v. MCS Servs., Inc.*,
   795 F. Supp. 2d 337 (D. Md. 2011)............................................................19, 23

*Oksanen v. Page Mem'l Hosp.*,
   945 F.2d 696 (4th Cir. 1991) ........................................................................22

*Omni Resource Dev. Corp. v. Conoco, Inc.*,
   739 F.2d 1412 (9th Cir. 1984) ....................................................................5, 16

*Online Policy Grp. v. Diebold, Inc.*,
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ........................................................24

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ..................................................................11

*PBM Products, LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) ..........................................................................6

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993).....................................................................................15, 16

*Rikos v. Procter & Gamble Co.*,
   1:11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012).................................11

*Robertson v. Sea Pines Real Estate Cos.*,
   679 F.3d 278 (4th Cir. 2012) ........................................................................18

*Roche v. Lincoln Prop. Co.*,
   Civ. A. 02-1390-A, 2003 WL 22002716 (E.D. Va. July 25, 2003), *rev'd in part,
   vacated in part*, 373 F.3d 610 (4th Cir. 2004), *rev'd*, 546 U.S. 81 (2005) ................4

*Scotts Co. v. United Industries*,
   315 F.3d 264 (4th Cir. 2002) ...........................................................................6

*Sejman v. Warner-Lambert Co.*,
   845 F.2d 66 (4th Cir. 1988) ..............................................................................4

*Serv. & Training, Inc. v. Data Gen. Corp.*,
   963 F.2d 680 (4th Cir. 1992) ...........................................................................10

*Triad Sys. Corp. v. Se. Express Co.*,
   64 F.3d 1330 (9th Cir. 1995) ...........................................................................25

*UGI Corp. v. Piccione*,
   Civ. A. 88-cv-1125, 1997 WL 698011 (E.D. Pa. Nov. 5, 1997) ..........................4

*United States v. Aramony*,
   166 F.3d 655 (4th Cir. 1999) .............................................................................4

*United States v. Atkins*,
   112 F. App'x 273 (4th Cir. 2004) ......................................................................4

*United States v. Colgate & Co.*,
   250 U.S. 300 (1919)..................................................................................10, 13

*Williams v. Wash. Mut. Bank*,
   No. Civ-07-2418-WBS-GGH, 2008 WL 115097 (E.D. Cal. Jan. 11, 2008) ..........13

**STATE CASES**

*Boatel Indus., Inc. v. Hester*,
   550 A.2d 389 (Md. Ct. Spec. App. 1988) ..........................................................10

*Buckland v. Threshold Enters., Ltd.*,
   66 Cal. Rptr. 3d 543 (Cal. Ct. App. 2007).....................................................14, 15

*Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .....................................................................................13

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) .............................................................................13

*Elecs. Store, Inc. v. Cellco P'ship*,
   127 Md. App. 385 (Md. Ct. Spec. App. 1999) .....................................................9

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) .............................................................................12

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) .....................................................................................15

*Northwest Mortg., Inc. v. Superior Court,*
    72 Cal. App. 4th 214, 85 Cal. Rptr. 2d 18 (1999)...................................................11

*People v. Toomey,*
    157 Cal. App. 3d 1, 203 Cal. Rptr. 642 (1984).....................................................12

**FEDERAL STATUTES**

15 U.S.C. § 1125(a)(1)(B) ..............................................................................................6

15 U.S.C.A. 1125(a) .......................................................................................................6

Lanham Act § 43(a 15 U.S.C. § 1125(a)(1)(B) .................................................5, 6, 27

Sherman Act § 1, 15 U.S.C. § 1 (2012) ................................................. passim

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 (West 2012) .................................................. passim

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................................14

Fed. R. Civ. P. 12(b)(6)...............................................................................................4, 5, 11

Fed. R. Civ. P. 56........................................................................................................4, 5

**STATE REGULATIONS**

9 Md. Dep't of Lab., Lic., & Reg. § 09.11.02.01 (2012).............................................3

18 Va. Admin. Code § 135-20-190 (2008).................................................................3

**OTHER AUTHORITIES**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §§ 13.09[A][2][b] (2007) ........24

## I.       INTRODUCTION

Apparently taking to heart the cliché that the third time is the charm, American Home Realty Network, Inc. ("AHRN") once again asserts the same contentions it has made in both its Motion to Dismiss (Dkt. 24) and its Opposition to Metropolitan Regional Information Systems, Inc.'s ("MRIS") Motion for Preliminary Injunction (Dkt. 25).  Styling these tired arguments as counterclaims, however, does not make them any more persuasive.  In fact, this Court has already ruled on the facts and issues of law applicable to each of the five counterclaims AHRN has asserted against MRIS, finding that MRIS's copyrights are valid and that enforcing its rights does not constitute misuse or anticompetitive behavior.  Not only did this Court find that MRIS was well within its rights in objecting to AHRN's infringement, but doing so benefited the public interest.

AHRN's counterclaims are repetitive, violate the law of the case doctrine, and fail to conform to the legal requirements of each claim.  As more fully detailed below, the law of the case doctrine requires the court to maintain consistency in its consideration of legal issues.  AHRN is effectively asking this Court to ignore its earlier decision, in impermissible contravention of this doctrine.  Moreover, each of these sham counterclaims fails as a matter of law.  As to Counts I and II (Federal and Maryland unfair competition), the Court has already concluded that MRIS's copyrights are valid and, accordingly, MRIS's assertion of its rights on its website cannot form the basis of such claims.  As to Count III (California unfair competition), the Court does not have jurisdiction over this extraterritorial claim.  Even if the court finds jurisdiction, the California claim fails as a matter of law.  As to Count IV (Sherman Act Section 1), Supreme Court precedent precludes this claim and instructs that it "must fail."  Finally, as to Count V (copyright misuse), not only has this allegation already been rejected by this Court, but it is black-letter law that copyright misuse cannot be asserted as an affirmative claim.

1

In sum, none of AHRN's counterclaims are based on legitimate legal theories. Rather, the purpose of AHRN's vexatious counterclaims appears to be AHRN's continuing effort to exempt itself from this Court's Preliminary Injunction Order (Dkt. 35), continuing unlawful use of the MRIS Database to enrich itself and confuse consumers, and forcing MRIS to repeatedly defend itself against AHRN's spurious claims. MRIS therefore respectfully requests that each of AHRN's counterclaims be dismissed and/or summarily adjudicated.

## II.    FACTS

Through the various filings by the parties in this action (e.g., Dkts. 1, 9, 24-1, 25, 26, 27, 29, 32, and 33) and as detailed in the Court's Memorandum Opinion (Dkt. 34), the Court is familiar with the parties and many of the facts and contentions in this matter. For the sake of conciseness, MRIS will not repeat the background information available in these earlier proceedings.

