**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| METROPOLITAN REGIONAL | * | |
| INFORMATION SYSTEMS, INC., | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-00954-AW |
| | * | |
| AMERICAN HOME REALTY NETWORK, | * | |
| INC., | * | |
| Defendant. | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM OPINION**</u>

## I.      PROCEDURAL BACKGROUND

On August 24, 2012 the Court granted Plaintiff Metropolitan Regional Information Systems, Inc.'s ("MRIS")'s Motion for Preliminary Injunction.  Doc. No. 35.  Pending before the Court is Defendant American Home Realty Network's ("AHRN")'s Motion to Clarify, Reconsider, or Suspend the Preliminary Injunction Order, Doc. No. 42, and MRIS's Motion for Modification of the Preliminary Injunction Order, Doc. No. 37.  The Court has reviewed the motion papers and concludes that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2011).  For the reasons articulated below, the Court will GRANT AHRN's Motion for Clarification, DENY AHRN's Motion for Reconsideration, DENY AHRN's Motion to Suspend the Preliminary Injunction, and GRANT-IN-PART MRIS's Motion for Modification.

## II.      MOTIONS FOR CLARIFICATION AND/OR MODIFICATION OF PRELIMINARY INJUNCTION ORDER

###      A.      <u>Specificity of Preliminary Injunction Order</u>

Rule 65(d)(1) of the Federal Rules of Civil Procedure provides that every order granting a preliminary injunction must "(A) state the reasons why it issued; (B) state its terms specifically;

and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  The specificity provisions of Rule 65(d) are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  The second function of the specificity provisions is to enable the appellate court "to know precisely what it is reviewing." *Id.* at 477.  Although the specificity provisions are mandatory, "the mere fact that interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him." *Scardelletti v. Rinckwitz*, 68 Fed. App'x 472, 479 (4th Cir. 2003) (alterations omitted) (citations omitted).

AHRN seeks clarification of the Court's August 24 Order granting MRIS a preliminary injunction on the grounds that the Order fails to comply with Rule 65(d)(1).  In that Order, the Court enjoined AHRN and all persons acting under its direction, control, or authority from "unauthorized copying, reproduction, public display, or public distribution of copyrighted content from the MRIS Database, and from preparing derivative works based upon the copyrighted content from the MRIS Database."  Doc. No. 35 (emphasis added).  The Court concludes that the language of the preliminary injunction Order—particularly the term "copyrighted content from the MRIS Database"—is not sufficiently specific given that the basis of the Court's Order was AHRN's copying of MRIS's copyrighted *photographs*.

In the August 24 Order and accompanying Memorandum Opinion, the Court denied AHRN's Motion to Dismiss MRIS's claims to the extent MRIS sought to enforce copyrights in the individual elements of the copyrighted MRIS Database.  The Court relied on *Xoom, Inc. v. Imagineline, Inc.*, 323 F.3d 279, 283–84 (4th Cir. 2003), which held that an owner and registrant of

a compilation may bring an infringement action on the underlying parts of a compilation where it also owns copyrights in the underlying parts, even where those underlying parts have not been individually registered with the U.S. Copyright Office.  Doc. No. 34 at 18.  AHRN's Motion to Dismiss was denied based on MRIS's showing that it owned copyrights in the underlying *photographs* of the registered MRIS Database.[1]  Because MRIS had credible evidence that it owned copyright in the photographs and because AHRN was displaying those photographs on Neighborcity.com, the Court also concluded that MRIS had shown a likelihood of success on the merits and granted MRIS's Motion for Preliminary Injunction.  As with the Motion to Dismiss, the Court's analysis with respect to MRIS's Motion for Preliminary Injunction depended on MRIS's ownership of the copyrights in the *photographs* and AHRN's unauthorized copying of those photographs on NeighborCity.com.[2]

In granting MRIS's Motion for Preliminary Injunction, there was no dispute that photographs containing the MRIS mark and copyright notice were featured on NeighborCity.com.  *See* Doc. No. 34 at 27.  However, the Court made no findings with respect to the underlying *textual* elements of the MRIS Database.  MRIS identified no textual elements of the MRIS Database that it independently registered with the U.S. Copyright Office, identified no textual elements in which it otherwise claimed copyright ownership, and did not show that

---

[1] Although the Opinion made references to MRIS's ownership of "individual elements" or "underlying parts" of the Database, the Court's holding relied on MRIS's ownership of the copyrights in the photographs.  *See, e.g.*, Doc. No. 34 at 18–19 ("In this case, MRIS, the owner and registrant of the MRIS Database compilation, has presented credible evidence that it also owns the copyrights in the underlying photographs. . . . [U]nder Fourth Circuit precedent, Defendants are not entitled to judgment as a matter of law on the grounds that MRIS did not individually register the photographs."); *id.* at 21 ("In this case, MRIS claims copyright ownership in the underlying works—the photographs—and the question is whether MRIS's registration of the MRIS Database permits an infringement action based on unauthorized display of those photographs."); *id.* at 23 ("Defendants are not entitled to judgment as a matter of law on the grounds that the assignments of copyrights in the individual photographs were void.").

