IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., <br><br>          **Plaintiff,** <br><br> v. <br><br> AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA, <br><br>          **Defendants.** | CIVIL ACTION NO. AW 12-cv-0954 |

### STIPULATION ON THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION

1. The parties Metropolitan Regional Information Systems, Inc. ("MRIS) and American Home Realty Network, Inc. ("AHRN") hereby stipulate to the following provisions for the production of Electronically Stored Information ("ESI"). This stipulation is designed to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1, and implement the "Suggested Protocol for Discovery of Electronically Stored Information" provided by this Court. Supplemental Technical Standards are attached as Exhibit A.

2. On a date agreeable with all parties, each Party shall produce to each other Party a Custodian Log and a List of Data Locations.

   Each Party's Custodian Log shall include a list of the Party's most relevant custodians believed to have responsive documents in their possession, custody or control, further listing each custodian's contact information, title and role with respect to the issues involved in the litigation and to the ESI requested for production. The custodians will be listed in descending order of relevance, according to the relevant Party's good faith estimation.

   Each Party's List of Data Locations shall include those locations reasonably expected to contain discoverable ESI. This list will further contain the location of each source of potentially relevant data for collection, searching, and review (e.g., computers used by personnel, network home drives, shared drives used by identified personnel, email servers, databases, etc.), and a description of the type of ESI likely to be stored at each listed data location. Where appropriate, each entry in the List of Data Locations shall include the name(s) of the custodian(s) who has(have) primary possession, custody, or control of the ESI stored at that data location.

   a. Similarly, on a date agreeable with all parties, each Party shall exchange disclosures of sources of ESI that are not reasonably accessible because of undue burden or cost,

specifically, and without limitation, including the identity of such sources and the reason for the relevant Party's contention that the ESI is or is not reasonably accessible without undue burden or cost, the methods of storing and retrieving that ESI and the anticipated costs and efforts involved in retrieving that ESI. The parties retain the ability to negotiate payment to compensate the Producing Party the costs of retrieving and producing such not reasonably accessible ESI, if the Requesting Party requests production of such ESI, and/or to challenge the designation of ESI as not reasonably accessible by a motion to the Court.

3. After the exchange of Custodian Logs and Lists of Data Locations, each party will then select no more than 8 custodians from the opposing parties Custodian Log, whose documents will be searched and produced according to the procedures outlined in paragraphs 4 and 5 below. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to two additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

4. Each Party receiving Requests for Production ("RFPs") (the "Responding Party") shall search its ESI data locations, including ESI for each of the selected custodians, and create a database of documents potentially responsive to the RFPs propounded by the other Party (the "Requesting Party") using the Search Terms identified in accordance with Paragraph 5 below. The Responding Party will exclude from its database prior to production of documents to the Requesting Party all documents properly subject to objection, including objections based on privilege and immunities, and if appropriate will designate documents as Confidential in accordance with procedures in the Party's Stipulated Protective Order. In accordance with the Parties' agreement and the Federal Rules of Civil Procedure, within 30 days after its production of documents in response to Requesting Party's RFP, the Responding Party will prepare and deliver to the Requesting Party a Privilege Log.

5. The parties will discharge their production obligations with respect to all ESI using Search Terms to identify documents for production.

    a. Search Terms proposed by a party requesting documents either in instructions in its Requests or otherwise will be included by the producing party in its search unless there is a reasonable basis for objecting, and the parties will endeavor in good faith to agree upon Search Terms that minimize the likelihood of non-responsive results. Further, the Parties agree that:

    b. Search terms need not be identical for both parties.

    c. Where good cause exists for requesting a different review for a particular custodian or data type, the parties will cooperate in good faith to reach a reasonable, agreed approach. For example:

        i. A single set of search terms should be applied to all custodians for each party unless a reasonable basis exists to apply a different set of terms to a logically distinguishable subset of custodians.

      ii. The temporal scope of searches applied to a custodian may be limited if a reasonable basis exists to do so.

  d. The party seeking to limit the scope of search, whether by date, by a limited set of search terms, or otherwise, will include in its custodian log (see Paragraph 2, above) an identification of any such limitations and explanation of why and how such limitations were applied (e.g., custodian left the employ of the Party on a specific date, or on a specific date transferred internally within the organization to a position of limited or no relevance).

6. Consistent with the electronic discovery process whereby all ESI is necessarily collected in its native format, and further to minimize ESI discovery costs to the extent possible, all documents shall be produced in native format (except where native format is unreadable by typical desktop software, e.g. proprietary file formats, in which case conversion of such a document to .DOC, PDF, JPG, TIFF, .XLS or other common format is acceptable). Each native document shall be sequentially Bates numbered (BatesPrefix+BegBates, ABC00000001) along with all fielded metadata retained in the native document. Because native documents may lack Bates numbers or confidentiality designations branded on the face of the documents when printed, any such numbers or designations shall be contained in a load file, which associates this type of information with each native file produced. Each load file shall also include extracted text, where available. Regarding native database files (such as an Access .MDB, ORACLE, etc.), each party shall specify in its request for production the appropriate back up procedure for the database application geared to capture all of the data libraries, templates and configuration files required to load and run a particular database.

