

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

tflint@sidley.com
(312) 853 7875

| | |
|---|---|
| BEIJING | LOS ANGELES |
| BRUSSELS | NEW YORK |
| CHICAGO | PALO ALTO |
| DALLAS | SAN FRANCISCO |
| FRANKFURT | SHANGHAI |
| GENEVA | SINGAPORE |
| HONG KONG | SYDNEY |
| HOUSTON | TOKYO |
| LONDON | WASHINGTON, D.C. |
| | |
| FOUNDED 1866 | |

June 3, 2013

**By CM/ECF**

Hon. Alexander Williams, Jr.
United States District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

Re:   *Metropolitan Regional Information Systems, Inc. v. American Home Realty*
   *Network, Inc.*, No. 8:12-cv-954-AW

Dear Judge Williams:

    I write on behalf of Counterclaim Defendant National Association of Realtors® ("NAR") and Plaintiff-Counterclaim Defendant Metropolitan Regional Information Systems, Inc. ("MRIS") to bring to the Court's attention supplemental authority that supports dismissal of the Amended Counterclaim filed by Defendant-Counterclaimant American Home Realty Network, Inc. ("AHRN").

    That supplemental authority consists of the enclosed orders that were recently entered by the United States District Court for the Southern District of Florida in *Key West Association of Realtors® Inc. v. Allen, et al.*, Case No. 11-cv-10084-JLK.  In the orders, the  court granted a default judgment in favor of Key West Association of Realtors ("KWAR") on its claim of misappropriation of "data and images" from KWAR's "copyrighted automated multiple listing service database."  Order Granting Plaintiff's Motion for Final Judgment of Damages Against Defendant Allen (Dkt. 41) at 2.  The defendant in the case operated a website that used copyrighted content from KWAR's MLS database, without KWAR's authorization, in order to identify potential purchasers for listed properties.  *Id.* at 7-8.  The defendant then offered to refer the potential purchasers to brokers who are members of KWAR, in exchange for a referral fee from the brokers.  *Id.* at 8-9.  The district court concluded that the defendant was liable for willful infringement of KWAR's copyrights, entered a permanent injunction in favor of KWAR, and ordered the defendant to pay KWAR $2.7 million in statutory damages for the infringement. *Id.* at 15-17.

    Although the decision by the Southern District of Florida is a default judgment, it offers yet another example of a district court finding an MLS to hold enforceable copyrights in MLS content.  The decision also holds that unauthorized use and display of copyrighted MLS content



Hon. Alexander Williams, Jr.
June 3, 2013
Page 2


violates the copyright laws and warrants the award of substantial damages.  The decision thus provides further support for the arguments advanced in NAR's and MRIS's pending motions to dismiss AHRN's counterclaim.

Specifically, the attached decision is additional authority for at least two points raised in the motions to dismiss.  First, any statements that NAR or MRIS allegedly made indicating that MLS content is copyrightable are not false statements actionable under the Lanham Act.  Second, any litigation or alleged support for litigation by MRIS or NAR to enforce MLS copyrights is not "sham litigation" actionable under the Sherman Act.  *See* NAR Mtn. to Dismiss (Dkt. 81-1) at 15-20; MRIS Mtn. to Dismiss or Summarily Adjudicate (Dkt. 76-1) at 8-14, 21-23.

All counsel are being served with a copy of this letter, and the attached orders, through CM/ECF.

Very truly yours,

/s/ Tacy F. Flint

Tacy F. Flint




cc:     Jay Westermeier
        Margaret Esquenet
        Whitney Cooke
        L. Peter Farkas
        Richard Toikka
        Russell Paige
        Christopher Miller
        Jack R. Bierig
        Brian Morrissey

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

**Case Number: 11-cv-10084-JLK**

**KEY WEST ASSOCIATION**
**OF REALTOR®S, INC.**, a Florida
Non-Profit Corporation,

     Plaintiff,

vs.

**ROBERT ALLEN**, an individual
doing business as www.KeyWestMLS.com;
**STEVE SCHWARTZ**, an individual and
**SEAPORT, LLC**, a Florida Limited Liability
Company;

    Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR**
**FINAL JUDGMENT OF DAMAGES AGAINST DEFENDANT ALLEN**

  THIS CAUSE came before the Court on May 15, 2013 through Plaintiff KEY WEST

ASSOCIATION OF REALTOR®S, INC., ("KWAR") Motion for Final Judgment for Damages

Against Defendant ROBERT ALLEN with Incorporated Memorandum of Law and

accompanying supporting Affidavits (DE #40).

