IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HOME REALTY NETWORK, INC. <br><br> Defendant, <br><br> AMERICAN HOME REALTY NETWORK, INC. <br><br> Counterclaimant, <br><br> v. <br><br> METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., <br><br> NATIONAL ASSOCIATION OF REALTORS <br><br> and <br><br> DOES 1-25, <br><br> Counterclaim Defendants | Civil Action No. 12-cv-954 |

**AHRN'S LOCAL RULE 301.5.b OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MRIS's MOTION FOR CONTEMPT AND AHRN's MOTION FOR LEAVE TO FILE A SURREPLY**

I.   **INTRODUCTION**

On June 4, 2013, Defendant and Counterclaimant American Home Realty Network, Inc. ("AHRN") received the Report and Recommendation ("Report") of the U.S. Magistrate Judge, recommending that Plaintiff Metropolitan Regional Information

Systems Inc.'s ("MRIS") Motion for Contempt be granted in part.  Pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b, AHRN hereby files its Objections to the Report, for the following reasons:

1) A ruling on the Motion for Contempt would be premature while a Motion to Vacate the Preliminary Injunction is pending and while AHRN's appeal to the Fourth Circuit of the Court's preliminary injunction order is pending;

2) The Report erroneously assumes that the preliminary injunction applies to MRIS's copyrighted photographs even if copyrights in those photographs have not been properly registered with the Copyright Office;

3) The Report erroneously interprets and applies the holding in *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279 (4th Cir. 2003), to the MRIS Database;

4) The Report erroneously extends registration of compilation copyright to individual photographs for the purposes of a preliminary injunction despite properly refusing to extend registration of compilation copyright to the same photographs for the purposes of damages;

5) The Report erroneously and arbitrarily computes damages; and

6) The Report erroneously recommends the granting of MRIS's unsupported Motion for Leave to File Supplemental Evidence.

## II.     ARGUMENT

### A. RULING ON THE MOTION FOR CONTEMPT WOULD BE PREMATURE

On June 8, 2013, AHRN filed a Motion to Vacate Preliminary Injunction *Nunc Pro Tunc* and Request for Award of Damages, Attorneys Fees and Costs ("Motion to Vacate").  The Motion to Vacate is predicated on admissions made by MRIS in Discovery after the completion of briefing on the Motion for Contempt.  Further

compounding the untimeliness of the Report's recommendation, MRIS's admissions were made after the completion of briefing on the AHRN's Motion for Leave to File a Surreply to MRIS's Motion for Contempt.

Given the importance of the admissions made by MRIS since the completion of briefing—admissions that are fatal to the propriety of the Preliminary Injunction, AHRN respectfully requests that the Court defer ruling on the Report's recommendation until after the Court rules on the Motion to Vacate.  *See Hi-Lo TV Antenna Corp. v. Rogers*, 275 F.2d 452, 453 (7th Cir. 1960) (judgment of contempt set aside where injunction vacated); *accord Tekkno Labs, Inc. v. Perales,* 933 F.2d 1093 (2d Cir. 1991).

In addition, the Court's Order granting the Preliminary Injunction is currently pending appeal in the Fourth Circuit Court of Appeals.  A hearing on the appeal was held on May 15, 2013, in Richmond, Virginia.  Given the pendency of the Appeal, AHRN respectfully requests that the Court defer ruling on the Motion for Contempt until after the Fourth Circuit Court of Appeals rules on the appeal of the Order granting the Preliminary Injunction.  *See Id.*

### B. THE REPORT ERRONEOUSLY APPLIES THE COURT'S PRELIMINARY INJUNCTION TO COPYRIGHTED PHOTOGRAPHS WITHOUT REGARD TO THEIR REGISTRATIONS WITH THE COPYRIGHT OFFICE

