## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | |
|---|---|
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.,** | **CIVIL ACTION NO. 12-cv-0954-AW** |
| **Plaintiff,** | |
| **v.** | |
| **AMERICAN HOME REALTY NETWORK, INC. and JONATHAN J. CARDELLA,** | |
| **Defendants** | |
| **and** | |
| **AMERICAN HOME REALTY NETWORK, INC.** | |
| **Counterclaim Plaintiff,** | |
| **v.** | |
| **METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC., NATIONAL ASSOCIATION OF REALTORS, AND DOES 1-25,** | |
| **Counterclaim Defendants.** | |

### COUNTERCLAIM DEFENDANT METROPOLITAN REGIONAL INFORMATION SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AHRN'S SECOND AMENDED COUNTERCLAIMS

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTS ....................................................................................................................2

III.   STANDARD OF REVIEW ....................................................................................2

IV.    JUNE 10, 2013 MEMORANDUM OPINION .......................................................3

V.     ARGUMENT ..........................................................................................................5

       A.    Section 1 of the Sherman Act Is Unavailable to AHRN Due to MRIS's
             Immunity and Must Be Dismissed................................................................5

             1.    MRIS Has Immunity from AHRN's Antitrust Claims Because
                   MRIS's Lawsuit Does Not Constitute "Sham Litigation".........................5

             2.    AHRN's Allegations of "Fraud on the Copyright Office" Do Not
                   Undermine MRIS's Immunity .................................................................6

       B.    Conclusory Allegations of Concerted Action Are Insufficient to State a
             Claim Under Section 1 of the Sherman Act................................................17

             1.    The Legal Standard for a Section 1 Sherman Act Claim...........................18

             2.    AHRN Fails to Provide Sufficient Factual Support for Its Sherman
                   Act Section 1 Claim Under *Twombly* ........................................................20

             3.    AHRN Is Not a Competitor of MRIS and MRIS Has No Intention
                   of "Driv[ing] AHRN Out of Business ......................................................25

             4.    MRIS Has the Right as a Copyright Owner to Refuse to Issue
                   AHRN a Custom License for Content from the MRIS Database .............26

             5.    Anti-Competitive Effect Allegations Fail to Connect Alleged Harm
                   to Allegedly Anti-Competitive Activity ...................................................28

       C.    AHRN's Maryland Unfair Competition Claim Fails as a Matter of Law.............30

       D.    AHRN's Unfair Competition Claim Under Cal. Bus. & Prof. Code §
             17200 et seq., Must Be Dismissed for Lack of Jurisdiction and Is
             Impermissible As a Matter of Law ...............................................................32

             1.    AHRN's California UCL Claim Does Not Apply Extraterritorially
                   to MRIS...................................................................................................32

      2.      Even if the Court Determines It Has Jurisdiction Over AHRN's
California UCL Claim, It Is Impermissible and Must Be Dismissed ........33

VI.    CONCLUSION..............................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alberto-Culver Co. v. Andrea Dumon, Inc.,*
  466 F.2d 705 (7th Cir. 1972) ...............................................................30

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................3, 19

*Augustine v. FIA Card Servs., N.A.,*
  485 F. Supp. 2d 1172 (E.D. Cal. 2007)...................................................34

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................... passim

*CoStar, Inc. v. LoopNet, Inc.,*
  373 F.3d 544 (4th Cir. 2009) ...............................................................13

*Craigslist v. 3Taps,*
  No. CV-12-03816, 2013 WL 1819999 (N.D. Cal. Apr. 30, 2013)...........................................9

*Daniels v. Arcade, L.P.,*
  477 F. App'x 125 (4th Cir. 2012) ...............................................................22

*Data Gen. Corp. v. Grumman Sys. Support Corp.,*
  36 F.3d 1147 (1st Cir. 1994)...................................................................27

*Dickson v. Microsoft Corp.,*
  309 F.3d 193 (4th Cir. 2002) ...............................................................29, 30

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,*
  365 U.S. 127 (1961)...................................................................5

*Edwards v. City of Goldsboro,*
  178 F.3d 231 (4th Cir. 1999) ...............................................................2

*Erickson v. Pardus,*
  551 U.S. 89 (2007)...................................................................2

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ...............................................................34

*King Records, Inc. v. Bennett,*
  438 F. Supp. 2d 812 (M.D. Tenn. 2006)...................................................8, 10

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,*
  345 F.3d 1140 (9th Cir. 2003) ...............................................................7

*Loren Data Corp. v. GXS, Inc.*,
    Civ. A. No. DKC-10-3474, 2011 WL 3511003 (D. Md. Aug. 9, 2011)................................19

*Midw. Commc'ns, Inc. v. Minn. Twins, Inc.*,
    779 F.2d 444 (8th Cir. 1986) ..........................................................30

*Océ N. Am. Inc. v. MCS Servs., Inc.*
    795 F. Supp. 2d 337 (D. Md. 2011)......................................................27

*Ohio Learning Centers LLC v. Sylvan Learning, Inc.*
    Civ. A. No. RDB-10-1932, 2012 WL 3025106 (D. Md. July 24, 2012) ................................19

*Omni Resource Dev. Corp. v. Conoco, Inc.*,
    739 F.2d 1412 (9th Cir. 1984) ....................................................3, 6, 9

*Otter Tail Power Co. v. United States*,
    410 U.S. 366 (1973)....................................................................5

*Papasan v. Allain*,
    478 U.S. 265 (1986)....................................................................3

*Primetime 24 Joint Venture v. NBC*,
    219 F.3d 92 (2d Cir. 2000)..............................................................5

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)....................................................................6

*Regional Multiple Listing Service of Minnesota, Inc. v. American Home Realty Network, Inc.*,
    No. 12-965(JRT/FLN) (D. Minn. July 5, 2013) ......................................18, 26

*Robertson v. Sea Pines Real Estate Cos.*,
    679 F.3d 278 (4th Cir. 2012) ..........................................................19

*Serv. & Training, Inc. v. Data Gen. Corp.*,
    963 F.2d 680 (4th Cir. 1992) ..........................................................31

*Stewart v. Abend*,
    495 U.S. 207 (1990)..................................................................31

*Testa v. Janssen*,
    492 F. Supp. 198 (W.D. Pa. 1980)......................................................8

*United Black Firefighters of Norfolk v. Hirst*,
    604 F.2d 844 (4th Cir. 1979) ..........................................................3

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965)................................................................5, 32

*United States v. Colgate & Co.*,
   250 U.S. 300 (1919) ...........................................................................................32

*Williams v. Wash. Mut. Bank*,
   No. Civ-07-2418-WBS-GGH, 2008 WL 115097 (E.D. Cal. Jan. 11, 2008) ..........................34

**STATE CASES**

*Buckland v. Threshold Enters., Ltd.*,
   66 Cal. Rptr. 3d 543 (Cal. Ct. App. 2007) ...........................................................36

*Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ......................................................................................34

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) ...............................................................................34

*Kasky v. Nike*,
   27 Cal. 4th 939 (2002) ......................................................................................35

**FEDERAL STATUTES**

17 U.S.C. § 101 ..................................................................................................15

17 U.S.C. § 201(b) ..............................................................................................10

17 U.S.C. § 201(c) ..............................................................................................15

17 U.S.C. § 411(b)(1)(A) and (B) .............................................................................7

17 U.S.C. § 411(b)(2) ...........................................................................................8

Sherman Act Section 1, 15 U.S.C. § 1 ............................................................... passim

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ....................................................................32, 34, 35

**RULES**

Fed. R. Civ. P. 4(m) .............................................................................................2

Fed. R. Civ. P. 9(b) ............................................................................................34

Fed. R. Civ. P. 12(b)(6) ........................................................................................2

**OTHER AUTHORITIES**

M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 7.20, at 7–197 (1990) .................................7

## I.      INTRODUCTION

AHRN's Second Amended Counterclaims fail to address the deficiencies specifically identified by this Court in its June 10, 2013 Memorandum Opinion, which dismissed without prejudice AHRN's claims under Maryland unfair competition law (Count I), California unfair competition law (Count II) and Section I of the Sherman Act (Count III).  Despite this Court's admonitions regarding the pleading requirements, AHRN has once again failed to state claims upon which relief can be granted.

Regarding the Sherman Act claim, AHRN has again failed to make allegations sufficient to overcome the fact that MRIS's effort to enforce its copyrights in this action does not constitute "sham litigation" and instead qualifies as immunized petitioning activity protected under the *Noerr-Pennington* doctrine.  AHRN has also failed to adequately allege that MRIS committed "fraud on the Copyright Office," as that concept is articulated in the Copyright Act, i.e., the making of false representations of fact with the requisite intent to defraud.  Indeed, the argument that MRIS's registrations are defective was rejected by the Fourth Circuit in its July 17, 2013 opinion affirming this Court's grant of a preliminary injunction.  Further, AHRN again bases its claims of anti-competitive activities on the part of MRIS, the National Association of Realtors, and others on impermissible conclusory allegations already rejected by the Court in its June 10, 2013 Memorandum Opinion.  Accordingly, AHRN's Sherman Act Section 1 claim should be dismissed with prejudice.

