

MARGARET A. ESQUENET
202-408-4007
margaret.esquenet@finnegan.com

November 22, 2013

**VIA CM/ECF ELECTRONIC SERVICE**

The Honorable Jillyn K. Schulze
United States Magistrate Judge
United States District Court for the District of Maryland
Southern Division
6500 Cherrywood Lane
Greenbelt, MD 20770

*Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, Civil Action No. 8:12-cv-00954-AW

Dear Judge Schulze:

We represent Plaintiff and Counterclaim Defendant Metropolitan Regional Information Systems, Inc. ("MRIS"). We write in response to American Home Realty Network, Inc.'s ("AHRN") November 1, 2013 letter regarding its proposed search terms discussed during the parties' October 8, 2013 Telephone Motion Hearing. (Dkt. 245.)

AHRN's letter attempts to justify its proposed search terms, which, if utilized, will result in an unproductive, burdensome, and costly fishing expedition of MRIS's electronically-stored information ("ESI"). AHRN's search terms, cannot, however, be justified. As more fully explained below, the combination of AHRN's broad search terms and its requested quick peek agreement would have the effect of granting AHRN unfettered access to essentially all of MRIS's operations (internal and external), without regard to relevance, burden, or cost, and including corporate files containing confidential and sensitive business information such as strategic planning materials, new product research and development information, cyber security and facility security plans, customer and shareholder relations materials, and employee records. Moreover, because AHRN seeks all documents containing the name of each of MRIS's eight custodians, including the terms Feig, Blanchard, Donnellan, and Charron (respectively, MRIS's general counsel, contracts manager, SVP of Business Operations/CFO, and CEO) the requested ESI will include *all* privileged communications and *all* financial documents relating to *all* aspects of MRIS's business operations, whether relevant to the present action or not. Such a scenario is not contemplated by Federal Rule of Civil Procedure 26. Therefore, MRIS respectfully requests the Court to modify the AHRN's search terms as requested herein and deny AHRN's request for a quick-peek agreement.

I.	INTRODUCTION

Despite numerous letters and discussions between the parties, AHRN's letter and exhibit ignore the core nature of this dispute—the over-breadth of AHRN's search terms. For example:

- AHRN would have MRIS collect every document in its custodians' ESI that references the various custodians' own names. This would obviously generate every single document on each custodian's computer, obviating the purpose of search terms and essentially open to AHRN the entirety of MRIS's business operations.

- AHRN's search terms contain a number of words or phrases ubiquitous in the real estate business, such as conferenc* OR Anaheim, IDX, RETS, referral, neighborhood, and Realtor. (AHRN Search Term Nos. 7, 86, 170, 166, 126, and 161.) Such search terms would generate large volumes of documents wholly irrelevant to this litigation. For example, the term conferenc* OR Anaheim (No. 7) would generate all ESI containing the terms "conference call" and "conference room," in addition to the 2011 NAR conference in Anaheim, California.

- Some search terms may generate ESI encompassing the scope of operations of an entire MRIS department. For example, MRIS's compliance department sends out thousands of notices of rules violations every month to its subscribers in the court of its routine business. AHRN's Search Term No. 36 (compliance NEAR (rules violation or MLS)) could return virtually all of those documents and any related customer correspondence related to compliance issues that are held by the MRIS Compliance Manager custodian. The vast majority of these documents are not responsive to AHRN's discovery requests and/or are not relevant to this action. The same holds true for the MRIS SVP of Business Operations/CFO

MRIS should not be required to apply AHRN's sweepingly broad search terms that would capture essentially *all* of the millions of documents in MRIS's possession and accordingly, MRIS respectfully requests the Court to limit AHRN's search terms, as detailed below.

