IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| METROPOLITAN REGIONAL | : | |
| INFORMATION SYSTEMS, INC., | : | |
| et al. | | |
| | : | |
| Plaintiff, and | | |
| Counterclaim Defendants | : | |
| | | |
| v. | : | Civil Action No. DKC 12-0954 |
| | : | |
| AMERICAN HOME REALTY NETWORK, | | |
| INC. | : | |
| | | |
| Defendant, and | : | |
| Counterclaimant | | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this
copyright infringement and antitrust action are: (1) a motion
for sanctions filed by Counterclaim Defendant the National
Association of Realtors ("NAR") (ECF No. 403); (2) a motion to
withdraw as attorney filed by Farkas + Toikka, local counsel for
Counterclaimant American Home Realty Network, Inc. ("AHRN") (ECF
No. 407); and (3) a motion to withdraw as attorney filed by
Gustafson Gluek PLLC, *pro hac vice* counsel for AHRN (ECF No.
421).  No hearing is necessary.  Local Rule 105.6.  For the
following reasons, NAR's motion for sanctions will be denied.
The motions to withdraw will be denied without prejudice to

reconsideration if necessary after the motion for summary judgment is decided.

## I.   Background

The factual and procedural background of this action was extensively documented in previous opinions, thus only a brief summary is necessary.  (*See* ECF Nos. 34, 64, 159, 180-1, 239, 351).  The Metropolitan Regional Information Systems, Inc. ("MRIS") brought a copyright infringement action against AHRN and Jonathan J. Cardella, AHRN's Chief Executive Officer, on March 28, 2012.[1]  (ECF No. 1).  MRIS offers an online fee-based "multiple listing service" (MLS) to real estate brokers and agents.  Subscribers upload their real estate listings to the MRIS Database and agree to assign to MRIS the copyrights in each photograph included in those listings.  AHRN takes listing data from online database compilers like MRIS and makes it directly available to consumers on its "real estate referral" website. Specifically, AHRN owns and operates www.neighborcity.com ("NeighborCity"), which connects potential buyers with real estate agents based on the types of properties in which a buyer is interested.  The gravamen of MRIS's lawsuit against AHRN was that AHRN had displayed on its website real estate listings containing copyrighted photographs taken from the MRIS Database.

---

[1] The lawsuit was dismissed against Mr. Cardella for lack of personal jurisdiction.

On September 24, 2012, AHRN answered MRIS's complaint and counterclaimed against MRIS, Does # 1-25, and the National Association of Realtors ("NAR"), a trade association that establishes and enforces policies and professional standards for its over one million individual member real estate brokers and their affiliated agents and sales associates and 1,600 local and state member boards of realtors. (*See* ECF No. 46).   AHRN later filed first amended counterclaims, which MRIS and NAR both moved to dismiss.   (*See* ECF No. 68).   After Judge Williams[2] issued several opinions (ECF Nos. 159 & 239), and AHRN was granted leave to file second amended counterclaims (ECF No. 167),[3] counts I and III against MRIS and NAR remained the only counterclaims. The remaining counterclaims against MRIS were dismissed by memorandum opinion and order issued on March 10, 2014.   (ECF Nos. 351 & 352).   On September 12, 2014, MRIS and AHRN filed a proposed permanent injunction and final order, which reflects, *inter alia*, that MRIS and AHRN have agreed to dismiss with prejudice all pending claims between them.   The permanent injunction and final order was entered on September 15, 2014. (ECF No. 420).   Consequently, what remains in the case are two

---

[2] The case was transferred to the undersigned after Judge Williams retired.

[3] The second amended counterclaims asserted the following causes of action against MRIS and NAR: (1) unfair competition under Maryland law; (2) unfair competition under California law; and (3) violation of the Sherman Act § 1.   (*See* ECF No. 167).

counterclaims against NAR: (1) unfair competition in violation of Maryland law (count I); and (2) violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (count III).

On August 11, 2014, NAR moved for sanctions pursuant to Fed.R.Civ.P. 11. (ECF No. 403). Soon thereafter, counsel for AHRN moved to withdraw as attorneys. (*See* ECF Nos. 407 & 421).