MRIS provides one of America's largest Multiple Listing Services ("MLS"), facilitating real estate transactions in the Mid-Atlantic region. MRIS maintains and provides authorized, licensed subscribers and other authorized licensees access to and use of the MRIS Database. The MRIS Database provides timely and accurate real estate information to thousands of real estate professionals, including agents, brokers, and appraisers. Subject to the terms and commitments detailed in the applicable contractual agreements with MRIS (*e.g.*, the MRIS Subscription Agreements, MRIS Database Access and Use Agreements, and Terms of Use Agreements) and payment of the applicable fees, each real estate professional subscribing to MRIS's services is given access to the MRIS Database through the various products, services, and programs offered by MRIS. The general public can access portions of the MRIS database via MRIS's homesdatabase.com website. MRIS's selection, arrangement, and coordination of copyrightable content and facts that make up the MRIS Database and the compliance and other services

2

provided by MRIS makes the database a valuable tool to real estate professionals and consumers. For example, to protect both buyers and sellers of real estate, most states require brokers to exercise control over how, where, and when their listings are advertised and disseminated.[1]  The state regulations put the onus on the brokers to ensure that their advertisements are accurate, updated, and contain all of the legally required information (and none of the legally prohibited information).  MRIS assists brokers with their legal compliance by its systems and services supporting the quality and accuracy of the MRIS Database.  MRIS does this by confirming that such listings comply with the MRIS Rules and Regulations, and sending compliance notices where appropriate.  (Mem. Op. 26, Dkt. 34.)

As an MLS, MRIS ensures the rules and regulations governing use of and access to the MRIS Database are consistent with the MLS Model Rules and Regulations including those related to the operation of Virtual Office Websites.  (Declaration of David Charron ("Charron Decl.") ¶ 1.)  The MLS rules and regulations are promulgated by the National Association of Realtors under authority from the U.S. Department of Justice.   (*Id*.); (*see also* Reply in Support of Mot. for Prelim. Inj. at 19 n.4, Dkt. 27; Decl. of John L. Heithaus ¶¶ 16, 17, 18, Dkt. 27-1.)  AHRN has not disputed Mr. Heithaus' declaration nor has it made any allegations or provided any evidence that MRIS is not in compliance.  NAR does not exercise any control over MRIS operations, including MRIS's copyright registration and enforcement program.  (Charron Decl. ¶ 1).  MRIS's action against AHRN for trademark and copyright infringement was not initiated or paid for by NAR.  (*Id*. ¶ 2.)  Even if it was, however, AHRN's counterclaim allegations are not sufficient to sustain its claims, which must be dismissed for the reasons detailed below.

---

[1] *See, e.g.*, 9 Md. Dep't of Lab., Lic., & Reg. § 09.11.02.01 (2012); 18 Va. Admin. Code § 135-20-190 (2008).

III.     STANDARD OF REVIEW

A.     The Law of the Case Doctrine Forecloses AHRN's Counterclaims

AHRN's counterclaims run contrary to the law of the case doctrine and should be

dismissed.  Under the law of the case doctrine, "when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  *Accord United States v.*

*Atkins*, 112 F. App'x 273, 274 (4th Cir. 2004); *United States v. Aramony*, 166 F.3d 655, 661 (4th

Cir. 1999).  The law of the case must be applied in all subsequent proceedings in the same case

in the trial court or on a later appeal unless: (1) a subsequent trial produces substantially different

evidence, (2) controlling authority has since made a contrary decision of law applicable to the

issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.  *Sejman*

*v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988).  None of these exceptions apply here.

In its Reply to MRIS's Opposition to AHRN's Motion to Dismiss for Failure to State a

Claim (Dkt. 29, at 1-2), AHRN invited the Court to treat its motion as one for summary

judgment pursuant to Fed. R. Civ. P. 56.  The Court accepted this invitation, holding that because

both parties submitted extrinsic evidence in support of their briefs, "this Court will treat

Defendants' Motion to Dismiss under Rule 12(b)(6) as a motion for summary judgment."

(Mem. Op. 15, Dkt. 34.)  Accordingly, the facts and law related to each of the counterclaims

asserted by AHRN have already been considered and ruled upon by the Court, precluding AHRN

from relitigating any such facts or claims under the law of the case doctrine.  *UGI Corp. v.*

*Piccione*, Civ. A. 88-cv-1125, 1997 WL 698011 * 7-8, n.11 (E.D. Pa. Nov. 5, 1997).  AHRN has

not set forth in its counterclaims any basis for this Court to revisit its prior holdings in the

Memorandum Opinion, and MRIS is entitled to judgment on each of AHRN's counterclaims.

*Roche v. Lincoln Prop. Co.*, Civ. A. 02-1390-A, 2003 WL 22002716 * 2 (E.D. Va. July 25,

4

2003), *rev'd in part, vacated in part*, 373 F.3d 610 (4th Cir. 2004), *rev'd*, 546 U.S. 81 (2005),

and *aff'd*, 175 F. App'x 597 (4th Cir. 2006) ("The Defendants are entitled to summary judgment

as to the implied warranty of habitability claim because this claim is precluded by the law of the

case.").

### B.    AHRN's Counterclaims Are Ripe for Dismissal and/or Summary Judgment

As explained by the Court in the Memorandum Opinion (Mem. Op. 15-16, Dkt. 34), if

the parties submit extrinsic evidence with their briefs, the Court can treat a motion to dismiss

submitted under Rule 12(b)(6) as a Fed. R. Civ. P. 56 motion for summary judgment.  While a

court considering a motion to dismiss for failure to state a claim "must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the

complaint must state sufficient facts to state a claim that is "plausible on its face," *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).  "Summary judgment is appropriate 'if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

of material fact and that the movant is entitled to judgment as a matter of law.'"  (Mem. Op.

15-16, Dkt. 34.)  As noted by the Ninth Circuit, a losing party cannot simply recharacterize its

losing positions and hope for a second chance via counterclaims.  *Omni Resource Dev. Corp. v.*

*Conoco, Inc.*, 739 F.2d 1412, 1415 (9th Cir. 1984) (holding that "Omni's complaint, however,

impresses us as a plea for a second day in court on issues already litigated and lost. We are not

inclined to let the antitrust laws be the mechanism for that challenge.")  Here, AHRN has

asserted five counterclaims against MRIS, each of which is ripe for decision under either the

motion to dismiss or the summary judgment standard for the reasons discussed below.

IV.     **ARGUMENT**

A.      **AHRN Fails to State a Claim for Relief Under Count I, Lanham Act § 43(a)**

AHRN has failed to state a claim for relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because its allegations are inconsistent with a prior Order of this Court, conclusory at best, and lack specificity.   Count I must be dismissed.