[2] *See, e.g.*, Doc. No. 34 at 25 ("MRIS has also shown that it owns the copyrights of the underlying parts of the MRIS Database, as "© 2012 MRIS" notices are prominently displayed on the photographs of properties. . . . MRIS appears to have obtained these copyrights by assignment when the photographs were uploaded to the MRIS Database."); *id.* at 27 ("MRIS has presented persuasive evidence of AHRN's direct copying of photographs containing the MRIS mark and copyright notice.").

AHRN had engaged in unauthorized copying of textual elements of the MRIS Database.  Indeed,

the Court's August 24 Opinion acknowledged the possibility that MRIS did not own the

copyrights in the underlying textual elements, particularly listing information, but concluded that

this did not affect its holding with respect to the photographs.[3]  Moreover, the MRIS Subscriber

License and Access Agreement suggests that MRIS Principal Broker Subscribers, rather than

MRIS itself, own copyrights in the underlying textual elements:

> All listing information submitted by MRIS® Subscriber to MRIS® for inclusion
> in the MRIS® System shall be owned by MRIS® Principal Broker Subscriber.
> To confirm this ownership MRIS® Subscriber hereby irrevocably assigns to
> MRIS® Principal Broker Subscriber, all right, title and interest in any and all such
> listing information including the ownership of any copyright rights related to and
> in any such listing information.

Doc. No. 29-1 ¶ 4.5.  MRIS has made no attempt to explain this provision or the role of "MRIS

Principal Broker Subscribers."  Given the basis for the August 24 Opinion and Order and the

unresolved factual issues with respect to the underlying textual elements of the MRIS Database,

the August 24 Order must be revised to specify that AHRN is enjoined from unauthorized use of

MRIS's copyrighted photographs.

MRIS argues that the Order should not be modified based on the Court's previous finding

that the MRIS Database is entitled to copyright protection as a compilation.  In finding that

MRIS has established a likelihood of success on the merits, the Court held that (1) MRIS owned

a valid compilation copyright in the MRIS Database, and (2) AHRN had copied constituent,

original elements of the MRIS Database.  Doc. No. 34 at 24–27.  First, in ruling that MRIS

owned a valid compilation copyright, the Court found that the MRIS Database exhibited the

requisite originality for copyright protection.  The Court concluded that the MRIS Database

---

[3] *See* Doc. No. 34 at 23 n.8 ("Defendants also contend that because the MRIS TOU only covers *images*, MRIS cannot be the owner or assignee of the *listing information* to the extent it is copyrightable. . . . Even if the Court accepted Defendants' argument, it would not entitle them to judgment as a matter of law with respect to the *photographs*.") (emphasis added).

required original selection, arrangement, and coordination of thousands of real estate listings, public records, and other information, and exhibited the minimal level of creativity entitling the Database to copyright protection as a compilation.  Doc. No. 34 at 25–26 (relying on *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991)).  Second, in finding that AHRN had copied constituent, original content from the MRIS Database, the Court relied on the undisputed evidence that MRIS's copyrighted *photographs* were featured on NeighborCity.com.[4] *Id.* at 27.  Aside from the photographs, MRIS did not identify with particularity any original selection, coordination, and arrangement of informational content in the Database that AHRN had copied.  Furthermore, the Court did not conclude in its August 24 Opinion that AHRN had copied the entirety of the MRIS Database, and the factual record at this stage of the proceedings does not dictate such a conclusion.