7. All documents not produced in native format shall be produced as sequentially Bates-stamped (BatesPrefix+BegBates, ABC00000001) single page black and white tagged image file format ("TIFF") along with an image load/cross reference file, a data load file with fielded metadata, and document-level extracted text for ESI or optical character recognition ("OCR") text for scanned hard copy documents. The extracted text files shall include page breaks that correspond to the "pagination" of the image files. At times a color image may be requested due to ineligible text/images or other necessary graphical information requiring use of a color rendering of the document. All redactions made to a document shall be clearly identified on that document image with a corresponding cross reference file identifying the production number of the page containing the redaction or page withheld for privilege.

  a. Image load/cross reference files shall identify the Bates number ranges for each document. The load file may be in either IPRO (.lfp) or Opticon (.opt) format. Image load files shall indicate document breaks, relative path of image files, and shall mirror formatting and composition of standard image load files as described below. Parent/child relationships shall be identified and maintained.

  b. Data load files shall be a Concordance-loadable data file, also known as a "DAT" file. Extracted text and/or OCR text should not be embedded in the DAT file but should rather be provided as separate, document-level text files. Document-level text file names should contain the beginning Bates number information of the document. If a document is provided in native format with a placeholder TIFF (e.g., spreadsheet files) the text file should contain the extracted text of the native file. Unless otherwise negotiated, redacted documents shall be OCRed after the redaction is applied. The DAT file should have a header line with field names and include the following fields:

| Field | Comments |
|---|---|
| BatesPrefix | Bates number prefix |
| BegBates | Beginning Bates number, do not include prefix. |
| EndBates | Ending Bates number, do not include prefix. |
| BegRange | Bates number of first page of family range, do not include prefix |
| EndRange | Bates number of last page of family range, do not include prefix |
| Custodian | Name of person from whom the file was obtained |

If an electronic document does not contain information for one of the fields identified in Paragraph 7 of this stipulation, excluding all fields relating to Bates numbering, the producing party is not obligated to manually reconstruct that information.

8. TIFF images shall include the following content, where present:

   a. For word processing files (e.g., Microsoft Word) – comments and "track changes" (and similar in-line editing).

   b. For spreadsheet files (e.g., Microsoft Excel) – hidden columns, rows and sheets; comments; macros; and "track changes" (and similar in-line editing).

   c. For presentation files (e.g., Microsoft PowerPoint) – speaker notes and comments.

9. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

10. Absent a showing of good cause, voice-mails, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved. However, hard disk-resident or server-resident data comprising instant messages, SMS data, and/or text messages sent to, received by, and/or synchronized with mobile phones or PDAs using hard disk-resident software or server-resident software is deemed reasonably accessible and shall be collected and preserved.

11. The parties shall cooperate in good faith to identify the proper custodians, data locations, proper search terms and proper timeframe. Meetings between the parties to discuss custodians, search terms, and time frames for document production requests shall take place after the parties have exchanged initial disclosures and identification of knowledgeable employees.

SO STIPULATED

Respectfully Submitted,

| | |
|---|---|
| December 17, 2012<br><br>By: */s/Richard S. Toikka*<br>Richard S. Toikka, Federal Bar No. 13543<br>L. Peter Farkas (pro hac vice)<br>1101 30th Street, NW, Suite 500<br>Washington, DC 20007<br>202-337-7200 (phone)<br>202-337-7808 (fax)<br>rst@farkastoikka.com (email)<br>lpf@farkastoikka.com (email)<br><br>FARKAS + TOIKKA LLP<br><br>Of Counsel:<br>Christopher R. Miller (pro hac vice)<br>Chief Legal Officer and General Counsel<br>American Home Realty Network, Inc.<br>222 7th Street, 2nd Floor<br>San Francisco, California 94103<br>800-357-3321 (phone)<br>C.Miller@NeighborCity.com (email)<br><br>*Attorneys for Defendants*<br>American Home Realty Network, Inc. | December 17, 2012<br><br>By: */s/Margaret A. Esquenet*<br>John T. Westermeier (Bar No. 04364)<br>(jay.westermeier@finnegan.com)<br>Margaret A. Esquenet (Bar No. 27775)<br>(margaret.esquenet@finnegan.com)<br>Whitney Devin Cooke (*pro hac vice*)<br>(whitney.cooke@finnegan.com)<br><br>FINNEGAN, HENDERSON, FARABOW,<br>   GARRETT & DUNNER, L.L.P.<br><br>*Attorneys for Plaintiff*<br>Metropolitan Regional Information Systems, Inc. |

**SO ORDERED:**

DATED: _____, 2012

_____
Alexander Williams, Jr.
United States District Judge

**SO ORDERED:**

DATED: _____, 2012

_____
Alexander Williams, Jr.
United States District Judge

**CERTIFICATE OF SERVICE**

  I, Margaret A. Esquenet, hereby certify that on December 17, 2012 a copy of the foregoing Stipulation for the Production of Electronically Stored Information was served using the Court's CM/ECF system upon:

Richard S. Toikka
L. Peter Farakas
FARKAS & TOIKKA, L.L.P.
1101 30th Street N.W., Suite 500
Washington, DC 20007
rst@farkastoikka.com
lpf@farkastoikka.com


Christopher Ralph Miller
AMERICAN HOME REALTY NETWORK INC.
222 7th Street, Second Floor
San Francisco, CA 94103
c.miller@neighborcity.com

Matthew D. Krueger
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
mkrueger@sidley.com

Jack R. Bierig
Tacy F. Flint
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, IL 60603
jbierig@sidley.com
tflint@sidley.com

        /s/Margaret A. Esquenet