  Thereby, having considered Plaintiff's Motion in conjunction with the record evidence,

including the admitted facts in the Plaintiff's Complaint and the Affidavits attached to Plaintiff's

Motion and being fully advised in the premises, the Court does hereby:

  ORDER, ADJUDGE and DECREE as follows:

  1.  Plaintiff KWARs Motion for Final Judgment of Damages is hereby GRANTED

as to the maximum amount of statutory damages, permanent injunctive relief and entitlement to

fees and costs;

2.      An Order of Final Judgment of Damages and Injunctive Relief shall be entered separately; and

3.      the Court's determination of relief is based upon the following Findings of Fact and Conclusions of Law:

## I.      INTRODUCTION

The instant action arises out of Defendant ALLEN's wrongful use of intellectual property belonging to Plaintiff KWAR, namely data and images in a copyrighted automated multiple listing service database for Key West and the Lower Keys (hereinafter "KEY WEST MLS"). Defendant ALLEN infringed on Plaintiff's copyrights by intentionally reproducing and publishing Plaintiff's KEY WEST MLS on Defendant ALLEN's KeyWestMLS.com website without license or permission. In doing so, Defendant ALLEN has willfully infringed 18 of Plaintiff's registration certificates. The Court has already entered a final judgment of liability against Defendant ALLEN and as such, a final determination of damages is what remains. Plaintiff KWAR seeks statutory damages and injunctive relief against Defendant ALLEN for his willful and intentional infringement of KWAR's Copyrights pursuant to 17 U.S.C. 101 et seq., and a finding that Plaintiff is entitled to an award of attorney's fees pursuant to the Copyright Act. As detailed below, the Court grants the relief sought by Plaintiff.

## II.      PROCEDURAL HISTORY

Plaintiff, KWAR has brought this action pursuant to the Copyright Act, 17 U.S.C. §101 et seq., against Defendant ALLEN for violations of Plaintiff KWAR's copyrights in its MLS database.[1] During a Pretrial Conference held on March 8, 2013, the Court reviewed the Return of Service (DE #12) filed with respect to Defendant ALLEN as well as the subsequent Entry of

---

[1] Defendants STEVE SCHWARTZ and SEAPORT, LLC have been dismissed from the matter (DE #36).

Default (DE #18). The Court reviewed the procedures followed by counsel for Plaintiff with respect to substitute service on Defendant ALLEN pursuant to Florida Stat. §48.181. The Court found that the proper procedures were followed and the Clerk's Entry of Default against Defendant ALLEN (DE #18) was properly made. The Court entered a Final Judgment of Liability against Defendant ALLEN on March 12, 2013 (DE #38) as to Count I and set a procedure for final determination of damages regarding Plaintiff's claims. The Court placed the damages portion of Plaintiff's claims on the April 2013 trial calendar and further ruled in the March 12, 2013 order as follows:

> b.     If Defendant ALLEN intends to appear at the damages trial in order to cross-examine Plaintiff's damage witnesses, Defendant ALLEN must file written notice with this Court of his intention to appear at trial, no later than April 2, 2013, with a copy of the notice copied to Plaintiff's counsel.
>
> c.     If no written notice is filed with the Court by April 2, 2013, by Defendant ALLEN, the Court shall proceed to make its determination of damages in Count I upon affidavits to be submitted by Plaintiff's counsel.

No written notice was filed with the Court by April 2, 2013 by Defendant ALLEN or at any point thereafter. As such Defendant ALLEN was duly placed on notice that the Court will make its determination of the damages in Count I upon this motion and accompanying affidavits.

Defendant ALLEN did not participate in the litigation of this matter and as such, discovery could not be fully realized as to this Defendant. Plaintiff KWAR elected the remedy of statutory damages pursuant to 17 USC §504 for Defendant's infringement of Plaintiff's copyrights as well as injunctive relief pursuant to 17 USC §502.

## III.   FINDINGS OF FACT[2]

1.      Since its inception in 1962, KWAR has conducted business as an association for real estate brokers in the Lower Florida Keys to provide members with support, education, and services that will enhance the practice of real estate. (*Affidavit of Corporate Representative of KWAR,* ¶4; *Plaintiff's Complaint* ¶10).

2.      As part of its service, Plaintiff KWAR creates and manages the KEY WEST MLS database to serve as the definitive listing source for member Realtor®s. (*KWAR Affidavit,* ¶5; *Plaintiff's Complaint* ¶10).

3.      The Plaintiff's KEY WEST MLS database contains hundreds of fields of information about the features of a listed property, including but not limited to property specifications, legal description, listing price, photographs of the property and a narrative description of the property. (*KWAR Affidavit,* ¶6; *Plaintiff's Complaint* ¶11).

4.      Plaintiff KWAR members who are listing a property on Plaintiff's KEY WEST MLS add the individualized data, photographs and narrative related to the property. (*KWAR Affidavit,* ¶7).

5.      The Plaintiff's KEY WEST MLS facilitates cooperation between Realtor® participants and provides a definitive source for Realtor®s on listing information allowing them to better serve clients as well as the public. (*KWAR Affidavit,* ¶8; *Plaintiff's Complaint* ¶12).