On page 4 of her Report, Magistrate Judge Schulze states without making any predicate findings of fact and without citing any authority: "A violation of the order does not depend on whether the copyrights have also been registered with the Copyright Office."  This holding is contrary to law in the Fourth Circuit and elsewhere.  The leading case holding that a court has the authority to enjoin the infringement of unregistered copyrights when at least one of the plaintiff's copyrights-in-suit was registered is *Olan*

*Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir.1994). However, *Olan Mills* can be clearly distinguished on the facts. In the first place, all four of the registered copyrights in *Olan Mills* were in photographs, and all of the accused infringement was of those four registered photographs. *Id.* at 1347. This starkly contrasts with the case at issue, where the only registered copyrights are compilation copyrights in an automated database that includes photographs and uncopyrightable facts, yet the Preliminary Injunction applies only to photographs. Compilation copyright inheres only in the database "as a whole,"[1] whereas the Preliminary Injunction applies only to photographs.

In the second place, *Olan Mills* included a finding of infringement that is absent here. *Id.* at 1349. In the third place, *Olan Mills*' remedy of enjoining future infringement of unregistered photographs was designed to protect against a threat of future infringement, a threat that was based on the accused infringer's use of an indemnity agreement to escape liability for infringement:

> The record demonstrates that Linn Photo developed the indemnity agreement, without the help of legal counsel, in an effort to circumvent liability for its infringing conduct. Thus, Linn Photo cannot use the indemnity agreement as a shield to protect itself from liability for its clearly infringing acts.

*Id.* at 1348. Here, there are simply no facts analogous to the indemnity agreement in *Olan Mills*. Furthermore, the Report admits that AHRN's behavior was neither recalcitrant nor wilful, and that AHRN corrected its website "only a few hours after MRIS gave AHRN notification of the problem." Report at 9.

The Ninth Circuit Court of Appeals endorsed *Olan Mills* in *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007), but on a similarly distinguishable set of facts:

---

[1] A more thorough discussion of compilation copyright appears in Section C.1 *infra*.

> Google argues that we lack jurisdiction over the preliminary injunction to the extent it enforces unregistered copyrights. Registration is generally a jurisdictional prerequisite to a suit for copyright infringement. See 17 U.S.C. § 411. But section 411 does not limit the remedies a court can grant. Rather, the Copyright Act gives courts broad authority to issue injunctive relief. See 17 U.S.C. § 502(a). Once a court has jurisdiction over an action for copyright infringement under section 411, the court may grant injunctive relief to restrain infringement of any copyright, whether registered or unregistered. See, e.g., *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir.1994); *Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 n. 17 (11th Cir.1984). Because at least *some of the Perfect 10 images at issue were registered*, the district court did not err in determining that it could issue an order that covers unregistered works.

*Id.* at 710, n. 1 (emphasis added). As in *Olan Mills*, the registrations in *Perfect 10* were of copyrighted images and the preliminary injunction was likewise limited to images. That sharply contrasts *Perfect 10* from here, where again the only registered copyrights are compilation copyrights in an automated database that includes photographs and uncopyrightable facts, while the Preliminary Injunction applies only to photographs.

In the *Duncan* case cited by the Ninth Circuit Court in *Perfect 10*, there was a finding of infringement that is absent here, the copyrights were in video broadcasts that the infringer was copying onto videotapes that he later sold, and the preliminary injunction was against copying of future video broadcasts where there was both past infringement and a "substantial likelihood of future infringements," none of which exists here. *Duncan* at 1499,

For at least the foregoing reasons, the *Olan Mills*–style extension of a preliminary injunction to unregistered photographs would be inappropriate in this case. Therefore, the clear statutory language of 17 U.S.C § 411(a)[2] controls, such that the absence of registration in any of the photographs prohibits enforcement of a preliminary injunction related to those unregistered photographs. Accordingly, AHRN requests that the Court

---

[2] § 411(a) of the Copyright Act is discussed in Section D, *infra*.

reject that portion of the Report's recommendation related to the erroneous conclusion that a "violation of the order does not depend on whether the copyrights have also been registered with the Copyright Office."