AHRN's Maryland and California unfair competition claims are also flawed.  AHRN's Maryland unfair competition law claim relies upon the same allegations asserted in support of its Sherman Act Section 1 claim and should be dismissed with prejudice.  AHRN made no attempt to cure the deficiencies in its California unfair competition claim ("California UCL") that this Court identified, and did not allege any harm that AHRN suffered in California that would justify

extraterritorial application of the UCL.  Accordingly, the Maryland and California unfair competition claims should also be dismissed with prejudice.

In sum, none of AHRN's Second Amended Counterclaims state a claim for relief. Rather, the goals of AHRN's Second Amended Counterclaims appear to be to cast aspersions on MRIS and force MRIS to expend resources to defend itself, repeatedly, against AHRN's spurious claims.  The court should not allow AHRN any further opportunities to extend these proceedings while AHRN continues to infringe MRIS's rights.[1]  MRIS therefore respectfully requests that each of AHRN's Second Amended Counterclaims be dismissed with prejudice.

## II.    FACTS

Through the various filings by the parties in this action (e.g., Dkts. 1, 9, 24-1, 25, 26, 27, 29, 32, 33, and 76) and as detailed in the Court's Memorandum Opinions (Dkts. 34, 64 and 159), the Court is familiar with the parties and many of the facts and contentions in this matter.  For the sake of conciseness, MRIS will not repeat the background information available in these earlier proceedings.

## III.    STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  While a court considering a motion to dismiss for failure to state a claim "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the complaint must state sufficient facts to state a claim that is "plausible on its face," *Bell Atl. Corp.*

---

[1] Nor should this Court allow AHRN an opportunity to name the "Does 1-25" who are Counterclaim Defendants in addition to MRIS and AHRN.  The deadline for AHRN to name and serve these additional parties pursuant to Fed. R. Civ. P. 4(m) has long passed.  There is no doubt AHRN knows precisely who it may have wanted to identify as "Does 1-25" as other parties are identified in several paragraphs of the Second Amended Counterclaims (*see e.g.*, SAC ¶¶ 79, 98, 111, 113-116).  AHRN failed to name or serve these parties, despite its multiple attempts to assert its counterclaims, and the Court should dismiss them.

*v. Twombly*, 550 U.S. 544, 570 (2007).  In resolving a motion to dismiss, the Court should proceed in two steps.  First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusion that receive no deference.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, and a party's "'naked assertions' devoid of 'further factual enhancement'" are not enough to withstand dismissal.  *Id.* at 678.  Second, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.  The Court should not accept, however, "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  Moreover, a losing party cannot simply recharacterize losing positions and hope for a second chance via amended counterclaims.  *Omni Resource Dev. Corp. v. Conoco, Inc*., 739 F.2d 1412, 1415 (9th Cir. 1984) (holding that "Omni's complaint, however, impresses us as a plea for a second day in court on issues already litigated and lost.  We are not inclined to let the antitrust laws be the mechanism for that challenge.")

## IV.    JUNE 10, 2013 MEMORANDUM OPINION

On June 10, 2013 this Court issued its Memorandum Opinion (Dkt. 159) ("Mem. Op.") and Order (Dkt. 160) dismissing with prejudice AHRN's Lanham Act § 43(a), Sherman Act Section 2, copyright misuse, and barratry claims asserted in AHRN's First Amended Counterclaims.  This Court dismissed without prejudice AHRN's Sherman Act Section 1, Maryland unfair competition law, and California unfair competition law claims.  In its Memorandum Opinion, this Court described the deficiencies present in these claims that justified their dismissal.

In its analysis of AHRN's Sherman Act Section 1 claim, the Court held that AHRN's allegations did not "set forth a plausible claim of fraud on the Copyright Office" and that, consequently, the "Counterclaim-Defendants are therefore entitled to *Noerr-Pennington* immunity from AHRN's section 1 claims to the extent that they are based on the filing of this litigation and the incidents of that litigation." (Mem. Op. 28.)  The Court further held that, "[w]ith respect to other factual allegations in the First Amended Counterclaims, AHRN has failed to outline the contours of an agreement and has failed to explain how Counterclaim-Defendants' alleged conduct affected competition generally." (Mem. Op. 36.)  The Court noted that "[i]n light of the deficiencies identified herein, the Court has serious reservations about AHRN's ability to set forth a cognizable Sherman Act claim against either Counterclaim-Defendant." (*Id*.)

The Court found that the "deficiencies underlying AHRN's unfair competition claim are similar to those underlying its Sherman Act § 1 claims." (Mem. Op. 38.)  Specifically, the Court held that it "discern[ed] nothing unfair" about "statements regarding the copyrightability of MLS listing data, particularly where they simply expressed legal opinions and the Copyright Office ultimately granted the applications," or "in MRIS or NAR's litigation or related activities with respect to MLS compilation copyrights, especially given that AHRN has not plead with particularity a basis of fraud on the Copyright Office." (Mem. Op. 37.)  Moreover, the Court found nothing "unfair" in MRIS's refusal to grant licenses to AHRN, and noted that such allegations "cannot form the basis of an unfair competition claim." (*Id*.)

For AHRN's California Unfair Competition claim, this Court noted that AHRN failed to state a plausible claim, referring to the defects present in AHRN's Maryland unfair competition claim, as well as an "additional defect," namely, that AHRN failed to "sufficiently plead the

4

harm it suffered in California" that would justify the extraterritorial application of the California UCL. (Mem. Op. 38-39.)

As explained below, AHRN's revised allegations fail to cure these deficiencies, and AHRN's Second Amended Counterclaims should be dismissed with prejudice.

## V.    ARGUMENT

### A.    Section 1 of the Sherman Act Is Unavailable to AHRN Due to MRIS's Immunity and Must Be Dismissed

#### 1.    MRIS Has Immunity from AHRN's Antitrust Claims Because MRIS's Lawsuit Does Not Constitute "Sham Litigation"

MRIS's lawsuit for copyright and trademark infringement constitutes petitioning activity protected by the First Amendment and immunized by the *Noerr-Pennington* doctrine. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-38 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 669-71 (1965); *Otter Tail Power Co. v. United States*, 410 U.S. 366, 380 (1973). Indeed, *Noerr-Pennington* expressly immunizes collusion among market participants to bring legal action against a common adversary. *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 100 (2d Cir. 2000) (holding that *Noerr-Pennington* immunity "encompass[es] concerted efforts incident to litigation, such as prelitgation 'threat letters' . . . and settlement offers." ) Even if the Court accepts AHRN's allegations regarding any concerted efforts by MRIS, NAR, and others, by the terms of the Second Amended Counterclaims, such efforts focus on immunized activity, namely, copyright and trademark enforcement.

As this Court recognized, to pierce this immunity AHRN must show that MRIS's copyright and trademark infringement action constitutes "sham litigation."[2]  (Mem. Op. 23);

---

[2] AHRN asserts *no* allegations that MRIS's trademark infringement claim is a "sham," instead focusing upon MRIS's alleged "sham" copyright registration program and "fraud on the Copyright Office."

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993) (holding that an objectively reasonable effort to litigate a copyright claim cannot be "sham," and immunity from antitrust liability applies).  A "sham litigation" is one brought with the knowledge that it is objectively baseless *and* nonetheless initiated for an anticompetitive purpose.  *Id*. at 60-61.  Both elements must be present.  AHRN's position that MRIS's copyright and trademark infringement action constitutes "sham litigation" is remarkable, particularly in light of this Court's holding: "In this case, not only did the Court deny AHRN's Motion to Dismiss, but it also granted MRIS a preliminary injunction.  The lawsuit therefore cannot be deemed 'objectively baseless.'"  (Mem. Op. 24) (citing *Omni Res. Dev. Corp.*, 739 F.3d at 1414.)  This Court's opinion is further supported by the Fourth Circuit's opinion affirming the grant of the preliminary injunction, rejecting AHRN's attacks on MRIS's copyright claims, and establishing that the litigation is not a "sham."  Accordingly, MRIS has full immunity from AHRN's antitrust claim and Count III, Sherman Act Section 1, must be dismissed with prejudice.

> **2.    AHRN's Allegations of "Fraud on the Copyright Office" Do Not Undermine MRIS's Immunity**

AHRN contends that MRIS and the Counterclaim-Defendants are "not entitled to *Noerr-Pennington* immunity because they committed fraud on the U.S. Copyright Office in registering their copyrights." (Mem. Op. 24.)  In its June 10 Memorandum Opinion, this Court found that AHRN failed to "set forth a plausible claim of fraud on the Copyright Office," citing AHRN's failure to "allege with sufficient particularity" that MRIS "knowingly" made omissions or "material, factual misrepresentations" to the Copyright Office.  (Mem. Op. 26-28.)

AHRN's Second Amended Counterclaims suffer from the same deficiencies found in the First Amended Counterclaims.  AHRN attempts to allege that MRIS has committed fraud on the

Copyright Office by: (1) "urg[ing] the MLS industry to follow MRIS's example in claiming that the copyrighted 'works' in their electronic databases were works for hire by MLS employees," (SAC ¶ 76); (2) failing to 'maintain records of photographers, copyright assignments and proof of ownership of photographs" (SAC ¶ 82); (3) claiming it owns the textual elements contained in the MRIS Database (SAC ¶ 87); and (4) failing to disclose the lack of "coordination" and "arrangement" of MLS database material by MRIS and other MLSs based upon use of "off-the-shelf database software" (SAC ¶ 127).  Setting aside the various misrepresentations of MRIS by AHRN, none of AHRN's allegations constitute fraud on the Copyright Office as that concept is reflected in the Copyright Act, namely:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, ***unless***—
>
> > (A) the inaccurate information was included on the application for copyright registration with ***knowledge that it was inaccurate***; ***and***
> >
> > (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to ***refuse registration***.