II.	AHRN'S IRRELEVANT AND UNDULY BURDENSOME SEARCH TERMS

On September 5, 2013, AHRN served 207 proposed search terms to MRIS. On September 27, 2013, MRIS responded to these search terms by providing proposed edits (based on the limited, then-available information) to some terms and seeking further limitation or clarification on others. MRIS also asked AHRN to indicate how its search terms related to its production requests. Where possible, MRIS proposed limitations to the search terms by inserting proximity connectors or narrowing existing proximity connectors. However, as MRIS wanted AHRN to retain ownership over the substance and direction of its search terms, it often times inserted "LIMITATION NEEDED" or struck out search terms so that AHRN could propose its own limitations. Finally, for the remaining search terms, MRIS sought information from AHRN as to the terms relevancy in relation to AHRN's requests for production.

As an initial matter, in an attempt to justify its various search terms, AHRN argues that nothing in the parties' ESI stipulation obligates it to link its search terms to individual discovery requests.  (Dkt. 245 at 1-2.)  In fact, however, in the parties' ESI stipulation (Dkt. 79) the parties agreed that the ESI data locations and related Search Terms will pertain to "documents potentially responsive to the RFPs [Requests for Production] propounded by the other Party."  (Dkt. 79 ¶ 4.)  Moreover, the parties stipulated that they would both "endeavor in good faith to agree upon Search Terms that minimize the likelihood of non-responsive results."  (*Id.* ¶ 5a.)

In its November 1, 2013 letter to the Court, AHRN failed to substantively address MRIS's proposed modifications or requests for limitations on individual search terms.  As a general matter, AHRN's letter repeatedly mischaracterizes MRIS's objections to the proposed search terms.  MRIS has never objected to the application of relevant search terms to its ESI in compliance with the Federal Rule of Civil Procedure 26.  However, as Rule 26(b) and the ESI stipulation require that a requesting party show that the discovery it seeks is relevant and tied to a discovery request, MRIS has questioned whether a number of AHRN's search terms are likely to return documents relevant to the issues in this case and/or AHRN's discovery requests.  *See Neustar, Inc. v. F5 Networks, Inc.*, No. C 12-02574, 2013 WL 1755489, at *3 (N.D. Cal. Apr. 24, 2013) ("Plaintiffs have not shown good cause to justify including several particularly broad terms that they have proposed. For example, Plaintiffs propose the search terms include 'traffic management' and 'load balancing,' which would not be likely to yield data relevant to F5's [claim].").  As such, in an effort to understand the relevancy of AHRN's search terms, MRIS requested that AHRN tie a number of its individual search terms back to its discovery requests.  As indicated in AHRN's letter, MRIS' proposed modifications have been rejected by AHRN, and the further information requested by MRIS has not been forthcoming.

In addition to the relevancy requirement, Rule 26(b) requires a Court to limit the extent of discovery if the discovery sought is unreasonably cumulative or duplicative, or the burden or expense of the proposed discovery outweighs the likely benefit.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Courts have routinely required parties to evaluate and limit search terms if their application would return unreasonable or unduly burdensome volumes of ESI data.  *See e.g.*, *In re Coventry Healthcare, Inc. ERISA Litig.*, 290 F.R.D. 471, 476 (D. Md. 2013) ("To further reduce any undue burden, Plaintiffs may need to refine their proposed search terms to narrow the pool of potentially relevant documents."); *In re Zurn Pex Plumbing Prods. Liability Litig.*, No. 08-1958, 2009 WL 1606653, at *2 (D. Minn. June 5, 2009) ("[M]any of Plaintiffs' proposed search terms will likely produce a large number of 'hits' that have limited relevance in the case. In an effort to control costs, the Court will limit the search to the following fourteen terms based on the likelihood that they will produce relevant documents without including a vast number of documents that are likely irrelevant to the litigation.").