## II.  Analysis

### A.   NAR's Motion for Sanctions

NAR contends that the allegations contained in paragraphs 112, 114, and 116 in the second amended counterclaims are without factual basis and thus should be stricken and AHRN and its counsel should be ordered to pay all fees incurred by NAR by virtue of their inclusion. (ECF No. 403-1, at 2).

"[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Under Rule 11, by presenting a pleading or written motion to the court, an attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading or motion is, among other things, "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and

that its "allegations and other factual contentions have evidentiary support." Fed.R.Civ.P. 11(b).

There is a difference between a losing case and a frivolous case: "We have recognized that maintaining a legal position to a court is only sanctionable when, in 'applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (*quoting In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)). Thus, to avoid sanctions, an "allegation merely must be supported by *some* evidence." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1377 (4th Cir. 1991) (emphasis in original). Furthermore, "[m]otions for sanctions are to be filed sparingly," and "[t]he keynote is cooperation and simple solutions, not paperwork and unnecessary expense to clients." *Thomas v. Treasury Mgmt. Ass'n, Inc.*, 158 F.R.D. 364, 366 (D.Md. 1994). Whether "to impose Rule 11 sanctions, and the quality and amount of sanctions imposed," are all matters within the discretion of the district court. *Miltier v. Downes*, 935 F.2d 660, 663 (4th Cir. 1991); *see also* Fed.R.Civ.P. 11(c)(1) ("If . . . the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction" (emphasis added)).

The crux of NAR's motion for sanctions is that AHRN included certain allegations in the second amended counterclaims that it knew from the outset lacked evidentiary support and were untrue. Specifically, NAR contends that the court should strike from the second amended counterclaims paragraphs 112, 114, and 116 because no factual bases exist to support these allegations:

> **Paragraph 112**: In the Spring of 2013, with NAR now a direct competitor of AHRN in the national market for real estate agent ratings, on information and belief, NAR has encouraged regional boards of realtors to step up their efforts (1) to keep their member agents from entering into referral agreements with AHRN; (2) to breach or repudiate referral agreements agents have entered with AHRN; and (3) to pressure agents into demanding that their names be stricken from AHRN's list of potential referral agents.

> **Paragraph 114**: On or about May 2, 2013, Kent Meister, an agent with Keller Williams Realty of Coon Rapids, Minnesota, informed an AHRN customer service representative that he wanted his name removed from the AHRN referral list because he was contacted by his local board of realtors, presumably referring to the owner of Northstar MLS, and the board warned him to request removal from the AHRN list, citing Northstar's Minnesota lawsuit against AHRN.

> **Paragraph 116**: On or about May 30, 2013, Paulette Carroll, of Keller Williams Classic Realty in Clear Lake, Minnesota refused a customer referral from AHRN and advised an AHRN customer service representative that NAR had directly advised her brokerage not to work with AHRN.

(ECF No. 167, at 42-43).

NAR challenges the factual allegations in these paragraphs, stating that they are directly contradicted by deposition testimony and affidavits provided by Kent Meister and Paulette Carroll during discovery.  Although NAR cites Paulette Carroll's declaration that she was never instructed by NAR, NorthstarMLS, or her broker not to enter into referral agreements with AHRN, (ECF No. 403-5), her declaration is contradicted by documents reflecting AHRN's conversations with Ms. Carroll.  Notes from Alexander Gilbert, an AHRN staff member, reflect that he spoke with Ms. Carroll in May 2013:

> Paulette told me she had been advised not to take referrals from NeighborCity.  *I asked if the National Association of Realtors was the one who had said not to work with us, to which she said yes.*  When further inquiring about how this is happening, she let me know that her broker brings it up at their team meeting every single week. . . .  When asked for the reason, Paulette said it was because of the lawsuits that we are involved in, but she did not know much more than that.  She did not know many details *other than the fact that the NAR is directly advising their brokerage to not work with us.*

(ECF No. 403-24, at 10) (emphases added).  This note supports the allegation in paragraph 116.  NAR has produced a transcript of the purported phone conversation between Mr. Gilbert and Ms. Carroll, which it interprets as contradicting Mr. Gilbert's synopsis of the conversation, (*see* ECF No. 403-25), but it

cannot be said that AHRN wholly misconstrued Ms. Carroll's

responses:

> Alex Gilbert: [] And who was it that had
> advised you not to take our referrals?
>
> Paulette Carroll: Just out of our – out of
> our office.
>
> Alex Gilbert: []   Like the national
> association?
>
> Paulette Carroll: Yeah.  Mmmhmmm.
>
> Alex Gilbert: Oh.  Alright.  That's very
> strange.  Have they sent off and mailed to
> you or something like that?
>
> Paulette Carroll:  No.  It's brought up in
> our team meeting every week.
>
> . . .
>
> Alex Gilbert: . . . I'm not fully apprised
> of what the whole lawsuit entails, but I've
> actually never heard anybody been advised by
> the national association not to take
> referrals from us.
>
> Paulette Carroll:  Yeah.  Yeah.  So, I don't
> know.  I mean, it's our option.  It's our
> option in the end.

(*Id.* at 2-3).

NAR's contention that "*[n]othing* in this conversation

supports the allegations in paragraphs 112 and 116" is an

overstatement.  (ECF No. 403—1, at 9) (emphasis added).  NAR

argues that Ms. Carroll confirmed during her deposition that

"she did not intend to convey to Mr. Gilbert during their call

that NAR had instructed her not to deal with AHRN."  (*Id.* at

10).   The fact that Ms. Carroll and Mr. Gilbert were left with different impressions of their telephone conversation and NAR believes Ms. Carroll's impression is more reasonable does not establish that AHRN had no factual basis for the allegations in paragraphs 112 and 116.   As AHRN pointed out to NAR in its May 13, 2014 response letter to the proposed motion for sanctions, the call notes from Mr. Gilbert and the actual call transcription constitute "some factual basis" permitting AHRN to make the allegations in paragraph 116, "regardless of how this factual dispute may ultimately be decided."   (ECF No. 403-24, at 7); *see Brubaker*, 943 F.2d at 1378 ("Rule 11 does not require that a judge or jury agree with a plaintiff's allegation.   For Rule 11 purposes, the allegation merely must be supported by some evidence.").

Along the same lines, NAR submits a declaration from Kent Meister (the agent referenced in paragraph 114 above), in which he disputes the veracity of the allegation in paragraph 114. (ECF No. 403-4 ¶ 7).   An email from Shannon Burns, an AHRN AgentMatch Specialist, however, may support the allegation in paragraph 114: "Kent says he wants to be removed from ou[r] list because of the local lawsuit against us.   *He says he has been advised by his board o[f] realtors to do this.*   He also says that other agents in the area are recording calls like this to 'use against us in a court of law.'"   (ECF No. 403-24, at 22)

9

(emphasis added).   Ms. Burns's call notes further state, in

relevant part:

> Kent Meister, an agent with Keller Williams
> Classic Realty in Minnesota called
> NeighborCity on Friday afternoon, May 3rd,
> 2013[.] . . . [H]e said[,] "[w]e've been
> contacted by our Board about [the lawsuit
> against AHRN], so word of caution, you're
> peppering our agents with these emails and
> I'm sure they're getting logged and will be
> used in  a court of law against you."  He
> asked to be removed from our system until
> the lawsuits are resolved.

(*Id.* at 10).   NAR believes that "[t]he only logical reading of

this note is that any contact from the local board was to inform

agents of the lawsuits against AHRN – not to advise agents to

request removal from AHRN's referral list," but it cannot be

said that AHRN's interpretation of the call with Mr. Meister is

wholly unreasonable.   (ECF No. 403-1, at 12).   AHRN correctly

explains that "NAR will [] be free to argue that Mr. Meister is

telling the truth and Ms. Burns was telling a lie, but that is a

credibility determination and factual finding more appropriate

for trial than summary judgment, let alone a Rule 11 motion."

(ECF No. 403-24, at 7).   Weak evidentiary basis for certain

allegations is not the same thing as *no* evidentiary basis, and

the record does not reflect that the allegations in the above

paragraphs were frivolously asserted or lacked *any* evidentiary

support.  As AHRN pointed out in its May 13, 2014 letter to NAR,

"NAR's contentions seek resolution of questions of fact by

claiming that AHRN's factual allegations are 'false' or insufficiently detailed to support a finding in AHRN's favor." (ECF No. 403-24, at 4).  NAR's references to affidavits and deposition testimony are unavailing.  At times allegations in a pleading may be undermined by evidence ascertained during discovery, but that does not mean that purportedly contradicted allegations need to be stricken or that factual assertions uncovered at the initial stages of the case have to be confirmed to an absolute certainty, which is what NAR's motion suggests.