1.      **AHRN's Lanham Act Counterclaim Fails as a Matter of Law**

Count I of AHRN's counterclaims against NAR and MRIS alleges that "NAR and MRIS have made false or misleading representations of fact in commercial advertising or promotion that misrepresents [sic] the nature, characteristics, and qualities of AHRN's services and commercial activities and MRIS' rights and services."  AHRN further alleges that such "misrepresentations" are "material in that they have deceived or are likely to deceive MLS's brokers and home buyers in whether to deal or contract with AHRN," and that they "actually deceives [sic] or has the tendency to deceive a substantial segment of its audience."

AHRN's Lanham Act claim refers only to section 43(a) (15 U.S.C.A. 1125(a)) generally, but appears to allege a violation of section 1125(a)(1)(B) of the Lanham Act, which prohibits the "false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).  To state a claim for false advertising, a party must establish that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

6

*PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (citing *Scotts Co. v. United Industries*, 315 F.3d 264, 272 (4th Cir. 2002)).

Courts have recognized that "a conclusory and formulaic recitation of the elements" of a Lanham Act claim is insufficient to survive a motion to dismiss.  *See, e.g.*, *Myung Ga, Inc. v. Myung Ga of MD, Inc.*, No. DKC-10-3464, 2011 WL 3476828, at *4 (D. Md. Aug. 8, 2011) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).  Count I of AHRN's counterclaim, which does not identify a single misleading statement, is at best conclusory and formulaic.  A party alleging harm under the Lanham Act must provide sufficient detail regarding the nature of "false and misleading statements." *Id.*  AHRN's naked statements that NAR and MRIS have "made false and misleading representations of fact in commercial advertising or promotion" without specifying the nature or substance of the alleged "commercial advertising or promotion" beyond a vague reference in paragraph 34 of AHRN's counterclaim "on its website and elsewhere" does not provide the requisite specificity for an unfair competition claim.  Accordingly, Count I should be dismissed.

> **2.**      **Facts Underlying MRIS's Allegedly "False and Misleading" Statements Regarding the Validity of Its Copyrights Have Been Affirmed by This Court**

The facts AHRN vaguely refers to in paragraph 34 of its counterclaims have already been considered by the Court.  According to AHRN, MRIS's "false and misleading statements," as stated in paragraphs 34(a)-(c) of its answer and counterclaim, are (1) MRIS's alleged statement that it acquires photographs and real estate listings from its members through a "click wrap" assignment; (2) MRIS's display of a copyright notice (© MRIS) on photographs; and (3) MRIS allegedly "informing its members that uncopyrightable real estate listing information can be treated as copyrightable musical lyrics by treating real estate listing information as 'content.'"

AHRN's mischaracterization of MRIS's communications regarding its claims of copyright ownership in the MRIS Database as "false and misleading" to further its sham unfair competition claims is the latest in AHRN's series of attempts to argue that the MRIS Database is not protected by copyright, and that MRIS's Terms of Use ("TOU") agreement is an invalid assignment of copyright.  Notably, the underlying facts behind the statements that AHRN mischaracterizes as "false and misleading"—namely, the validity of MRIS's copyright in the MRIS Database and its TOU agreement—have been expressly affirmed by this Court.  The validity of MRIS's rights and the TOU are the law of the case.

More specifically, this Court affirmed the validity of MRIS's copyright ownership in the MRIS Database in its Order granting summary judgment and MRIS's Motion for Preliminary Injunction, stating that "[t]he Court finds that the MRIS Database exhibits the requisite originality for copyright protection."  (Mem. Op. 26, Dkt. 34.)  Similarly, this Court found that MRIS's TOU constitutes a valid assignment, finding "[t]he MRIS TOU constitutes credible evidence that MRIS's users intend to assign their copyrights to MRIS through the electronic submissions of photographs, which would satisfy the relevant provisions of ESIGN."  (*Id.* at 22-23.)  It is difficult to comprehend how the existence of the MRIS TOU or displaying a copyright notice © on an original work of authorship that is registered with the U.S. Copyright Office (the validity of which have been upheld by this Court) can possibly constitute "false and misleading" statements that violate the Lanham Act.  Moreover, AHRN does not identify the location of any of these alleged statements.  In fact, although MRIS does use an electronic assignment agreement and includes copyright notices in the MRIS Database, including on photos, it has never made the statement that "uncopyrightable real estate listing information can be treated as copyrightable musical lyrics by treating real estate listing information as 'content.'"  (Charron Decl. ¶ 4.)  It is

true, however, that MRIS has emphasized that real estate listing content is protectable by copyright and is not, as AHRN contends, comprised merely of unprotectable data.

**B.    Count II, AHRN's Maryland Unfair Competition Claim, Fails as a Matter of Law**

Count II, AHRN's counterclaim for Maryland unfair competition, also must be dismissed under the relevant law.  The Maryland claim is premised on NAR's and MRIS's alleged "false statements, group boycott, and litigation activities." (Countercl. ¶ 68, Dkt. 46.)  With respect to the alleged false statements, the Maryland unfair competition claim must be dismissed for the same reasons as the Lanham Act claim discussed above.

AHRN's "group boycott" theory of Maryland unfair competition appears to be based on MRIS's refusal to license to AHRN its listings information or otherwise do business with AHRN.  (*Id.* ¶¶ 42-49.)  The "litigation activities" that AHRN relies on for its Maryland unfair competition claim appear to be nothing more than MRIS's filing of this lawsuit.  (*Id.* ¶¶ 50-56.)  Both of these points were already considered and adjudicated by the Court.  (Mem. Op. 28, 31, Dkt. 34.)  Moreover, whether an activity can constitute "unfair competition" under Maryland common law depends on the particular facts of each case.  In all cases, however, a necessary element of such a claim is that the defendant acted fraudulently or deceitfully.  *See Elecs. Store, Inc. v. Cellco P'ship*, 127 Md. App. 385, 407 (Md. Ct. Spec. App. 1999) ("What constitutes unfair competition in a given case is governed by its own particular facts and circumstances.  Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception.").  Here, AHRN alleges no facts to support that MRIS acted fraudulently or deceitfully by declining to accept AHRN's offer to do business with AHRN (presumably, AHRN is referring to the "offer" AHRN made in response to the demand letters sent by MRIS's general counsel) (*see* Mem. Op.

9

28-29, Dkt. 34) or by bringing this lawsuit.  AHRN has not, and cannot, allege any such facts.

Indeed, this Court has already held that MRIS's enforcement of its rights was appropriate and not

for any unlawful purpose, finding that "even if the Court accepted that MRIS was collectively

enforcing its copyrights with other MLSs, that would not, alone, amount to copyright misuse."