MRIS alleges in its Opposition to AHRN's Motion to Clarify that based on a recent analysis of NeighborCity.com, AHRN copies the entire Database from an unlicensed data feed, programmatically disables the copyrighted photographs supplied by MRIS, and replaces them with photographs supplied by Google.[5]  Doc. No. 48-1, Belak Aff. ¶ 2.  As evidence of AHRN's copying, MRIS notes that fictitious property listings, created by MRIS for the purpose of quality control and enforcement, are featured on NeighborCity.com.  *Id.* ¶ 3, Ex. A.  MRIS also notes that AHRN has the ability to delineate the data on its website and alter content based on its source because the property photographs have only been removed from NeighborCity.com pages with MRIS property listings, but not from the listings of other multiple listing services.  *Id.* ¶¶ 6–

---

[4] There was no dispute that the photographic elements within the MRIS Database exhibited the requisite originality for copyright protection.

[5] AHRN moves to strike the evidence attached to MRIS's Opposition on the grounds that MRIS should have presented this evidence in its original Motion for Preliminary Injunction.  However, most of MRIS's evidence concerns factual developments following entry of the August 24 Order, particularly the removal of MRIS's copyrighted photographs from NeighborCity.com.  Accordingly, the Court will consider MRIS's evidence and AHRN's motion to strike is denied.

9, Ex. C.  AHRN disputes MRIS's allegations that it has engaged in wholesale copying of the MRIS Database.  Specifically, AHRN maintains that it does not access or copy any part of the MRIS Database, has no method or means of access to the MRIS Database, and has not accessed or attempted to access the MRIS computer systems or database.  Doc. No. 54-1, Cardella Aff. ¶ 4.  AHRN also asserts that it does not access or copy any part of MRIS's data feed and has not accessed any data feed originating from or belonging to MRIS.  *Id.* ¶ 5.  Given these unresolved factual issues, the Court must decline to expand the scope of the injunction beyond MRIS's copyrighted photographs.[6]

For the foregoing reasons, the Court will revise the preliminary injunction as follows: AHRN and all persons acting under its direction, control or authority are hereby preliminarily enjoined from unauthorized copying, reproduction, public display, or public distribution of MRIS's copyrighted photographs and from preparing derivative works based upon MRIS's copyrighted photographs.  The revised Order complies with Rule 65(d) because it is sufficiently specific, is tied to the reasoning and basis of the August 24 Opinion, and effectively puts AHRN on notice of the proscribed conduct.

The Court's revised Order does not imply that MRIS's copyright interests in the MRIS Database end with the photographs.  To the contrary, MRIS has demonstrated a likelihood of success on the merits that the MRIS Database exhibits the requisite originality for copyright

---

[6] AHRN does not appear to dispute that the fictitious property listings are featured on NeighborCity.com.  Doc. No. 54-1 ¶¶ 6–7.  Given the incomplete factual record, however, the revised preliminary injunction will not address the fictitious listings.  MRIS has not expressly asserted that these fictitious listings constitute protected, original content from the MRIS Database.  Furthermore, MRIS has not argued, and the Court will not assume, that MRIS is likely to suffer irreparable harm on the grounds that the fictitious listings are reproduced on NeighborCity.com.  The Court's August 24 finding that MRIS was likely to suffer irreparable harm was largely based on AHRN's reproduction of MRIS's copyrighted photographs on NeighborCity.com listing pages.  Doc. No. 34 at 29–30.  MRIS presented evidence that these listing pages contained inaccuracies, thereby risking MRIS's reputation and a loss of customer goodwill.  *Id.*  The same risks do not appear to be present with respect to the fictitious property listings, particularly given AHRN's evidence that these listings are widely available on several other public websites.  Doc. No. 54-1 ¶ 6–7.

protection. The Court is mindful, however, that "the copyright in a factual compilation is thin. Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." *Feist*, 499 U.S. at 349. For compilations and other copyrightable works, "copyright protection may extend only to those components of a work that are original to the author." *Id.* at 348. Generally proscribing the misappropriation of "copyrighted content from the MRIS Database" would be too vague in light of the unresolved and complex factual issues in this case, and the Court will adopt a cautious approach in setting forth the initial terms of the preliminary injunction. If, following discovery, MRIS (1) identifies original selection and arrangement of informational content in the MRIS Database and establishes AHRN's copying of that original selection and arrangement or (2) establishes that AHRN has copied particular, copyrightable textual elements which are also owned by MRIS, and meets the other requirements for a preliminary injunction, the Court will consider revising the scope of the Order.

Accordingly, AHRN's Motion to Clarify will be GRANTED, and the Court will issue a revised Order consistent with this Opinion and its August 24 Opinion.

B.    Security Requirement

Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Both parties seek modification of the Order because it failed to specify that MRIS would post security prior to issuing the preliminary injunction. The Court agrees that the Order must be modified in order to comply with Rule 65's security requirement.