6.      The Plaintiff's KEY WEST MLS further serves to enable KWAR member Realtor®s and other licensed Realtor®s to establish contractual offers of compensation with each

---

[2] As a default has been entered against Defendant ALLEN, the Allegations contained in Plaintiff's Complaint are deemed true. See *Arista Records, Inc., v Beker Enterprises, Inc.,* 298 F. Supp.2d 1310, 1312 (S.D. Fla. 2003) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated."). The admitted facts will be identified as coming from the Plaintiff's Complaint. Plaintiff KWAR has included additional facts as supported by the Affidavits of the KWAR Corporate Representative and Mr. Federico White

other. While it will vary, the average contractual spilt commission a member Relator® would receive on a sale of a property is 3% to 4%. (*KWAR Affidavit*, ¶9; *Plaintiff's Complaint* ¶12).

7.      Plaintiff KWAR licenses the use of the Plaintiff's KEY WEST MLS to its Realtor® members by license agreements and to other real estate associations through sharing agreements. All of the KWAR license agreements for use of the Plaintiff's KEY WEST MLS have restrictions. (*KWAR Affidavit*, ¶10; *Plaintiff's Complaint* ¶13).

8.      Plaintiff KWAR Realtor® members may obtain a restricted license to use the search feature and display a portion of the information from the Plaintiff's KEY WEST MLS on the broker's individual website through a feed.  All Realtor®s that accept the restricted license are provided access by way of an Internet Data Exchange ("IDX") feed. (*KWAR Affidavit*, ¶11; *Plaintiff's Complaint* ¶14).

9.      Plaintiff KWAR has gone to considerable time and expense in developing and maintaining its KEY WEST MLS. The KEY WEST MLS is the proprietary property of Plaintiff KWAR. (*KWAR Affidavit*, ¶12; *Plaintiff's Complaint* ¶15).

10.     On a ongoing and consistent basis, Plaintiff KWAR files applications with the United States Copyright Office to secure the exclusive rights and privileges offered by the Federal Copyright Act of 1976, 17 U.S.C. § 101 et seq., as amended, governing the use and reproduction of the KEY WEST MLS. (*KWAR Affidavit*, ¶13; *Plaintiff's Complaint* ¶17).

11.     Plaintiff KWAR is regularly given copyright registrations by the United States Copyright Office pursuant to the Federal Copyright Act of 1976, 17 U.S.C. § 101 et seq., as amended for Plaintiff's KEY WEST MLS. (*KWAR Affidavit*, ¶14; *Plaintiff's Complaint* ¶18).

12.     Plaintiff KWAR holds 18 registration certificates from the US Copyright office for its KEY WEST MLS copyright. The registrations certificates are as follows:

5

a.     TXu 1-372-719 dated June 13, 2006
b.     TXu 1-367-194 dated July 13, 2007
c.     TXu 1-630-603 dated January 22, 2008
d.     TXu 1-695-540 dated August 11, 2008
e.     TXu 1-755-018 dated January 30, 2009
f.     TXu 1-700-926 dated May 12, 2009
g.     TXu 1-703-528 dated June 30, 2009
h.     TXu 1-734-018 dated January 26, 2010
i.     TXu 1-734-087 dated April 12, 2010
j.     TXu 1-744-244 dated August 17, 2010
k.     TXu 1-730-084 dated October 27, 2010
l.     TXu 1-754-343 dated January 21, 2011
m.     TXu 1-756-741 dated April 25, 2011
n.     TXu 1-783-278 dated August 15, 2011
o.     TXu 1-808-754 dated November 7, 2011
p.     TXu 1-797-713 dated January 11, 2012
q.     TXu 1-825-568 dated April 17, 2012
r.     TXu 1-842-674 dated July 26, 2012

(*KWAR Affidavit*, ¶15).

13.     True and correct copies of the registration certificates in 12(a) and 12(b)-(m) are attached to the Plaintiff's Complaint as *Exhibits A* and *B* respectively. True and correct copies of 12(n)-(r) above are attached to the KWAR Affidavit as *Exhibit 1*. (*KWAR Affidavit*, ¶16; *Plaintiff's Complaint* ¶¶19-20).

14.     As a business practice, Plaintiff KWAR, has remained the sole owner of all right, title, and interest in and to the KEY WEST MLS and its contents. As a regular business practice, Plaintiff KWAR periodically updates its copyright registration for its KEY WEST MLS. (*KWAR Affidavit*, ¶17; *Plaintiff's Complaint* ¶20).

15.     Defendant ALLEN owns and operates a commercial website with the Uniform Resource Locator ***www.KeyWestMLS.com***. (*KWAR Affidavit*, ¶18; *Plaintiff's Complaint* ¶21).

16.     At All times, Defendant ALLEN's website consists almost entirely of content, data and images reproduced from a feed of Plaintiff's KEY WEST MLS without authorization. (*KWAR Affidavit*, ¶19; *Plaintiff's Complaint* ¶21).