### C. THE HOLDING IN *XOOM* APPLIES NEITHER TO THE MRIS DATABASE NOR TO THE UNDERLYING PHOTOGRAPHS

#### 1. *Xoom* Applies only to Collective Works, Not to All Compilations

In the Report, the Magistrate referred to the Court's erroneous citation to *Xoom* for the proposition that MRIS's registered compilation copyright in its automated MRIS Database extends to photographs in the MRIS Database:

> The Court has also held that MRIS files its claims of copyright ownership quarterly in accordance with registration procedures, that "the registration of compilations is 'sufficient to provide copyright protection to the underlying works which those [compilations] encompassed,'" *id.* at 696-97 (quoting *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003)), and that MRIS has a registered copyright of the MRIS Database, see *id.* at 705 (MRIS is "the owner and registrant of the MRIS Database compilation.").

Report at p. 4. The edited excerpt of *Xoom* "quoted" above, is incorrect as a matter of law.[3] The databases at issue in *Xoom*, commercial products named SuperBundle and Master Gallery, consisted entirely of images. *Id.* at 283. As such, the registered compilation copyrights in *Xoom* were for collective works, which distinguishes the compilation copyrights in *Xoom* from the compilation copyright in the MRIS Database.

In 17 U.S.C. § 101, the U.S. Copyright Act defines "collective work," which is a subset of "compilation."

---

[3] The full quotation is as follows:
   In the instant case, Imageline created SuperBundle and Master Gallery, both compilations or derivative works, *and* the underlying works which those products encompassed. The Second Circuit held, in *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir.2001), that where an owner of a <u>collective work</u> also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action of the constituent part.
*Xoom* at 283-284 (italics in original, underscore added).

> A "collective work" is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, *constituting separate and independent works in themselves*, are assembled into a collective whole.
>
> A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work *as a whole* constitutes *an* original work of authorship. The term "compilation" includes collective works.

(emphasis added) As the Magistrate admits in her Report,

> the copyright registrations for the MRIS Database list "text" and "photographs" as pre-existing material, and the registrations make no mention of any specific features of the photographs. [*Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 709-12 (D. Md. 2001)] at 711. *Metro Reg'l*, 888 F. Supp. 2d at 696.

Report at 8. As a matter of law, the statutory definition of "collective work" prohibits the MRIS Database from registration as a collective work. The Preliminary Injunction at issue applies only to "MRIS's copyrighted photographs," [D.E. 65] at 2, and not to any other constituent parts of the MRIS Database. Assuming *arguendo* that a single photograph in the MRIS Database, when separated from its associated property listing, constitutes a separate and independent work, then in order for the MRIS Database to satisfy the statutory definition of a "collective work," all other "contributions" to that property listing must constitute "separate and independent works in themselves." This simply cannot be the case for the MRIS Database, which contains text contributions such as property address, square footage, as well as public record information such as property taxes and local public school names. Thus, by the statutory definition of "collective work," as a matter of law, *Xoom* cannot be applied to the MRIS Database.

## 2. *Xoom* Explicitly Refused to Address Whether Registration of the Collective Work Covered the Individual Contributions

Once again, assuming *arguendo* that a single photograph in the MRIS Database, when separated from its associated property listing, constitutes an independently copyrighted work, *Xoom* does not apply, because the *Xoom* court explicitly *refused* to "address the issue of whether the registration of the [collective work] products covered the individual clip-art images." *Xoom* at 283. In other words, the holding in *Xoom* pointedly *avoids* the conclusion for which this Court cited *Xoom* in its Preliminary Injunction.

The Supreme Court in *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (U.S. 1991) noted "that there can be no valid copyright in facts is universally understood," *id.* at 344. The Supreme Court elucidated this point at some length:

> Many compilations consist of nothing but raw data i.e., wholly factual information, not accompanied by any original written expression. On what basis may one claim a copyright in such a work? Common sense tells us that 100 uncopyrightable facts do not magically change their status when gathered in one place….