17 U.S.C. § 411(b)(1)(A) and (B) (emphasis added).

A misstatement on a copyright application, *unaccompanied by fraud*, neither invalidates the copyright nor renders a registration certificate incapable of supporting an infringement action.  *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1445 (9th Cir. 2003); *see also* M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 7.20, at 7–197 & 198 (1990). Neither does AHRN even allege that the alleged "inaccurate" designation of the MRIS Database as a "work for hire," "if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1)(B).[3]

---

[3] Moreover, the Copyright Act states:  "In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."

Notably, courts have adopted a liberal approach in upholding even erroneous copyright

registration applications, including applications that misstated the name of the author or relied

upon invalid assignments.  *See, e.g.*, *Testa v. Janssen*, 492 F. Supp. 198, 201 (W.D. Pa. 1980)

(rejecting claim that false representation of ownership in song barred cause of action for

infringement and finding that such misrepresentations were "immaterial inasmuch as no

prejudice has accrued to defendants, and the transgression in no way affects the validity of the

copyright.").  In *King Records, Inc. v. Bennett*, the district court found that the copyright

claimant had made "mistake piled on mistake" in its copyright registrations, including

misidentification of the corporation claiming copyright and reliance upon invalid assignments.

438 F. Supp. 2d 812, 839 (M.D. Tenn. 2006).  Despite these numerous mistakes, the court stated:

> Nevertheless the Court is mindful of its mandate to preserve copyrights.
> In addition, Defendants bear a heavy burden to prove that the
> misidentification of the copyright claimant on the certificate of registration
> was fraudulent or prejudicial such that the copyright must be invalidated.
> Defendants have not met their burden.  Defendants do not cite any facts
> that would support fraud. . . .  Further, Defendants have not shown how
> they have suffered any prejudice.

*Id*. at 839-40.  The court further concluded that the copyright claimant's mistake "would not

have misled anyone to believe that the copyright did not exist," and that the error "would not

have affected the decision of the Copyright Office in granting the copyright."  *Id*. at 840.

### a.    MRIS Does Not Fraudulently Register the MRIS Database as a "Work for Hire"

Continuing to rely on the MRIS Guidance Paper, which the Court found to be protected

legal opinion and "true" (Mem. Op. 19-20, n. 5), AHRN's revised counterclaims contend that

"MRIS's 2005 and 2006 Guidance Papers urged the MLS industry to follow MRIS's example in

---

17 U.S.C. § 411(b)(2). Consequently, if, despite the guidance from the Compendium of Copyright Office Practices II on the issue (see Section V.A.2.a, *infra*), the Court believes that AHRN may be able to meet the heavy burden articulated in Section 411(b)(1), MRIS respectfully requests that the Court refer to the Register of Copyrights the issue of whether the Copyright Office would have refused registration.

claiming that the copyrighted 'works' in their electronic databases were works for hire by MLS employees." (SAC ¶ 76.) According to AHRN, "MLSs have since that time consistently made the work for hire statements to the Copyright Office in their applications to register compilation copyright in their electronic databases." (SAC ¶ 79.) AHRN contends that these "work for hire" claims are false because "MRIS employees, and on information and belief, employees of other MLSs do not take the photographs of residential real estate properties listed in their respective databases," and "do not author the text describing residential real estate listed in their respective databases." (SAC ¶ 80.) AHRN claims that the "purpose of the false work for hire statements is to obviate the requirement to list photographers and authors," and that "MLS copyright registrations resulting from applications containing false 'work for hire' claims . . .are invalid because the Copyright Office would not have registered the copyrights knowing the work for hire claims were false." (SAC ¶¶ 82-83.) These unsupported allegations are an impermissible "plea for a second day in court on issues already litigated and lost." *Omni Resource Dev. Corp.*, 739 F.2d at 1415.

This Court has already rejected AHRN's argument that MRIS is required to list the authors and titles of all works contained within the MRIS Database under Section 409 of the Copyright Act. (August 27, 2012 Memorandum Opinion, Dkt. 34 ("Aug. 27 Mem. Op.") at 19.) On July 17, 2013, the Fourth Circuit affirmed this Court's findings regarding Section 409, and agreed with the district court's finding in *Craigslist v. 3Taps* that "it would be . . . [absurd and] inefficient to require the registrant to list each author for an extremely large number of component works to which the registrant has acquired an exclusive license." (Judgment of U.S. Court of Appeals for the Fourth Circuit (Dkt. 179) ("Fourth Cir. Op.") at 19) (citing No. CV-12-03816, 2013 WL 1819999, at * 10 (N.D. Cal. Apr. 30, 2013) (internal citation omitted).) Despite

9

AHRN's protestations, MRIS did not categorize the MRIS Database as a "work for hire" in its copyright applications to avoid a non-existent requirement.

It is well established that a collective work, such as the MRIS Database, can be considered a work for hire.  As the Compendium II of Copyright Office Practices states, "[t]he collective work *as a whole* is often a work made for hire, and in such cases, *the author is the employer or other person for whom the work was prepared.  See* 17 U.S.C. § 201(b); Compendium II of Copyright Office Practices § 308.02 (emphasis added).  MRIS's use of the "work for hire" designation applies to the *entire MRIS Database*.  MRIS creates and owns the MRIS Database as a whole, making it a quintessential work for hire.  And MRIS employees *do* contribute copyrighted material to the MRIS Database.  Further, the copyrights in the photographs contained in the MRIS Database are assigned to MRIS via the TOU by MRIS's subscribers.  (Aug. 27 Mem. Op. 22-24.)  These copyrighted photographs become part of the larger MRIS Database, which is a collective, compilation work treated as a "work made for hire" under the Copyright Act.

AHRN again provides no factual support for its conclusory allegations that MRIS's representations to the Copyright Office constitute fraud, i.e., that they are knowingly false *and* would have caused the Copyright Office to refuse registration.   Moreover, even assuming that MRIS mislabeled the MRIS Database as a "work for hire," AHRN offers no evidence in support of its conclusory allegation that MRIS filed its application as a "work for hire" with knowledge that such a characterization was inaccurate *and* that such a mistaken characterization would have caused the Copyright Office to refuse registration.  Accordingly, AHRN has failed to meet its "heavy burden," *King Records*, 438 F. Supp. 2d at 839, and its allegation that MRIS's accurate "work for hire" claim somehow constitutes fraud on the Copyright Office must be rejected.

        **b.**      **AHRN's Claim that MRIS's Response to Interrogatory No. 11 Supports AHRN's Fraud Allegations Is Without Merit**

According to AHRN, "the purpose of the false work for hire statements is to obviate the requirement to list photographers and authors so as to conceal from the Copyright Office MRIS's "admitted . . . failure to 'maintain records of photographers, copyright assignment and proof of ownership of photographs." (SAC ¶ 82.) Relying upon this alleged "admission," AHRN claims that MRIS "is seeking to enforce copyrights knowing that they could not prove ownership of the copyrights." (SAC ¶ 125.) AHRN's claims that MRIS conceals information from the Copyright Office and lacks proof of its ownership of copyright for photographs in the MRIS Database are meritless for a number of reasons.

First, as stated above, AHRN's "requirement to list photographers" argument is a baseless attempt to resuscitate its already-rejected claim that under Section 409 of the Copyright Act, MRIS must provide the title and author's information for each of the component works (including photographs) contained in the MRIS Database. This Court held in its August 27, 2012 Order[4] that it "disagreed" with AHRN's interpretation of Section 409, concluding that "[t]he statute does not unambiguously require every application for a compilation to include the author and title of each underlying work" and that "the statute could easily be read to require only the listing of the author and title of the compilation itself." (Dkt. 34 at 19.) The Fourth Circuit agreed with this Court's conclusion in its July 17, 2013 Opinion, holding that: "Adding impediments to automated database authors' attempts to register their own component works conflicts with the general purpose of Section 409 to encourage prompt registration . . . and

---

[4] This Court's November 13 Memorandum Opinion and Order revised the scope of its August 27 Order, but did not again address Section 409.

11

thwarts the specific goal embodied in Section 408 of easing the burden on group registrations."

(Fourth Cir. Op. 20.)

Second, AHRN's claim that MRIS has "admitted it does not 'maintain records' of photographers, copyright assignment and proof of ownership of photographs" (SAC ¶ 125) selectively edits and mischaracterizes MRIS's supplemental response to Interrogatory No. 11.[5] MRIS has made no such "admission" regarding its ownership of the MRIS Database and the photographs contained therein.  In its entirety, MRIS's response to Interrogatory No. 11 reads as follows:

> A MRIS subscriber uploading a photographic image to the MRIS Database must agree to the MRIS Terms of Use Agreement ("MRIS TOU").  The MRIS TOU states as follows:
>
> By submitting an image, you hereby irrevocably assign (and agree to assign) to MRIS, free and clear of any restrictions or encumbrances, all of your rights, title and interest in and to the image submitted. This assignment includes, without limitation, all worldwide copyrights in and to the image, and the right to sue for past and future infringements. If and to the extent you retain any copyrights or other ownership rights in or to the image despite this assignment, you waive and agree never to assert any such rights against MRIS or its successors, licensees, or customers, including without limitation, any moral rights that you may have in or to the image. *You warrant that any image submitted is your sole property, that no third party owns the image or any rights in or to the image (or any rights that, to your knowledge would undermine this assignment), and that you are not submitting materials for which you do not have the right to make the assignment described above.* [Emphasis added.]
>
> MRIS does not maintain records of "the photographer, date of creation, any copyright assignment records and/or proof of ownership" for photographic images in the MRIS Database.  The Copyright Office does not require an owner of a compilation copyright like MRIS to provide such details.  *Proof of ownership of copyright in any photographic image uploaded to the MRIS Database is established by a party's assent to the MRIS TOU and submission of the image.*  [Emphasis added.]