AHRN's reliance on *Robert Bosch LLC v. Snap-On Inc.*, No. 12-11503, 2013 U.S. Dist. LEXIS (E.D. Mich. Mar. 14, 2013), is inapposite.  The holding in *Robert Bosch* fully supports MRIS's position that AHRN's unduly burdensome search terms should be limited.  The *Robert Bosch* court only required Snap-on to run two arguably broad search terms after the parties agreed to the use of proximity connectors to limit "overproduction":

> Snap-on should run the search terms using techniques to limit any overproduction. As suggested by Bosch, Snap-on may exclude producing emails in which the term "diagnostic" is found only in the signature portion. Further, Bosch does not object to Snap-on using agreed-upon proximity connectors in the searches. If Snap-on decides to implement these or any other techniques to prevent overproduction, Snap-on should communicate the proposed techniques to Bosch prior to running the searches. The parties should discuss and agree upon the details of the techniques so that the searches are conducted without generating further motion practice on the matter.

*Id.* at \*5.  Further, in contrast to a number of AHRN search terms, the search terms in question, (diagnostic! and test!) and ([ECU or "electronic control unit"] and diagnostic!), were already Boolean searches making use of <u>and</u>, instead of <u>or</u>.  *Id.*

AHRN's repeated reference to the *number* of search terms utilized in the *Regional Multiple Listing Service of Minnesota, Inc., d/b/a NorthStarMLS (RMLS) v. AHRN* (D. Minn., Civil No. 12-CV-0965 JRT/FLN) is neither relevant nor persuasive.  First, any acquiescence by RMLS to AHRN's requested term in the Minnesota litigation does not obligate MRIS to take or refrain from taking any action in this case.  Further, and reiterating MRIS's position, MRIS has never argued that 200 search terms is per se unreasonable.  Rather, MRIS objects to the substance—not the quantity—of those search terms, specifically, the over-broad and untethered nature of those terms which will generate thousands of irrelevant documents.  Indeed, AHRN notes only the quantity and never addresses the substance of the search terms in the RMLS action, the number and composition of any custodians, or the subject matter of the document requests served in that action.[1]

Regarding AHRN's responses to MRIS's "relevancy" and "unduly burdensome" objections discussed on pp. 3-9 of AHRN's Letter, MRIS addresses each in turn below:

### A. Search Terms Related to Antitrust Counterclaims

AHRN's letter groups 44 search terms together that it claims relate to "MRIS's involvement in a coordinated MLS industry-wide effort to expand illegally the scope of the limited rights conferred by the grant of compilation copyright in MRIS's automated electronic database." *See* AHRN Letter, p. 3-5; AHRN Search Term Nos. 7, 8,19, 20, 22, 25, 29, 31, 32, 33, 37, 40, 47, 48, 54, 58, 59, 75, 78, 79, 93, 94, 113, 115, 121, 122, 127, 128, 130, 132, 133, 138, 139, 142, 153, 154, 155, 160, 164, 171, 185, 191, 204, and 205.  AHRN relies upon the same justifications for another 37 search terms that relate to "individuals and organizations who have sent Cease and Desist letters and/or letters objecting to or repudiating referral agreements

---

[1] AHRN also attaches to its letter Exhibit B, a random selection of email correspondence of unknown origin.  This alleged evidence should be disregarded as it is not only irrelevant, but unauthenticated and hearsay, in violation of the Federal Rules of Evidence 802 and 901.

between AHRN and brokers and/or agents." *See* AHRN Letter, pp. 7-8; AHRN Search Term Nos. 5, 11, 12, 14, 15, 16, 24, 50, 55, 56, 67, 73, 77, 85, 98, 100, 108, 109, 117, 118, 119, 120, 123, 124, 141, 145, 146, 148, 159, 169, 172, 175, 180, 190, 192, and 199.