Moreover, NAR's motion for sanctions suggests that Judge Williams was misled into denying its earlier motion to dismiss the counterclaims by the inclusion of paragraphs 112, 114, and 116, which NAR believes lacked any evidentiary support. Notably, the allegations which NAR believed to be untrue were *not* the only bases for Judge Williams's decision to deny NAR's earlier motion to dismiss the second amended counterclaims. Judge Williams referenced multiple allegations in the second amended counterclaims *outside of* the three paragraphs which form the gravamen of NAR's motion for sanctions.  Specifically, in considering whether AHRN's counterclaims as to NAR survive dismissal, Judge Williams concluded:

> The allegations regarding NAR's entry into the agent evaluation and ranking market, the concrete steps taken by NAR and its members in refusing to deal with AHRN, and the NAR Handbook notice provision – read in

> conjunction with the original allegations from the First Amended Counterclaims including, *inter alia*, the November 2011 NAR annual meeting, AHRN's receipt of virtually identical refusal and repudiation letters from brokers nationwide, and the Janik-led cease-and-desist efforts and NAR-funding of lawsuits against AHRN, *see* [ECF No. 167] *¶¶ 90-95, 103-10, 123, 166-67* – give rise to the plausible inference that NAR was a party to an anticompetitive agreement.
>
> Moreover, AHRN's Second Amended Counterclaims sufficiently plead the existence of anti-competitive harm as a result of NAR's conduct. . . . [citing ECF No. 167 *¶¶ 108, 171-172, 201*] . . . Therefore, AHRN's allegations of anticompetitive harm are not limited merely to AHRN's ability to compete, which was the primary deficiency of the First Amended Counterclaims.

(ECF No. 239, at 15-17) (emphases added).

NAR's arguments relate to the sufficiency of the evidence, which are properly considered in the context of a motion for summary judgment. *See, e.g., Mostofi v. Experian Information Solutions, Inc.*, Civ. Action No. DKC 11-2011, 2014 WL 4384599, at *2 (D.Md. Sept. 2, 2014) ("Despite the fact that Plaintiff could not successfully establish FCRA liability on any of his asserted claims, there is no indication on the record that Plaintiff acted with a dishonest purpose or with ill will, or that Plaintiff's claims were 'utterly without factual foundation.'" (*quoting Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 (4th Cir. 1999))).  Indeed, NAR filed the motion for sanctions

12

prematurely, considering that it had not yet moved for summary judgment at that point and Judge Williams earlier denied NAR's motion to dismiss the counterclaims.  Based on the foregoing, it is not apparent that a reasonable attorney in AHRN's position "could not have believed his actions to be legally justified." *Hunter*, 281 F.3d at 153.  The allegations in the second amended counterclaims that NAR believes should be stricken do not meet the high standard required for the imposition of sanctions and, consequently, the court will exercise discretion not to award sanctions.

### B.    Motion to Withdraw as Attorney

The two law firms that represent AHRN in this litigation are: (1) Farkas + Toikka (local counsel); and (2) Gustafson Gluek PLLC (*pro hac vice*).  Both firms have moved to withdraw as counsel.  (ECF Nos. 407 & 421).  Under Local Rule 101.1.a., only individuals may represent themselves and "[a]ll parties other than individuals must be represented by counsel."  Moreover, Local Rule 101.1.b. states that "[a]ny party represented by an attorney who has been admitted pro hac vice *must also be represented by an attorney who has been formally admitted to the Bar of this Court* who shall sign all documents and, unless excused by the presiding judge, be present at any court proceedings."   (emphasis added).   Because AHRN must be represented by counsel during the pendency of this action and

13

the summary judgment motion has not yet been adjudicated, both motions to withdraw will be denied without prejudice to reconsideration if necessary after the court adjudicates the motion for summary judgment.

## III. Conclusion

For the foregoing reasons, NAR's motion for sanctions filed by NAR will be denied.  The motions to withdraw as attorneys filed by Farkas + Toikka and Gustafson Gluek PLLC will be denied without prejudice to reconsideration later in the litigation if necessary.  A separate order will follow.

                                    /s/
                        DEBORAH K. CHASANOW
                        United States District Judge