(*Id.* at 28.)

Further, no Maryland court has recognized an unfair competition claim based on one

company's decision not to do business with another company, or under a theory of "sham

litigation."  It is axiomatic that a company can choose with whom it conducts business.  *Serv. &*

*Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 686 (4th Cir. 1992) ("The owner of a copyright

has an exclusive right to sell, rent, lease, lend, or otherwise distribute copies of a copyrighted

work.  Section 1 of the Sherman Act does not entitle 'a purchaser . . . to buy a product that the

seller does not wish to offer for sale.'" (citation omitted) (quoting *Jefferson Parish Hosp. Dist.*

*No. 2 v. Hyde*, 466 U.S. 2, 24 n.40 (1984))); *accord United States v. Colgate & Co.*, 250 U.S.

300, 307 (1919).  AHRN's Maryland unfair competition claim must therefore be dismissed.[2]

### C.   Count III, AHRN's Unfair Competition Claim Under Cal. Bus. & Prof. Code § 17200 et seq., Must Be Dismissed for Lack of Jurisdiction and Is Impermissible As a Matter of Law

Count III of AHRN's counterclaim alleges that MRIS has engaged in unlawful business

acts and practices that constitute fraudulent, unlawful, and unfair competition in violation of the

California Business & Professional Code §§ 17200 et seq. (Countercl. ¶ 74, Dkt. 46) (the

---

[2] To the extent AHRN sought to allege an unfair competition claim under the Maryland Consumer Protection Act, such a claim is inapplicable and must also fail because AHRN is not a "consumer" and thus has no standing.  *Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 371 (D. Md. 1989) (granting motion to dismiss for failure to state a claim under the Maryland Consumer Protection Act because plaintiffs were not "consumers"); *Boatel Indus., Inc. v. Hester*, 550 A.2d 389, 398-99 (Md. Ct. Spec. App. 1988) (noting that the purpose of the Consumer Protection Act "is to protect the consumer" and that the Act's remedies "are limited to 'consumers' purchasing 'consumer goods'").

"California Claim").  The California Claim cannot apply extraterritorially to MRIS and must be

dismissed.  Moreover, even if the court has jurisdiction over the California Claim, like the

federal and Maryland unfair competition claims, the California Claim is premised on MRIS's

alleged "group boycott" and "sham litigation" against AHRN.  (*Id.* ¶ 73) and should be rejected

for the reasons detailed above.  In fact, MRIS has full immunity for its actions under the section

17200 safe harbor.  Accordingly, MRIS moves this Court for summary judgment on AHRN's

California Claim on the grounds that Cal. Bus. & Prof. Code § 17200 et seq. does not apply

extraterritorially to MRIS, or, alternatively, for dismissal under Rule 12(b)(6) for failure to state

a claim.

### 1.      AHRN's California Claim Does Not Apply Extraterritorially to MRIS

AHRN's California Claim against MRIS cannot apply extraterritorially.  *Northwest*

*Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222-23, 85 Cal. Rptr. 2d 18 (1999) (holding

that Cal. Bus. & Prof. Code § 17200 et seq. "contains no express declaration that it was designed

or intended to regulate claims of nonresidents arising from conduct occurring entirely outside of

California").  Cal. Bus. & Prof. Code § 17200 does not apply to nonresidents of California like

MRIS in connection with claims arising, if at all, from extraterritorial conduct.  AHRN has not

alleged, nor can it allege, any unlawful business acts and practices by MRIS in California that

violate Cal. Bus. & Prof. Code § 17200.  As the California statute does not apply to MRIS's

allegedly unfair activities beyond the borders of California, of which there are none, AHRN has

not, and cannot, provide any factual support for the California Claim.

Moreover, AHRN does not allege any injury-causing conduct in California other than

MRIS's actions to enforce its copyrights, conduct which occurred entirely in Maryland.  The

application of Cal. Bus. & Prof. Code § 17200 to MRIS under the circumstances would be

arbitrary and unfair, and transgress due process limitations.  *See Northwest Mortg.*, 72 Cal. App.

11

4th at 227 n.16.  The statute does not apply to nonresidents of California where, as here, the

allegedly wrongful conduct occurred outside California.  *Parkinson v. Hyundai Motor Am.*, 258

F.R.D. 580, 598 (C.D. Cal. 2008).  Courts outside California asked to apply Cal. Bus. & Prof.

Code § 17200 have reached the same conclusion.  *See Rikos v. Procter & Gamble Co.*, 1:11-cv-

226, 2012 WL 641946, * 4 (S.D. Ohio Feb. 28, 2012) (citing *Norwest* in holding that the statute

"cannot be constitutionally applied to the claims of class members who neither reside in

California nor purchased the [litigated] product there"); *Compliance Mktg., Inc. v. Drugtest, Inc.*,

No. 09-cv-01241-JLK, 2010 WL 1416823 * 17 (D. Colo. Apr. 7, 2010) (citing *Norwest* and

stating that "Plaintiffs' failure to allege specifically that complained-of conduct occurred in

California provides additional basis for dismissal").

AHRN may argue that its counterclaims allege that counterclaim defendant NAR held a

meeting in Anaheim, California, in November 2011 at which AHRN was allegedly discussed.

(Countercl. ¶ 35, Dkt. 46.)  This bare allegation is not sufficient to impose liability on MRIS

under the California unfair competition statute.  Nothing in the counterclaim alleges or

establishes that MRIS was a participant in any allegedly improper discussion, agreed to any

course of conduct with respect to AHRN with any third party, or otherwise participated in any

unlawful conduct, and MRIS did not do so.  (Charron Decl. ¶ 5.)  The California statute imposes

liability only for a party's "personal participation in the unlawful practices."  *People v. Toomey*,

157 Cal. App. 3d 1, 14, 203 Cal. Rptr. 642 (1984).  Moreover, a defendant's liability under the

California statute must be based not only on its personal participation in the unlawful practices

but also its "unbridled control" over the practices that allegedly violate the statute.  *Emery v. Visa*

*Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002).  Thus, although MRIS representatives

attended the NAR annual meeting in November 2011 in Anaheim, California, and have

12

participated in other MRIS activities in California, there is no evidence that MRIS itself engaged

in any unfair, unlawful, or fraudulent activities in California related to AHRN or otherwise.

(Charron Decl. ¶ 6.)  AHRN is prohibited from imputing the alleged activities of NAR or of any

of the alleged Does to MRIS because the doctrine of vicarious liability does not apply to claims

under Cal. Bus. & Prof. Code § 17200 as a matter of law.  *Emery*, 95 Cal. App. 4th at 960 ("The

concept of vicarious liability has no application to actions under the unfair business practices

act." (citing *Toomey*, 157 Cal. App. 3d at 14)).  All of MRIS's activities against AHRN, as

detailed in MRIS's Complaint (Dkt. 1), are lawful, unilateral actions rather than, as contended by

AHRN, the result of concerted activity.