The parties disagree as to the amount of security MRIS must provide.  "In fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order."  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999).  Security is generally fixed in an amount covering "the potential incidental and consequential costs" as well as either the losses the wrongly enjoined party will suffer or the amount of the complainant's unjust enrichment during the period of prohibited conduct.  *Id.*  "Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant, the court may fix the amount of bond accordingly.  In some circumstances, a nominal bond may suffice."  *Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 Fed. App'x 134, 139 (4th Cir. 2001) (quoting *Hoechst*, 174 F.3d at 421 n.3).

MRIS offers security of $5,257.50, which, as stated in AHRN's Motion to Dismiss, represents AHRN's referral fees from Maryland real estate brokers in 2011.  Doc. No 24-1 at 17.  AHRN argues that MRIS should be required to post security of at least $275,000.00.  AHRN calculates this figure based on projections of its referral revenue from *all* of the MRIS broker listings on its website.  Although AHRN projects $53,702.99 in such revenue for 2012, its suggested bond is based on income for 2013 assuming a revenue growth rate of more than 582%.  *See* Doc. No. 45-1, Cardella Aff. ¶¶ 3–8.  AHRN also considers other "intangible factors" such as the adverse impact an injunction would have on its revenue growth rate, its ability to raise cash, or its ability to find buyers for the company.  *Id.* ¶ 9.

AHRN's calculations and proposed security amount are not based on enjoining AHRN's use of MRIS's copyrighted photographs.  Moreover, AHRN has removed or is in the process of

removing MRIS's copyrighted photographs from NeighborCity.com and has not presented any specific evidence of damages sustained due to the removal of the photographs.  Although MRIS has made a plausible argument in support of its proposal, the Court finds that $10,000.00 is a fair and appropriate security amount given the issues presented in this case.

Accordingly, MRIS's Motion for Modification is GRANTED-IN-PART, and the Court's revised preliminary injunction will take effect when MRIS posts security in the amount of $10,000.00.

### III.   MOTION TO RECONSIDER PRELIMINARY INJUNCTION ORDER

Courts interpreting Rule 59(e) of the Federal Rules of Civil Procedure have recognized three grounds for amending an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).  AHRN argues that the Court committed clear error in holding that AHRN was not entitled to judgment as a matter of law on MRIS's infringement claims with respect to the individual photographs in the MRIS Database.

In support of its Motion to Dismiss, AHRN argued that MRIS could not state a claim for infringement on the photographs because the assignments of these photographs to MRIS were void.  AHRN claimed that the MRIS Terms of Use Agreement ("TOU") and the electronic process in which MRIS subscribers assigned copyrights in the photographs to MRIS did not comply with Section 204(a) of the Copyright Act, which requires assignments to be in writing and signed by the assignor.  The Court held that AHRN was not entitled to judgment as a matter of law pursuant to Section 204(a).  That section provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a

note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  The Court relied on the Electronic Signatures in Global and National Commerce Act ("E-SIGN"), 15 U.S.C. §§ 7001 *et seq.*, in rejecting AHRN's argument that the assignments were invalid.  E-SIGN provides, in relevant part:

> "[n]otwithstanding any statute, regulation, or other rule of law . . . with respect to any transaction in or affecting interstate or foreign commerce--
> (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and
> (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

15 U.S.C. § 7001(a).  "The term 'electronic signature' means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record."  *Id.* § 7006(5).  The Court concluded that the MRIS TOU[7] was clear in its terms and that the electronic process by which MRIS subscribers assigned the copyrights in the photographs met E-SIGN and Section 204(a) requirements.  Accordingly, the Court held that the assignments were not invalid as a matter of law.

As a preliminary matter, the Court will address AHRN's argument that the preliminary injunction Order is deficient because the August 24 Opinion did not discuss Section 204(a) or E-SIGN in its ruling on MRIS's Motion for Preliminary Injunction.  AHRN is technically correct

---

[7] The Court relied on the following provision in the TOU:

> All images submitted to the MRIS Service become the exclusive property of Metropolitan Regional Information Systems, Inc. (MRIS).  By submitting an image, you hereby irrevocably assign (and agree to assign) to MRIS, free and clear of any restrictions or encumbrances, all of your rights, title and interest in and to the image submitted.  This assignment includes, without limitation, all worldwide copyrights in and to the image, and the right to sue for past and future infringement.