6

17.     Defendant ALLEN has copied and displayed unauthorized content on his website since at least 2007. True and correct examples of pages from the KeyWestMLS.com website containing copied content from the KEY WEST MLS database in violation of the 18 registration certificates identified in paragraph 12 above are attached to the Complaint as *Exhibit C*. (*KWAR Affidavit*, ¶20; *Plaintiff's Complaint* ¶21).

18.     Defendant ALLEN is not a member of KWAR and as such does not have a license to copy or display KEY WEST MLS data or information on his KeyWestMLS.com website. (*KWAR Affidavit*, ¶21; *Plaintiff's Complaint* ¶¶22-23).

19.     Defendant ALLEN does not have an authorized IDX feed for the KEY WEST MLS despite displaying the IDX logo on the infringing website. (*KWAR Affidavit*, ¶22; *Plaintiff's Complaint* ¶24).

20.     On December 7, 2010, Defendant ALLEN was sent a Cease and Desist letter from Plaintiff KWAR that the KeyWestMLS.com website contained infringing and unlicensed material from KEY WEST MLS. Plaintiff demanded that the infringing material be removed from KeyWestMLS.com. A true and correct copy of the December 2010 Cease and Desist letter is attached to the Plaintiff's Complaint as *Exhibit D*. (*KWAR Affidavit*, ¶23; *Plaintiff's Complaint* ¶25).

21.     Defendant ALLEN ignored the demand and continued to exploit the KEY WEST MLS content on the KeyWestMLS.com website in violation of the 18 registration certificates identified in paragraph 12 above. (*KWAR Affidavit*, ¶24; *Plaintiff's Complaint* ¶25).

22.     Defendant reproduces and displays the contents of the KEY WEST MLS on KeyWestMLS.com to mislead viewers that the KeyWestMLS.com website is an authorized or

approved feed of Plaintiff's KEY WEST MLS. (*KWAR Affidavit*, ¶25; *Plaintiff's Complaint* ¶26).

23.     Defendant ALLEN admits to his infringing activity on the KeyWestMLS.com website by declaring that "KeyWestMLS.com is an independently owned website that provides INDIRECT access to the Key West MLS Real Estate Database." A copy of a KeyWestMLS.com webpage showing Defendant's admission is attached to Plaintiff's Complaint as *Exhibit E*. (*Plaintiff's Complaint* ¶27).

24.     Defendant ALLEN exploits the contents of the KEY WEST MLS on the KeyWestMLS.com website to generate valuable real estate leads. (*Affidavit of Federico White*, ¶3; *Plaintiff's Complaint* ¶28).

25.     Leads are generated from viewers of the KeyWestMLS.com website that are interested in a property, by way of an email that is generated by selecting the "Contact" page of the website. The email is then directed to Defendant ALLEN. (*White Affidavit*, ¶4; *Plaintiff's Complaint* ¶29).

26.     During the period between 2007 to 2011, at total of 598 referral leads were generated to Defendant ALLEN from the infringing website. The total potential gross value of the 598 referral leads generated from the infringing KeyWestMLS.com website was $406,272,032.00 (Four Hundred and Six Million, Two Hundred Seventy Two Thousand and Thirty Two Dollars). (*White Affidavit*, ¶11).

27.     Defendant ALLEN intended to sell these valuable leads back to KWAR members. After receiving the cease and desist letter, Defendant ALLEN sent a lead generated from KeyWestMLS.com to a Realtor[®] member of Plaintiff KWAR with an offer of, "LIMITED TIME FREE KEY WEST REAL ESTATE REFERRALS." (*Plaintiff's Complaint* ¶¶32-33).

8

28. Inherent in the language of Defendant ALLEN's offer of a free limited time referral, is that these referrals will soon be offered or sold back to Plaintiff's KWAR members for a price. (*Plaintiff's Complaint* ¶33).

29. In April 2012, Defendant ALLEN contacted Plaintiff KWAR and demanded that Plaintiff purchase his infringing KeyWestMLS.com website for $30,000.00 (Thirty Thousand Dollars). Defendant ALLEN threatened to expand his damaging actions if Plaintiff did not pay him. (*KWAR Affidavit*, ¶26).

30. Plaintiff KWAR declined the demand by Defendant ALLEN to pay for his infringing KeyWestMLS.com website. (*KWAR Affidavit*, ¶27).

31. Subsequent to his demand, Defendant ALLEN continued to intentionally infringe on the Plaintiff's registered copyrights and the MLS data and worked to harass Plaintiff KWAR by registering additional websites to infringe Plaintiff's copyrights in violation of the 18 registration certificates identified in paragraph 12 above. (*KWAR Affidavit*, ¶28).

32. KWAR has never given ALLEN permission, license or authorization to reproduce or use any part or content of KEY WEST MLS on the KeyWestMLS.com website. (*Plaintiff's Complaint* ¶45).

33. Defendant ALLEN's unauthorized reproduction and display of the KEY WEST MLS content violated and continues to violate KWAR's registered copyrights in the 18 registration certificates. (*Plaintiff's Complaint* ¶46).