*Id.* at 345. As the Magistrate recounts in the Report, the MRIS Database is "an automated database consisting of compiled property listings and related informational content." Report at 1, quoting *Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 696 (D. Md. 2012), A majority of the "property listings and related informational content" in the MRIS Database comprises what *Feist* refers to as "wholly factual information, not accompanied by any original written expression," *e.g.* property address, agent name and contact information, asking price, county land record information *inter alia*. As such, under *Feist* those portions of the property listings in the MRIS Database are *uncopyrightable*.

8

The only registered copyright in the MRIS Database is the compilation copyright in the automated MRIS Database. Since many of the contributions to the MRIS Database are uncopyrightable facts, by definition the compilation copyright in the MRIS Database cannot be considered registration of a collective work, where each contribution is a separate and independent work. 17 U.S.C. § 101. As demonstrated *supra*, *Xoom* is inapposite to the MRIS Database, since the holding in *Xoom* applies only to collective works. Furthermore, and even more relevant to this issue, the holding in *Xoom* explicitly declined to rule on whether registration of compilation copyright in a collective work extends to each of the separate and independent contributions in the registered collective work. Specifically, the court in *Xoom* held the following:

> [B]ecause Imageline owned copyright in SuperBundle and Master Gallery and in the underlying works of each, its registration of SuperBundle and Master Gallery was sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting.[5]
>
> Based on this holding, *we do not address the issue of whether the registration of the products covered the individual clip-art images.*

*Xoom* at 284 (emphasis added). Footnote 5 in the excerpt above amplifies the Court's error in citing *Xoom* as authority for extending MRIS's registered compilation copyright to the photographs in the MRIS Database:

> [5] We do not conclude that the registration of SuperBundle and Master Gallery constituted an effective registration of the underlying preexisting works.

*Id.* In other words, the *Xoom* court addressed neither

1. whether compilation copyright extends to individual elements of that compilation, nor

2. whether registration of a compilation copyright constitutes registration of copyright in any underlying works.

9

As demonstrated, the Court's application of *Xoom* to the MRIS Database is erroneous as a matter of law.  Accordingly, AHRN submits that the Report's recommendation that the Court grant MRIS's Motion for Contempt is also incorrect as a matter of law,  AHRN therefore requests that the Court reject the recommendation.

**D. REGISTRATION OF COPYRIGHT IN A PHOTOGRAPH CANNOT BE AS AN INDEPENDENT WORK FOR THE PURPOSES OF A PRELIMINARY INJUNCTION YET ONLY AS A COMPONENT OF A REGISTERED COMPILATION FOR THE PURPOSES OF DAMAGES**

As discussed *supra*, the Report endorses the Court's erroneous ruling that "the registration of compilations is 'sufficient to provide copyright protection to the underlying works which those [compilations] encompassed,'"  Report at 4 (citations omitted). Further as discussed *supra*, this ruling requires the erroneous treatment of the MRIS Database as a collective work, and the subsequent treatment of each constituent element of the MRIS Database—including each individual photograph—as a separate and independent work.  However, this endorsement directly conflicts with the Report's damages analysis, specifically in the Report's citation to *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 709-12 (D. Md. 2001):

> [T]he court discussed at length the question whether photographs on a real estate website should be considered subparts of one compilation or independent works for purposes of awarding damages under § 504(c)(1). The court found the *critical* issue to be whether the photographs are registered as part of a compilation or registered as individual copyrights separately from a compilation.  The court resolved this issue by noting that (1) the language on the registration form read "REVISED COMPILATION OF DATABASE INFORMATION; SOME ORIGINAL TEXT AND PHOTOGRAPHS"; and (2) "[t]he registration makes no mention of the number or any specific features of the photographs."  The court concluded that *the photographs on the real estate database were "registered only as the components of a compilation.*"  *Id.* at 712.