---

[5] AHRN has repeatedly and actively misrepresented to this Court MRIS's response to Interrogatory No. 11 as an "admission" in its filings with this Court, including its Opposition to MRIS's Motion for Leave to Submit Supplemental Evidence of Contempt (Dkt. 144), its Motion to Vacate (Dkt. 155), and its Reply in Support of its Motion to Vacate (Dkt. 178).

AHRN claims that the selectively edited "admission" in MRIS's response to Interrogatory No. 11 demonstrates that MRIS "cannot comply with the statutory requirement of ownership of a valid copyright to photographs" and "cannot establish their infringement." (SAC ¶ 120.)  AHRN's reasoning is simply wrong.  To date, AHRN has cited no authority in support of its position that MRIS must obtain and maintain any additional records regarding subscribers' rights in the photographs (such as a document evincing that the subscriber was the photographer, employment agreements between a subscriber and a third party, work for hire agreements between a subscriber and a third party, an assignment documents between a subscriber and a third party, etc.) to establish its ownership of a *compilation copyright* in the MRIS Database and in the in constituent elements, e.g., photographs, contained therein.  In a recent filing, AHRN maligns MRIS's statement that "the Copyright Office does not require an owner of a compilation copyright like MRIS to provide such details" by claiming that "[t]he issue here is not what the Copyright Office requires, but what the courts require."  (Reply in Support of Motion to Vacate (Dkt. 178) at 13.)  However, authority cited by AHRN to date supporting its contention is inapposite.[6]  Further, the requirements imposed by the Copyright Office for those registrations *are* the issue, as MRIS has alleged infringement of its registered copyrights in the MRIS Database and AHRN has challenged the validity of those registrations. Moreover, the Fourth Circuit has opined that the MRIS registrations are valid and enforceable. (Fourth Cir. Op. 2, *passim*.)

---

[6] For example, AHRN has previously relied upon the Fourth Circuit's opinion in *CoStar, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2009) in support of its claim that "[i]f MRIS has no record of who took the photograph and no proof of ownership, MRIS cannot establish a chain of custody in district court." (Reply in Support of Motion to Vacate (Dkt. 178) at 13).  This case stands only for the proposition that a copyright owner must prove ownership of a valid copyright to establish infringement.  *CoStar*, 373 F.3d at 549.  It *does not* stand for the proposition that MRIS must "maintain records of "the photographer, date of creation, any copyright assignment records and/or proof of ownership" to obtain a valid copyright for the photographs in the MRIS Database.  Other cases relied upon by AHRN in support of this point are equally distinguishable.

Contrary to AHRN's claims, the statement that "MRIS does not maintain records of 'the photographer, date of creation, any copyright assignment records and/or proof of ownership' for photographic images in the MRIS Database" *does not* stand for the proposition that MRIS cannot assert that it "owns" copyrights to the photographs contained in the MRIS Database.  As MRIS's complete response to Interrogatory No. 11 states, "proof of ownership of copyright in any photographic image uploaded to the MRIS Database is established by a party's assent to the MRIS TOU and submission of the image" because the TOU contains express language regarding ownership and the authority to assign.

In other words, each listing, including the photographs, is associated with an individual MRIS subscriber.  By virtue of each MRIS subscriber's unique credentials, MRIS is able to associate each subscriber logically with the specific copyrighted photographs assigned to MRIS that are included in the MRIS Database.  Listing photographs can only be uploaded by an authorized subscriber logged-in to the MRIS service.  Each such subscriber, before uploading any photograph, assents to the TOU and thus attests to the right to assign each photograph. Nothing more is required.

> ### c. AHRN's Allegations Regarding MRIS's Ownership of Text in the MRIS Database Do Not Support "Fraud on Copyright Office" Claim

AHRN further claims that "MRIS does not own the text in its Database" based on its interpretation of MRIS's Subscriber License and Access Agreement ("SLAA"), and that MRIS thus "cannot comply with the statutory requirement of ownership of a valid copyright to photographs and text" in the MRIS Database," and consequently, "cannot establish their infringement," (SAC ¶¶ 119-120).  According to AHRN, MRIS misrepresents its ownership of the textual elements of the MRIS Database to the Copyright Office and to this Court.

14

AHRN's allegations reveal its misunderstanding of the MRIS Database and the nature of a collective work.  Section 101 defines collective works and compilations as follows:

> A "collective work" is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole.
>
> A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

17 U.S.C. § 101.  Accordingly, a plain reading of the statute establishes that a collective work *is a form of* a compilation.  AHRN provides no explanation as to why the MRIS Database does not qualify as a collective work or how statutory definition of collective work precludes the registration of the MRIS Database as a collective work.  The MRIS Database is a collective work because it is a collection of thousands of real estate property listings each including a number of photographic contributions, constituting separate and independent works in themselves for which MRIS acquired the copyrights by transfer and each work is originally arranged and coordinated.[7]  Moreover, MRIS contributes textual elements of its own authorship.  For example, the MRIS Profile Sheets set forth the format, content, and description taxonomy for each listed property.  Additionally, each listing qualifies as an independently copyrightable work.  Accordingly, references in the copyright registrations for the MRIS Database to "photographs" and "text" demonstrate that MRIS registers the copyrights MRIS owns in the MRIS Database as a *collective* work, rather than solely the arrangement of the collection of real estate property listings as a *compilation*.

---

[7] As the Fourth Circuit recognized in its July 17, 2013 Opinion, "the copyright in individual component works need not be owned by the author of the collective work."  (Fourth Cir. Op. 12) (citing 17 U.S.C. § 201(c) ("Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution."))

Moreover, and most relevant to the fraud contention under Section 411, AHRN fails to provide any support for its claim that representations to the Copyright Office regarding ownership of textual elements in the MRIS constitute fraud, i.e., that they are knowingly false *and* would have caused the Copyright Office to refuse registration.

> ### d.   AHRN's "Coordination" and "Arrangement" Contentions Do Not Support a "Fraud on Copyright Office" Claim

AHRN's revised allegations regarding "coordination and arrangement" do not even attempt to address the deficiencies identified by the Court.  This Court rejected allegations that MRIS does not "coordinate" or "arrange" the content of the MRIS Database.  Specifically, this Court recognized in its June 10 Memorandum Opinion that these claims "appear to be a reiteration of AHRN's legal argument that the MRIS Database does not exhibit sufficient originality to warrant copyright protection," and found that AHRN "failed to allege with sufficient particularity that MRIS committed fraud on the Copyright Office by making material, *factual*, misrepresentations regarding its selection, coordination and arrangement of its database."  (Mem. Op. 26).  The Fourth Circuit affirmed the District Court's finding that the MRIS Database exhibits sufficient originality in the "selection, coordination, and arrangement" of the materials contained therein to justify copyright protection, holding: "To the extent that AHRN argues that the MRIS Database itself fails to merit copyright protection in its originality as a compilation, we reject this contention as well."  (Fourth Circuit Op. 9-10.)

Notably, despite the Court's express instructions, AHRN failed to describe the "industry standards" that allegedly "dictate" the "'coordination' and 'arrangement' of MLS databases."  (Mem. Op.  27) ("AHRN has simply failed to identify or describe the real estate industry's 'standard communication protocols' in its briefs or in its First Amended Counterclaims.'")  Rather, AHRN vaguely alleges that MRIS, NAR, "and other MLSs" do not

"'coordinate' or 'arrange' their respective compilation databases because the 'coordination' and 'arrangement' of MLS databases is dictated by industry standards; is performed by off-the-shelf database software, such as CoreLogic and other third party software; and/or is dictated by the IDX, RETS and VOW communications protocols." (SAC ¶ 127.) These ambiguous allegations do not, however, relate to the copyrightability of the proprietary, patented MRIS Database and AHRN offers no explanation as to why its allegations are relevant to MRIS. As MRIS has noted on multiple occasions before this Court, the MRIS Database is not the product of "off-the-shelf database software." Rather, it is a product created and owned by MRIS:

> MRIS does not use CoreLogic for the MRIS Database. Instead, MRIS has developed and owns its own proprietary database system called "Cornerstone." MRIS's Cornerstone system is protected by U.S. Patent Nos. 7346519 and 7881948.

((Declaration of David Charron in Support of MRIS's Motion to Dismiss Or In the Alternative, Summarily Adjudicate Defendant AHRN's Counterclaims, Dkt. 63-2 ("Charron Decl.") ¶ 8.) Indeed, the information in the MRIS Database is a function of the patented database schema described by the above-referenced patents, and the specific property fields, descriptors, attributes and workflows selected, arranged, coordinated, organized, updated and maintained by MRIS. Accordingly, AHRN's "coordination" and "arrangement" allegations must be rejected.