The Court recently held that AHRN's antitrust counterclaims may be unsustainable but has allowed AHRN to conduct limited discovery regarding certain facts related to those counterclaims. (Dkt. 241.) Thus, AHRN will be limited in the discovery it can seek relating to its antitrust counterclaims and these search terms have not yet been requested by AHRN or approved by the Court in that context. It is difficult to argue that search terms like anti-trust, boycott, and monopoly are relevant to the issues of this case beyond AHRN's antitrust counterclaims. AHRN cannot justify the relevancy of these terms under existing discovery requests (e.g., copyright misuse) without linking the defense to the search terms, which it has not done. By arguing that the terms are related to the misuse defense rather than the counterclaims, AHRN is attempting to circumvent the Court's order regarding limited discovery on its counterclaims. Indeed, AHRN's reference to and submission of a number of production documents from the RMLS action in Minnesota furthers the argument that these search terms pertain to the antitrust counterclaims.

Thus, MRIS requests that this Court order that AHRN Search Term Nos. 7, 8, 19, 20, 22, 25, 29, 31, 32, 33, 37, 40, 47, 48, 54, 58, 59, 75, 78, 79, 93, 94, 113, 115, 121, 122, 127, 128, 130, 132, 133, 138, 139, 142, 153, 154, 155, 160, 164, 171, 185, 191, 204, and 205 and Search Term Nos. 5, 11, 12, 14, 15, 16, 24, 50, 55, 56, 67, 73, 77, 85, 98, 100, 108, 109, 117, 118, 119, 120, 123, 124, 141, 145, 146, 148, 159, 169, 172, 175, 180, 190, 192, and 199 are outside the scope of discovery until this Court issues a Scheduling Order for such discovery on the counterclaims.

In the event that the Court finds this line of discovery timely and the search terms relevant, MRIS requests that the Court order AHRN to apply MRIS's requested limitations and proposed edits to AHRN Search Term Nos. 7, 22, 29, 31, 32, 37, 40, 47, 48, 54, 58, 75, 78, 79, 93, 94, 113, 115, 121, 122, 127, 130, 132, 138, 139, 142, 153, 154, 155, 160, 164, 171, 191, 204, and 205 and Search Term Nos. 5, 11, 14, 15, 24, 55, 100, 108, 145, 146, 159, 175, 190, and 199, for the reasons discussed in Sections II.C and II.D, below.

      **B.**      **Search Terms Not Addressed in AHRN's Letter**

In MRIS's annotated and edited search terms, MRIS requested an explanation as to the relevancy for a number of additional search terms. AHRN failed to address these terms in its Letter or the attached Exhibit A. *See* AHRN Search Term Nos. 38, 39, 49, 63, 68, 82, 140, 151, 162, 176, 183, and 202. These objected to search terms include several common and nonsensical words, such as estately, flywheel, wav, scrap, strandmo, and nexsen. *See* AHRN Search Term Nos. 63, 68, 202, 176, 183, and 140. As AHRN made no attempt to explain the relevancy of these search terms, MRIS requests that these terms be denied in accord with Rule 26(b).

### C. MRIS's Edits to AHRN's Search Terms

In accord with the *Bosch* case, even where AHRN is able to justify the relevancy of its requests, MRIS has requested that it further narrow a number of overly-broad search terms in an effort to weed out irrelevant documents. For a number of search terms in its September 27, 2013 edited and annotated response, MRIS inserted proximity connectors or modified the existing proximity connectors so that relevant terms were in close proximity to one another. *See* AHRN Search Term Nos. 1, 2, 3, 4, 6, 17, 18, 21, 23, 27, 28, 31, 33, 35, 41, 42, 43, 44, 52, 53, 62, 69, 74, 76, 81, 84, 95, 96, 101, 102, 106, 125, 127, 131, 137, 138, 143, 149, 153, 154, 156, 157, 165, 168, 177, 178, 179, 184, 186, 195, 196, 197, 198, and 203. Courts have routinely accepted use of such proximity connectors to limit ESI documents to those most likely to be relevant to the pending litigation. *See POM Wonderful LLC v. Coca-Cola Co.*, No. CV 08-6237, 2009 WL 7047720, at * 1 (C.D. Cal. Nov. 10, 2009).