Accordingly, MRIS urges the Court to dismiss Count III because the California Claim

cannot apply to MRIS as a matter of law.

### 2. Even if the Court Determines It Has Jurisdiction over AHRN's California Claim, it is Impermissible and Must Be Dismissed

#### a. MRIS Is Entitled to Absolute Safe Harbor Protection Under the Federal Copyright Act and Lanham Act

MRIS merely seeks to enforce its federal rights under the Copyright Act and the Lanham

Act through this lawsuit.  (MRIS's Compl. *passim*, Dkt. 1.)  Because two specific federal laws

provide MRIS with legal authority for its actions, MRIS has an absolute "safe harbor" and

AHRN is prohibited from asserting section 17200 to assault that safe harbor.  *Williams v. Wash.*

*Mut. Bank*, No. Civ-07-2418-WBS-GGH, 2008 WL 115097 *4-5 (E.D. Cal. Jan. 11, 2008)

(dismissing a claim under section 17200 on the ground that the allegedly unfair activity was

authorized by law and thus subject to the safe harbor); *Chavez v. Whirlpool Corp.*, 93 Cal. App.

4th 363, 375 (2001) (holding that conduct was permissible under the *Colgate* doctrine and

therefore not unlawful or unfair); *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

163, 182-83 (1999) ("Acts that the Legislature has determined to be lawful may not form the

basis for an action under the unfair completion law.").  AHRN cannot assert the California Claim

against MRIS because the Copyright Act and Lanham Act authorize MRIS to enforce its rights.

*Augustine v. FIA Card Servs., N.A.*, 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (federal or

state law can provide a safe harbor).  Actions authorized by law cannot be considered unfair,

unlawful, or fraudulent.  Indeed, this Court has already held that MRIS's enforcement of its

copyrights was a legitimate exercise of those rights.  Therefore, the California Claim fails and

Count III must be dismissed as a matter of law.

> **b.     AHRN Failed to Meet the Pleading Standards Under Rule 9(b)
> Applied to the California Claim Grounded in Fraud**

AHRN's counterclaim asserts that MRIS's actions constitute fraud under section 17200.

(Countercl. ¶ 74, Dkt. 46.)  AHRN's allegations are deficient because they fail to meet the

heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure related to

fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (affirming dismissal and

confirming that the heightened pleading standards of Rule 9(b) apply to a section 17200 claim).

AHRN makes no showing of fraud.  At best, AHRN only alleges that MRIS misrepresents its

copyright ownership in the content of the MRIS Database, allegations which this Court has

already rejected.  AHRN makes no allegations regarding which specific MRIS materials contain

fraudulent statement or that it has relied on MRIS's claims of copyright ownership and/or

MRIS's copyright notices, as required by law.  *Kearns* at 1126 (requiring specificity in

allegations of fraud, including a showing of actual reliance).  As AHRN has made clear, it gives

no weight to MRIS's copyright rights as it has apparently been copying the MRIS Database since

AHRN's inception, recently changed its method of copying (*see* AHRN's Cardella Decl. ¶ 8,

Dkt. 54-1), and refuses to respect this Court's August 27, 2012, Order.  The Cal. Bus. & Prof.

Code § 17200 counterclaim cannot stand because, by its own admission, AHRN does not rely on

MRIS's allegedly fraudulent representations.  *Id*.; *see also Buckland v. Threshold Enters., Ltd.*, 66 Cal. Rptr. 3d 543, 547-48 (Cal. Ct. App. 2007).  AHRN does not allege or demonstrate sufficient facts or reliance to sustain a claim for fraud, and the claim must be dismissed for failure to state a claim.

> ### c.      AHRN's California Claim Allegations Wrongly State that MRIS Is a Competitor of AHRN

The purpose of Cal. Bus. & Prof. Code § 17200 "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  AHRN is neither a competitor of MRIS nor does AHRN have a business relationship with MRIS.  MRIS does not sell any products or services to AHRN.  Accordingly, AHRN is not a "consumer" of any MRIS products or services, as required by the statute.  *See Buckland*, 66 Cal. Rptr. 3d at 550-51.  MRIS provides multiple listing services to its subscribers—real estate professionals.  MRIS is *not* a real estate broker or agent, and is not engaged in broker services, or in the purchase, rental or sale of the real estate properties listed by brokers in the MRIS Database.  (Charron Decl. ¶ 8.)  As a result, MRIS does not compete with AHRN and does not seek any competitive advantage over AHRN.  (Charron Decl. ¶ 7.)  AHRN has not made any allegation to the contrary.  Consequently, MRIS cannot, as a matter of law, engage in unfair competition against AHRN, AHRN does not have standing to bring claim against MRIS under Cal. Bus. & Prof. Code § 17200, and it must be dismissed. *Buckland* at 550-51.

**D.     Count IV, Section 1 of the Sherman Act, Is Unavailable to AHRN, Rests on Conclusory Allegations, and Must Be Dismissed**

**1.     MRIS's Lawsuit Does Not Constitute "Sham Litigation" Thus MRIS Has Immunity from AHRN's Antitrust Claim**

As AHRN concedes (Countercl. ¶¶ 50-56, Dkt. 46), AHRN must show that MRIS's copyright and trademark infringement action constitutes "sham litigation" or the Court must dismiss the antitrust claim as a matter of law. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993) (holding that an objectively reasonable effort to litigate a copyright claim cannot be "sham," and immunity from antitrust liability applies). A "sham litigation" is one that is brought with the knowledge that it is objectively baseless *and* nonetheless initiated for an anticompetitive purpose. *Id*. at 60-61. AHRN's position that MRIS's copyright and trademark infringement action constitutes a "sham litigation" is remarkable and untenable. This Court has already found that MRIS owns valid copyrights in the MRIS Database and that the suit was a legitimate enforcement of MRIS's rights against AHRN. (Mem. Op., Dkt. 34.) In fact, the Court found on summary judgment that MRIS's copyrights were valid and not asserted for anticompetitive purposes. (*Id.* at 28.) The Court also granted MRIS's motion for preliminary injunctive relief on the basis that MRIS was likely to succeed on the merits of its copyright claim. (*Id.* at 24.)