Doc. No. 26, Heithaus Decl. ¶ 8.

that the Court's discussion of those statutes occurred in the section of the Opinion which denied

AHRN's Motion to Dismiss.  However, in ruling that MRIS had shown a likelihood of success

on the merits, the Court stated that "MRIS appears to have obtained these copyrights by

assignment when the photographs were uploaded to the MRIS Database by subscribers."  Doc.

No. 34 at 25 (citing to Part IV.B of Memorandum Opinion, which contained discussion of

Section 204(a) and E-SIGN).  The Court therefore relied on its conclusion that the assignments

were not invalid in holding that MRIS was likely to succeed on the merits of its infringement

claims with respect to the photographs.

AHRN argues that several courts have invalidated copyright transfers under Section

204(a) since E-SIGN was enacted, but none of these cases support a finding that the Court

committed clear error.  In *American Plastic Equipment, Inc. v. Toytrackerz, LLC*, No. 07-2253-

DJW, 2009 WL 902422 (D. Kan. Mar. 31, 2009), the district court denied Plaintiff's motion for

summary judgment because Plaintiff failed to establish that it owned the copyrights at issue

given the unclear chain of title.  *Id.* at *5–7.  However, *Toytrackerz* did not address electronic

transfers, much less the applicability of E-SIGN to the Copyright Act, and therefore offers little

guidance to the Court on the issues before it.

AHRN next cites *Crispin v. Christian Audiger, Inc.*, 839 F. Supp. 2d 1086 (C.D. Cal.

2011), but as with *Toytrackerz*, *Crispin* did not address electronic communications or E-SIGN.

The *Crispin* court found that a purported copyright transfer was invalid because an *unsigned*

agreement in combination with a cashed check could not form the basis of the signed writing

required by Section 204(a).  *Id.* at 1091–92.  In *Luar Music Corporation v. Universal Music

Group, Inc.*, 861 F. Supp. 2d 30, 36 (D.P.R. 2012), the court held that an exchange of e-mails

and an *unsigned* agreement did not satisfy the signed writing requirement of Section 204(a).

Like *Crispin*, *Luar* did not address the applicability of E-SIGN to Section 204(a) of the Copyright Act.  Regardless, the transfers of the copyrights to MRIS do not suffer from the infirmities of the purported transfers in *Crispin* and *Luar*.  As the Court found in its August 24 Opinion, the terms of the conveyances to MRIS were clear based on the TOU and the process by which the copyrights were transferred satisfied the signature requirement of E-SIGN and Section 204(a).  Doc. No. 34, at 22–23.

AHRN also cites *McMunigal v. Bloch*, No. 10-02765-SI, 2010 WL 5399219 (N.D. Cal. Dec. 23, 2010) in support of its Motion for Reconsideration.  In *McMunigal*, the court found that a series of e-mails between plaintiff and defendant did not satisfy the writing requirement of Section 204(a) because it merely evidenced negotiations.  *Id.* at *8.  The court held that "[i]n order to satisfy Section 204(a)'s signed writing requirement, plaintiff must be able to point to a single writing from defendant that evidences the parties' full and complete agreement to transfer the copyright."  *Id.*  The court expressly declined to reach the issue of whether E-SIGN applied to the transfer of copyright interests because no "writing" was alleged.  *Id.* at *8 n.4.  Unlike the electronic communications in *McMunigal*, the TOU and the subscribers' electronic submissions of photographs, properly considered an "electronic signature" under E-SIGN, evidence the parties' full and complete agreement to transfer the copyrights MRIS seeks to enforce in this case.  *See* Doc. No. 34 at 22–23.

In its August 24 Opinion, the court cited *Vergara Hermosilla v. Coca-Cola Co.*, No. 12-21418-CIV, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011) in support of its holding that AHRN was not entitled to judgment as a matter of law.  *See* Doc. No. 34 at 23.  AHRN argues in its Motion that this case is inapposite, but AHRN overstates the extent to which the Court relied on *Vergara Hermosilla*.  The Court's holding in its August 24 Opinion was based on a statutory analysis of

relevant provisions of E-SIGN and Section 204(a).  *Vergara Hermosilla* is only relevant to this case insofar as that court cited E-SIGN in support of the proposition that electronic communications *may* constitute signed writings and therefore satisfy Section 204(a).[8]

In its Reply brief, AHRN introduces several new legal arguments in support of its position.  AHRN cites regulations and circulars promulgated by the U.S. Copyright Office regarding the recording of transfers of copyright ownership and argues that the transfer of copyrights from MRIS's subscribers do not meet the requirements for a recordable transfer.  *See* 37 C.F.R. § 201.4(c); U.S. Copyright Office, Circular 12.[9]  AHRN does not explain, however, how the cited regulations and circulars regarding *recordation* are relevant to determining the *validity* of the assignments themselves.  Similarly, E-SIGN's requirements as to electronic *filing* with government agencies do not affect the underlying *validity* of the subscribers' copyright assignments to MRIS.