34. Defendant ALLEN infringed the copyrights secured by Plaintiff KWAR by reproducing, marketing, displaying, publishing and/or posting reproductions of the contents of the KEY WEST MLS on the KeyWestMLS.com website, beginning at least in 2008 and

9

continuing through the date of the Complaint in this matter and beyond. Defendant ALLEN's infringements are ongoing and continuous. (*Plaintiff's Complaint* ¶47).

35.    Defendant ALLEN willfully and intentionally reproduced, marketed, displayed, published and/or posted reproductions of the KEY WEST MLS on the KeyWestMLS.com website in conscious disregard for the rights of Plaintiff KWAR. (*Plaintiff's Complaint* ¶48).

36.    Plaintiff KWAR has suffered losses due to the unauthorized proliferation of the KEY WEST MLS on Defendant's KeyWestMLS.com website, including but not limited to the loss of any gains, profits or advantages KWAR and its Realtor® members would have received through the authorized use and license of KEY WEST MLS and the leads that the infringing website diverted from Realtor® members. (*KWAR Affidavit*, ¶29; *Plaintiff's Complaint* ¶42, ¶49).

## IV.    CONCLUSIONS OF LAW

1.    A copyright plaintiff may select statutory damages whether there is adequate evidence of actual damages to the copyright owner or profits gained by the infringer. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990); *Nintendo of America, Inc. v. Ketchum*, 830 F. Supp. 1443 (M.D. Fla. 1993).

2.    The copyright owner may elect at any time before final judgment is rendered, to recover, instead of actual damages or profits, an award of statutory damages for all infringements in the action, with respect to any one work for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. 17 U.S.C. §504(c)(1).

3.    Moreover, if the court finds that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. §504(c)(2).

4.      "Willful" within the meaning of Sec. 504(c)(2) means "with knowledge that the defendants conduct constitutes copyright infringement." *Peer International Corp. v. Pausa Records, Inc.*, 909 F.2d 1332,1335 n.3   (9th Cir. 1990) (quoting 3 Nimmer on Copyright §1404[B], at 14-40.2-3 (1989)), *cert. denied*, 498 U.S. 1109 (1991).

5.      A copyright Defendant is liable for willful infringement if aware that his conduct constitutes copyright infringement and he nevertheless continues to infringe without a good faith belief to the contrary. See *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 851 (11th Cir 1990) and *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560 (M.D. Fla. 1995).

6.      A finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's rights. *See International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380 (7th Cir. 1988), *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110,1115 (2nd Cir. 1986).

7.      Further, "[w]illfulness may be demonstrated where the infringer is provided written or oral notice of its infringing conduct by the copyright owner, yet 'pass[es] the matter off as a nuisance'."*Schmidt v. Holy Cross Cemetery, Inc.* 840 F.Supp. 829 (D. Kan. 1993) (quoting *International Korwin Corp,* 855 F.2d at 381.)

8.      Plaintiff KWAR has presented sufficient evidence to conclude that Defendant's infringing conduct was willful and malicious. Defendant ALLEN ignored Plaintiff's cease and desist demand and ignored this lawsuit. (*KWAR Affidavit*, ¶¶20-21). Instead of ceasing his infringing activities, Defendant ALLEN attempted to intimidate Plaintiff KWAR into paying him $30,000 to cease his infringement. (*KWAR Affidavit*, ¶¶26-27). Defendant ALLEN expanded his infringing activity when Plaintiff refused his extortive demand. (*KWAR Affidavit*, ¶28).

Defendant ALLEN's infringements are continuing. (*KWAR Affidavit*, ¶28; *Plaintiff's Complaint*, ¶¶47-48). Lastly, Defendant ALLEN admits to his infringing activity on the KeyWestMLS.com website by declaring that "KeyWestMLS.com is an independently owned website that provides INDIRECT access to the Key West MLS Real Estate Database." (*Plaintiff's Complaint* ¶27).

9.     Plaintiff KWAR continues to suffer losses due to the willful unauthorized proliferation of the KEY WEST MLS by Defendant ALLEN. (*KWAR Affidavit*, ¶29; *Plaintiff's Complaint* ¶42, ¶49*).

10.     In addition to the factual evidence presented by Plaintiff, Defendant's infringing conduct is considered "willful" as the allegations of willful conduct contained in Plaintiff's Complaint are deemed true. *Arista Records, Inc., v Beker Enterprises, Inc.*, 298 F. Supp.2d 1310, 1312 (S.D. Fla. 2003) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.") See also *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987) and *PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110 (S.D. Fla. 2007).