Report at 8 (emphasis added).  In other words, the Report recommends that a photograph in the MRIS Database be treated as a separate and independent work for

10

the purposes of a preliminary injunction, yet that same photograph should be regarded only as a component of a registered compilation for the purposes of computing damages to be assessed for violation of that same preliminary injunction. This dual treatment of copyright in photographs that are elements of a registered compilation, within the scope of a single preliminary injunction, is not permitted by the statutory definition of "compilation."

This erroneous dual treatment of copyright in the photographs further violates the requirements of the Copyright Act, specifically when the Magistrate asserts that "[a] violation of the order does not depend on whether the copyrights have also been registered with the Copyright Office." Report at 4. This assertion is in direct conflict with 17 U.S.C. § 411(a), where the U.S. Copyright Act mandates that

> no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

In other words, absent registration, no court has jurisdiction over a claim of copyright infringement. See Section B *supra*.

The Preliminary Injunction that MRIS argues AHRN has violated concerns only copyrighted photographs, *not* the compilation copyright in the MRIS Database. However, the only registrations in the MRIS database are of compilation copyright in the entire MRIS Database. In the Report, the Magistrate both

1. admits that copyright in the photographs is not registered (Report at 4), and
2. admits that "the photographs do not constitute separate 'works' but rather are parts of a compilation." Report at 8.

This inconsistency is statutorily impermissible. Under § 411(a), there must be a registration for an action to support a Preliminary Injunction. If, as here, the Preliminary

Injunction concerns only photographs, then there must be some registration of copyright in photographs—yet here there is none.

Conversely, where—as here—copyright registration is only in a compilation and where—as here—photographs included in that compilation expressly "do *not* constitute separate 'works' but rather are *parts* of a compilation," (Report at 8, emphasis added) then there can be no violation for display of unregistered photographs absent infringement of the compilation as a whole.

Given the statutory impermissibility of the Report's dual treatment of copyright in the photographs in the MRIS Database, and given the inapplicability of an *Olan Mills*-style extension of a preliminary injunction to unregistered photographs, AHRN requests that the Court reject the recommendation that the Motion for Contempt be granted.

### E. DAMAGES ARE CALCULATED ON AN ARBITRARY AND LEGALLY UNSUPPORTED BASIS

#### 1. Statutory Damages are Inappropriate

In the Report, remedies for civil contempt are appropriately discussed as "remedial and compensatory and . . . nonpunitive." Report at 7. The Magistrate admits that "the actual losses suffered by MRIS are difficult to determine." *Id.* The Magistrate subsequently cites "Section 504(c)(1) of the Copyright Act, which provides for damage awards in cases of *copyright infringement*." *Id.* As an initial matter, MRIS's Motion for Contempt is not alleging copyright infringement, but rather is only alleging violation of the Preliminary Injunction. As such, statutory damages for copyright infringement are inappropriate. In fact, the Magistrate notes in footnote 2 of the Report that MRIS recognizes it has a tough row to hoe in order to prove copyright infringement:

> MRIS does not dispute that it must eventually register the relevant copyrights to ultimately succeed on its infringement claims. ECF No. 108

12

at 11 (citing *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010)).

Report at 4, n. 2. As demonstrated *supra*, the copyrights relevant to the Preliminary Injunction are not registered.

### 2. The Recommended Damages are Arbitrary and Unsupported

The Magistrate applies statutory damages in a manner that is entirely arbitrary, inconsistent with the statute, and wholly unsupported by precedent:

> Here, given [AHRN's] attempt to correct the violation, it is recommended that AHRN be ordered to pay MRIS a compensatory award of $1,000 per week for reproducing MRIS's copyrighted photographs in violation of the preliminary injunction. See *Walpole Woodworkers v. Atlas Fencing*, 218 F. Supp. 2d 247, 255 (D. Conn. 2002) (explaining that contemnor will be subject to a fine of $2,500 each time it violates the court order preventing it from using copyrighted photographs in its catalogue); *Marshall v. Marshall*, 2012 U.S. Dist. LEXIS 45700 (E.D.N.Y. Mar. 30, 2012) (awarding $3,125 per infringed instructional hairstyling video).