**B.      Conclusory Allegations of Concerted Action Are Insufficient to State a Claim Under Section 1 of the Sherman Act**

AHRN also attempts to assert other bases for a Sherman Act Section 1 claim, "even without considering" its sham litigation claims. (Mem. Op. 28.) As explained below, these allegations suffer from a number of deficiencies already identified by this Court. (Mem. Op. 36) ("In light of the deficiencies identified herein, the Court has serious reservations about AHRN's

17

ability to set forth a cognizable Sherman Act claim against either Counterclaim-Defendant.")

Despite its multiple attempts to do so, AHRN does not make out an antitrust claim. [8]

### 1.        The Legal Standard for a Section 1 Sherman Act Claim

To establish a Sherman Act Section 1 restraint-of-trade antitrust violation, a plaintiff must plead "(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade."  Sherman Act § 1, 15 U.S.C. § 1. The Sherman Act's prohibition against restraint of trade applies only to otherwise prohibited concerted action, which requires evidence of an unlawful relationship between at least two legally distinct persons or parties.  *Id.*  AHRN offers absolutely no evidence of any impermissible relationship between MRIS and any other party.

The sufficiency of a party's pleading under Section 1 of the Sherman Act must be determined via the "two-pronged approach" stated in the Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In *Twombly*, the Supreme Court stated that a pleading "requires more than labels and conclusions,

---

[8] AHRN will undoubtedly rely upon the Memorandum Opinion issued on July 5, 2013 in *Regional Multiple Listing Service of Minnesota, Inc. v. American Home Realty Network, Inc.*, No. 12-965(JRT/FLN) (D. Minn. July 5, 2013) to support its Sherman Act Section 1 allegations against MRIS. In that opinion, the court denied Plaintiff-Counterclaim Defendant RMLS's motion to dismiss AHRN's Sherman Act Section 1 counterclaim.  Even assuming, *arguendo*, that any of AHRN's allegations in the Minnesota action are true, this ruling does not transform AHRN's conclusory allegations against MRIS into a viable Section 1 claim.  To the contrary, the Minnesota opinion relies upon a number of factual allegations that are readily distinguishable from the facts of this case, including but not limited to: (1) RMLS's alleged reliance upon CoreLogic for its database; in contrast, MRIS does not use CoreLogic for the MRIS Database, but instead uses its own patented Cornerstone software, the proprietary MRIS repository for the information content that powers the MRIS service; (2) RMLS's alleged receipt of funding for its lawsuit against AHRN from NAR; MRIS has not accepted any funding from NAR; and (3) the December 22, 2011 email sent by John Mosey, the President of RMLS, which, as this Court has already noted, "makes no mention of MRIS or NAR, and is otherwise not probative of Counterclaim-Defendants' participation in any alleged agreement."  (Mem. Op. 32.)  Moreover, the court in the RMLS case noted that it was "unclear" whether "RMLS in fact owns copyrights to the majority of the material it claims," whereas in this case, this Court, and the Fourth Circuit, have held that MRIS is the owner of the MRIS Database, and more specifically, that MRIS is the owner of photographs in the MRIS Database via assignment through the MRIS TOU. (Aug. 27 Mem. Op. 22-24; Fourth Cir. Op. at 28-29.)

and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires that the factual allegations "be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. at 555 (citation omitted).

At least two post-*Ashcroft* and *Twombly* decisions from the District of Maryland confirm that conclusory allegations of concerted action in alleged violation of Section 1 of the Sherman Act, like those made in AHRN's Sherman Act counterclaim, are insufficient to withstand a motion to dismiss. Holding that "unsupported conclusory allegations will not suffice" the court in *Ohio Learning Centers LLC v. Sylvan Learning, Inc.* found that the plaintiff's complaint "is completely devoid of any specific allegation tending to show that there was an actual agreement." Civ. A. No. RDB-10-1932, 2012 WL 3025106 at * 15 (D. Md. July 24, 2012). At most, AHRN has alleged parallel business conduct. Such allegations cannot support a Sherman Act Section 1 claim as a matter of law. *Id.; accord Loren Data Corp. v. GXS, Inc.*, Civ. A. No. DKC-10-3474, 2011 WL 3511003 at *5 (D. Md. Aug. 9, 2011) (dismissing Sherman Act Section 1 claim for relying on conclusory allegations and failing to allege adequate facts to establish an anticompetitive agreement). Only specific allegations are sufficient. *See e.g., Robertson v. Sea Pines Real Estate Cos.,* 679 F.3d 278, 288-89 (4th Cir. 2012) (plaintiff's allegations could withstand dismissal because, unlike AHRN, the complaint provided detailed information regarding the content of the alleged anticompetitive rules actually adopted by the defendant which constituted "direct evidence" that the "defendants convened and came to an agreement." ).

Here, AHRN's allegations relate solely to MRIS's enforcement of its copyrights, which are insufficient as a matter of law to sustain a Sherman Act claim.

These decisions establish that a claim brought under Section 1 of the Sherman Act must contain sufficient factual support regarding the nature of the "agreement" alleged to constitute concerted action, and uphold the ruling of *Twombly*, namely, that a "formulaic recitation of the elements of a cause of action will not do" to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. In making the determination that plaintiffs provided more than "formulaic recitation," the *Twombly* court noted that such a determination was not taken lightly, given the time and expense involved in modern antitrust litigation. *Twombly*, 550 U.S. at 558 ("The costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no likelihood that the plaintiffs can construct a claim from the events related in the complaint.").

## 2. AHRN Fails to Provide Sufficient Factual Support for Its Sherman Act Section 1 Claim Under *Twombly*

In support of its Section 1 claim under the Sherman Act, AHRN states that NAR, MRIS, Northstar MLS, and unnamed Does have "taken notice of AHRN's increasing popularity with real estate consumers, and have banded together at the behest of, with encouragement by, and with the promise of financial support from, NAR . . ." (SAC ¶ 39.) As explained below, AHRN's Second Amended Counterclaims fail to address the deficiencies noted by this Court in its June 10 Memorandum Opinion and fail to state a claim under Section 1 of the Sherman Act.

### a. AHRN's Factual Allegations Regarding the MRIS Guidance Paper Fail to Support its Sherman Act Section 1 Claim

Refusing to heed this Court's warning regarding its "misplaced reliance" on the MRIS Guidance Paper (Mem. Op. 31) as the basis for a Sherman Act Section 1 claim and despite the fact that the Fourth Circuit has found MRIS's copyright registrations valid, AHRN again grounds

its claim in the already rejected allegation that the MRIS Guidance Paper, "adopted and endorsed by NAR,"[9] urges MLSs to "register copyrights covering listing databases as 'unpublished,' and as works for hire compilations by MLS employees, instead of published compilations by third parties." (SAC ¶ 72.) According to AHRN, the Guidance Paper "saves the MLS industry and deprives the Copyright Office of millions of dollars per year in registration fees," thus allowing the MLS industry to "afford to maintain professed copyright protection in its listing databases" and "use claims of copyright infringement to control competitors' use of public domain listing data." (SAC ¶ 73-74.)

AHRN again fails to provide any support for its allegations that "MRIS's campaign to promote the Guidance Paper's program to invite a conspiracy was successful" and "explicitly adopted" by NAR in the spring of 2006 when NAR issued a "model Copyright Office form TX" and provided "MLS Registration Tips" on NAR's website, www.realtor.org. (SAC ¶¶ 70-71.) Notably, AHRN fails to explain how the alleged NAR website article "explicitly adopted" the Guidance Paper, as the article does not reference or discuss MRIS or the Guidance Paper *at all*, nor whether MRIS even conferred with NAR about the Guidance Paper before the release of the article. In fact, the "MLS Copyright Registration" article provides only basic guidelines regarding registration of compilation works, for example:

- "According to the Copyright Act, the copyrightable interest in factual compilation is in the author's original 'selection, arrangement, and coordination' of that information.[10] These should be treated as special words to be used whenever describing the compilation and MLS's role in creating the compilation in any description of the compilation"; (SAC ¶ 71)

- "The deposit requirement can be met by producing printouts for fifty different properties showing the fields of information collected with regard to properties.

---

[9] Notably, the MRIS Guidance Paper never mentions NAR.
[10] It is worth noting that this language comes directly from *Feist*, the case frequently relied upon by AHRN to defend its infringing activities.

This shows your selection of which facts to collect and how those facts have been arranged and coordinated with each other . . . ." (*Id.*)

None of these statements by NAR urge the MLSs to take coordinated action to "follow MRIS's recommended sham compilation copyright registration process," but they instead provide well-established guidelines for registering a compilation work.

In further support of claims of NAR's "explicit adoption" of the MRIS Guidance Paper, AHRN reasserts its allegations that a September 27, 2010 NAR meeting in Chicago included a "session" that "featured a discussion" of the following:

MLS' debate the merits of consolidation, revenue streams, data ownership and their 'true role'; real estate brokers struggle to survive on narrow margins; realtors struggle to earn U.S. median income; everybody wants realty data for free; innovators want no barriers to innovation; thought leaders want their views adopted; new business models and technologies continue to disrupt; RETS is not all it could be.