AHRN's Letter discusses a prime example of MRIS's requested limitations. AHRN proposed the search term (Ali* <u>OR</u> Vahab*). *(Dkt. 245 at 9; AHRN Search Term No. 4.)* MRIS revised the search term to read (Ali* <u>&</u> Vahab*). MRIS does not object to the relevancy of documents that relate to AHRN's former President and Chief Operating Officer Ali Vahabzadeh, but unless limited, the proposed search will capture every document that contains both Ali* and Vahab*. AHRN's proposal would pull every single document containing a word or name that begins with Ali*, including, for example, Alice, Allison, Alison, Alicia, alive, align, alike, and alias. Such broad search terms must be narrowed for MRIS to conduct a non-burdensome review of its ESI.

MRIS thus requests that this Court order AHRN Search Term Nos. 1, 2, 3, 4, 6, 17, 18, 21, 23, 27, 28, 31, 33, 35, 41, 42, 43, 44, 52, 53, 62, 69, 74, 76, 81, 84, 95, 96, 101, 102, 106, 125, 127, 131, 137, 138, 143, 149, 153, 154, 156, 157, 165, 168, 177, 178, 179, 184, 186, 195, 196, 197, 198, and 203 to be revised based on MRIS's edits to the search terms.

### D. Search Terms Where Additional Limitations Are Needed

Where possible, MRIS provided its edits and annotations to AHRN's proposed search terms. However, for a number of the search terms, MRIS requested that AHRN provide further limitations or additional terms using proximity connectors so that AHRN could control the scope of the term. *See* AHRN Search Term Nos. 9, 10, 30, 34, 36, 45, 46, 57, 60, 61, 64, 65, 70, 71, 72, 80, 83, 86, 88, 89, 90, 91, 92, 93, 97, 103, 104, 105, 107, 110, 114, 116, 126, 129, 134, 135, 136, 144, 147, 150, 152, 161, 163, 166, 167, 170, 173, 174, 181, 182, 187, 188, 189, 194, 200, and 207. MRIS has included on this list the search terms originally struck-through on its annotated and edited list (except custodian names, discussed below).

If not limited in some way, these proposed search terms would return vast quantities of MRIS's ESI data, including, for example, conference*, Realtor®, RETS, IDX, Keystone, syndicat*, assign*, matrix, referral*, and neighbor*. (AHRN Search Term Nos. 7, 161, 170, 86, 97, 187, 9, 110, 166, and 126.) Realtor®, for example, is a registered trademark of counterclaim defendant NAR, and is commonly used by many, if not most, MRIS subscribers to identify

themselves in their communications.  Moreover, a number of these terms will already be captured in other, more-narrow search terms.  For example, documents containing the search term assign* will already be returned by terms that MRIS has agreed to run with minor edits:

| 9 | assign* |
|---|---|
| 43 | copyright* NEAR (**assign*** or "intellectual property" or ip or protect* or cooperat* or listing* or litig* or lawsuit or collective*) |
| 60 | electron* /5 **assign*** or sign* or accept* |
| 94 | John* /50 (**assign*** or copy* or data* or protect* or MLS or sue or RMLS or Northstar or mosey or Heithaus or cardella) |
| 137 | (terms of use OR user or agreement or assignment or subscriber* or participant*) NEAR (sign* or licens* or **assign*** or agree* or click* or accept*) |

As MRIS has no way of knowing the particularized, non-duplicative information that AHRN is seeking in relation to these terms, AHRN needs to be the party to propose the additional terms and limitations that it would like used.  MRIS thus requests that the Court deny AHRN Search Terms Nos. 7, 9, 10, 30, 34, 36, 45, 46, 57, 60, 61, 64, 65, 70, 71, 72, 80, 83, 86, 88, 89, 90, 91, 92, 93, 97, 103, 104, 105, 107, 110, 114, 116, 126, 129, 134, 135, 136, 144, 147, 150, 152, 161, 163, 166, 167, 170, 173, 174, 181, 182, 187, 188, 189, 194, 200, and 207, until AHRN can propose proximity connectors and/or other limitations that substantially narrow these terms.