Where, as here, a party has prevailed on the merits of its claim in the context of both summary judgment and obtained preliminary injunctive relief, an allegation of "sham litigation" rings especially hollow. *Omni Resource Dev. Corp.*, 739 F.2d at 1414 (affirming dismissal and holding that "Indeed, the suit cannot be characterized as baseless at all; for although we do not know the outcome, at least to the point of a preliminary injunction the state court plaintiffs were successful.") MRIS has full immunity from AHRN's antitrust claims and Count IV must be dismissed. *Prof'l Real Estate Investors*, 508 U.S. at 60-61 ("If an objective litigant could

16

conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under [*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961),] and an antitrust claim premised on the sham exception *must fail.*") (emphasis added).

> **2.  Under *Twombly* and Fourth Circuit Precedent, Conclusory Allegations of Concerted Action Are Insufficient to State a Claim Under Section 1 of the Sherman Act**

> **a.  The Legal Standard for a Section 1 Sherman Act Claim**

AHRN cannot make out an antitrust claim.  To establish a Sherman Act Section 1 restraint-of-trade antitrust violation, a plaintiff must plead "(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade."  Sherman Act § 1, 15 U.S.C. § 1. The Sherman Act's prohibition against restraint of trade applies only to concerted action, which requires evidence of an unlawful relationship between at least two legally distinct persons or parties.  *Id.*  AHRN offers absolutely no evidence of any impermissible relationship between MRIS and any other party.

The sufficiency of a party's pleading under Section 1 of the Sherman Act must be determined via the "two-pronged approach" stated in the Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 66 (2009), and *Twombly*.  In *Twombly*, the Supreme Court stated that a pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555.  In other words, a party's "'naked assertions' devoid of 'further factual enhancement'" are not enough to withstand dismissal.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Plausibility requires that the factual allegations "be enough to raise a

right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. at 555 (footnote and citation omitted).

In *Twombly*, the plaintiff alleged that "major telecommunications providers [had] engaged in certain parallel conduct unfavorable to competition" and thus violated Section 1 of the Sherman Act. *Id*. at 548-49. In finding such allegations factually insufficient, the court concluded that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" due to the "ambiguity of the behavior," and stated that certain activities may appear "consistent with conspiracy," but are in fact "as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id*. at 554, 556. Accordingly, a Section 1 claim requires evidence that tends to exclude the possibility of independent action, and "must be placed in a context that raises a suggestion of a preceding agreement." *Id*. at 557. Under *Twombly*, a pleading must contain contextual evidence to substantiate a claim that a conspiracy existed and that an agreement was made.

Recent District of Maryland decisions confirm that conclusory allegations of concerted action in alleged violation of Section 1 of the Sherman Act, like those made in AHRN's Sherman Act counterclaim, are insufficient to withstand a motion to dismiss. Holding that "unsupported conclusory allegations will not suffice" the court in *Ohio Learning Centers LLC v. Sylvan Learning, Inc.* found that the plaintiff's complaint "is completely devoid of any specific allegation tending to show that there was an actual agreement." Civ. A. No. RDB-10-1932, 2012 WL 3025106 at * 15 (D. Md. July 24, 2012). At most, AHRN has alleged parallel business conduct. Such allegations cannot support a Sherman Act Section 1 claim as a matter of law. *Id.; accord Loren Data Corp. v. GXS, Inc.*, Civ. A. No. DKC-10-3474, 2011 WL 3511003 at *5 (D. Md. Aug. 9, 2011) (dismissing Sherman Act Section 1 claim for relying on conclusory

allegations and failing to allege adequate facts to establish an anticompetitive agreement).   Only specific allegations are sufficient.  *See e.g., Robertson v. Sea Pines Real Estate Cos.,* 679 F.3d 278, 288-89 (4th Cir. 2012) (plaintiff's allegations could withstand dismissal because, unlike AHRN, the complaint provided detailed information regarding the content of the alleged anticompetitive rules actually adopted by the defendant which constituted "direct evidence" that the "defendants convened and came to an agreement.").

These decisions establish that a claim brought under Section 1 of the Sherman Act must contain sufficient factual support regarding the nature of the "agreement" alleged to constitute concerted action, and uphold the ruling of *Twombly*, namely, that a "formulaic recitation of the elements of a cause of action will not do" to withstand a motion to dismiss.  *Twombly*, 550 U.S. at 555.  In making the determination that plaintiffs provided more than "formulaic recitation," the *Twombly* court noted that such a determination was not taken lightly, given the time and expense involved in modern antitrust litigation.  *Twombly*, 550 U.S. at 558 ("The costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no likelihood that the plaintiffs can construct a claim from the events related in the complaint."); *see also Océ N. Am., Inc. v. MCS Servs., Inc.*, 795 F. Supp. 2d 337, 344 (D. Md. 2011) ("MCS bears the initial burden of pleading sufficient allegations to warrant the lengthy discovery required of antitrust cases.  Here, MCS has not done so.").

### b.      AHRN Fails to Provide Sufficient Factual Support for Its Sherman Act Claim Under *Twombly*

In support of its Section 1 claim under the Sherman Act, AHRN states that NAR, MRIS, Northstar MLS, and unnamed Does have engaged in a "concerted anti-competitive group boycott of AHRN" (AHRN Countercl. ¶ 6) and have "banded together at the behest, with the

19

encouragement, and with the promise of financial support from NAR and in collaboration with

NAR and other MLSs, to stop AHRN . . ." (Counterclaim ¶ 8, Dkt. 46).  This allegation, even if

true, has already been held by this Court as insufficient to sustain a claim "that MRIS is

attempting to 'control competition in an area *outside its copyright*' . . . ."  (Mem. Op. 28, Dkt. 34

(citation omitted) (emphasis in original).

To support its allegation that MRIS, NAR, Northstar MLS and others are engaged in a

"concerted anti-competitive boycott," AHRN alleges that NAR (and not MRIS) "led

discussions" during its November 11-14, 2011, meeting in Anaheim, California (Countercl. ¶ 20,

Dkt. 46), and that "the litigation by MRIS and Northstar against AHRN were discussed by the

NAR Board" (*id.*).  AHRN further alleges that "beginning in November, just before the Anaheim

meeting," AHRN began to receive a "torrent of cease-and-desist letters from brokers and MLSs"

that were "substantially similar in form and content."  (*Id.* ¶ 36.)  AHRN claims that a December

22, 2011, email from John Mosey of Northstar MLS ("Mosey Email"), in which Mr. Mosey

called for "collective action" and "a world of hurt" to be imparted on AHRN's Jonathan

Cardella, serves as further evidence of the concerted action on the part of NAR, MRIS,

Northstar, and others.  (*Id.* ¶ 39.)  AHRN claims that NAR, MRIS, Northstar, and others engaged

in a "group boycott" by refusing to negotiate a license agreement with AHRN.  (*Id.* ¶ 42.)