AHRN also argues that the TOU Agreement does not meet the requirements of E-SIGN because the TOU is not accessible to the parties and is not a unitary agreement pursuant to 15 U.S.C. § 7001(d–e).[10]  Even assuming that the cited provisions are applicable to the copyright

---

[8] Even if it is true, as AHRN asserts, that no court has ever held that E-SIGN applies to Section 204(a), *Vergara Hermosilla* nevertheless supports the Court's conclusion.  Furthermore, AHRN has not cited any cases in which a court held that E-SIGN categorically did not apply to copyright assignments.

[9] AHRN also cites Circular 92.  According to the website for the U.S. Copyright Office, Circular 92 does not appear to be an independent document, but is rather a complete version of the U.S. Copyright Law as of December 2011.

[10] AHRN cites the following E-SIGN provisions:

(d) Retention of contracts and records

(1) Accuracy and accessibility

If a statute, regulation, or other rule of law requires that a contract or other record relating to a transaction in or affecting interstate or foreign commerce be retained, that requirement is met by retaining an electronic record of the information in the contract or other record that--

**(A)** accurately reflects the information set forth in the contract or other record; and
**(B)** remains accessible to all persons who are entitled to access by statute, regulation, or rule of law, for the period required by such statute, regulation, or rule of law, in a form

assignments at issue, AHRN fails to articulate how they require a "unitary document" and not a combination of records, such as the TOU in combination with a record of a subscriber's electronic submission of a photograph. AHRN also fails to explain how the assignments to MRIS are incapable of reproduction or retention.

Accordingly, the Court did not commit clear error in determining that MRIS could bring an infringement action on the photographs in the MRIS Database, and AHRN's Motion for Reconsideration is DENIED.

## IV.    MOTION TO SUSPEND THE INJUNCTION PENDING APPEAL

A party seeking a stay of a district court order pending appeal must show "(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). AHRN has not made a sufficient showing that the preliminary injunction should be stayed. Although AHRN intends to raise several legal issues on appeal, it has not shown that it is likely to prevail on these issues, particular given Fourth Circuit precedent in *Xoom, Inc v. Imageline Inc.*, 323 F.3d 279, 283–84 (4th Cir. 2003). It appears that AHRN has already removed MRIS's copyrighted photographs from its website, and has not established that it will

---

that is capable of being accurately reproduced for later reference, whether by transmission, printing, or otherwise.

…

(e) Accuracy and ability to retain contracts and other records

Notwithstanding subsection (a), if a statute, regulation, or other rule of law requires that a contract or other record relating to a transaction in or affecting interstate or foreign commerce be in writing, the legal effect, validity, or enforceability of an electronic record of such contract or other record may be denied if such electronic record is not in a form that is capable of being retained and accurately reproduced for later reference by all parties or persons who are entitled to retain the contract or other record.

15 U.S.C. § 7001(d–e).

suffer irreparable harm if the revised injunction is not stayed.  As the Court found in its August

24 Opinion, MRIS has made a showing that it is likely to be substantially harmed in the absence

of the injunction.  *See* Doc. No. 34 at 29–31.  Finally, AHRN has not presented any arguments as

to why the public interest will be served by granting the stay.

Accordingly, AHRN's Motion to Suspend the Preliminary Injunction is DENIED.

## V.   CONCLUSION

For the foregoing reasons, the Court will GRANT AHRN's Motion for Clarification,

DENY AHRN's Motion for Reconsideration, DENY AHRN's Motion to Suspend the

Preliminary Injunction, and GRANT-IN-PART MRIS's Motion for Modification.

The August 24 Order granting MRIS a preliminary injunction is hereby revised as

follows: AHRN and all persons acting under its direction, control or authority are hereby

preliminarily enjoined from unauthorized copying, reproduction, public display, or public

distribution of MRIS's copyrighted photographs and from preparing derivative works based

upon MRIS's copyrighted photographs.

The injunction will take effect when MRIS posts security in the amount of $10,000.00.

A separate Order will follow.


    November 13, 2012                                              /s/
          Date                                        Alexander Williams, Jr.
                                                      United States District Judge