11.     Several factors which may be considered when determining the amount of statutory damages include: expenses saved and profits gained by defendant in connection with the infringements; revenues lost by plaintiff as a result of defendant's conduct; and the infringer's state of mind, that is, whether willful, knowing, or merely innocent; the deterrent effect on the infringer and third parties; the infringers cooperation in providing evidence concerning the value of the infringing material; and the conduct and attitude of the parties. See *Walt Disney Co. v. Video 47, Inc.*, 972 F. Supp. 595, 603 (S.D. Fla. 1996); *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir.2010) (factors that may be considered when determining the amount of statutory damages to award for copyright infringement, include: the infringers

state of mind; the expenses saved, and profits earned, by the infringer; the revenue lost by the copyright holder; the deterrent effect on the infringer and third parties; the infringers cooperation in providing evidence concerning the value of the infringing material; and the conduct and attitude of the parties); *Morely Music Co. v. Continental, Inc.,* 777 F. Supp. 1579 (S.D. Fla. 1991) (factors to be considered are expenses saved and profits reaped, revenues lost and infringer's state of mind); *Nintendo of America, Inc,. v. Ketchum*, 830 F.Supp. 1443 (M.D. Fla. 1993) (factors to be considered with statutory damages are expenses saved and profits reaped; revenues lost and infringer's state of mind); and *Nick-O-Val Music, Inc., v. P.O.S. Radio, Inc.,* 656 F.Supp. 826 (M.D. Fla. 1987) (expenses saved and profits reaped; revenues lost and infringer's state of mind are factors to be considered in awarding statutory damages).

12.    A copyright plaintiff is not however required to produce evidence of actual damages or loss of profits as "to require plaintiff to adduce specific proof of actual damages or profits would contravene the purpose of the statutory damages provision." *Bly v. Banbury Books, Inc.* 638 F.Supp. 983, 987 (E.D. Penn. 1986) (*citing F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952).

13.    When looking at the factors to consider in the Court's determination of the amount of statutory damages, Defendant ALLEN's belligerent conduct weighs heavily toward an award of maximum statutory damages. Defendant ALLEN's conduct was willful, deliberate and even malicious toward Plaintiff KWAR and its rights.

14.    Plaintiff KWAR has gone to considerable time and expense in developing and maintaining its KEY WEST MLS database. (*KWAR Affidavit*, ¶12; *Plaintiff's Complaint* ¶15). Defendant ALLEN's website consists almost entirely of reproduced versions Plaintiff's copyrighted material from an authorized feed. (*KWAR Affidavit*, ¶19; *Plaintiff's Complaint* ¶21).

13

As such, Defendant ALLEN has had no cost or expense in developing and maintaining his own

MLS database. Defendant ALLEN's potential benefit from the leads generated from his

infringement is sizeable especially with no development and maintenance costs.

15.    Defendant ALLEN has not provided any documents and has otherwise ignored

this litigation. However, based upon third party documents Plaintiff has been able to determine

that Defendant ALLEN infringes Plaintiff's copyrights on the KeyWestMLS.com website in

order to generate valuable real estate leads from potential purchasers. (*Affidavit of Federico*

*White*, ¶¶3-4; *Plaintiff's Complaint* ¶¶28-29).

16.    Through the documents, Plaintiff was able to determine that between the years

2007 to 2011, at total of 598 leads were generated to Defendant ALLEN *directly* from the

infringing KeyWestMLS.com website. The total potential gross sales amount of these 598 leads

generated from the infringing website was $406,272,032.00. (*White Affidavit*, ¶11). The average

contractual commission a member Relator® would receive on a sale of a property is 3% to 4%.

(*KWAR Affidavit*, ¶9; *Plaintiff's Complaint* ¶12). As such, the potential commission value of the

leads Defendant ALLEN received on the infringing website would be between $12,188,160.96

(3%) and $16,250,881.28 (4%) for KWAR member Realtor®s.

17.    Much is still not known due to Defendant's failure to participate in the litigation.

While Plaintiff KWAR was able to identify at least 598 leads generated through the infringing

website, there may have been more. Further, it is known that Defendant ALLEN intended to sell

these valuable leads back to KWAR members. (*Plaintiff's Complaint* ¶¶32-33). Plaintiff KWAR

is not in a position to determine at what rate Defendant ALLEN monetized these leads. However,

using a conservative estimate, if Defendant ALLEN monetized only 1% of these ill-gotten leads

14

through sales, referrals or under-the-table sharing agreements, the overall value would still be significant at $4,062,720.32.

18.     The Court has latitude when determining the amount of statutory damages to be awarded.  As the conduct of Defendant ALLEN was willful, under the Copyright Act, the range of damages per infringement will be a minimum of $750.00 to a maximum of $150,000.00. 17 U.S.C. §504(c)(1)-(2).  The calculation of damages is based on the 18 registration certificates that were infringed by Defendant ALLEN.

19.     Plaintiff KWAR is entitled to the maximum statutory damage award for willful infringement by Defendant ALLEN. As such the damages awarded shall be:

### Calculation of Statutory Damages

**$150,000.00**  x **18** registration certificates = **$2,700,000.00**

20.     In awarding the maximum amount of statutory damages, the Court considered the purposes of the copyright act, including restitution to prevent unjust enrichment, reparation of injury, and *deterrence of further wrongful conduct by the defendants and others. Nintendo of America, Inc. v. Ketchum*, 830 F. Supp. 1443 (M.D. Fla. 1993) (*emphasis added*). In particular, when the infringement is willful, as it is here,  "deterrence of future violations is a legitimate consideration because 'defendants must not be able to sneer in the face of copyright owners and copyright laws'." *Cable/Home Communication Corp.* 902 F.2d at 851, (quoting *International Korwin Corp.*, 855 F.2d at 383).