Report at 9. Nowhere does the Report indicate how a week is a relevant time period for assessing damages caused by violation of a Preliminary Injunction. Furthermore, the court in *Walpole Woodworkers* awarded no damages and did not discuss the length of infringement at all, much less length of violation of a Preliminary Injunction:

> Accordingly, Atlas is found to have been in contempt of the stipulated Order. However, as no damages have been claimed or shown to have resulted from the violation of the order, and the steps now taken by Picard in response to the filing of the contempt motion presumably will ensure that future "inadvertent" violations do not occur, the Court finds that no imposition of sanctions is appropriate at this juncture. Atlas is advised that any future use of any single copyrighted image from the Walpole catalogs in violation of the order will be subject to a fine of $2,500 per image, payable to the Clerk of the Court. Cf. *NLRB v. J.P. Stevens & Co.*, 563 F.2d 8, 16 (2d Cir.1977) ("the purpose of a motion for civil contempt ... is not to punish intentional misconduct, but rather to enforce compliance with an order of the court and to remedy any harm inflicted on one party by the other party's failure to comply").

*Walpole Woodworkers* at 255. As the above makes clear, defendant Atlas was only *threatened* with a fine of $2,500 per image, for future use of copyrighted images after violation of a Preliminary Injunction. On every level, *Walpole Woodworkers* simply does not support the Magistrate's recommendation of a damages award against AHRN for violation of the Preliminary Injunction. Similarly, the award of damages in *Marshall* was for proven infringement of a registered and copyrighted video recording, not for violation of a preliminary injunction. *Marshall v. Marshall*, 2012 U.S. Dist. LEXIS 45700 (E.D.N.Y. Mar. 30, 2012).

Further with respect to the arbitrary application of an arbitrarily selected statutory damages-based fine of $1,000 to an arbitrarily designated period of one week, the Report admits that under 17 U.S.C. § 504(c)(1), a "victimized copyright owner is entitled to one award per 'work' infringed." Report at 7. Notwithstanding that infringement has not been proved, the report further admits that "the photographs do not constitute separate 'works' but rather are parts of a compilation," Report at 8, and "MRIS may only recover one statutory damage award for each registered compilation." Report at 9. But the compilation copyright in the MRIS Database is not registered weekly, it is registered quarterly. Again, the Report's designation of a one week period for application of statutory damages is arbitrary, contradictory to the Report's own dictum, and wholly unsupported by statute or by any caselaw in the Report. *Cf. Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 313, 320 (S.D.N.Y. 2011)("Plaintiffs are entitled to a single statutory damage award from Defendants per work infringed, regardless of how many individual users directly infringed that particular work.")

Given the lack of statutory and precedential authority for the damages recommendations in the Report, and further given that copyright infringement has neither been alleged in the Motion for Contempt nor proved in the litigation, AHRN requests that the Court reject the recommendation of damages in the Report.

### F. <u>MRIS'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE IS UNSUPPORTED BY ADMISSIBLE EVIDENCE</u>

In footnote 4, without indicating that any of the briefs supporting or opposing have been considered or even read, the Report summarily recommends that the Court grant MRIS's Motion for Leave to File Supplemental Evidence in Support of Plaintiff MRIS's Motion For Contempt [D.E 126] ("Motion for Leave").  Report at 9, n. 4. However, the Motion for Leave is entirely unsupported by any admissible evidence.  As such, the Report's recommendation to grant the Motion for Leave is incorrect as a matter of law.