(SAC ¶ 88)  AHRN attempts to bolster its allegation with the remarkable and conclusory statement: "[t]his coded description is a clear signal to drive disruptive innovators out of business with the "true role" of the MLS Copyright Program."  (*Id.* ¶ 89.)  As this Court recognized, however, "[w]hile this 'clear signal' may be apparent to AHRN, it is not apparent to the Court, and the Court 'will not accept as true any unwarranted inferences or unreasonable conclusions.'" (Mem. Op. 31-32) (citing *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 128 (4th Cir. 2012).) Conspicuously, the referenced description features *no mention* of MRIS or the Guidance Paper, or any indication that MRIS had any role in the September 27, 2010 meeting, and only refers generally to a debate on "the merits of consolidation, revenue streams, *data ownership and their 'true role'*" and "*everybody wants realty data for free*."  (SAC ¶ 88.)  Accordingly, as this Court found, "[t]here is no reasonable inference to be drawn from the 2010 meeting that NAR, MRIS, or any other entity reached an agreement."  (Mem. Op. 32.)

22

Once again, AHRN's allegations regarding the Guidance Paper can be distilled as follows: MRIS's alleged advocacy for the creation of a proposed model program to secure copyright protection for MLS databases, MRIS's enforcement of its copyrights against infringers like AHRN, and the alleged adoption of the model program by other MLSs constitutes a violation of Section 1 of the Sherman Act.  AHRN's conclusory allegations in the Second Amendment Counterclaims again fail to establish any connection between and among MRIS and the Guidance Paper, NAR, and other MLSs, and fall far short of substantiating a claim that a conspiracy existed and that an improper agreement was made, as required by *Twombly* and the Sherman Act Section 1 claim should be dismissed with prejudice.

> **b.**   **AHRN's Factual Allegations Regarding the "Anaheim Meeting" and "Mosey Email" As Inadequate to Support its Sherman Act Section 1 Claim**

In its June 10 Memorandum Opinion, this Court rejected AHRN's allegations in its First Amended Counterclaims regarding the "Anaheim meeting," the "torrent" of cease-and-desist letters, and the "Mosey email" that allegedly evidence anti-competitive activities on the part of MRIS, NAR, and the Doe Defendants:

- AHRN relies to a great extent on NAR's annual meeting in Anaheim in November 2011, which allegedly 'featured discussions of the perceived threat AHRN poses to the industry and what the industry could do to shut down AHRN.'  Doc. No. 68 ¶ 69.  Although MRIS acknowledges that it had representatives at the meeting, Doc. No. 76-1 at 18, the Court cannot infer that any agreement was reach[ed] merely because an industry meeting was held.  The Court will not equate mere 'discussions' with the consummation of an anticompetitive agreement, particularly where the claimant fails to outline the specific contours of the alleged agreement.  (Mem. Op. 30)

- AHRN further alleges that the cease-and-desist letters and refusal and repudiation letters related to broker or agent referrals were 'coordinated by discussions and agreements among NAR, MLSs, and brokers.'  Doc. No. 68 ¶ 83.  These vague allegations fail to

specify the contours of the agreement and when the agreement was reached . . . AHRN's allegations that NAR's General Counsel Laurie Janik advised MLSs to send cease-and-desist letters does not support the plausibility of its claim that an agreement was reached.  (Mem. Op. 32, n. 9)

- AHRN also emphasizes a December 2011 e-mail from a Northstar employee, John Mosey, in which Mosey called for the MLSs to take collective action against AHRN.  The Mosey email makes no mention of MRIS or NAR, does not evidence their involvement in drafting the email, and is otherwise not probative of Counterclaim-Defendants' participation in any alleged agreement." (Mem. Op. 32)

AHRN's Second Amended Counterclaims do not even attempt to revise these dismissed allegations to take the Court's Memorandum Opinion into account.  Instead, AHRN merely realleges that "from November 11 to 14, 2011" NAR held an annual meeting which "featured discussions of the perceived threat that AHRN poses to the industry and what the industry could do to shut down AHRN," and that "NAR, at a specific time yet unknown, advised its members to follow MRIS's recommended sham compilation copyright registration process, whether the facts warranted it or not."  (SAC ¶ 90.)  AHRN also alleges that "[b]eginning in November 2011, just before the Anaheim meeting, AHRN began to receive what would become, after the Anaheim meeting, a torrent of cease-and-desist letters from brokers and MLSs" that were "substantially similar . . . in form and content" and that AHRN has received "33 in all" from 2012-2013, and that "on or about June 2012, NAR General Counsel Laurie Janik advised local MLS's [sic] to send Cease and Desist Letters if data has been taken . . ."  (SAC ¶¶ 91, 97.)  AHRN realleges that it was copied on a December 22, 2011 email from John Mosey of Northstar MLS, in which Mosey allegedly called for MLSs to take collective action against AHRN.  (SAC ¶ 94.)

Once again, AHRN does not allege that MRIS was present at NAR's November 2011 meeting or participated in any of the allegedly improper discussions, or state any facts supporting

its claim that MRIS has entered into any alleged "agreement" with NAR or any other party not to grant a license to the MRIS Database to AHRN.  Nor has AHRN shown that MRIS is in any way responsible for statements allegedly made at a NAR meeting by any third party attending that meeting, or that MRIS had any role in the drafting and sending of the Mosey Email.  AHRN has further failed to allege that MRIS had any role in drafting any cease-and-desist letters received by AHRN, other than the cease-and-desist letter sent to AHRN by MRIS on November 18, 2011.  Nor does AHRN explain how an agreement was reached during the "Anaheim meeting" when AHRN began receiving cease-and-desist letters *before* the meeting.  (Mem. Op. 31.)  In sum, AHRN has again failed to allege that MRIS has engaged in "concerted action" in violation of Section 1 of the Sherman Act, and Count III should be dismissed with prejudice.

### 3.     AHRN Is Not a Competitor of MRIS and MRIS Has No Intention of "Driv[ing] AHRN Out of Business

This Court has already recognized that "AHRN does not and cannot allege that it is a competitor of MRIS in any relevant market, as AHRN offers brokerage referral services while MRIS offers multiple listing services."  (Mem. Op. 41.)  Despite the findings in the Court's June 10 Memorandum Opinion, AHRN claims in its Second Amended Counterclaims that "[a]nother specific and unlawful objective of the Conspiracy was, and continues to be, to illegally raise barriers of entry for potential innovative competitors such as AHRN, and eventually drive AHRN and others out of the Relevant Markets."  (SAC ¶ 202.)  But, once again, AHRN alleges no facts showing that AHRN is a competitor of MRIS, or that MRIS has any intention of driving AHRN out of business, or of any cooperation with NAR in this alleged goal, other than, presumably, the fact that MRIS is acting to protect its copyright in the MRIS Database through this Action.  AHRN does not allege that MRIS discriminates or otherwise applies exclusionary practices to any licensed real estate broker on the basis that it has adopted innovative business

practices or discriminates against any broker subscribers under the MRIS Rules and Regulations, irrespective of their specific respective business practices.[11]  Nor can AHRN make any such truthful allegations. (*See* Dkt. 63-2, Charron Decl. ¶ 9-10.)  MRIS has been willing to do business with AHRN provided that AHRN gains access to MRIS Database content legitimately through one of the available MRIS licensing or syndication programs, and complies with MRIS's applicable license restrictions.  (*Id*. ¶ 12.)  As more fully explained in Section 4, *infra*, AHRN has not expressed any interest in such a license.

> **4.     MRIS Has the Right as a Copyright Owner to Refuse to Issue AHRN a Custom License for Content from the MRIS Database**

According to AHRN, NAR and MRIS have engaged in a "group boycott" in "joint efforts to disadvantage competitors. . . by directly denying or persuading or coercing suppliers or customers to deny relations the competitors need to compete." (SAC ¶ 118.)  AHRN further alleges that MRIS and the Counterclaim Defendants "claim copyrights in data which they know to be uncopyrightable or, alternatively, to which they have no ownership rights, but which is essential to conducting a customer referral real estate business, and to refuse to license to AHRN such allegedly copyrighted property listing date, which is properly in the public domain and uncopyrightable." (SAC ¶ 202.)  AHRN alleges that MRIS and the Counterclaim Defendants make such "claims" and "refuse to license to AHRN" in furtherance of their "conspiracy." (*Id*.) AHRN's allegations are without merit.

As an initial matter, this Court has already held that "MRIS's refusal to grant AHRN a license is not probative of an unlawful or anticompetitive purpose, especially where AHRN's

---

[11] This is yet another fact that distinguishes this lawsuit from *RMLS v. AHRN* (discussed in footnote 8, *supra*).  In that case, AHRN alleged that "RMLS sets restrictions on when the syndicator can allow access to the data feeds" and "will not allow syndicators to grant access to third parties like AHRN that provide buyer-side referrals."  AHRN has not alleged that MRIS sets any such restrictions, and MRIS does not do so.

offer followed its infringement of MRIS's copyrights and the receipt of a cease and desist letter."
(Aug. 27 Mem. Op. 28-29, Dkt. 34.)  The Court has also held that AHRN has not adequately
alleged that the MRIS Database is "essential" to provide its services.  (Mem. Op. 41.)