   **E.**  **Search Terms Containing Custodian Names**

Despite this Court's statements at the Hearing, AHRN failed to withdraw its search terms containing MRIS's document custodians.  (AHRN Search Term Nos. 13, 26, 51, 66, 94, 112, 158, and 206.)  Specifically, this Court stated "It does appear to me that the two examples that Ms. Esquenet has given me in her letter which is to search for MRIS and the name of the company and the names of employees has got to be overbroad."  Hearing Tr. 30:8-11.  AHRN has offered no case law to persuade the Court that employee names, especially custodian names, are not overly-broad and unduly burdensome.  The entire point of search terms is to limit custodian ESI for relevant documents.  If individual custodian names are searched, no such limiting can occur.

As such, MRIS requests that this Court deny AHRN Search Term Nos. 13, 26, 51, 66, 94, 112, 158, and 206.

### III.  AGREEMENTS UNDER RULE 502(D)

As discussed during the Hearing and earlier correspondence, MRIS prefers to review its own ESI and other documents for responsiveness, privilege, and protective order compliance before producing those files to AHRN. Despite MRIS's reasoned opposition, AHRN continues to demand that this Court issue a "quick peek" order. As this Court properly noted during the Hearing, "courts can't just order one party to produce everything pursuant to a claw-back agreement. That has to be done by mutual agreement. . . . I can't make them do a 502(d) stipulation." Hearing Tr. 33:4-6, 16-17. The Court invited AHRN to provide case law contrary to this position and AHRN has failed to do so. In both the *Coventry Healthcare* and *Chevron* cases cited in AHRN's letter, the respective courts only entered 502(d) quick peek agreements after it was requested or stipulated to by the party disclosing the ESI. Neither case contemplates a scenario where MRIS would be forced into a quick peek agreement.

AHRN argues that MRIS's refusal to enter into a quick peek agreement precludes it from arguing that AHRN's search terms are unduly burdensome. However, AHRN is improperly conflating these two issues and offers no case law justifying this position. Regardless of which party bears the expense of reviewing ESI for responsiveness and privilege, that ESI should be limited to narrowly-tailored search terms likely to produce relevant documents, as discussed above. MRIS should not be forced into reviewing overly-broad search results merely because it wants to be the party conducting the initial review.

While MRIS will not entertain any quick peek agreement, it has repeatedly indicated its willingness to enter into Rule 502(d) claw-back provisions related to the inadvertent production of privilege materials. Specifically, MRIS has proposed the following claw-back provisions:

>  1.  If any producing Party discovers that it has failed to redact privileged or nonresponsive material which it believes in good faith is either (1) subject to a claim of attorney-client privilege or attorney work product protection, or (2) neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, the producing Party may give written notice to the receiving Party that the document requires redaction and request that the receiving Party return the document to the producing Party under the provisions set forth in Paragraph 2. As soon as the receiving Party receives the written notice that the requested document requires redaction, the receiving Party is precluded from using or otherwise relying upon the redacted material for any purpose.

>  2.  Unless the producing Party claims that the entire document is subject to redaction pursuant to the above, the producing Party shall, together with its written notice, produce a copy of the document with the claimed non-responsive material redacted. Within three (3) business days of receiving written notice and a copy of the document with the applicable material redacted, the receiving Party shall return to the producing Party all copies of such document and shall return or destroy all excerpts thereof.

> 3. Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly deemed non-responsive, nor shall it foreclose the receiving Party from moving for an order that such document has been improperly redacted.

Correspondence from M. Esquenet dated September 27, 2013 (attached to Dkt. No. 220). AHRN has yet to substantively respond to MRIS's proposal.  Provided that AHRN is willing to stipulate to these terms, MRIS requests that this Court enter the above claw-back provisions.