AHRN summarizes its allegations under Section 1 of the Sherman Act with the following

conclusive, unsupported statement: "On information and belief, the cease and desist letters,

refusal and repudiation letters, were coordinated by discussions and agreements among NAR,

MLS, brokers."  (*Id.* ¶ 48.)

AHRN explains that it "seeks damages and injunctive relief to bar Defendants' unlawful

predatory conduct," but does not specify the "predatory conduct" Defendants have allegedly

engaged in.  (*Id.* ¶ 9.)  AHRN's nonspecific allegations of "discussions" at a November 2011 meeting, receipt of what it characterizes as "substantially similar" cease-and-desist letters, the Mosey Email, repudiations of "custom license" offers from AHRN, and the timing of MRIS's filing of its Complaint in this action are insufficient to demonstrate "concerted action" under the two-prong approach of *Twombly*.  Despite the requirement to do so, AHRN provides few, if any, facts regarding the content of the alleged "discussions" that took place at the November 2011 meeting or the "specific contours" of any alleged "agreement" reached between MRIS, NAR, Northstar, and others.  The allegations are therefore insufficient to sustain the claim.  *Loren Data at* * 5 (holding that the Sherman Act claim must be dismissed for failure to identify "the time or place at which the agreement was reached, or the specific contours of such agreement."); *Ohio Learning Centers* at * 15 (dismissing the antitrust claim, noting the requirement of specific allegations, and holding that "Plaintiffs have failed to allege any facts that tend to exclude the independent self interested conduct of the [Defendants].").

　　As required by the *Twombly* and *Ohio Learning Centers* decisions, AHRN fails to acknowledge that the allegedly "substantially similar" cease-and-desist letters AHRN received could be explained reasonably by the fact that each MLS faced a similar threat to its own copyrighted works from the same source: AHRN.  As the Court found in *Twombly*, AHRN's "bare assertion of conspiracy" based upon "an allegation of parallel conduct" is insufficient to state a claim for relief under Section 1 of the Sherman Act due to the "ambiguity of the behavior," and that certain activities may appear "consistent with conspiracy," but are in fact "as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market."  *Twombly*, 550 U.S. at 554.  The alleged "parallel" actions on the part of MRIS, Northstar, and, presumably, the to-be-named MLS Does

are readily explained by the fact that each of these MLSs could have shared a "common perception" of AHRN's infringement, faced a similar threat from AHRN, and asserted copyright claims against AHRN to protect their respective rights.  *See Ohio Learning Centers* at * 15.

Regarding MRIS specifically, AHRN fails to allege any facts supporting its claim that MRIS itself has "banded together" with NAR or any other party with respect to any matter related to AHRN.  AHRN does not even allege that MRIS was present at NAR's November 2011 meeting or participated in any of the allegedly improper discussions, or state any facts supporting its claim that MRIS has entered into any alleged "agreement" with NAR or any other party not to grant a license to the MRIS Database to AHRN.  Nor has AHRN shown that MRIS is in any way responsible for statements made at a NAR meeting by any third party attending that meeting, or that MRIS had any role in the drafting and sending of the Mosey Email.  AHRN has further failed to allege that MRIS had any role in drafting any cease-and-desist letters received by AHRN, other than the cease-and-desist letter sent to AHRN by MRIS on November 18, 2011.  Without such factual support or specificity, AHRN has failed to allege that MRIS has engaged in "concerted action" in violation of Section 1 of the Sherman Act, and Count IV of its counterclaim must be dismissed.  *Loren Data* at *4 ("Section one of the Sherman Act applies only to concerted action; unilateral conduct is excluded from its purview.") (*quoting Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 702 (4th Cir. 1991) (remaining citations omitted ).

### 3.      AHRN Is Not a Competitor of MRIS and MRIS Has No Intention of "Driv[ing] AHRN Out of Business"

AHRN states that "MRIS's lawsuit against AHRN in this Court, and Northstar's lawsuit against AHRN in Minnesota are in furtherance of NAR's efforts to drive AHRN out of business and eliminate AHRN as a competitor in the market for real estate broker services."  (Countercl. ¶ 6, Dkt. 46.)  AHRN describes itself as being in the "business of making referrals to buy-side

real estate agents and brokers for residential real estate listed on NeighborCity.com." (*Id.* ¶ 8.)

MRIS is not a competitor to AHRN in this "business." Rather, MRIS provides multiple listing

services to real estate professionals. (MRIS's Compl. ¶ 13, Dkt. 1.) Contrary to AHRN's

statement, MRIS does not "broker, market and sell real estate throughout the United States."

(Countercl. ¶ 16, Dkt. 46.) MRIS is not engaged in broker services, or in the purchase, rental, or

sale of the real estate properties listed by brokers in the MRIS Database. (Charron Decl. ¶ 8.)

Though AHRN claims that MRIS's copyright and trademark infringement action against

AHRN is "in furtherance of NAR's efforts to drive AHRN out of business," AHRN alleges no

facts showing that MRIS has any intention of driving AHRN out of business, other than,

presumably, the fact that MRIS is acting to protect its copyright in the MRIS Database through

this Action. As an MLS, MRIS does not discriminate or otherwise apply exclusionary practices

to any real estate broker who adopts "innovative" business practices. (Charron Decl. ¶ 9.)

MRIS, as a matter of practice, treats all broker subscribers the same under the MRIS Rules and

Regulations, irrespective of their specific respective business practices. (*Id.* ¶ 10.) MRIS Rules

and Regulations are available on the MRIS website. (*Id.*) Through the MRIS Database, MRIS

provides a level playing field that permits small brokers to compete fairly against larger brokers.

(*Id.* ¶ 11.) MRIS has been willing to do business with AHRN provided that AHRN gains access

to MRIS Database content legitimately through one of the available MRIS licensing or

syndication programs, and complies with MRIS's applicable license restrictions. (*Id.* ¶ 12.)

AHRN has not expressed any interest in such a license. (*Id.*)

### 4.   MRIS Has the Right as a Copyright Owner to Refuse to Issue AHRN a Custom License for Content from the MRIS Database

AHRN alleges that the repeated "repudiation" of its offers to negotiate a license "for the

use of the brokers' or multiple listing services' website" was "rebuffed out of hand without

negotiations." (Countercl. ¶ 42, Dkt. 46.)  It is well established that a copyright owner has the unilateral right to license its copyrighted content to any party, or to refuse to license such content to any party.  ( Mem. Op. 28, Dkt. 34); *see also*, *Océ*, 795 F. Supp. 2d at 344 (granting motion to dismiss antitrust counterclaim on ground that it contained only statement that counterclaim defendant's refusal to license was pretext for anticompetitive behavior without additional support or further factual enhancement to this allegation) (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1187 (1st Cir. 1994) ("[A]n author's desire to exclude others from use of its copyrighted work is a presumptively valid business justification for any immediate harm to consumers.") (abrogated on other grounds)).