21.     The intentional and malicious actions of Defendant ALLEN warrant the imposition of the maximum statutory amount. Awarding a lesser amount of damages would not serve the purpose of the Copyright Act in deterrence of further wrongful conduct by Defendant ALLEN and others. Through his KeyWestMLS.com websites and his own actions, Defendant

ALLEN has acted publicly in ignoring the rights of Plaintiff KWAR, its Realtor® members and this Court. Absent the maximum statutory award of damages, future potential infringers of Plaintiff's MLS copyrights will only see the potential benefit of high commissions from ill-gotten leads. As such, the maximum statutory damage amount is necessitated to deter the future conduct of Defendant ALLEN and others.

22.     The Copyright Act authorizes injunctive relief pursuant to 17 U.S.C. § 502(a). A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.,* 533 F.3d 1287, 1323 (11th Cir. 2008) (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).

23.     Considering the above elements, Plaintiff KWAR has demonstrated that it has suffered an irreparable injury from Defendant ALLEN's willful infringements. (*KWAR Affidavit,* ¶29; *Plaintiff's Complaint* ¶42, ¶49). It is clear that potential benefit to be gained by Defendant ALLEN from his infringing activity is disproportionate to the maximum award of statutory damages, making Plaintiff's remedy at law inadequate. As Defendant ALLEN has no legitimate purpose in his KeyWestMLS.com website, there is no hardship to be balanced between Plaintiff KWAR and Defendant ALLEN. Lastly, as Defendant ALLEN seeks to mislead viewers that his KeyWestMLS.com website is an authorized or approved KEY WEST MLS product from Plaintiff KWAR, there is a public interest in enjoining Defendant. (*KWAR Affidavit,* ¶25; *Plaintiff's Complaint* ¶26).

24.     Permanent injunctive relief pursuant to the Copyright Act is hereby granted in favor of Plaintiff KWAR, enjoining Defendant ALLEN from continued infringement of Plaintiff KWAR's copyrights in the Key West MLS on Defendant's KeyWestMLS.com or any other website.

25.     The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party ... [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. §§ 412, 505; *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 434, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984). In this Circuit, a showing of bad faith or frivolity is not a precondition to awarding attorneys' fees. See *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 832 (11th Cir.1982). We have adhered to the only two statutory requirements: the fee award should be granted to the prevailing party and the amount should be reasonable. *Casella v. Morris,* 820 F.2d 362, 366 (11th Cir.1987); *Original Appalachian Artworks,* 684 F.2d at 832.

26.     The Court finds that Plaintiff KWAR is entitled its reasonable attorneys' fees and costs pursuant to the Copyright Act. The amount, of which will be submitted to the Court under separate affidavit through a separate motion to determine fees.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this **2ᐪ** day of May 2013.


JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

17

cc: ***Counsel for Plaintiff***
Steven Robert Kozlowski, Esq.
Kozlowski Law Firm, P.A.
777 Brickell Avenue, Suite 800
Miami, Florida 33131

***Defendant Robert Allen***
Robert Allen
P.O. Box 2559
Key West, FL 33045

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

Case Number: 11-cv-10084-JLK

KEY WEST ASSOCIATION
OF REALTOR®S, INC., a Florida
Non-Profit Corporation,

                    Plaintiff,

vs.

ROBERT ALLEN, an individual
doing business as www.KeyWestMLS.com;
STEVE SCHWARTZ, an individual and
SEAPORT, LLC, a Florida Limited Liability
Company;

                    Defendants.
_____/

FINAL JUDGMENT OF DAMAGES
AND INJUNCTIVE RELIEF AGAINST DEFENDANT ALLEN

THIS CAUSE came before the Court on May 15, 2013 through Plaintiff KEY WEST

ASSOCIATION OF REALTOR®S, INC., ("KWAR") Motion for Final Judgment for Damages

Against Defendant ROBERT ALLEN with Incorporated Memorandum of Law and

accompanying supporting Affidavits (DE #40) and this Court's Order Granting said Motion.