MRIS's Motion for Leave to File is supported by a memorandum [ D.E. 126-1] and a declaration on personal knowledge by Danielle Blanchard, an MRIS employee [D.E. 126-2].  In its Motion for Leave, MRIS argues that

> MRIS's proposed supplemental evidence shows that AHRN owns and operates additional websites featuring numerous photographs bearing MRIS's copyright notice, including for example http://bonet.neighborhubs.com and http://stage.neighborhubs.com.  (*Id.* [citing (Exhibit A, 5/14/13 Blanchard Decl.) ¶ 2)])

[D.E. 126] at 2.  Neither the 5/14 Blanchard Declaration nor Exhibits 1 to 7 attached thereto mention either http://bonet.neighborhubs.com or http://stage.neighborhubs.com. *See* [D.E. 126-1].  In fact, although the 5/14 Blanchard Declaration states that "[t]he screen shots shown below and attached hereto as Exhibits 1 to 7 were taken from http://mike.neighborhubs.com and pages accessible therefrom on May 13, 2013,"

15

*id.* at 2, only four of the total 16 screen shots show URLs indicating that they were captured from http://mike.neighborhubs.com.  *See id.* at 2, 3, Exhibit 1, and Exhibit 2.

Furthermore, all of the evidence proffered in the 5/14 Blanchard Declaration is stated to be based entirely on the personal knowledge of the Declarant, Danielle Blanchard.  [D.E. 126-2] at 1.  In her declaration, Ms. Blanchard attests that "**MRIS** *has recently learned* that AHRN is currently displaying photographs bearing MRIS copyright notices and owned by MRIS on the website located at http://mike.neighborhubs.com." *Id.* at ¶ 2 (emphasis added).  In her declaration Ms. Blanchard includes screen shots and attaches more screen shots as Exhibits 1 to 7, all of which she attests "were taken from http://mike.neighborhubs.com and pages accessible therefrom on May 13, 2013." *Id.*  She did not state who took the screenshots, at whose direction this was done, or how anyone at MRIS learned of the existence of this site.  Such an attestation is clearly inadmissible hearsay under Federal Rule of Evidence 802.  Although Danielle Blanchard states in the 5/14 Blanchard Declaration that she is "a Contract Manager at MRIS" *id.* at ¶ 1, Danielle Blanchard does not indicate that *she* learned "that AHRN is currently displaying photographs bearing MRIS copyright notices and owned by MRIS on the website located at http://mike.neighborhubs.com."  Thus, by the words of her declaration, Ms. Blanchard is not attesting to the evidence proffered in the Motion for Leave.

Given that the proffered evidence has not been offered by anyone with firsthand knowledge thereof, the proffered evidence is inadmissible hearsay.  AHRN therefore submits that the Report's recommendation that the Court grant MRIS's Motion for Leave

is based on a clear error of law in admitting inadmissible evidence, and requests that the Court reject the Report's recommendation.

### III.  CONCLUSION

For the reasons set forth above, AHRN respectfully requests that the Court sustain the objections raised, and overrule the Magistrate's Report.

Respectfully submitted,

FARKAS+TOIKKA, LLP

Dated: June 21, 2013

/S/ Russell O. Paige
Richard S. Toikka, Fed Bar No.13543
L. Peter Farkas (*pro hac vice*)
Russell O. Paige, Fed. Bar No. 16035
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)
rop@farkastoikka.com (email)

Of Counsel:

Christopher R. Miller (*pro hac vice*)
Chief Legal Officer and General Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California 94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

*Counsel for Defendant and Counterclaimant*
American Home Realty Network, Inc.

## CERTIFICATE OF SERVICE

I, Russell O. Paige, hereby certify that on this the 21st day of June, 2013, a copy of the foregoing Objections to the Magistrate Judge's Report and Recommendation on MRIS's Motion for Contempt and AHRN's Motion for Leave to File a Surreply was served by electronic means using the Court's CM/ECF system upon:

Brian P. Morrissey, Jr.
bmorrissey@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Jack R. Bierig
jbierig@sidley.com
Tacy F. Flint
tflint@sidley.com
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Counsel for Counterclaim Defendant*
National Association of Realtors®


John T. Westermeier, Esquire
Margaret A. Esquenet, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*Counsel for Plaintiff and Counterclaim Defendant*
Metropolitan Regional Information Systems, Inc.


                                        */S/ Russell O. Paige*
                                        Russell O. Paige