It is well established that a copyright owner has the unilateral right to license its
copyrighted content to any party, or to refuse to license such content to any party.  (Aug. 27
Mem. Op. 28, Dkt. 34); *Stewart*, U.S. at 228-29; *see also*, *Océ N. Am., Inc. v. MCS Servs., Inc.*,
795 F. Supp. 2d 337, 344 (D. Md. 2011) (granting motion to dismiss antitrust counterclaim on
ground that it contained only statement that counterclaim defendant's refusal to license was
pretext for anticompetitive behavior without additional support or further factual enhancement to
this allegation) (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1187
(1st Cir. 1994) ("[A]n author's desire to exclude others from use of its copyrighted work is a
presumptively valid business justification for any immediate harm to consumers.") (abrogated on
other grounds)).

As MRIS has previously explained and AHRN has not denied, AHRN was aware of the
many licensing options offered by MRIS, specifically, (1) becoming a destination site for
ListHub, a third-party vendor that provides listing syndication opportunities to brokers wishing
to advertise their listings on third-party websites; (2) participating in MRIS's Real Estate
Transaction Standard ("RETS") licensing program; (3) receiving licensed data feed of content
from the MRIS Database through the MRIS Internet Data Exchange ("IDX") program (upon a
showing that it meets broker qualifications for this program).  (Plaintiff's Reply in Support of
Motion for Preliminary Injunction (Dkt. 27) at 23-24.)  In fact, American Home Realty Network,
LLC, which AHRN refers to as a sibling company to AHRN, Inc., completed an application for a
"MRIS Database Access and License Agreement" in 2008, but never executed that agreement.

(Declaration of John Heithaus in Support of Plaintiff's Reply in Support of its Motion for Preliminary Injunction, Dkt. 27-1 ¶ 12, Ex. 2.)  AHRN thus disregarded the available authorized channels, choosing instead the expedient option of taking MRIS's copyrighted material without burdening itself with a license, and, once caught, seeking the cover of a vaguely-described "custom license."

Accordingly, MRIS's refusal to grant AHRN a "custom license" is consistent with MRIS's licensing practices, and does not support AHRN's Section 1 Sherman Act claim.

> **5.  Anti-Competitive Effect Allegations Fail to Connect Alleged Harm to Allegedly Anti-Competitive Activity**

This Court made clear in its June 10 Memorandum Opinion that "conclusory allegations that an alleged agreement produced anticompetitive effects will not suffice."  (Mem. Op. 30.) Specifically, this Court found that AHRN's allegations in its First Amended Counterclaims, including the allegations that "Defendants' activities, and the violations alleged in this First Amended Counterclaim, affect home buyers and sellers located throughout the United States" (FAC ¶ 110) and that "[t]he anti-competitive acts of the Conspiracy have directly harmed competition" (FAC 146), fail to "explain the connection between such anticompetitive acts and the conduct complained of—Counterclaim-Defendants' copyright registration and enforcement efforts."  (Mem. Op. 33.)

AHRN's Second Amended Counterclaims do nothing to address the "conclusory" nature of these allegations.  Instead, AHRN claims that Counterclaim-Defendants' activities, including "fraudulent copyright registrations," "unfounded cease-and-desist letters to AHRN," "repudiation of referral agreement letters to AHRN," and "sham lawsuits against AHRN," result in "anti-competitive effects," including "the elimination of price competition and price maintenance on brokerage referral services above market levels nationwide, impending and

28

blocking market entry by AHRN and other innovative providers of broker analyses and impeding

and blocking innovation in real estate brokerage referral services." (SAC ¶ 170.) AHRN further

claims that the Counterclaim-Defendants' activities "affect home buyers and sellers located

throughout the United States by suppressing competition for brokerage services and price

competition—by suppressing the diversity of brokers providing services, and therefore

competition for brokerage services, that reduction in competition has the direct effect of

suppressing price competition in real estate sales commissions." (SAC ¶ 175.) AHRN claims

that the "anti-competitive acts of the Conspiracy have directly harmed competition and have

injured *AHRN's* sales and goodwill, and have impaired *AHRN's* access to capital markets and

investment funding, causing direct financial harm to *AHRN* in an amount to be determined."

(SAC ¶ 205) (emphases added.)

Merely re-asserting these conclusory allegations and adding references to "suppressing

competition" is insufficient to state a Sherman Act Section 1 claim as a matter of law. Nor can

AHRN allege that an injury *to AHRN* amounts to an injury to competition in the relevant market

or consumers. It is well-established that "if the facts do not at least outline or adumbrate a

violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the

language of antitrust." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002). As this

Court recognized:

> Where AHRN does identify specific anti-competitive effects, including
> the elimination of price competition and price maintenance on brokerage
> referral services and the impeding and blocking of market entry by AHRN
> and other innovative businesses . . . it fails to explain the connection
> between such anticompetitive effects and the conduct complained of--
> Counterclaim-Defendants' copyright registration and enforcement efforts.

(Mem. Op. 33.) AHRN's amended counterclaims again fail to explain this connection, and do

not offer any factual basis from which to conclude that the alleged restraint of trade—i.e., the

alleged "conspiracy" to enforce copyrights—could have given rise to such any anti-competitive effect. *Dickson*, 309 F.3d at 212 (affirming dismissal of Sherman Act claim where plaintiff alleged that defendants' actions had "produced anticompetitive effects," but did "not provide any factual basis to support this allegation").

Consequently, the "injury" alleged by AHRN is not an anti-trust injury, and its Sherman Act claim must fail. *Midw. Commc'ns, Inc. v. Minn. Twins, Inc.*, 779 F.2d 444, 450 (8th Cir. 1986). The consequences to ARHN of MRIS's efforts to prevent AHRN from infringing its rights—i.e., the consequences of obeying the law—are not recognized as the type of "injury" that should be remedied by the Sherman Act, and the claim must be dismissed. *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (affirming dismissal of a Sherman Act Section 2 counterclaim and holding that a "good faith effort to enforce one's copyright . . . is not the kind of exclusionary conduct condemned by . . . the Sherman Act").

### C.     AHRN's Maryland Unfair Competition Claim Fails as a Matter of Law

Count II, AHRN's counterclaim for Maryland unfair competition, also must be dismissed under the relevant law. The Maryland claim is premised on NAR's and MRIS's alleged "false statements, group boycott, and litigation activities" (SAC ¶ 185) and rests upon the allegations made in support of AHRN's Sherman Act Section 1 claim. AHRN's allegations regarding MRIS's "false statements, group boycott, and litigation activities" were already considered and dismissed by the Court in its June 10 Memorandum Opinion:

> The Court discerns nothing unfair in Counterclaim-Defendants' statements regarding the copyrightability of MLS listing data, particularly where they simply expressed legal opinions and the Copyright Office ultimately granted the applications. The Court also discerns nothing unfair in MRIS or NAR's litigation or related activities with respect to MLS compilation copyrights, especially given that AHRN has not plead with particularity a basis for a claim of fraud on the Copyright Office.

(Mem. Op. 37.)

AHRN has raised *no* new allegations in its Second Amended Counterclaims that address these deficiencies or disturb the Court's conclusion.  AHRN's "false statements" theory rests upon its allegations that MRIS has committed "fraud on the Copyright Office."  As explained in section V.A.2 *supra*, AHRN has failed to allege that MRIS made false representations of fact regarding the MRIS Database with the requisite intent to defraud.  (Mem. Op. 25) ("A claim alleging fraud on the Copyright Office is only available where the registrant is alleged to have made false representations of fact with the requisite intent to defraud.")  AHRN has offered nothing to support to its allegations that the designation of the MRIS Database as a "work for hire," or MRIS's claims of ownership of textual elements of the MRIS Database, or claims regarding the "coordination and arrangement" of the MRIS Database, or any other alleged "statements," were knowingly false or prejudicial such that MRIS's copyright application would have been refused registration by the Copyright Office and thus must be invalidated.

AHRN's "group boycott" theory of Maryland unfair competition appears to be based on MRIS's refusal to license the MRIS Database to AHRN on AHRN's "custom" terms and on allegations that other MLSs (but not MRIS) have advised their subscribers to reject AHRN's offers to do business.  (SAC ¶¶ 99-118.)  The "litigation activities" that AHRN relies on for its Maryland unfair competition claim appear to be nothing more than MRIS's filing of this lawsuit. (*Id.* ¶¶ 38-39.)  No Maryland court has recognized an unfair competition claim based on a theory of "sham litigation," or on one company's decision not to do business with another company.  It is axiomatic that a company can choose with whom it conducts business.  *Stewart v. Abend*, 495 U.S. 207, 228-29 (1990) ("a copyright owner has the capacity arbitrarily to refuse to license one who seeks to exploit the work"); *Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 686 (4th Cir. 1992) ("The owner of a copyright has an exclusive right to sell, rent, lease, lend, or

otherwise distribute copies of a copyrighted work.  Section 1 of the Sherman Act does not entitle

'a purchaser . . . to buy a product that the seller does not wish to offer for sale.'" (citation

omitted)); *accord United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); see also *United*

*Mine Workers*, 381 U.S. at 636 (holding that filing a lawsuit constitutes protected First

Amendment petitioning activity and cannot form the basis of tort liability).  Accordingly,

AHRN's Maryland unfair competition claim therefore fails and Count I must be dismissed with

prejudice.