## IV. COST-SHIFTING FOR ELECTRONICALLY-STORED INFORMATION

The Court indicated that the parties should be prepared for a cost-shifting arrangement in the collection and searching of MRIS's ESI with AHRN's proposed search terms—"I am going to divide the cost of doing the search between you but I am not going to put the cost of privilege or work product review on [AHRN]."  Hearing Tr. 33:11-13.

MRIS engaged a local electronic discovery vendor earlier this year and has already conducted an initial collection of its ESI materials for the eight agreed-upon custodians and related network files.[2]  Based on the volume of data in the initial collection and the additional data that may need to be collected for the remainder of 2013, the vendor has detailed the following processes that will need to be conducted and the amount of data that can be expected:

- Imaging of 19 devices/shared drives and new data from mid-May to November 1, 2013
- Estimate 1.4TBs collected of active data
- Extraction of data from images including denist
- Estimating 40% de-dupe/denist rate
- Ingest 840GBs of data into ECA tool MEI for searches and culling data
- There are currently 200 search terms to run across the collected, extracted and indexed data and that list may be revised by the court, necessitating several search passes prior to processing
- Promotion of search results into Relativity for full linear review

After the approximately 1.4 terabytes of data is collected and condensed into roughly 900 gigabytes ("GB"), the vendor will need to process the data so that it can be searched at a rate of $50 per GB.  Using the estimated volume of ESI data, the vendor has provided the following quote to MRIS that is valid for approximately the next thirty days (30) days:

---

[2] Prior to collecting data, MRIS obtained price quotes from three electronic discovery vendors in the Washington D.C. area and chose the vendor that provided the most cost-effective quote for the collection and searching of its ESI data.

The Honorable Jillyn K. Schulze
November 22, 2013
Page 10

| Collections Pricing | | | | | |
|---|---|---|---|---|---|
| Collection, deNist and extraction of 19 devices/shared servers | 19 | | Collection Total | $10,000 |
| ($7500 previously invoiced) | | | Invoiced | ($7,500) |
| | | | Collection balance | $2,500 |
| Recollection for date ranges 5/1/2013 – 11/1/2013 | | | Waived | |
| ECA Pricing | | | | | |
| Ingeston with de-dupe and ingestion into Relativity Modus Early Insight  (Estimated 40% de-dupe) | 900 | $50 | Per GB | $45,000 |
| User Licenses | 2 | $100 | Per User/Month | $200 |
| Technical Services for running several iterations of search terms (1st report free) | | $175 | Per Hour | |
| Storage In MEI after de-dupe (First six months at  no cost) | 540 | $10 | Per GB | $5,400 |

In sum, the cost for collection and searching of AHRN's search terms will be at least **$55,000,** plus technical time for running search terms at a rate of $175 per hour.

Given AHRN's recent alleged financial troubles and inability to pay contempt damages (Dkt. 230), MRIS must raise concerns about whether AHRN will be capable of paying the estimated $30,000 in vendor fees.[3] MRIS has engaged this vendor and will be financially responsible for any work conducted even if AHRN is not ultimately able to pay its share.  As such, MRIS requests that this Court order the parties to pay their respective portions of the vendor fees before any further searching and collection is done.

V.     CONCLUSION

In light of the foregoing, MRIS requests that this Court:

1. Deny AHRN Search Term Nos. 13, 26, 51, 66, 94, 112, 158, and 206 as they contain MRIS's employee names.

2. Order AHRN to tie each search term to a Request for Production.

3. Grant MRIS's edited AHRN Search Term Nos. 1, 2, 3, 4, 6, 17, 18, 21, 23, 27, 28, 31, 33, 35, 41, 42, 43, 44, 52, 53, 62, 69, 74, 76, 81, 84, 95, 96, 101, 102, 106, 125, 127, 131, 137, 138, 143, 149, 153, 154, 156, 157, 165, 168, 177, 178, 179, 184, 186, 195, 196, 197, 198, and 203.