Regarding MRIS's rejection of AHRN's offer to create a custom license, this Court has already held that "MRIS's refusal to grant AHRN a license is not probative of an unlawful or anticompetitive purpose, especially where AHRN's offer followed its infringement of MRIS's copyrights and the receipt of a cease and desist letter."  (Mem. Op. 28-29, Dkt. 34.)  MRIS's refusal to grant AHRN a "custom license" was consistent with MRIS's copyrights and licensing practices, and does not support AHRN's Section 1 Sherman Act claim.

**E.      Count V, AHRN's Copyright Misuse Counterclaim, Is Improperly Asserted and Must Be Dismissed**

In Count V of its counterclaims, AHRN asserts that MRIS's enforcement of its copyrights against AHRN constitutes copyright misuse.  MRIS moves this Court for dismissal on the ground that copyright misuse may not be asserted as an affirmative claim.

**1.      Copyright Misuse Is an Affirmative Defense, Not an Affirmative Claim**

It is well settled that copyright misuse does not constitute an independent tort and is simply a defense to infringement.  *See, e.g.*, *Interscope Records v. Kimmel*, 307-cv-0108, 2007 WL 1756383 *5 (N.D.N.Y. June 18, 2007) (dismissing defendant's counterclaim of copyright

misuse because it is only cognizable as a defense); *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005); *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1198 n.4 (N.D. Cal. 2004) ("Plaintiffs cite no legal authority, and the Court is aware of none, that allows an affirmative claim for damages for copyright misuse."); *Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*, 746 F. Supp. 320, 328 (S.D.N.Y. 1990) (rejecting defendant's assertion of copyright misuse for affirmative relief); *see also* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §§ 13.09[A][2][b] (2007).  Because copyright misuse may only be asserted as an affirmative defense, AHRN's copyright misuse counterclaim must be dismissed as a matter of law.

### 2.     AHRN's Copyright Misuse Claim Is a Reformulation of AHRN's Copyright Misuse Defense and Was Previously Dismissed by This Court

To support its "copyright misuse" counterclaim, AHRN cites only MRIS's efforts to enforce its copyright.  This allegation is insufficient to state a claim for copyright misuse.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 253 F. Supp. 2d 943, 966 (E.D. Ky. 2003), *vacated on other grounds*, 387 F.3d 522 (6th Cir. 2004); *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995) (enforcing copyright against defendant who copied plaintiff's copyrighted materials not misuse); *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998) (enforcing copyright in computer game not copyright misuse).  As the court previously found, there is no factual basis for copyright misuse as asserted by AHRN.  (Mem. Op., 28-29, Dkt. 34.)  The law of the case doctrine precludes AHRN from again asserting this counterclaim.[3]

---

[3] AHRN also asserts copyright misuse as a defense.  (Answer, Tenth Affirmative Defense, Dkt. 46.)  For the reasons discussed herein, misuse is also not available to AHRN as a defense.

### 3.    Enforcement of Copyright Does Not Constitute Copyright Misuse

MRIS merely seeks to enforce its copyrights in the MRIS Database, and in no way is

MRIS attempting to use its copyright in the MRIS Database, or any version thereof, to control

competition from AHRN outside the copyright.  MRIS does not compete with AHRN.  (*See*

*supra*, Section IV.D.3.)  MRIS does not, in any way, seek to leverage its limited copyright rights

to control areas outside the scope of its copyright, and AHRN has provided no basis either for a

defensive or reformulated offensive claim.  MRIS's enforcement actions do not constitute

copyright misuse as a matter of law.

Moreover, copyright misuse "has rarely been upheld as a defense to a claim of copyright

infringement."  *Lexmark*, 253 F. Supp. 2d at 965.  The Fourth Circuit recognized the copyright

misuse defense in *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990).  In

*Lasercomb*, the Fourth Circuit became the first appellate court to recognize copyright misuse as a

defense to copyright infringement claims.  The misuse was based on a contractual covenant

against competition in Lasercomb's standard license agreement that prohibited licensees and

their directors, officers, and employees from writing, developing, or selling any software that

achieved the same results as the Lasercomb software.  *Id.* at 972-73.  The Fourth Circuit

concluded that Lasercomb's inclusion of the covenant against competition in Lasercomb's

standard license agreement, under the circumstances, was a misuse of Lasercomb's copyright.

*Id*. at 979.  *Lasercomb* is easily distinguished from the case at bar because MRIS does not have

any license agreement or other form of contract with AHRN.  (Charron Decl. ¶ 13).

## V.     CONCLUSION

For the reasons and authorities discussed above, and in the accompanying declaration of David Charron, MRIS respectfully requests the Court to dismiss with prejudice and/or summarily adjudicate each of the counterclaims asserted by AHRN against MRIS, namely: Count I (Lanham Act § 43(a)); Count II (Maryland Unfair Competition); Count III (Unfair Competition under Cal. Bus. & Prof Code § 17200); Count IV (Sherman Act § 1); and Count V (Copyright Misuse).


Respectfully submitted,



Dated:  November 9, 2012                    By:  /s/Margaret A. Esquenet
                                            John T. Westermeier (Bar No. 04364)
                                            (jay.westermeier@finnegan.com)
                                            Margaret A. Esquenet (Bar No. 27775)
                                            (margaret.esquenet@finnegan.com)
                                            Whitney Devin Cooke (*pro hac vice*)
                                            (whitney.cooke@finnegan.com)

                                            FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER, L.L.P.

                                            *Attorneys for Plaintiff*
                                            Metropolitan Regional Information Systems, Inc.

## CERTIFICATE OF SERVICE

I, Margaret A. Esquenet, hereby certify that on November 9, 2012 a copy of the

foregoing Motion of Counterclaim-Defendant Metropolitan Regional Information Systems,

Inc.'s Memorandum in Support of its Motion to Dismiss or in the Alternative, Summarily

Adjudicate Defendant AHRN's Counterclaims using the Court's CM/ECF system upon:


Richard S. Toikka
L. Peter Farakas
FARKAS & TOIKKA, L.L.P.
1101 30th Street N.W., Suite 500
Washington, DC 20007
rst@farkastoikka.com
lpf@farkastoikka.com


Christopher Ralph Miller
AMERICAN HOME REALTY NETWORK INC.
222 7th Street, Second Floor
San Francisco, CA 94103
c.miller@neighborcity.com

Matthew D. Krueger
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
mkrueger@sidley.com

Jack R. Bierig
Tacy F. Flint
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, IL  60603
jbierig@sidley.com
tflint@sidley.com


/s/Margaret A. Esquenet