This Court, being fully advised in the premises and having considered the record

accordingly, the Court does hereby:

ORDER, ADJUDGE and DECREE as follows:

1.      That a Final Judgment of Damages is entered against Defendant ALLEN in favor

of Plaintiff KWAR on Count I of the Plaintiff's Complaint with relief awarded to Plaintiff as

follows, for which let execution issue:

1

   a.     ***Statutory Damages***: Pursuant to 17 U.S.C. §504(c)(2) of the Copyright Act, a judgment of maximum statutory damages shall be entered against Defendant ALLEN, in the amount of $2,700,000.00 for Defendant's willful infringement of Plaintiff KWAR's KEY WEST MLS copyrights in its 18 registration certificates;

   b.     ***Permanent Injunction***: Pursuant to 17 U.S.C. §502 of the Copyright Act, a permanent injunction is hereby issued against Defendant ALLEN who shall be permanently enjoined from infringing Plaintiff's copyrights in the KEY WEST MLS, including, but not limited to any infringement through the unauthorized reproduction, copy, display, publication, broadcast and/or repost of the Plaintiff's KEY WEST MLS database of on the KeyWestMLS.com website or any other website. This permanent injunction shall be binding upon Defendant ALLEN and his agents, representatives, attorneys, partners, employees, licensees, heirs, successors and assigns and all other persons and entities in active concert or participation with him in infringing Plaintiff's KEY WEST MLS copyrights;

   c.     ***Entitlement to Fees***: Pursuant to 17 U.S.C. §505 of the Copyright Act, Plaintiff KWAR is entitled to an award of reasonable attorneys fees' and costs pursuant to the Copyright Act, the amount of which shall be determined under a separate motion, for which the Court reserves jurisdiction;

   d.     ***Post-judgment Interest***: Post-judgment interest shall accrue at the rate set by 28 U.S.C. §1961.

   DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 22 day of May, 2013.


                                             _____
                                             JAMES LAWRENCE KING
                                             UNITED STATES DISTRICT JUDGE
                                             SOUTHERN DISTRICT OF FLORIDA

cc: ***Counsel for Plaintiff***
    Steven Robert Kozlowski, Esq.
    Kozlowski Law Firm, P.A.
    777 Brickell Avenue, Suite 800
    Miami, Florida 33131

    ***Defendant Robert Allen***
    Robert Allen
    P.O. Box 2559
    Key West, FL 33045

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

**Case Number: 11-cv-10084-JLK**

**KEY WEST ASSOCIATION**
**OF REALTORS® INC.**, a Florida
Non-Profit Corporation,

               Plaintiff,

vs.

**ROBERT ALLEN**, an individual
doing business as www.KeyWestMLS.com;
**STEVE SCHWARTZ**, an individual and
**SEAPORT, LLC**, a Florida Limited Liability
Company;

               Defendants.

_____/

## ORDER GRANTING FINAL JUDGMENT AGAINST
## DEFENDANT ALLEN AS TO LIABILITY AND SETTING TRIAL AS TO DAMAGES

THIS CAUSE came before the Court on March 8, 2013 as part of the Pretrial Conference scheduled pursuant to the Trial Order (DE#26) issued in this matter. The Pretrial Conference was attended by counsel for Plaintiff, KEY WEST ASSOCIATION OF REALTORS®, INC., ("KWAR"). Defendants STEVE SCHWARTZ and SEAPORT, LLC have been dismissed from the matter (DE #36). Defendant ROBERT ALLEN did not appear at the Pretrial Conference. At no point since the filing of this matter has Defendant ALLEN appeared personally or through counsel.

During the Pretrial Conference, the Court reviewed the Return of Service (DE #12) filed with respect to Defendant ALLEN as well as the subsequent Entry of Default (DE #18). The Court reviewed the procedures followed by counsel for Plaintiff with respect to substitute service

on Defendant ALLEN pursuant to Florida Stat. §48.181. The Court found that the proper procedures were followed and service was duly effected upon Defendant ALLEN. As such, the Clerk's Entry of Default (DE #18) was properly made. Thereby, having considered the record and being fully advised in the premises, the Court does hereby:

ORDER, ADJUDGE and DECREE as follows:

1.      A FINAL JUDGMENT on liability is hereby entered as to Defendant ALLEN with respect to COUNT I (Infringement of Plaintiff's Copyrights by Defendant ALLEN) of Plaintiff's Complaint.

2.      The Court has set the following procedures to be followed for setting the damages portion of COUNT I for Trial with respect to Defendant ALLEN:

> a.      The damages portion of Plaintiff's claims in Count I shall be set for trial on the April 22, 2013 trial calendar.
>
> b.      If Defendant ALLEN intends to appear at the damages trial in order to cross-examine Plaintiff's damage witnesses, Defendant ALLEN must file written notice with this Court of his intention to appear at trial, no later than April 2, 2013, with a copy of the notice copied to Plaintiff's counsel.
>
> c.      If no written notice is filed with the Court by April 2, 2013, by Defendant ALLEN, the Court shall proceed to make its determination of damages in Count I upon affidavits to be submitted by Plaintiff's counsel.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 12th day of March, 2013.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:  **_Counsel for Plaintiff_**
Steven Robert Kozlowski, Esq.
Kozlowski Law Firm, P.A.
777 Brickell Avenue, Suite 800
Miami, Florida 33131

**_Defendant Robert Allen_**
Robert Allen
P.O. Box 2559
Key West, FL 33045