> **D.     AHRN's Unfair Competition Claim Under Cal. Bus. & Prof. Code § 17200 et seq., Must Be Dismissed for Lack of Jurisdiction and Is Impermissible As a Matter of Law**

> > **1.     AHRN's California UCL Claim Does Not Apply Extraterritorially to MRIS**

Count II of AHRN's Second Amended Counterclaims alleges that MRIS has engaged in

unlawful business acts and practices that constitute fraudulent, unlawful, and unfair competition

in violation of the California Business & Professional Code §§ 17200 et seq. (SAC ¶¶ 188-195)

(the "California UCL").  As this Court recognized, "courts have held that the California UCL

does not apply to nonresidents where the allegedly wrongful conduct occurred outside

California," but that "extraterritorial application of the UCL is not barred where the alleged

wrongful conduct occurred in California."  (Mem. Op. 38) (citations omitted.)  In its June 10

Memorandum Opinion, this Court found that AHRN failed "to sufficiently plead the harm it

suffered in California" and that "the Court cannot infer that AHRN suffered harm from MRIS

and NAR's conduct merely because its principal place of business is in the state."

(Mem. Op. 39.)

Despite this Court's detailed analysis, AHRN has failed to allege any additional facts in

its Second Amended Counterclaims showing that it suffered harm in California.  Rather, AHRN

merely restates the allegations made in its First Amended Counterclaims (FAC ¶¶ 129-136),

namely, that MRIS and the Counterclaim Defendants have "improperly and unlawfully taken

commercial advantage of AHRN's investment in its NeighborCity.com site, technology and

business model," that the alleged "business practices" of MRIS and the Counterclaim Defendants

have "unjustly minimized AHRN's competitive advantages and have caused, and are causing,

AHRN to suffer damages."  (SAC ¶¶ 193-94.)  These renewed allegations fail to make the

requisite showing that AHRN has suffered harm in California, while in essence asking the Court

to find that AHRN has suffered harm "merely because its principal place of business is in the

state." (Mem. Op. 39.)  As this Court recognized in its Memorandum Opinion, "[t]he only

conduct alleged to have occurred in California was NAR's November 2011 meeting in Anaheim,

and MRIS's presentation of the Guidance Paper in San Francisco and Sacramento in 2005," and

the factual allegations surrounding the 2011 Anaheim meeting are insufficient to state a claim

[under the California UCL] for the same reasons discussed in the context of AHRN's Sherman

Act §1 claim." (Mem. Op. 39.)  As the California statute does not apply to MRIS's allegedly

unfair activities beyond the borders of California, of which there are none, AHRN has not, and

cannot, provide any factual support for the California UCL.  Accordingly, the California UCL

claim cannot apply extraterritorially to MRIS and must be dismissed with prejudice.

### 2. Even if the Court Determines It Has Jurisdiction Over AHRN's California UCL Claim, It Is Impermissible and Must Be Dismissed

Even if the court has jurisdiction over the California UCL, that claim is premised on

allegations of MRIS's alleged "unlawful business acts or practices . . . committed pursuant to

business activity related to group boycott and sham litigation against AHRN" (SAC ¶¶ 189-90),

relied upon for AHRN's Sherman Act Section 1 and Maryland unfair competition claims, and

should be dismissed with prejudice.

33

###### a.    MRIS Is Entitled to Absolute Safe Harbor Protection Under the Federal Copyright Act and Lanham Act

Because MRIS merely seeks to enforce its federal rights under the Copyright Act and the

Lanham Act through this lawsuit, MRIS has an absolute "safe harbor" that prohibits AHRN from

asserting section 17200 to assault that safe harbor.  *Williams v. Wash. Mut. Bank*, No. Civ-07-

2418-WBS-GGH, 2008 WL 115097 at *4-5 (E.D. Cal. Jan. 11, 2008) (dismissing a claim under

section 17200 on the ground that the allegedly unfair activity was authorized by law and thus

subject to the safe harbor); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (holding

that conduct was permissible under the *Colgate* doctrine and therefore not unlawful or unfair

under section 17200); *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182-83

(1999) ("Acts that the Legislature has determined to be lawful may not form the basis for an

action under the unfair competition law.")  AHRN cannot assert the California UCL against

MRIS because the Copyright Act and Lanham Act authorize MRIS to enforce its rights.

*Augustine v. FIA Card Servs., N.A.*, 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (federal or

state law can provide a safe harbor).  Actions authorized by law cannot be considered unfair,

unlawful, or fraudulent.  Indeed, this Court and the Fourth Circuit have already held that MRIS's

enforcement of its copyrights is a legitimate exercise of those rights.

###### b.    AHRN Failed to Meet the Pleading Standards Under Rule 9(b) Applied to the California UCL Claim Grounded in Fraud

AHRN's counterclaim asserts that MRIS's actions constitute fraud under Section 17200.

(SAC ¶ 191.)  AHRN's allegations are deficient as they fail to meet the heightened pleading

standards of Fed. R. Civ. P. 9(b) related to fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

1125 (9th Cir. 2009) (affirming dismissal and confirming that the heightened pleading standards

of Rule 9(b) apply to a Section 17200 claim).  AHRN makes no showing of fraud.  At best,

AHRN only alleges that MRIS misrepresents its copyright program's compliance with the

Copyright Act and its copyright ownership in the content of the MRIS Database, allegations

which this Court and the Fourth Circuit have already rejected.  Importantly, AHRN makes no

allegations regarding its reliance on MRIS's claims of copyright ownership and/or MRIS's

copyright notices, as required by law.  *Id*. at 1126 (requiring specificity in allegations of fraud,

including a showing of actual reliance).  Rather, as AHRN has made clear, AHRN gives no

weight to MRIS's copyright rights as it has apparently has copied and *continues to copy* (see e.g.,

Dkt. 150, Report and Recommendation) the MRIS Database, and continues to challenge this

Court's November 14, 2012 Order.  The Cal. Bus. & Prof. Code § 17200 counterclaim cannot

stand because AHRN does not rely on MRIS's allegedly fraudulent representations.  AHRN does

not allege or demonstrate sufficient facts or reliance to sustain a claim for fraud, and the claim

must be dismissed with prejudice for failure to state a claim.

**c.      AHRN's California UCL Claim Allegations Wrongly State that MRIS Is a Competitor of AHRN**

The purpose of Cal. Bus. & Prof. Code § 17200 "is to protect both consumers and

competitors by promoting fair competition in commercial markets for goods and services."

*Kasky v. Nike*, 27 Cal. 4th 939, 949 (2002).  For the reasons provided in section V.B.3, *supra*,

AHRN is neither a competitor of MRIS, nor does AHRN have a business relationship with

MRIS.  Accordingly, AHRN is not a "consumer" of any MRIS products or services, as required

by the statute.  *See Buckland v. Threshold Enters., Ltd.*, 66 Cal. Rptr. 3d 543, 550-51 (Cal. Ct.

App. 2007).  Nor does MRIS compete with or seek any competitive advantage over AHRN.

Consequently, MRIS cannot, as a matter of law, engage in unfair competition against AHRN,

AHRN does not have standing to bring a claim against MRIS under Cal. Bus. & Prof. Code §

17200, and it must be dismissed with prejudice.  *Id*.

35

## VI.     CONCLUSION

AHRN has now had numerous opportunities, as well as guidance from the Court, to offer allegations sufficient to sustain its claims, and has failed to do.  The Court should not allow AHRN any further opportunities to seek ways to extend these proceedings and make baseless allegations against MRIS while it continues to infringe MRIS's rights.

For the reasons and authorities discussed above, MRIS respectfully requests the Court to dismiss with prejudice each of the Second Amended Counterclaims asserted by AHRN against MRIS, namely: Count I (Maryland Unfair Competition); Count II (Unfair Competition under Cal. Bus. & Prof Code § 17200); and Count III (Sherman Act § 1).

Respectfully submitted,

Dated:  July 22, 2013

By:   /s/ Margaret A. Esquenet
John T. Westermeier (Bar No. 04364)
(jay.westermeier@finnegan.com)
Margaret A. Esquenet (Bar No. 27775)
(margaret.esquenet@finnegan.com)
Whitney D. Cooke (admitted *pro hac vice*)
(whitney.cooke@finnegan.com)

FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP

*Attorneys for Plaintiff-Counterclaim Defendant*
Metropolitan Regional Information
Systems, Inc.

## CERTIFICATE OF SERVICE

I, Margaret A. Esquenet, hereby certify that on July 22, 2013, a copy of the foregoing Counterclaim Defendant Metropolitan Regional Information Systems, Inc.'s Memorandum in Support of Its Motion to Dismiss AHRN's Second Amended Counterclaims was served via electronic means using the Court's CM/ECF system upon:

> Richard S. Toikka
> L. Peter Farkas
> Russell O. Paige
> FARKAS & TOIKKA, L.L.P.
> 1101 30th Street N.W., Suite 500
> Washington, DC 20007
> rst@farkastoikka.com
> lpf@farkastoikka.com
> rop@farkastoikka.com
>
> Christopher Ralph Miller
> AMERICAN HOME REALTY NETWORK INC.
> 222 7th Street, Second Floor
> San Francisco, CA 94103
> c.miller@neighborcity.com
>
> Brian Morrissey, Jr.
> SIDLEY AUSTIN LLP
> 1501 K Street, NW
> Washington, DC  20005
> bmorrissey@sidley.com
>
> Jack R. Bierig
> Tacy F. Flint
> SIDLEY AUSTIN LLP
> One Dearborn Street
> Chicago, IL  60603
> jbierig@sidley.com
> tflint@sidley.com

_/s/_ Margaret  A. Esquenet