4. Deny AHRN Search Terms Nos. 9, 10, 30, 34, 36, 45, 46, 57, 60, 61, 64, 65, 70, 71, 72, 80, 83, 86, 88, 89, 90, 91, 92, 93, 97, 103, 104, 105, 107, 110, 114, 116, 126, 129, 134, 135, 136, 144, 147, 150, 152, 161, 163, 166, 167, 170, 173, 174, 181, 182, 187,

---

[3] AHRN has represented that costs related to MRIS's "copyright infringement litigation fees" is covered by insurance.  (AHRN's Reply in Supp. of its Mot. for Relief from Contempt Damages, Dkt. 254 at 7.)  However, AHRN has not represented that its insurance company is covering costs related to AHRN's counterclaims.  Moreover, AHRN's insurance company has sued AHRN, claiming that it has no duty to defend.  (Dkt. 230, Decl. of Christopher Miller, ¶ 11.)  Should the insurance company's lawsuit be successful, AHRN will be required to take on these costs.

    188, 189, 194, 200, and 207, unless and until AHRN proposes appropriate proximity connectors and/or other limitations that substantially narrow these terms.

5. Deny AHRN Search Term Nos. 7, 8, 19, 20, 22, 25, 29, 31, 32, 33, 37, 40, 47, 48, 54, 58, 59, 75, 78, 79, 93, 94, 113, 115, 121, 122, 127, 128, 130, 132, 133, 138, 139, 142, 153, 154, 155, 160, 164, 171, 185, 191, 204, and 205 and Search Term Nos. 5, 11, 12, 14, 15, 16, 24, 50, 55, 56, 67, 73, 77, 85, 98, 100, 108, 109, 117, 118, 119, 120, 123, 124, 141, 145, 146, 148, 159, 169, 172, 175, 180, 190, 192, and 199 as outside the scope of discovery unless and until this Court issues a Scheduling Order for such discovery on the counterclaims.

6. Deny AHRN Search Term Nos. 38, 39, 49, 63, 68, 82, 140, 151, 162, 176, 183, and 202 as irrelevant, or alternatively, require AHRN to provide a more substantive response indicating why these search terms are relevant.

7. Deny AHRN's request for a Rule 502(d) quick-peek agreement.

8. Order that any vendor fees associated with the searching and processing of MRIS's ESI be split between the parties and that such fees be paid by both parties before any work is commenced.

    Respectfully submitted,

    FINNEGAN, HENDERSON, FARABOW
    GARRETT & DUNNER, LLP

    *Margaret A. Esquenet*

    Margaret A. Esquenet
    (Bar No. 27775)
    Attorney for Plaintiff
    *Metropolitan Regional Information Systems, Inc.*

MAE
cc:    All Counsel of Record, via ECF

## CERTIFICATE OF SERVICE

I, Margaret A. Esquenet, hereby certify that on November 22, 2013, a copy of the letter to The Honorable Jillyn K. Schulze regarding MRIS's response to AHRN's November 1, 2013 letter was served via electronic means using the Court's CM/ECF system:

>Richard S. Toikka
>L. Peter Farkas
>Russell O. Paige
>FARKAS & TOIKKA, L.L.P.
>1101 30th Street N.W., Suite 500
>Washington, DC 20007
>rst@farkastoikka.com
>lpf@farkastoikka.com
>rop@farkastoikka.com
>
>Christopher Ralph Miller
>AMERICAN HOME REALTY NETWORK INC.
>222 7th Street, Second Floor
>San Francisco, CA 94103
>c.miller@neighborcity.com
>
>Brian Morrissey, Jr.
>SIDLEY AUSTIN LLP
>1501 K Street, NW
>Washington, DC 20005
>bmorrissey@sidley.com
>
>Jack R. Bierig
>Tacy F. Flint
>Scott Stein
>SIDLEY AUSTIN LLP
>One Dearborn Street
>Chicago, IL 60603
>jbierig@sidley.com
>tflint@sidley.com
>sstein@sidley.com

*/s/ Margaret A. Esquenet*